UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRACY PARTNERS, LLC,　　　　　　　CASE NO.: 1:17-CV-1047-ESH
et al.,

    Plaintiffs,
v.

PROJECT VERITAS ACTION FUND,
et al.,

    Defendants.
_____/

**<u>PROJECT VERITAS PARTIES' MOTION FOR SANCTIONS PURSUANT TO
RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWER
AND INCORPORATED STATEMENT OF POINTS AND AUTHORITIES</u>**

The mission of Project Veritas is to investigate and expose corruption, dishonesty, self-dealing, waste, fraud, and other misconduct in both public and private institutions in order to achieve a more ethical and transparent society.

Plaintiff Robert Creamer is a felon, convicted fraudster, and partisan political operative. Creamer's unethical and illegal activities during the 2016 Presidential election were caught on camera by an undercover investigative journalist working for Project Veritas and exposed to the nation. The instant suit by Creamer and his related entities Democracy Partners and Strategic Consulting Group ("Creamer parties" or "Plaintiffs") followed. Though their Complaint is inaccurate in numerous respects, one of the central factual allegations can be readily and conclusively shown to be a lie. Specifically, the Complaint falsely alleges that on the first day of the undercover journalist's internship with Democracy Partners, Creamer informed her that the information she would be privy to was confidential and not to be shared without specific instruction. Compl. [D.E. 1] at ¶32. The journalist, Allison Maass, recorded her entire first day at

1

Democracy Partners and the Project Veritas parties have produced the recording to Plaintiffs as PVA00013195-214. The recording conclusively demonstrates that neither Creamer nor anyone else told her that the information she was privy to was confidential.

Project Veritas, Project Veritas Action Fund, James O'Keefe, and Allison Maass ("Veritas Parties") file this Motion pursuant to Rule 11, 28 U.S.C. § 1927, and the Court's inherent power to address this specific -- and critical – falsehood asserted in the Complaint. The Creamer parties and their lawyers must abandon their lie within the safe harbor period or must face the imposition of sanctions, including attorneys' fees and costs, for their frivolous factual position.

## Overview

The crux of the Creamer parties' suit is that when an undercover journalist penetrated Democracy Partners and exposed its unethical activities, two Democracy Partners client organizations ended their relationships, and one prospective client never hired Democracy Partners, causing damages. Plaintiffs and their lawyers are adamant that this is not a defamation lawsuit and the only damages claimed flow from clients and a prospective client who blamed the Creamer parties for not safeguarding their "confidential" matters.  This is like a health inspector turning on the lights in a restaurant kitchen, sending the cockroaches scurrying, and the restaurant blaming its lost business on the health inspector instead of its own dirty practices. Similarly, Plaintiffs seek damages from Project Veritas and the undercover journalist who exposed Plaintiffs' own wrongdoing.

The Creamer parties' claims are predicated on the notion that Allison Maass - the undercover journalist who interned at Democracy Partners -- owed Plaintiffs a fiduciary duty despite the fact that she was a part-time, unpaid intern whose internship lasted for a total of five weeks. Plaintiff's central argument in support of this theory is the verifiably false claim that

2

Creamer told her on the day she started her internship that the information she had access to was confidential and not to be shared without an instruction to do so.

The Creamer parties necessarily have actual knowledge that their 'first day' contention is false. In discovery, the Project Veritas parties have provided Plaintiffs' counsel a complete copy of the video exposing their criminal client's lie (as well as recordings of every phone call Ms. Maass had with Creamer prior to the start of the internship). Plaintiffs' lawyers are on notice that their factual contention is frivolous. The fact that the Plaintiffs and their lawyers continue to adhere to this falsehood means that they act in bad faith and knowingly advance a false position.

## The Standards for Imposing Sanctions

In falsely alleging that Creamer told Ms. Maass on the first day of the internship that her activities were confidential, the Creamer parties and their lawyers have embarked on a course of conduct that is frivolous, in bad faith, and which vexatiously and unreasonably multiplies these proceedings. Sanctions for this conduct are appropriate under Rule 11, the Court's inherent power, 28 U.S.C. § 1927.

<u>Sanctions Under Rule 11</u>

A lawyer must "stop, think[,] and investigate" before filing a complaint. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 398 (1990). Accordingly, Rule 11, FED. R. CIV. P. states in pertinent part:

(a) Signature. Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name . . . .

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) It is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

3

>   (2) The claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
>   (3) The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .
>   . . .

The test for whether Rule 11 has been violated is an objective one. *Reynolds v. U.S. Capitol Police Board*, 357 F. Supp. 2d 19, 23 (D.D.C. 2004).

Once a court finds that Rule 11 has been violated, the Rule requires that sanctions be imposed. *Id.* at 24 (citations omitted). Possible sanctions that may be imposed under Rule 11 include "payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." FED. R. CIV. P. 11(C)(1). Though a court has flexibility in fashioning the appropriate sanction, "[c]ourts in this district have recognized that monetary sanctions under Rule 11 may be measured by the cost of defending against the frivolous action." *Id.* at 26 (collecting cases). Rule 11 sanctions may be imposed "on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." FED. R. CIV. P. 11(c)(1).

<u>Sanctions Under the Court's Inherent Power</u>

In addition to sanctions mechanisms present in the Rules of Civil Procedure and federal statutes, courts have an inherent power at common law to "protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments." *Parsi v. Daioleslam*, 778 F.3d 116, (D.C. Cir. 2015) (citing *Shepherd v. Am.*

*Broadcasting Cos., Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). "Courts have discretion to determine a fitting sanction for conduct that abuses judicial proceedings, including assessing attorney's fees." *Parsi*, 778 F.3d at 131. "A finding of bad faith is required for an award of attorney's fees under the court's inherent power." *Id.*

<u>Sanctions under 28 U.S.C. § 1927</u>

Courts may also impose sanctions under 28 U.S.C. § 1927, "which permits the assessment of costs and fees against an attorney who 'multiplies the proceedings in any case unreasonably and vexatiously.'" *Fritz v. Honda Motor Co., Ltd.*, 818 F.2d 924, 925 (D.C. Cir. 1987). "The purpose of § 1927 is to allow the Court 'to assess attorney's fees against an attorney who frustrates the progress of judicial proceedings.'" *Robertson v. Cartinhour*, 883 F. Supp. 2d 121, 125 (D.D.C. 2012) (Huvelle, J.).

This Court explained the standard in *Cartinhour*:

> The District of Columbia has not yet established whether the standard for unreasonable and vexatious conduct under section 1927 should be recklessness or the more stringent bad faith. . . . However, it is clear that, to warrant such a sanction, the attorney's conduct must be *at least* reckless. This means that there must be a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. . . . That is, the movant must show that the attorney in question acted recklessly or deliberately in the face of a known risk.

*Id.* at 125 (alterations, quotations, and citations omitted).

### **False Contention That Creamer Told Ms. Maass She Was to Keep Democracy Partners' Information Confidential Is Frivolous, in Bad Faith, and Vexatiously Multiplies the Proceedings**

In their Complaint, [D.E. 1], Plaintiffs and their lawyers falsely claim:

> 32. On her first day of work, Creamer gave Maass an overview of the work [Strategic] and Democracy Partners was performing, how it interacted with clients and other information that was pertinent for an intern to know in order to perform her tasks. During this discussion, the information Creamer disclosed to Maass included confidential and sensitive information including the identity of clients,

client information and programmatic details, and the identity of partners. These disclosures were made just weeks before the presidential election, and **Creamer explicitly told Maass that based on the confidential and sensitive nature of the mission and programming of Plaintiffs [Strategic] and Democracy Partners, the information, and any additional information she was given over the course of her internship, was confidential and not to be shared with anyone other than the persons with whom she had specifically been instructed to share that information**.

(emphasis added); *see also* ¶39 (repeating falsehood that Creamer had told Ms. Maas information was "confidential and not to be shared with anyone with whom she had not been instructed to share it."). In Plaintiffs' Answers to Interrogatories, Creamer's sworn answers make clear there is no alleged agreement with Ms. Maass regarding supposed confidential information other than the contention in ¶32. **Exhibit A**, Excerpts of Plaintiffs' Responses to First Set of Interrogatories at 10. Creamer (under oath) thus doubles down on the plainly false contention.

This supposed instruction on the first day of Ms. Maass's internship is a cornerstone of Plaintiffs' Complaint and the hook by which Plaintiffs try to argue their legal position that an unpaid, part time, three-day-a-week intern owed them a fiduciary duty and duty of loyalty. *See* Compl. [D.E. 1] at ¶69 (incorporating allegation into breach of fiduciary duty count); *see also* ¶¶78 and 86 (incorporating allegation in interception of oral communication counts), ¶94 (incorporating allegation into trespass count), ¶102 (incorporating allegation into fraudulent misrepresentation count), ¶113 (incorporating allegation into civil conspiracy count). It is of course a critical contention in connection with Plaintiff's breach of fiduciary duty claim. It is also important to the interception counts (where Plaintiffs rely on the existing of an underlying tortious or criminal purpose to avoid the one party consent rule), and the civil conspiracy count (which requires an agreement to commit an unlawful act).

The centrality of the 'first day' lie is also emphasized by Plaintiffs' repeated representations in court papers that they do not seek reputational damages caused by publication of Project

Veritas's reporting, but only for damages that arise as a result of clients leaving the Creamer parties because of the Creamer parties' failure to keep their "confidences." *See e.g.* Opp. to Mot. to Dismiss [D.E. 19] at 10 ("The clear implication of these allegations is that damage to Plaintiffs' reputation resulted from their clients' displeasure with *the breach of client confidentiality – the fact that highly sensitive client confidential information was disclosed to outsiders without the client's consent*"); *id.* ("Plaintiffs are not seeking reputational or any other damages for any act of expression or publication."). That position is consistent with the public statements of one of the Creamer parties' lawyers in public posts on Twitter:



This is a choice that Plaintiffs' lawyers have committed to in an effort to avoid First Amendment defenses available to the Project Veritas parties in a defamation case. *See* Order Denying Mot. To Dismiss [D.E. 25] at 24-26 (also noting, "Whether plaintiffs will ultimately be able to show that the PV defendants' non-expressive conduct resulted in damage to their reputation remains to be seen . . . .").

As part of Project Veritas's investigation that successfully exposed Creamer's unethical and illegal conduct, Ms. Maass recorded the entirety of her first day. It is indisputable that neither Creamer (nor anyone else) gave the instruction alleged by Plaintiffs. A copy of the complete recording was disclosed to Plaintiffs in discovery as PVA00013195-214, and the recording will be submitted to the Court as **Exhibit B** at the time of filing. In an effort to pre-empt further efforts at deception by Plaintiffs, and in an effort to avoid further delay occasioned by Plaintiffs, the Project Veritas parties will also provide the Court, at the time of filing, recordings of every phone call between Creamer and Ms. Maass prior to and during her internship as **Composite Exhibit C** (produced in discovery to Plaintiffs as PVA00013183-193). This evidence makes it clear that Creamer absolutely did not instruct Ms. Maass as the Complaint claims. It is frivolous, vexatious, and in bad faith for Plaintiffs and their lawyers to continue to adhere to this lie, especially with the evidence now sitting on their desks.

The Creamer parties necessarily knew that this was a false statement of fact when they filed the Complaint, and their bad faith is therefore patent. Moreover, Rule 11 imposes on lawyers the obligation to conduct a reasonable investigation and not simply rely on the words of a client, especially when there are reasons – like Creamer's federal bank fraud and tax crime convictions[1]

---

[1] Creamer was indicted for his crimes as Executive Director of Illinois Public Action Fund, including 34 counts of various bank fraud and tax offenses. **Exhibit D**, Indictment, *United States v. Creamer*, 04-cr-00281 (N.D. Ill.). Creamer ultimately pled guilty to one bank fraud count and one failure to pay withholding taxes count. **Exhibit E**, Judgment, *United States v. Creamer*, 04-cr-00281 (N.D. Ill.). He was sentenced to five months in prison. *Id.*

and the unethical conduct exposed by Project Veritas's reporting – to doubt the client's truthfulness. *See e.g. Anderson v. County of Montgomery*, 111 F.3d 494, 501 (7th Cir. 1997) (not sufficient to rely on word of client who "admits to skipping town to avoid child support, assum[es] aliases and obtain[s] credit under false names, and fail[s] to pay off his creditors."), *cert. denied*, 522 U.S. 951 (1997), *overruled as to unrelated issue by Dewalt v. Carter*, 224 F.3d 607 (7th Cir. 2000).

Regardless of whether Plaintiffs' lawyers had actual knowledge of the lie when they filed their Complaint, lawyers have a continuing duty to ensure they take non-frivolous positions. FED. R. CIV. P. 11(b) (Rule 11 applies not just to "signing, filing, [or] submitting" a pleading but also applies to "later advocating it"); *see also e.g. Golemi v. Creative Food Design, Ltd.*, 116 F.R.D. 73 (D.D.C. 1987) (imposing sanctions on plaintiff's counsel and emphasizing counsel's "obligation to continually reevaluate his litigation position 'as the facts of the case come to light.'") (citations omitted); *Miccosukee Tribe of Indians v. Cypress*, 686 Fed. Appx. 823, 827 (11th Cir. 2017) (unpublished) ("The use of Rule 11 is particularly appropriate when a party knowingly makes allegations that are objectively frivolous and persists in that 'position after it is no longer tenable.'"); *Cartinhour*, 883 F. Supp. 2d at 126 ("The D.C. Circuit has interpreted § 1927 to 'impose a continuing obligation on attorneys by prohibiting the persistent prosecution of a meritless claim.'") (citations omitted).

That the lawyers representing Plaintiffs continue to adhere to a verifiably false statement demonstrates that their conduct rises to bad faith and vexatious conduct which is sufficient to trigger sanctions. Because the Creamer Parties and their lawyers know that no evidentiary support can possibly be developed in supported of their false contention of fact, they violate Rule 11(b)(3). Its inclusion in the Complaint necessarily serves only improper purposes, such as causing

additional unreasonable and vexatious delay in litigating the verifiably false contention. *See* FED. R. CIV. P. 11(b)(1); 28 U.S.C. § 1927. It is an allegation pursued in total bad faith. Under Rule 11, the Court's inherent power, and 28 U.S.C. § 1927, the Creamer Parties and their lawyers must abandon the false contention described above within the safe harbor period or face sanctions.

WHEREFORE, Defendants Project Veritas Action Fund, Project Veritas, James O'Keefe, and Allison Maass request that the Court enter an Order imposing sanctions, including but not limited to joint and several liability for attorneys' fees and costs, against:

1. Plaintiff Robert Creamer;
2. Plaintiff Democracy Partners, LLC;
3. Plaintiff Strategic Consulting Group, NA, Inc.;
4. Plaintiffs' lawyer Joseph E. Sandler;
5. Plaintiffs' lawyer Dara Lindenbaum;
6. The law firm Sandler Reiff Lamb Rosenstein & Birkenstock, P.C.;
7. Plaintiffs' lawyer Yael Bromberg;
8. Plaintiffs' lawyer Aderson Francois; and
9. Georgetown University Law Center's Institute for Public Representation.

Respectfully submitted,

By:   /s/ Paul A. Calli
      Paul A. Calli
      Florida Bar No. 994121
      Email: PCalli@Calli-Law.com
      Chas Short
      Florida Bar No. 70633
      Email: CShort@Calli-Law.com
      *Admitted pro hac vice*
      CALLI LAW, LLC
      One Flagler Building
       14 Northeast 1st Avenue, Suite 1100
      Miami, FL  33132

                                            Telephone:   (786) 504-0911
                                            Facsimile:   (786) 504-0912

| | |
|---|---|
| /s/ Kerry Brainard Verdi<br>Kerry Brainard Verdi, Esq.<br>Bar No. 478486<br>Benjamin R. Ogletree<br>Bar No. 475094<br>VERDI & OGLETREE PLLC<br>1325 G Street, NW, Suite 500<br>Washington, DC 20005<br>Telephone: (202) 449-7703<br>Facsimile: (202) 449-7701<br>kverdi@verdiogletree.com | /s/ Michael J. Madigan<br>Michael J. Madigan<br>LAW OFFICES OF MIKE MADIGAN PLLC<br>3910 Hillandale Court, NW<br>Washington DC 20007<br>Telephone: (202) 255-2055<br>Mjm20@mac.com |
| /s/ Benjamin T. Barr<br>Benjamin Barr (Pro Hac Vice)<br>STATECRAFT PLLC<br>444 N. Michigan Ave. #1200<br>Chicago, Illinois 60611<br>Telephone: 202-595-4671<br>ben@statecraftlaw.com<br>*admitted pro hac vice* | /s/ Stephen R. Klein<br>Stephen R. Klein<br>STATECRAFT PLLC<br>1629 K Street NW<br>Suite 300<br>Washington, DC 20006<br>steve@statecraftlaw.com |

                                            *Counsel for Defendants Project Veritas Action Fund, Project Veritas, James O'Keefe, and Allison Maass*

## CERTIFICATE OF SERVICE

Pursuant to Rule 11, Fed. R. Civ. P., this motion was served (but will not be filed until the expiration of the safe harbor period) on May 30, 2018, via email and via certified mail on:

Joseph E. Sandler
Dara Lindenbaum
Sandler Reiff Lamb Rosenstein & Birkenstock, P.C.
1025 Vermont Ave., N.W. Suite 300
Washington, D.C. 20005
Email: sandler@sandlerreiff.com
Email: lindenbaum@sandlerreiff.com

Yael Bromberg
Aderson Francois
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue NW, Suite 312
Washington, DC 20001
Email: Yael.bromberg@law.georgetown.edu
Email: aderson.francois@georgetown.edu

By:   /s/ Paul A. Calli
     Paul A. Calli
     Florida Bar No. 994121
     Email: pcalli@calli-law.com

*Counsel for Defendants Project Veritas Action Fund, Project Veritas, James O'Keefe, and Allison Maass*

## CERTIFICATE OF GOOD FAITH CONFERRAL

The undersigned has conferred with counsel for Plaintiffs. Plaintiffs oppose this motion.

## CERTIFICATE OF SERVICE

I certify that on June 22, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notifications to the attorneys of record.

Pursuant to Rule 11, FED. R. CIV. P. more than 21 days have passed since this motion was served via both email and certified email.

By:   /s/ Paul A. Calli
Paul A. Calli
Florida Bar No. 994121
Email: pcalli@calli-law.com

*Counsel for Defendants Project Veritas Action Fund, Project Veritas, James O'Keefe, and Allison Maass*