UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DEMOCRACY PARTNERS,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **PROJECT VERITAS ACTION FUND,** *et al.*, <br><br> Defendants. | Civil Action No. 17-1047 (ESH) |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendants' "Motion for Sanctions Pursuant to Rule 11, 28 U.S.C. § 1927, and the Court's Inherent Power." (Defs.' Mot. for Sanctions, June 22, 2018, ECF No. 46 ("Mot.")) For the reasons stated herein, the motion is denied.

## BACKGROUND

This case arises out of defendants' undercover operation in the fall of 2016 to infiltrate and secretly videotape the internal operations of plaintiff Democracy Partners. Defendant Allison Maass carried out the operation by assuming a fake identity to get hired as an intern by Democracy Partners. After discovering Maass' true identity, plaintiffs filed this lawsuit, asserting claims for violations of federal and D.C. wiretapping statutes, breach of fiduciary duty, fraudulent misrepresentation, trespass and civil conspiracy. (*See* Compl., June 1, 2017, ECF No. 1.) Defendants moved to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), and pursuant to the D.C. Anti-SLAPP Act. (*See* Defs.' Mots. to Dismiss, July 28, 2017, ECF Nos. 14 & 15.) The Court denied both motions. (*See* Order & Memorandum Opinion, Jan. 4, 2018, ECF Nos. 24, 25.) At the initial scheduling conference, the Court set a discovery deadline of January

18, 2019, and a post-discovery status conference for January 22, 2019. (*See* Scheduling Order, Jan. 23, 2018, ECF No. 33.)

In May 2018, defendants produced to plaintiffs a copy of the videotape from Maass's entire first day of work. (*See* Mot., Ex. B (filed under seal).) According to defendants, this video establishes the falsity of an allegation in the complaint, specifically the allegation that on Maass's first day of work:

> [Defendant Robert] Creamer explicitly told Maass that based on the confidential and sensitive nature of the mission and programming of Plaintiffs SCG and Democracy Partners, the information, and any additional information she was given over the course of her internship, was confidential and not to be shared with anyone other than persons with whom she had specifically been instructed to share that information.

(Compl. ¶ 32.) Plaintiffs do not dispute that the video does not show any such "explicit" instruction from Creamer to Maass. They note, however, that Creamer did tell Maass: "By the way, Lauren [Windsor, a principal of another Democratic Partners company] is going to get you a card and she has some kind of non-disclosure agreement for you to sign…." (*See* Mot., Ex. B.)

On May 30, 2018, soon after having produced the video, defendants served plaintiffs with a motion for sanctions, taking the position that it was sanctionable conduct for plaintiffs both to have included and then "continued to adhere" to a "verifiably false" factual allegation in their complaint. (Mot. at 12.) After 21 days had elapsed with no response or action by plaintiffs, defendants filed their motion for sanctions.[1] (Mot. at 13.) Plaintiffs filed an opposition, and defendants filed a reply. (*See* Pls.' Opp'n, July 6, 2018, ECF No. 49 ("Opp'n"); Defs.' Reply,

---

[1] Rule 11 includes a "safe harbor" provision pursuant to which a party seeking sanctions must wait 21 days after serving its motion before filing it with the court. *See* Fed. R. Civ. P. 11(c)(2) (A "motion [for sanctions] must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.")

July 6, 2018, ECF No. 51 ("Reply").)

## ANALYSIS

Based on the contention that plaintiffs either knowingly included a false factual allegation in their complaint or "continue[d] to adhere" to a false factual allegation even after its falsity was established by the video evidence defendants produced during discovery, defendants ask this Court to impose sanctions under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, or the Court's inherent power.  Plaintiffs concede that the factual allegation at issue is "inaccurate as worded," but maintain that sanctions are not warranted for a variety of reasons. (Opp'n at 1-2.)  Indeed, they suggest that the Court should sanction defendants for filing a frivolous motion for sanctions.  (Opp'n at 2, 11-12.)  As explained *infra*, the Court agrees with plaintiffs that defendants' motion for sanctions should be denied, but it will not sanction defendants for filing their motion.

**I.     FED. R. CIV. P. 11**

Defendants first argue that sanctions should be imposed pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure.  Rule 11(b)(3) states:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . .

Fed. R. Civ. P. 11(b)(3).  According to defendants, plaintiffs violated this rule in two ways: first, by including a "verifiably false" factual allegation in the complaint, and second, by failing to disavow it or amend it after receiving the videotape during discovery.

3

### A. Inclusion of Allegation in the Complaint

Defendants first assert that including the false factual allegation in the complaint violated Rule 11(b)(3) because the "Creamer parties *necessarily knew* that this was a false statement of fact when they filed the Complaint." (Mot. at 8 (emphasis added); *see* Reply at 6 ("Plaintiff Creamer necessarily must have known the allegation was false when it was made.").)  If true, plaintiffs might be subject to sanctions. But there is absolutely nothing in the record to support such a finding. Defendants' motion does not offer any further explanation or point to any evidence to support their contention that plaintiffs "necessarily knew" the allegation was false at the time the complaint was filed. Plaintiffs have represented to the Court that the allegation as stated was based on Creamer's recollection (Opp'n at 1, 7), and there is nothing in the record to belie that representation. Plaintiffs were not in possession of the contradictory video evidence until May 2018, and it establishes only that Creamer's recollection was faulty, not that plaintiffs must have known the allegation was false at the time they filed the complaint. Given these facts, the Court cannot find that plaintiffs "necessarily knew" the statement was false at the time the complaint was filed.

In the alternative, defendants argue that even if plaintiffs didn't know the allegation was false when they filed the complaint, they failed to comply with "the obligation to conduct a reasonable investigation." (Mot. at 8; *see* Reply at 6 ("If Plaintiff's lawyers did not have actual knowledge of its falsity at that time . . . they ignored red flags and failed to conduct a reasonable investigation.")  Specifically, they contend that plaintiffs should not have relied solely on Creamer's recollection but should have looked for corroborating evidence (and only included the allegation if they found it) because of Creamer's past criminal conviction. (Mot. at 8-9 ("Moreover, Rule 11 imposes on lawyers the obligation to conduct a reasonable investigation and not simply rely on the words of a client, especially when there are reasons – like Creamer's

federal bank fraud and tax crime convictions and the unethical conduct exposed by Project Veritas's reporting – to doubt the client's truthfulness.").) This argument is also unpersuasive. The unstated premise of defendants' argument is that absent corroboration, a lawyer can never believe what a client says if that client happens to be a convicted felon. But there is no legal support for such an extreme position.[2]  In addition, defendants admit that there was no material information that plaintiffs would have discovered through additional investigation. (*See* Reply at 7.) Accordingly, there is no basis for concluding that plaintiffs failed to conduct a reasonable investigation before including the allegation in the complaint.

### B. Failure to Take Action After Receiving Video

Defendants also argue that plaintiffs should be sanctioned under Rule 11(b)(3) for "later advocating" a false allegation based on their failure to take any action since receiving the video or being served with defendants' motion for sanctions to disavow or amend the allegation. Plaintiffs respond that "even if the evidence just disclosed in discovery actually disproved the relevant Allegation . . . Rule 11 does not require a party to withdraw or amend a complaint when post-filing events reveal allegations in the complaint to be unfounded." (Opp'n at 1-2.) Plaintiffs are correct.

The "later advocating" language was added to Rule 11 in 1993. It imposed, for the first

---

[2] The single case cited by defendants, *Anderson v. County of Montgomery*, 111 F.3d 494, 501 (7th Cir. 1997), does not support this conclusion. In *Anderson*, as defendants state, the court found that the attorney should not have relied on the word of client who "admits to skipping town to avoid child support, assum[es] aliases and obtain[s] credit under false names, and fail[s] to pay off his creditors." But the court reached this conclusion only after noting that "[t]he required level of investigation into the facts before making an accusation depends, of course, on the circumstances of the case," the allegation in that case that the defendants had "fabricated a sentencing hearing transcript is such an extremely serious charge that it required a serious investigation," such as contacting the state court judge's staff and reviewing state court records before filing the claim.

time, a continuing obligation with respect to papers filed with or submitted to the court, specifically the obligation not to "later advocat[e]" a position that has "ceased to have any merit." Fed. R. Civ. P. 11(b) & note ("[A] litigant's obligations with respect to the contents of these papers [filed with or submitted to the court] are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."). In the notes accompanying the 1993 amendment, there are two examples of conduct that would run afoul of this rule, neither of which is present here.[3] The notes then go on to state: "Subdivision (b) *does not require a formal amendment to pleadings for which evidentiary support is not obtained*, but rather calls upon a litigant not thereafter to advocate such claims or defenses." Fed. R. Civ. P. 11 note (emphasis added).

Based on this language, courts that have considered the issue have uniformly held that the mere failure to amend a complaint based on evidence obtained during discovery is not a Rule 11(b) violation. *See, e.g.*, *Hammons v. City of Livonia*, No. 13-cv-15134, 2014 WL 4603093, at *7 (E.D. Mich. Sept. 15, 2014) (no Rule 11(b) violation even though counsel should have realized that his client's claims were factually unsupportable and could have amended or withdrawn the complaint); *Anaqua, Inc. v. Schroeder*, No. 12-cv-10710, 2014 WL 1795310, at *5–6 (D. Mass. May 5, 2014) (Rule 11(b) violation requires that "the party must 'advocate such claims'; merely failing to withdraw a factually deficient complaint is not enough to impose

---

[3] *See* Fed. R. Civ. P. 11 note ("For example, an attorney who during a pretrial conference insists on a claim or defense should be viewed as 'presenting to the court' that contention and would be subject to the obligations of subdivision (b) measured as of that time.  Similarly, if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court (whether as claims, defenses, or in disputes regarding removal or remand), it would be viewed as 'presenting'--and hence certifying to the district court under Rule 11--those allegations.").

sanctions"); *ITC Textile, Ltd. v. Ross Stores, Inc.*, No. 13-cv-36, 2013 WL 12130567, at *2 (C.D. Cal. Apr. 29, 2013) ("[T]here is no duty to amend or withdraw pleadings or papers that counsel later determines to be without merit; Rule 11 simply prevents counsel from pursuing the prior pleadings in future papers or arguments to the court."). This Court reaches the same conclusion. Accordingly, plaintiffs' failure to disavow or amend the allegation in ¶ 32 of their complaint does not constitute "further advocating" and does not support the imposition of sanctions under Rule 11.

**II.    28 U.S.C. § 1927**

Defendants alternatively suggest that the Court should sanction plaintiffs pursuant to 28 U.S.C § 1927. Section 1927, entitled "Counsel's liability for excessive costs," provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof *who so multiplies the proceedings in any case unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added). "To qualify as unreasonable and vexatious behavior, there must be 'evidence of recklessness, bad faith, or improper motive' present in the attorney's conduct." *Hall v. Dep't of Homeland Sec.*, 219 F. Supp. 3d 112, 119 (D.D.C. 2016) (quoting *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 906 (D.C. Cir. 1998)) (other internal quotations omitted)), *aff'd sub nom. Hall v. Dettling*, No. 17-7008, 2017 WL 2348158 (D.C. Cir. May 17, 2017). Even "recklessness is a 'high threshold . . . and in general requires deliberate action in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores.'" *Huthnance v. Dist. of Columbia*, 793 F. Supp. 2d 177, 181 (D.D.C. 2011) (quoting *United States v. Wallace,* 964 F.2d 1214, 1219-20 (D.C. Cir. 1992)). Accordingly, an award of fees based on a finding of "unreasonable and vexatious" conduct is "a power which the courts should exercise only in instances of a serious and studied disregard for

sanctions"); *ITC Textile, Ltd. v. Ross Stores, Inc.*, No. 13-cv-36, 2013 WL 12130567, at *2 (C.D. Cal. Apr. 29, 2013) ("[T]here is no duty to amend or withdraw pleadings or papers that counsel later determines to be without merit; Rule 11 simply prevents counsel from pursuing the prior pleadings in future papers or arguments to the court."). This Court reaches the same conclusion. Accordingly, plaintiffs' failure to disavow or amend the allegation in ¶ 32 of their complaint does not constitute "further advocating" and does not support the imposition of sanctions under Rule 11.

**II.    28 U.S.C. § 1927**

Defendants alternatively suggest that the Court should sanction plaintiffs pursuant to 28 U.S.C § 1927. Section 1927, entitled "Counsel's liability for excessive costs," provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof *who so multiplies the proceedings in any case unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added). "To qualify as unreasonable and vexatious behavior, there must be 'evidence of recklessness, bad faith, or improper motive' present in the attorney's conduct." *Hall v. Dep't of Homeland Sec.*, 219 F. Supp. 3d 112, 119 (D.D.C. 2016) (quoting *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 906 (D.C. Cir. 1998)) (other internal quotations omitted)), *aff'd sub nom. Hall v. Dettling*, No. 17-7008, 2017 WL 2348158 (D.C. Cir. May 17, 2017). Even "recklessness is a 'high threshold . . . and in general requires deliberate action in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores.'" *Huthnance v. Dist. of Columbia*, 793 F. Supp. 2d 177, 181 (D.D.C. 2011) (quoting *United States v. Wallace,* 964 F.2d 1214, 1219-20 (D.C. Cir. 1992)). Accordingly, an award of fees based on a finding of "unreasonable and vexatious" conduct is "a power which the courts should exercise only in instances of a serious and studied disregard for

the orderly process of justice." *Wallace*, 964 F.2d at 1220 (internal quotations omitted).

Defendants' contention that sanctions should be imposed under § 1927 is without merit. Most notably, they fail to explain how plaintiffs' inclusion of the allegation in the complaint or failure to take affirmative action *now*, in the middle of discovery, to disavow or amend this single factual allegation has had or will have any effect on the course of judicial proceedings, much less the effect of "multipl[ying] the proceedings." As plaintiffs point out, the Court's decision to deny the defendants' motion to dismiss did not depend on the assumed truth of that allegation, defendants, who have presumably known of this tape since the time of its creation, have not been prejudiced by plaintiffs' inaccurate allegation, and plaintiffs have not submitted any pleading or filing of any kind relying on the allegation since the tape was disclosed in discovery,, and (Opp. at 10-11.) As there is no basis for finding that plaintiffs' challenged actions have "multiplie[d] proceedings," there is no basis for imposing sanctions under § 1927.

## III. COURT'S INHERENT AUTHORITY

Defendants' final argument is that the Court should impose sanctions under its "inherent power." Under rare circumstances, "sanctions may . . . be warranted under the district court's inherent authority, which 'enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments.'" *Ali v. Tolbert*, 636 F.3d 622, 627 (D.C. Cir. 2011) (quoting *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995)). "To support a sanction under this authority, the court must make a finding by clear and convincing evidence that [the party] committed sanctionable misconduct that is tantamount to bad faith." *Ali*, 636 F.3d at 627 (citing *Shepherd*, 62 F.3d at 1472); *see also Wallace*, 964 F.2d at 1219 ("[I]t is settled that a finding of bad faith is required for sanctions under the court's inherent powers.")

The Court will not impose sanctions under its inherent authority because there is no basis in the existing record for the Court to find that plaintiffs or their counsel have acted in bad faith. Defendants repeatedly assert that plaintiffs' counsel acted in "bad faith." As to the inclusion of the allegation in the complaint, defendants assert that plaintiffs' "bad faith is patent" because they "necessarily knew that this was a false statement of fact when they filed the [c]omplaint." (Mot. at 8.) As to plaintiffs' failure to disavow or amend the allegation after receiving the video in discovery, defendants assert that "[t]he fact that the Plaintiffs and their lawyers continue to adhere to this falsehood means that they act in bad faith." (Mot. at 3.) Yet, defendants point to no evidence that would support a finding of bad faith, much less the clear and convincing evidence necessary to support a finding of bad faith. Accordingly, the Court will not impose sanctions under its inherent authority.

## CONCLUSION

For the reasons stated above, the Court concludes that defendants' motion asking the Court to impose sanctions under Rule 11, 28 U.S.C. § 1927, or the Court's inherent power is without merit. Accordingly, it is hereby **ORDERED** that defendants' motion for sanctions is **DENIED**.

                                                    ELLEN S. HUVELLE
                                                    United States District Judge

DATE: August 13, 2018