# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRACY PARTNERS, LLC,
et al.,

    Plaintiffs,

v.

PROJECT VERITAS ACTION FUND,
et al.,

    Defendants.

CASE NO.: 1:17-CV-1047-ESH

### AFFIDAVIT OF ALLISON MAASS

I, ALLISON MAASS, declare as follows:

1. I am over the age of 18 years and make this declaration of my own personal knowledge of the facts stated in this affidavit. If called as a witness in this proceeding, I could and would competently testify thereto.

2. I was an undercover journalist employed by Project Veritas and Project Veritas Action Fund ("PVA") at the times relevant to this lawsuit. My employment with Project Veritas and PVA ended in 2017. During that employment, I participated in numerous investigations and publications into American politics. I undertook these investigations in furtherance of my constitutional rights to free speech and the free press.

3. I know that Project Veritas and PVA have routinely engaged in undercover investigations utilizing secret recording, including in the District of Columbia, and, before joining the "Rigging the Election" investigation, I knew that D.C. was a one party consent jurisdiction and relied in good faith on that fact.

1

4. I was a part of PVA's "Rigging the Election" Investigation, for which I adopted the role of "Angela Brandt," niece of "Charles Roth."

5. I obtained an internship with Democracy Partners and my first day was September 21, 2016. I interned there approximately three days per week until October 14, 2016.

6. I did not intern for "Strategic Consulting Group" or Bob Creamer in his personal capacity. Prior to this lawsuit, I did not even recall the name "Strategic Consulting Group."

7. No one asked me for my references prior to starting the Democracy Partners internship, or during it.

8. I was never asked for my identification or asked to check-in by any security staff at the office building where Democracy Partners was located.

9. No signage outside the suite in which Democracy Partners is located restricts access. The individual offices inside the suite do not have signage.

10. During my internship, I did not proactively perform tasks; they were assigned to me. I did not advise Democracy Partners nor did I supervise anyone at Democracy Partners.

11. In addition to tasks assigned by Bob Creamer, while at Democracy Partners I performed tasks assigned to me by Lauren Windsor and Wyatt Closs.

12. I completed all of my assignments at Democracy Partners.

13. Bob Creamer never "explicitly told [me] based on the confidential and sensitive nature of the mission and programming of Plaintiffs SCG and Democracy Partners, the information, and any additional information [I] was given over the course of her internship, was confidential and not to be shared with anyone other than persons with whom [I] had specifically been instructed to share that information," as alleged in the Complaint.

14. Bob Creamer's statement, "And, uh, [Lauren Windsor] has some kind of a nondisclosure agreement to sign or something" was the sole reference by Plaintiffs to a non-disclosure agreement, NDA, or any other sort of confidentiality agreement during the time of my unpaid internship.

15. As far as I know, my internship at Democracy Partners did not include any work on behalf of the American Federation of State, County and Municipal Employees (AFSCME). It was not a focus of my investigation.

16. As far as I know, my internship at Democracy Partners did not include any work on behalf of Americans United for Change. I am aware that I counted signs which indicated they were paid for by Americans United for Change.

17. As far as I know, my internship at Democracy Partners did not include any work on behalf of Dialysis Patient Citizens. Prior to this lawsuit, I was unaware Dialysis Patient Citizens even existed.

18. Prior to this lawsuit, I was unaware that AFSCME was a funding source for Americans United for Change.

19. I never shared information relating to my internship assignments or investigation with anyone who "could adjust their own plans to anticipate or deflect . . . 'bracketing' event[s]," as alleged in the Complaint.

20. All of my recordings within Democracy Partners were made with a device concealed on my person. As far as I know, I was a party to everything I recorded. Some of my recordings were used in PVA's new story, "Rigging the Election."

21. I never entered the office of Strategic Consulting Group in Chicago, Illinois.

22.  I have never interacted with Scott Foval in any capacity.

I declare under the penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

This affidavit was executed on May 6, 2019 at 5:30 am.

_____
Allison Maass

4