# EXHIBIT 8

## POLITICAL CONSULTING AGREEMENT

This Political Consulting Agreement (this "Agreement"), by and between *The Foval Group LLC* ("Consultant") and MOBILIZE ("Client"), is entered into effective as of Friday, June 10, 2016 (the "Effective Date"). Client and Consultant shall sometimes be referred to herein collectively as the "Parties" and individually as a "Party."

## W I T N E S S E T H:

WHEREAS, Client desires to avail itself of the expertise and consulting services of Consultant and Consultant desires to make Consultant's expertise and consulting services available to Client upon the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the agreements herein contained, the Parties hereto agree as follows:

1. CONSULTING SERVICES. Consultant hereby agrees to perform, at Client's request, the following services (the "Services") during the Term of this Agreement:

    (a) Work with Client to organize and promote press events and other meetings and activities defining the Republican Presidential and Vice-Presidential candidates;
    (b) Provide expert political, coalition building and community-level advice;
    (c) Perform such other services as are mutually agreed to by the Parties.

Consultant further agrees that Consultant will use its best efforts during the performance of such Services to promote the interests of Client and to devote to the business and affairs of Client during the Term of this Agreement such portion of Consultant's time and energies as is necessary to perform such Services. Consultant shall perform such Services in an efficient, expeditious, professional and skillful manner.

Consultant shall be responsible, at its own expense, for complying with all federal, state, and local laws, ordinances, rules, regulations, orders, licenses, permits and other governmental requirements applicable to the Services to be performed by Consultant during the Term of the Agreement, including, but not limited to, any such requirements imposed upon Client with respect to the Services.

Consultant will report to Client at regular intervals to update the Client with respect to the Services and participate in regular calls convened by Client to further the goals of the campaign. Consultant agrees to report to and work directly with such points of contact throughout the entire Term of this Agreement.

2. TERM OF AGREEMENT AND TERMINATION.

*SF 6/10/16*

(a) The "Term" of this Agreement shall commence as of the Effective Date, and shall terminate on the earliest of the following: (i) November 8, 2016; (ii) the date on which Consultant ceases to perform the Services set forth above; or (iii) the Agreement is terminated in accordance with Section 2(b). Upon election of Client, this Agreement may be renewed for additional three month successive terms.

(b) Client may terminate this Agreement at any time, without cause and without penalty, on ten (10) days' prior written notice, in which case Client's sole liability and Consultant's exclusive remedy is limited to reimbursement of costs and expenses incurred prior to the date of termination in accordance with Section 3(b), payment of the fees earned by Consultant in accordance with Section 3(a), and amounts that Consultant must pay to third parties pursuant to non-cancelable agreements Consultant entered into in performance of this Agreement with the prior written approval of Client. Consultant expressly waives any right to suspend its performance under, or terminate, this Agreement with or without cause, except for Client's breach of the payment provisions of this Agreement on ten (10) days' prior written notice. In the event of any termination by Consultant for Client's breach of the payment provisions of this Agreement, Client's sole liability and Consultant's exclusive remedy is reimbursement of costs and expenses incurred prior to the date of termination in accordance with Section 3(b), and payment of the fees earned by Consultant in accordance with Section 3(a).

3. FEES; EXPENSES; INVOICES.

(a) Rate of Compensation. Consultant shall receive as compensation a fee of $5,000 each month during the Term of this Agreement, due on the first day of the subsequent month.

If Services in any month are rendered for less than the full month, for whatever reason, payment shall be made on a pro rata basis based on the number of days for which Services were rendered.

(b) Expenses. Unless otherwise specified in this Agreement, Consultant shall be responsible for payment of all expenses incurred in connection with this Agreement. Consultant shall be responsible for payment of all ordinary expenses incurred in the performance of the Services described in Section 1 above, including telephone, fax, internet connection, computer paper, printer ink, etc. Client shall be responsible for any extraordinary expenses, including airline or train tickets, rental car charges, and hotel costs; provided that all travel and lodging arrangements are made in compliance with Client's Travel Policy, attached hereto as Exhibit A. When incurring any extraordinary expenses, Consultant shall always select the lowest reasonable cost alternative. Consultant shall also obtain the prior approval of Client before incurring any extraordinary expenses.

(c) Invoices. Promptly after the end of each month, Consultant will submit to Client a written invoice for any amount that becomes due and payable to Consultant under this Agreement. Each of Consultant's invoices will be itemized as

- PAGE 2-

The Foval Group LLC ScottFoval 06162016_2.jpg
https://drive.google.com/a/stratcongroup.com/file/d/0B0z4fEOZOO...
DP_0009295

reasonably specified by Client (including, without limitation, a detailed description of the Services performed or the deliverables delivered, the dates and amounts of time spent by Consultant and/or Consultant's personnel in the performance of any such Services, an itemization of any pre-approved, reimbursable expenses for period covered by the invoice and an itemization of any taxes payable by Client). Consultant will also furnish such receipts, documents and information as Client may reasonably request to verify any invoice submitted by Consultant. Client will pay the amount properly due and payable under each of Consultant's invoices within forty five (45) days after Client's receipt of the applicable invoice. All invoices shall be mailed to the following address: Mobilize/Democracy Partners, 350 W. Hubbard Street, Ste. 200, Chicago, IL 60654, Attention: Linda Saucedo or emailed to: lindasaucedo@democracypartners.com.

(d) Exclusivity of Compensation. Consultant may not accept or make payment, kickbacks, referral fees, or any other form of compensation from any entity or individual other than Client in connection with the consulting work performed pursuant to this Agreement.

(e) Third Party Resources. Excluding the use of sub-contractors as governed by Section 15, to the extent that any equipment, support services or other resources are used in connection with the Services that are owned or paid for by a third party entity, including but not limited to office space, related utilities and overhead, office supplies, secretarial or other support staff time, travel expenses, and the like ("Third Party Resources"), the fair market value of the use of Third Party Resources shall be paid for in advance by Client to such entity. Consultant shall prepare an itemized estimate of any Third Party Resources that Consultant anticipates using in advance, and submit such invoice to Client for approval, which Client may withhold in its sole discretion. Client shall pay for all approved itemized Third Party Resources before Consultant uses any Third Party Resources in connection with the Services. Consultant shall not employ or otherwise use any Third Party Resources in connection with the provision of the Services detailed above if such employment or other use would result in Client being deemed to have received a contribution under the Federal Election Campaign Act of 1971, as amended.

4. COORDINATION; PRESS; PROMOTIONAL RESTRICTIONS.

(a) Coordination. Consultant shall coordinate all activities as instructed by Client or Client's authorized representatives.

(b) Press. Consultant agrees that it is not, directly or indirectly, at any time during the Term of this Agreement, and without regard to when or for what reason this Agreement shall terminate, authorized to communicate with any member of the press, including representatives of both print and electronic media, regarding any aspect of this Agreement, the Services performed by Consultant under this Agreement, or any knowledge or information relating to the business of Client, without express prior approval of Client or Client's authorized representatives. Without limiting the above obligations, Consultant and any of its employees and principals may not agree to do an interview on behalf of Client with

- PAGE 3-

any member of the press, including representatives of both print and electronic media, without the express prior approval of Client or Client's authorized representatives. Without limiting the above obligations, after this Agreement is terminated, without the written prior approval of Client or Client's authorized representatives, Consultant and its principals and employees may not agree to (i) do an interview with any member of the press, including representatives of both print and electronic media, or (ii) author, co-author, write, edit or cooperate in the development of an article, book, or other publication regarding Client, any representative of Client, or in whole or in part, any of the Services performed by Consultant pursuant to this Agreement. Consultant shall refer promptly all queries from the press, in whatever form or circumstances they are made, to Client or Client's authorized representatives.

(c) <u>Promotional Restrictions</u>. Unless otherwise agreed upon in writing in advance by Client, Consultant shall not (i) develop and issue any press releases or other communications identifying Consultant as providing the Services to Client; (ii) list Client as a customer or client of Consultant on Consultant's website or in other marketing materials; (iii) use Client's name, service marks, trademarks or logos on Consultant's website, or in press releases, marketing materials or other public communications; and (iv) use Client's name or discuss the Services provided by Consultant pursuant to this Agreement, generally or otherwise, when working with or negotiating with other potential clients.

5. MATERIALS. Consultant shall provide Client the opportunity to review all written materials to be used in the performance of the Services described in Section 1. Consultant agrees that Client maintains final decision-making authority over the content of these written materials. Consultant shall work with Client to ensure that all such written materials comply with the requirements of federal law, including but not limited to any disclaimer language required by federal law.

6. NONDISCLOSURE AND CONFIDENTIALITY.

(a) Consultant may not, directly or indirectly, at any time during the Term of this Agreement or thereafter, and without regard to when or for what reason this Agreement shall terminate, divulge, furnish, make accessible, or permit the disclosure to anyone (other than Client or other persons employed or designated by Client) any Confidential Information. Nothing herein shall limit any other non-disclosure of confidentiality agreements entered into between Consultant and Client.

(b) The term "Confidential Information" means any information that is disclosed by Client to Consultant, Consultant to Client, or otherwise learned or acquired by Consultant from Client, during the course of Consultant's service under this Agreement, either directly or indirectly, in writing, orally or by inspection of tangible and intangible objects, and whether stored on any tangible medium or memorialized by Consultant, including, but not limited to: the existence of this Agreement; the existence of any other agreements or other potential agreements entered into by or on behalf of Client; information constituting or relating to the scope of the services rendered under this Agreement;

- PAGE 4-

DP_0009297

proprietary information of Client; information related to the business, processes, fundraising, financial results, methods of doing business, strategies, political affairs and objectives, operations, personal information or other affairs of Client's principals or such principals' families, related organizations, entities or affiliates in each case that is not generally available to the public and that becomes known by Consultant in connection with the services; trade secrets; Work Product; finances and financial strategies; budgets; business plans; schedules; itineraries; routines; timelines; operational plans; legal affairs; prospects; opportunities; research; vendors; donor information; contact lists; contracts; and assets. Confidential Information also includes any information that has been made available to Client by any third party and which Client is obligated to keep confidential. Notwithstanding the foregoing, Confidential Information will not include any information which (i) was publicly known and made generally available in the public domain prior to the time of disclosure by Client; (ii) becomes publicly known and made generally available after disclosure by Client to Consultant through no action or inaction of Consultant; (iii) is already in the possession of Consultant at the time of disclosure as shown by Consultant's files and records prior to the time of disclosure; (iv) is obtained by Consultant from a third party without a breach of such third party's obligations of confidentiality; or (v) is independently developed by Consultant without use of or reference to Client's Confidential Information, as shown by documents and other competent evidence in Consultant's possession.

(c)     Consultant agrees that the terms and conditions of this Agreement and all work performed by Consultant hereunder shall be treated by Consultant in the strictest confidence and shall not be disclosed to anyone other than persons authorized by Client to receive such information. Consultant shall refer promptly all queries from third parties regarding Client, in whatever form or circumstances they are made, to Client.

(d)     Consultant shall not be liable for disclosure of Confidential Information if such disclosure is pursuant to judicial action or other lawfully compelled disclosure, provided that Consultant notifies Client, by registered mail, of the need for such disclosure within five (5) days after such need becomes known and gives Client a reasonable opportunity to contest such disclosure.

(e)     Upon termination of this Agreement for whatever reason or upon breach of any of the obligations set forth in this Agreement, Consultant shall return or destroy, at Client's election, all Confidential Information (as defined above) to Client, regardless of the form in which its appears or is stored (including information stored on tapes, computer discs, compact discs or other media).

(f)     The Consultant shall be obligated to implement second factor authentication for (i) Consultant's e-mail system; (ii) any publicly accessible online media containing Confidential Information and (iii) any Consultant end user system (including, but not limited to, computers, small devices and smartphones). All end user devices of Consultant containing Confidential Information shall be configured with at-rest encryption and be enabled with password protection. Consultant shall enable encryption on all network communication. Consultant shall not utilize removable (i.e. thumb drive) to store

- PAGE 5-

DP_0009298

Confidential Information unless such removable media is encryption-enabled. In the instance the Consultant is unable to implement the aforementioned security measures, Consultant shall consult with the technical staff of the Client for alternative arrangements to prevent unauthorized use of Confidential Information.

7. ASSISTANCE WITH GOVERNMENT INQUIRY. Consultant agrees to provide, in a timely manner, all documents and services, including personal services, necessary to assist Client in connection with any audit, inquiry or investigation of Client by the Federal Election Commission or by any other government entity or in connection with any matter relating to or compliance by Client with the federal election laws and their implementing regulations at no additional cost to Client.

8. SOFT MONEY RESTRICTIONS. While acting on behalf of Client, Consultant understands that Consultant shall not, directly or indirectly, solicit, direct, transfer, spend or disburse any funds that do not comply with the source prohibitions and amount limitations of the Federal Election Campaign Act of 1971, as amended, nor shall Consultant solicit any funds from sources prohibited under Client's fundraising policies. While acting on behalf of Client, Consultant shall not solicit any funds for any other entity without the prior written approval of Client or Client's authorized representative. The restrictions of this section shall not apply to any employees of Consultant, as applicable, who are not providing any services to Client.

9. OTHER CONSULTING SERVICES. Consultant including its employees and principals may provide independent consulting services to other individuals or entities, provided, however, that:

(a) Such other independent consulting services shall in no way impair Consultant's ability to provide Services to Client pursuant to this Agreement.

(b) Any individual or entity to which Consultant or Consultant's principals is currently providing independent consulting services is listed in Exhibit B, noting the instances in which the same individuals will be providing services to both Client and such other clients, and has been approved by Client prior to execution of this Agreement.

(c) Consultant may not perform any services for any new individuals or entities, or representatives thereof, not listed in Exhibit B written approval from Client during the Term. Consultant must provide written notice to Client within ten (10) days of any discussions, in writing or orally, or by any other means, with any new or existing clients for which Consultant would like to perform new or additional consulting services, respectively. Client shall have the right to approve or disapprove of Consultant's potential new client or extension of services provided to an existing client within thirty (30) business days of receipt of Consultant's written notice, in Client's sole discretion.

- PAGE 6 -

DP_0009299

    (d) In performing consulting work for other individuals or entities, Consultant shall observe in full the confidentiality requirements set forth in Section 6 of this Agreement.

    (e) Consultant shall avoid at all times activities in the service of other individuals or entities that could present in fact or in appearance a conflict with the interests of Client.

    (f) Consultant shall not use any Client resources in connection with its work for any other client.

    (g) In providing services to its other clients:

      (i) Consultant may not use or convey any information about the plans, projects, activities, or needs of Client.

      (ii) Consultant may not use or convey any information used previously by Consultant in provided services to Client.

    (h) Notwithstanding the restrictions set forth in subsection (g) of this Section, nothing shall prevent Consultant from using or conveying information obtained from a publicly available source, in providing services to its other clients.

    (i) Consultant shall adopt and comply with a firewall policy in compliance with 11 C.F.R. § 109.21(h) as necessary to prevent Client or any other individual or entity from making and/or from receiving any excessive or prohibited contribution under the Federal Election Campaign Act of 1971, as amended, and the regulations of the Federal Election Commission, and shall provide a copy of such written firewall policy to Client.

    (j) Consultant may not perform services for candidates or groups that oppose Client or the Democratic Party in any political campaign without the prior written approval of Client.

  10. BREACH BY CONSULTANT. Each Party recognizes that the Services to be rendered under this Agreement by Consultant are special, unique and extraordinary in character, and that in the event of breach by Consultant of the terms and conditions of this Agreement to be performed by Consultant, Client shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either in law or in equity, to seek damages for any breach of this Agreement, to obtain an injunction restraining Consultant from committing or continuing any violation of this Agreement (including, without limitation, the provisions of Section 6), or to enforce the specific performance of this Agreement by Consultant.

  11. INDEMNIFICATION; LITIGATION BY THIRD PARTIES.

-PAGE 7-

DP_0009300

(a) Consultant agrees to indemnify and hold harmless Client against any and all losses, liabilities, damages, demands, settlements, judgments, costs and expenses, including reasonable attorneys' fees, sustained as a result of (i) any claim of action arising from with any Services performed by Consultant pursuant to this Agreement, or (ii) Consultant's breach of any of the obligations, representations, warranties or covenants set forth in this Agreement.

(b) If Consultant is a party to litigation, an audit, a document request, a subpoena, an investigation, an inquiry, an administrative proceeding, or any other legal proceeding, which is related to any work performed under this Agreement or related to Client, Consultant must provide Client with prompt notice and copies of all related documents. Client may, at its discretion, pay for the response or defense of such action provided that Client shall be given sole control of the defense and/or settlement, including choice of legal counsel, and Consultant shall cooperate with Client in responding, defending, or settling such proceedings.

12. INDEPENDENT CONTRACTOR. Consultant shall perform the Services pursuant to this Agreement as an independent contractor with respect to Client, and nothing in this Agreement shall create, or be deemed to create, any relationship of employer and employee or of master and servant between Client and Consultant. As an independent contractor, Consultant is responsible for payment of all applicable obligations to state and/or federal governmental agencies including, but not limited to, income tax, unemployment tax and business registration fees, etc.

13. OWNERSHIP OF WORK PRODUCT. All work product, files, donor lists, constituent lists, or any campaign lists, documents, artwork, computer records, materials, research, composition, work of authorship, computer program, technology, product, device, technique, know-how, algorithm, method, process, procedure, improvement, discovery or invention, whether or not patentable or copyrightable and whether or not reduced to practice, that is produced or obtained by Consultant in furtherance of work performed for the Client ("Work Product") are works for hire and shall become and remain the exclusive property of the Client. Consultant (a) assigns all of these rights to Client now to the extent permitted by law; (b) will assign any other such rights to Client in the future; (c) will promptly execute and deliver all documents and take other actions that Client or its counsel reasonably request to realize these assignments. Consultant warrants that it shall not breach any copyright or other third-party rights in producing any Work Product.

14. ASSIGNMENT. Except as specifically set forth in this Agreement, the rights and interests of Consultant in this Agreement may not be sold, transferred, assigned, pledged or hypothecated. Any assignment in violation of the foregoing shall be deemed null and void. In the event of any attempted assignment or transfer of rights hereunder contrary to the provisions hereof, Client shall have no further obligations or liability for payments hereunder. Client may assign the Agreement, and any and all of its rights and interests in the Agreement by providing Consultant advance written notice of such assignment.

- PAGE 8-

DP_0009301

15. **MAINTENANCE OF RECORDS.** Consultant shall maintain adequate books and records in a manner consistent with the accounting and professional standards ordinarily followed within Consultant's industry, except as Consultant may be otherwise directed by Client.

    (a) All books and records maintained by Consultant pursuant to this Agreement shall be open at all times for inspection and copying by Client for a period up to thirty-six (36) months after expiration or termination of this Agreement. Such books and records shall be maintained separately from the records and files of any other client of Consultant.

    (b) Consultant shall maintain its books and records on a contemporaneous basis. Material failure to maintain books and records in the fashion required by this Agreement shall be deemed to be negligence by Consultant if, after demand by Client, Consultant shall fail to promptly correct the deficiency. Consultant shall indemnify Client for any additional costs incurred by Client in reviewing, updating, supplementing or otherwise correcting the books and records of Consultant in connection with any breach of its obligation under this Section 14, if, after demand by Client, Consultant shall fail to promptly correct the breach.

    (c) Consultant shall maintain a complete record of all contracts or other agreements for the work relating to the Services rendered pursuant to this Agreement, including, but not limited to, payments made pursuant to those contracts, sub-contracts and agreements, the identity of the recipients of such payments, the amounts of such payments, and the date of such payments.

16. **USE OF SUB-CONTRACTORS.** Except as otherwise approved in advance in a writing by Client, all Services to be provided pursuant to this Agreement shall be performed on behalf of Client by Consultant or Consultant's employees. Consultant may hire or utilize sub-contractors to provide the Services pursuant to this Agreement, provided, however, that:

    (a) Consultant must provide Client written notice of any potential sub-contract for work to be performed on behalf of Client by Consultant or Consultant's employees.

    (b) Consultant is not permitted to hire or utilize sub-contractors to provide services pursuant to this Agreement unless such sub-contractor and any accompanying contracts between Consultant and such sub-contractor are specifically approved in writing by Client. Each sub-contractor must comply with and all contracts between Consultant and its sub-contractor must contain provisions that ensure compliance with this Section 17, and Sections 4, 5, 6, 7, 9(d)-(j), 13, and 15 of this Agreement.

    (c) At any time, with written notice provided, Client has the right to a full audit or inspection of the facilities and offices (including but not limited to) any phone

6/17/2016 9:58 AM

DP_0009302

banking facilities or mail houses, and the books, records, hard files, electronic files, etc., of any sub-contractor hired by Consultant to perform the services under this Agreement.

    (d) Consultant shall submit to Client for prior written approval all written materials, including, but not limited to, all training materials, instructions, scripts, or any other materials to be given to sub-contractor regarding work to be performed under this agreement. Consultant and each sub-contractor must work with Client to ensure that all such written materials comply with the requirements of federal law, including but not limited to any disclaimer language required by federal law.

    (e) Consultant may not accept any kickbacks or referral fees from sub-contractors or enter into any fee sharing arrangements with any sub-contractor under this Agreement. A sub-contractor hired to provide the Services pursuant to this Agreement may not accept, or solicit, any kickbacks, referral fees, or fee sharing for its work to provide the Services pursuant to this Agreement. A sub-contractor hired to provide Services pursuant to this Agreement may not accept any compensation from any entity or individual other than Client or Consultant in connection with work performed pursuant to this Agreement.

    (f) Consultant may not markup the fee charged by any sub-contractor performing Services pursuant to this Agreement. Consultant must pay any sub-contractors hired to perform Services pursuant to this Agreement the exact rate that the Client pays the Consultant for the work being performed.

    (g) Prior to engaging a sub-contractor for any specific services, Consultant must provide to Client for prior written approval, an estimate of the cost(s) associated with performing the specified services, including any related expenses or costs. Consultant and any sub-contractor hired to perform any Services under this Agreement are only entitled to payment of fees up to the estimated amounts approved by Client or Client's authorized representative unless otherwise agreed to in writing between the Parties.

    (h) All materials or goods procured or produced pursuant to this Agreement, including through the use of any sub-contractor must be made in the United States, unless prior written approval is obtained from Client. All services performed under this Agreement, including by sub-contractors, must be performed in the United States. All work completed by sub-contractors must be performed by members of a labor union, including, but not limited to, any printing services, unless it would not be feasible for such services to be provided by members of a labor union, and prior written approval is obtained from Client. All printing work performed pursuant to this Agreement must have a union bug.

    17. GOVERNING LAW; CAPTIONS. This Agreement contains the entire agreement between the Parties and shall be governed by the laws of Washington, D.C. Any action or litigation concerning this Agreement shall take place exclusively in the federal courts, including but not limited to, the District of Columbia District Court and the District of Columbia Court of Appeals, located in Washington, D.C., and the parties expressly consent

- PAGE 10-

to the jurisdiction of, and venue in such courts. Section headings are for convenience of reference only and shall not be considered a part of this Agreement.

18. PRIOR AGREEMENTS. This Agreement supersedes and terminates all prior agreements between the Parties relating to the subject matter herein addressed with the exception of non-disclosure agreements.

19. NOTICES. Any notice or other communication required or permitted hereunder shall be in writing and shall be deemed effective when delivered in person or, if mailed, on the date of deposit in the mail, postage prepaid, addressed, in the case of Consultant, to: _7045 BEAR LN SUN PRARIE WI 53590_ and in the case of Client, (i) all legal notices and communications to Client at Mobilize/Democracy Partners, 1250 I Street NW, 250, Washington, DC 20005; with a copy sent via electronic mail to the email address robertcreamer@democracypartners.com; or such other address as shall have been specified in writing by either Party to the other. Notwithstanding anything to the contrary herein, any notice or other communication shall also be delivered by e-mail of a PDF document with confirmation of transmission to the e-mail addresses specified herein. Such notice by e-mail is effective only by receipt of the receiving Party.

20. SURVIVAL. The rights and obligations of the Parties under Sections 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 18, 19 and 20, and any accrued obligations, including accrued payment or reimbursement obligations pursuant to Section 3, will survive expiration or termination of this Agreement by either Party for any reason. All other rights and obligations will not survive termination or expiration.

[Signature Page Follows.]

- PAGE 11 -

DP_0009304

IN WITNESS WHEREOF, Client and Consultant each has caused this Agreement to be signed by its duly authorized representative as of the day and year first above written.

CLIENT: MOBILIZE/DEMOCRACY PARTNERS

By: LINDA SAUCEDO

Date: 6/17/16

CONSULTANT: The Foval Group LLC
By: _[signature]_

Date: 6/16/16

Scott Foval

[Signature Page to Political Consultant Agreement]

### EXHIBIT B: CONSULTANT'S EXISTING CLIENTS

As of Friday, June 10, 2016, Consultant or Consultant's principals currently provide independent consulting services to the following individuals or entities:

**In all cases clients listed are current active clients or clients who have been active within the last 3 months.**

**Additional Current Clients Serviced** _N/A_ :

This list notes instances in which the same individuals will be providing services to both Client and such other clients, and has been approved by Client prior to execution of this Agreement.

Exhibit B

*GF*
6/16/16

DP_0009306