# **EXHIBIT 10**

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
            :
DEMOCRACY PARTNERS, LLC,   :
et al.,   :
            :
      Plaintiffs,   :
            :
vs.   : Case No.:
      : 1:17-cv-1047-ESH
      :
PROJECT VERITAS ACTION FUND,   : Pages 1 - 311
et al.,   :
            :
      Defendants.   :
            :
- - - - - - - - - - - - - - - - x

Videotaped Deposition of Robert Creamer
Washington, D.C.
Tuesday, July 31, 2018

Magna Legal Services
866-624-6221
www.magnaLS.com

Reported by:
Misty Klapper, RPR, CRR, CMR
Job No.: 413867



Page 2

1
2
                     Tuesday, July 31, 2018
3                              9:12 a.m.
4
5
6
7 Videotaped Deposition of Robert Creamer, held at
8 the offices of:
9     VERDI & OGLETREE PLLC
       1325 G Street, N.W.
10    Suite 500
       Washington, D.C. 20005
11
12
13
14
15
16
17    Taken pursuant to notice, before Misty Klapper,
18    Registered Professional Reporter, Certified Realtime
19    Reporter, and Notary Public in and for the District
20    of Columbia.
21
22


MAGNA LEGAL SERVICES

```
                                                      Page 71
 1              THE WITNESS:  Fine.
 2              VIDEO OPERATOR:  We are off the record
 3     at 10:23.
 4                   (Thereupon, a brief recess was taken.)
 5              VIDEO OPERATOR:  We are now on the
 6     record.  It's 10:33 a.m.
 7              MR. CALLI:  The court reporter has been
 8     working hard and has succeeded in having a
 9     monitor up and running, so it should be easier
10     for you and Mr. Creamer, Mr. Sandler --
11              MR. SANDLER:  Okay.
12              MR. CALLI:  -- to see the video clips
13     we're now playing.
14              BY MR. CALLI:
15        Q.    When we ended you -- you had testified
16     generally, Mr. Creamer, about how you don't
17     need to be a rocket scientist to know you
18     shouldn't be disclosing future information
19     about a presidential campaign to somebody you
20     hardly know.
21              Let's -- let's take a look at
22     PVA00013943.
```



Page 72

1              (Thereupon, a video clip was played
2         but not transcribed.)
3         BY MR. CALLI:
4    Q.   Okay. That's you speaking and
5    depicted, correct?
6    A.   That's correct.
7    Q.   And you're meeting with who you believe
8    to be Charles Roth, III, correct?
9    A.   Right.
10   Q.   Angela Brandt's uncle?
11   A.   Allegedly.
12   Q.   Sure.
13        And this is the second time you've ever
14   met with him?
15   A.   Correct.
16   Q.   In that video you're telling him about
17   an act you're going to take the next day that
18   was coordinated with the Hillary campaign or
19   the DNC, correct?
20   A.   I don't think it was relating something
21   that was going to happen. I think it relates
22   to something that did happen already. I think



Page 73

```
 1      it was a -- a statement of past action, if I'm
 2      not mistaken.
 3          Q.    Okay.  So the -- what your words say
 4      is -- because I know --
 5          A.    Yeah, I may -- I may be wrong, so read
 6      me the words.  Go ahead.
 7          Q.    Okay.  Because I want to make sure you
 8      understand --
 9          A.    Um-hmm (affirmative).
10          Q.    -- that your words are -- are -- are
11      not touched, this is raw unedited footage.
12          A.    Yeah, okay.  Go ahead.
13          Q.    Quote, attributable to Mr. Creamer on
14      the video, the Bate stamp of which I provided
15      to Mr. Sandler a few minutes ago.
16                Quote, so anyway, tomorrow we start
17      this initiative on his tax returns.  So
18      tomorrow morning at Trump Tower I hope we can
19      arrange it to be so he goes down the escalator.
20      We will launch, quote, Donald Ducks, end quote,
21      a guy in a Donald Duck costume with a sign that
22      says, quote, Donald Ducks releasing his tax
```



```
 1      returns, end quote.
 2         A.    Yeah.  All right.  I stand corrected.
 3      That must have been relating to something we
 4      were about to do.
 5         Q.    About to do?
 6         A.    That's right.
 7         Q.    And as I asked you a moment ago, this
 8      video depicts your second meeting with Roth --
 9         A.    With Sandini.  Yeah, that's correct.
10         Q.    -- Sandini.
11               (Cross talk.)
12               THE WITNESS:  Correct, yeah.  That's
13      correct.
14               Am I making a -- am I talking over him?
15      I'm sorry.  I'll try and do better.
16               BY MR. CALLI:
17         Q.    You -- you gave an answer a moment ago
18      to me about if you tell your kid something,
19      right?  So how is a 20-year-old intern going to
20      learn this implied, imputed duty of
21      confidentiality you're creating out of whole
22      cloth if the example is the democratic hero is
```



```
1     of babbling like the -- the -- the -- the --
2     the inappropriate way you are, then there's --
3     then it doesn't matter if he filmed it, right,
4     because you're a professional with discretion
5     like I am --
6            MR. SANDLER:  Objection.
7            BY MR. CALLI:
8       Q.   -- right?
9       A.   You can characterize it any way you
10    want, Mr. Calli.
11      Q.   Did you hear yourself say that you
12    intended to -- to have the duck at all the
13    Trump/Pence rallies in the foreseeable future,
14    that you just laid out --
15      A.   Um-hmm (affirmative).
16      Q.   -- not one day, but the entire plan to
17    a complete stranger, somebody you had known for
18    less than an hour total?
19      A.   Actually, it was the -- I believe this
20    was the second meeting, wasn't it?
21      Q.   Yes.
22      A.   Yeah.  No, I had dinner with him before
```



1    surprise that he didn't have any giving history
2    to elections.
3         But -- so there was nothing -- nothing
4    beyond that, to -- to my knowledge, no.
5         Q.   Ms. Jack wrote aside from his political
6    giving, that she could locate no personal/work
7    information on him.
8         A.   Um-hmm (affirmative).
9         Q.   When you read that, did you endeavor to
10   locate or engage a private investigator or
11   search firm to try to do background work on
12   this individual?
13        A.   No.
14        Q.   When you had the meeting in the bar on
15   August 17th 2016 that we're watching, did
16   Charles Roth owe you any duty of
17   confidentiality with regard to anything you
18   were telling him?
19        A.   He had no fiduciary responsibility to
20   me, if that's what you're asking.
21        Q.   That's not what I asked you.  I asked
22   you if he had any duty of confidentiality.



Page 134

1    THE COURT REPORTER:  I'm sorry.

2    THE WITNESS:  I was not reflecting on
3    the legal standing of the term spying, but on
4    its definition, things you learn in middle
5    school.

6    MR. CALLI:  This is PVA13951 at
7    8 minutes and 40 seconds.

8            (Thereupon, a video clip was played
9            but not transcribed.)

10   BY MR. CALLI:

11       Q.   You said you weren't drunk.  How
12   many -- previously you were drinking wine.  How
13   many glasses of wine had you had, do you know?

14       A.   I probably had two.  That's generally
15   my limit at events like that.

16       Q.   And then onto the -- what did -- what
17   did you say you were drinking there in the
18   glass that you toasted with?

19       A.   I -- I don't know.  Do you want to play
20   it again?

21       Q.   Yes, sir.

22            (Thereupon, a video clip was played



Page 135

1                    but not transcribed.)
2                    THE WITNESS:  Oh, it was Cognac.
3                    BY MR. CALLI:
4           Q.    You say amaretto.
5           A.    It's amaretto?  Okay.
6           Q.    Is that your -- is that your drink?
7           A.    No, absolutely not.
8           Q.    Why did you drink it that night?
9           A.    I don't know.  I can't imagine why.
10                   MR. CALLI:  May I have a moment?
11                   BY MR. CALLI:
12          Q.    You previously talked about -- when
13     I -- I asked you a question if you ever asked
14     Ms. Brandt for an ID, your answer was
15     ultimately no, but you said there was a resume
16     and transcripts and these things.
17          A.    Um-hmm (affirmative).
18          Q.    But my question is a little more
19     specific:
20                Before you agreed to hire her and
21     before her first day, you did not ask her for a
22     resume?



1           CERTIFICATE OF NOTARY

2           I, MISTY KLAPPER, the officer before
3     whom the foregoing deposition was taken, do
4     hereby certify that the witness whose testimony
5     appears in the foregoing deposition was duly
6     sworn by me; that the testimony of said witness
7     was taken by me in shorthand and thereafter
8     reduced to typewriting by me; that said
9     deposition is a true record of the testimony
10    given by said witness; that I am neither
11    counsel for, related to, nor employed by any of
12    the parties to the action in which this
13    deposition was taken; and, further, that I am
14    not a relative or employee of any attorney or
15    counsel employed by the parties hereto, nor
16    financially or otherwise interested in the
17    outcome of this action.

18                                    _____

                                      Misty Klapper
19                                    Notary Public in and for
                                      the District of Columbia
20
21
22


MAGNA LEGAL SERVICES