UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRACY PARTNERS, LLC, et al.,

    Plaintiffs,

v.

PROJECT VERITAS ACTION FUND, et al.,

    Defendants.
_____/

CASE NO.: 1:17-CV-1047-ESH

## **PROJECT VERITAS PARTIES' RESPONSE TO THE DISTRICT OF COLUMBIA'S DEFENSE OF THE CONSTITUTIONALITY OF D.C. CODE § 23-542(B)(3)**

**Introduction**

"[T]he First Amendment protects against the prosecution of thought crime." *United States v. Balsys*, 524 U.S. 666, 714 (1998) (Breyer, J., dissenting). The District of Columbia ("the District") has intervened in this matter to defend the constitutionality of D.C. Code § 23-542(b)(3). Dkt. 76. Its interpretation of the law and asserted governmental interests confirm that the tortious purpose exception to the single-party consent rule is unconstitutional. If this Court addresses the constitutional issues, the exceptions to single-party consent under both D.C. and federal law must be struck down.[1]

In one sense, it is easy to conclude that this Court does not need to address these constitutional questions because the Project Veritas Parties plainly did not trigger the tortious purpose exception to single-party consent under either interception statute. There is no evidence

---

[1] On August 29, 2019, the United States declined to intervene to defend the constitutionality of 18 U.S.C. § 2511(2)(d), which, as worded, is essentially the same law. *See* Dkt. 78. If the tortious purpose exception in the D.C. law is unconstitutional, then the exception in the federal law is too.

1

that Ms. Maass intercepted oral communications as a party with a specific contemporary intent to commit a crime or tort. *See, e.g.*, *Vasquez-Santos v. El Mundo Broadcasting Corp.*, 283 F. Supp. 2d 561, 568 (D.P.R. 2003) (affirming summary judgment for journalist and media defendants and emphasizing the question is "whether, at the time the recording took place, [defendants] recorded the conversation with the express intent of committing a tort.") (citation omitted); *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 276 (3d Cir. 2016) (exception only applies where defendant acts "for the purpose of a tortious or criminal act that is independent of the intentional act of recording") (citation omitted). Her intent was solely to gather the news, and there is no evidence that she considered herself bound to a fiduciary duty. *Cf. Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 261 (D.D.C. 2014) ("The question of whether Chris Gaubatz *understood himself* to be bound by and violating a duty of confidentiality and non-disclosure in recording conversations from Plaintiffs' offices is a factual dispute appropriately resolved by a jury." (emphasis added)). Robert Creamer and Democracy Partners were only brought to the Project Veritas Parties' attention because of what Scott Foval had to say about them—including his suggestion that Creamer was involved in hatching the hypothetical voter fraud scheme, his characterization of Creamer and Democracy Partners as the "dark hat" and his description of Creamer as "diabolical." Dirty tricks by political consultants during a presidential election is the epitome of newsworthy information, the gathering of which was the sole intent behind Ms. Maass's interceptions. The dearth of evidence otherwise calls for summary judgment for the Project Veritas Parties on both interception claims.

Yet, conversely, if the Plaintiffs' anemic evidentiary record allows claims to proceed to trial under the interception statutes, then this is the most appropriate case to finally strike down the tortious purpose exception to the single-party consent rule set out in the statutes.

## I. The District of Columbia's Arguments Confirm that D.C. Code § 23-542(b)(3) is Unconstitutional

The District's arguments squarely confirm that the exceptions to single-party consent under the interception statutes are unconstitutional.

### A. The District's Interpretation Makes D.C. Code § 23-542(b)(3) an Unconstitutional Thought Crime

The core of the First Amendment problem is that a *lawful* single-party consent interception cannot be distinguished from a potentially *unlawful* single-party consent interception based on any objective, external factor. Laws that would make the same speech activity protected for some speakers, but unprotected for others strictly due to the motive for engaging in the activity, offend the First Amendment. *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 468 (2007). The District's interpretation of its single-party consent provision leaves the exception with no distinct *actus reus*, or wrongful act. A secret recording loses the protection of single-party consent strictly because of *mens rea*, or wrongful intent: "[A]ll that is relevant are Maass's motivations and intent at the time of recording, and the Court need not consider whether the contents of the communications she did succeed in intercepting are confidential." Dkt. 76 at 5. Other than single-party consent, which triggers the provision, the court may not consider *any* circumstance regarding the creation of the recording prior to relegating the analysis to the far more restrictive expectation-of-privacy standard defined in "oral communication" and, thus, the felony charge and cause of action that attend interception. *See* D.C. CODE §§ 23-541(2); 23-542(a). This offends the First Amendment.

Audio recording, even of others' speech, is a First Amendment activity. *See Sandvig v. Sessions*, 315 F. Supp. 3d 1, 15 n.3 (D.D.C. 2018) ("The Supreme Court has made a number of recent statements that give full First Amendment application to the gathering and creation of information."). Speech, or an act fundamental to its creation, may be regulated as a wrongful act,

3

or *actus reus*, only in exceptional circumstances. For example, some speech is itself an unprotected act, such as defamation, though the tort is very narrow under the First Amendment. *See, e.g., Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984). Precisely tailored regulation may also be warranted when, as the District notes, speech is in furtherance of illegal conduct. *See* Dkt. 76 at 10–11; *United States v. Stevens*, 559 U.S. 460, 468 (2010) (*citing Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949)). Such statutes may be content-based prohibitions of speech that survive strict scrutiny because the law is narrowly tailored to serve a compelling governmental interest.[2] As discussed in prior briefing, speech may also be regulated in content-neutral fashion, such as with noise regulation, as long as the laws pass intermediate scrutiny. *See* Dkt. 71 at 21.

In any of these unrelated situations, the speech has a distinguishable *actus reus*; that is, there is something measurable (such as noise level) or distinguishable (such as factual statements versus opinion) about the speech activity that makes it unlawful conduct. Under Section 23-542(b)(3), there are no such distinctions. If the statute actually excepted interception made *in furtherance of* a crime or tort rather than except "intercept[ion] for the purpose of committing" the same, it might pass muster by narrowly regulating the actual illicit use of a secret recording instead of just one's state of mind while engaging in interception. A content-based statute with a distinguishable *actus reus* might be constitutional, but that is not the statute before this Court.

The Seventh Circuit engaged this conundrum decades ago, and read a requirement—that is, *actus reas*—into the statute, that a single-party interception must actually be used for an illicit purpose to trigger the exception under the federal law:

---

[2] In one case the District cites in support, *United States v. Bondarenko*, the court noted that the federal racketeering statute only "incidentally" prohibits speech, and applied intermediate scrutiny. Dkt. 76 at 10; Crim. Case No. 17-306, 2019 WL 2450923, at *11 (D. Nev. June 12, 2019). Under the interception statutes, however, a speech activity is prohibited directly.

> We doubt anyway that a tape recording which was never used could form the basis for liability under section 2511(2)(d). It would be a dryly literal reading of the statute that found a violation because at the moment of pressing the "on" button a party to a conversation conceived an evil purpose though two seconds later he pressed the "off" button and promptly erased the two seconds of tape without even playing it back. A statute that provides for minimum damages of $1000 per violation *must have more substantial objects in view than punishing evil purposes so divorced from any possibility of actual harm*. We think it is *the use of the interception with intent to harm* rather than the fact of interception that is critical to liability, and there was no use of the interception here.

*By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 960 (7th Cir. 1982) (emphasis added). Such a reading is, however, contrary to the statute's text, has been rejected by other circuits (and, by implication, the Seventh Circuit itself), and is contrary to this Court's precedent. *See, e.g.*, *Stockler v. Garratt*, 893 F.2d 856, 860–61 (6th Cir. 1990) (Merritt, C.J., dissenting); *Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995); *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 123 F. Supp. 3d 83, 86 (D.D.C. 2015). These provisions must finally be subjected to First Amendment rigor, under which they fail.

This Court should consider the Supreme Court's decision in *Wisconsin Right to Life* as a controlling rebuke to purpose-based censorship. There, the Court rejected a purpose-based analysis suggested by the Federal Election Commission in order to distinguish between legal and illegal electioneering communications under federal campaign finance law:

> Far from serving the values the First Amendment is meant to protect, an intent-based test would chill core political speech by *opening the door to a trial* on every ad within the terms of [52 U.S.C. §§ 30118, 30104] on the theory that the speaker actually intended to affect an election, *no matter how compelling the indications that the ad concerned a pending legislative or policy issue*. No reasonable speaker would choose to run an ad covered by [the Bipartisan Campaign Reform Act] if *its only defense to a criminal prosecution* would be that its motives were pure.
> * * *
> A test focused on the speaker's intent could lead to the bizarre result that *identical ads aired at the same time could be protected speech for one speaker, while leading to criminal penalties for another*.

5

*Wisconsin Right to Life, Inc.*, 551 U.S. at 468 (emphasis added). Under the District's interpretation, identical interceptions made under the exact same circumstances can be a protected speech activity for one interceptor, and a crime for another. The only distinction here is that breaching the exception to single-party consent—that is, having impure motives—is not a crime in and of itself, but rather forces the interceptor to undergo the expectation of privacy analysis in the definition of "oral communication", thus facing broad exposure to felony charges where there was previously none. This distinction makes no difference, and, moreover, undermines the District's arguments regarding governmental interests and tailoring.

      **B. The Interests Asserted by the District Are Inapplicable or Improperly Tailored**

Assuming the statute even merits a full First Amendment analysis under the District's interpretation, it still fails to surpass both strict and intermediate scrutiny. The District argues that the statute is content-neutral and subject to intermediate scrutiny, relying on the Supreme Court's assessment of the federal statute in *Bartnicki v. Vopper*. Dkt. 76 at 4 (citing 532 U.S. 514, 526 (2001)). But, to the best of counsel's research, no court has ever constitutionally assessed either single-party consent provision; the definitions of "oral communication" are content-neutral, respectively, but the purpose-based exceptions to single-party consent are not.

The civil provisions of either law are only triggered by actual interception. 18 U.S.C. §2510(4); D.C. CODE § 23-541(3). Lawsuits such as the present case will nearly always have intercepted recordings in the record. *Cf. By-Prod Corp.*, 668 F.2d at 959. This evidence—that is, the content of the recordings—cannot be ignored in consideration of Allison Maass's purpose or those of any defendant in any case. In this case, the alleged tortious purpose was breaching a fiduciary duty, specifically a duty of confidentiality:

> On or about September 21, 2016, Plaintiff Robert Creamer agreed orally with Defendant Allison Maass . . . that she was not to share with any person, other

6

> than other employees of Democracy Partners members present in the Democracy Partners office or as instructed by Mr. Creamer, any non-public information of any kind that she learned in the course of her internship . . . .

Dkt. 63-16 at 8 (Plaintiffs' Response to Interrogatory #6). There was no such agreement, *see* Dkt. 63-1 at 18, and in the course of motions practice Plaintiffs were forced to concede that their factual allegation about what happened on this date was "inaccurate as worded." Dkt. 49 at 1. Ms. Maass's alleged tortious purpose arises out of a duty never conferred—proven *thanks to her interceptions*.[3]

A law that distinguishes between content is a content-based restriction, and subject to strict scrutiny. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015) ("Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function *or purpose*. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." (emphasis added)). The law is subtle here, but consideration of intercepted content is, in reality, all but unavoidable. The difficulties posed by showing a specific contemporaneous tortious purpose means that civil plaintiffs will attempt to prove it by pointing to the content of recordings themselves. One of the District's justifications further suggests that the purpose of the law is content-based: "When citizens can be sure that their conversations will be kept in confidence, they will speak more freely." Dkt. 76 at 8 (citing *Bartnicki*, 532 U.S. at 532–33). In other words, the law's purpose is to alter the content of what is intercepted.

Nevertheless, the laws fail either strict or intermediate scrutiny. The District asserts that two governmental interests are served by the statute: privacy and the deterrence of crimes or torts

---

[3] Though the panel's interpretation is nonbinding, the principles behind Seventh Circuit's assessment in *By-Prod Corporation* are apt. 668 F.2d at 960. A law that allows an innocuous secret recording about gardening that was never played back, or even erased, to be tried in front of a jury under the allegations that the interceptor had the purpose of committing a tort is no law at all.

that are furthered through interception. Dkt. 76 at 6. Neither is a legitimate interest, and neither is served by the statutes.

### 1. There is No Privacy Interest in One's Own Voluntary Communications to Another Party, and the Law Is Not Tailored to Privacy

Similar to its scrutiny argument, the District relies on cases that have addressed interception statutes "comprehensive[ly]" or other provisions of the law—such as the definition of "oral communications"—to establish privacy is an interest served by Section 23-542(b)(3). *See* Dkt. 76 at 7–8 (citing *United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297 (1972)). But this is questionable, at best. The laws allow individuals to secretly intercept communications to which they are a party, and the provision is only nullified if the recording is undertaken "for the purpose of committing any criminal or tortious act[.]" Surely not every, most, or even a substantial minority of laws addressing criminal or tortious acts serve a privacy interest. Reliance on the definition of "oral communications" is misplaced, because that provision is not at issue: this Court must instead consider whether a privacy interest arises from every crime and tort applicable in the District of Columbia, and nationwide, respectively. Privacy is simply not served by this law.

There is also a constitutional dimension to single-party consent itself. The District cites to *Katz v. United States* to support its argument that the statute leaves open alternative channels of communication. Dkt. 76 at 10 (citing 389 U.S. 347, 351 (1967)). Yet *Katz*'s progeny—and Fourth Amendment doctrine—has long *rejected* an expectation of privacy in single-party interception:

> [T]he Supreme Court's decision in *United States v. White,* 401 U.S. 745 . . . (1971), provides that just as "a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant," so too may an officer make a simultaneous audio recording of his conversations with a defendant without needing a warrant.

8

*Bamdad v. Drug Enf't Admin.*, 617 F. App'x 7, 8 (D.C. Cir. 2015). There is a stark contrast between eavesdropping and single-party interception that has yet to be addressed in the First Amendment context for citizens. For purposes of the single-party consent exceptions, if one's voluntary oral communications to a government agent do not implicate an expectation of privacy, neither is it implicated in voluntary oral communications directed to any other party.[4]

If privacy is an interest even implicated by the exception to single-party consent, it is not narrowly tailored. Privacy is not so compelling or important an interest that merely intending to commit *any* crime or tort while engaging in an interception may negate single-party consent under the law. It does not make sense, moreover, that the actual privacy analysis—in the definition of oral communications—is triggered by intent so far removed from privacy. As either a less restrictive alternative or least restrictive means, the law must require the actual use of an intercepted communication in furtherance of a crime or tort to allow sufficient breathing room for the creation of speech via interception—but, even then, more often than not this would not be in service of a privacy interest.

### 2. Section 23-542(b)(3) "Purpose" Exception is Not Suitably Tailored to Deterring Crime "Furthered Through" Interception

The second interest asserted by the District is especially baffling in light of its interpretation of the statute. According to the District, one breaks the law by merely intending to record for the purpose of committing a crime or tort, yet the law is also justified as regulating a "predicate step[]" or speech "in furtherance of" illegal activity, whether such step occurs or not. Dkt. 76 at 10–11.

---

[4] This is not to say the definition of "oral communications," in the context of protecting against eavesdropping, is unconstitutional. Rather, in voluntarily communicating to a known party, one does not have an expectation of privacy and the First Amendment protects the known party's documentation and subsequent publication of the communications absent a compelling or important governmental interest that is narrowly addressed.

9

The District cannot have it both ways. If the law actually regulated interception used in furtherance of a criminal activity, it might pass muster, but the law goes far beyond that.

Here, the law's tailoring is underinclusive because it only regulates interception in an expectation of privacy situation. "Underinclusivity creates a First Amendment concern when the State regulates one aspect of a problem while declining to regulate a different aspect of the problem that affects its stated interest *in a comparable way*." *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1670 (2015) (citing *Florida Star v. B.J.F.,* 491 U.S. 524, 540 (1989)). If one, for example, intercepts another's oral communications as a party for the purpose of blackmailing him, the single-party consent exception is void and the interception must be analyzed under the expectation of privacy analysis, and only then would implicate a separate felony or cause of action. Yet this means one may *legally* intercept someone's communications *for the purpose of blackmailing him* so long as it's in a situation with no expectation of privacy! What, exactly, is the difference for purposes of blackmail—or most crimes or torts? This is the flipside of the state's privacy argument; just as most crimes or torts do not implicate privacy, neither does privacy itself implicate most crimes or torts. If the law were written in a way to prohibit any secret recording from actually being used in furtherance of a crime or tort, it could pass scrutiny; here, it does not.

Neither of the District's asserted interests are implicated in the exception to single-party consent, and, if so, the law is not narrowly tailored to serve these interests under either strict or intermediate scrutiny.

### C. The District's Brief Proves the "For the Purpose Of" Language in Section 23-542(b)(3) is Unconstitutionally Vague

The District argues in its tailoring analysis that the inapplicability of governmental interests in the purpose exception "is easily satisfied: the party bringing suit against an interceptor must identify the underlying crime or tort before it can nullify single-party consent." Dkt. 76 at 9. Here,

the District runs head-first into the vagueness doctrine. Vagueness, applied either under the Due Process Clause or First Amendment, has always considered the statute itself, not what a court might do after a citizen has been dragged into a lawsuit.

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory *enforcement*. . . . Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.". . . Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, *and juries* to pursue their personal predilections."

*Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983) (citing *Smith v. Goguen,* 415 U.S. 566, 574–75 (1974)) (other citations omitted) (emphasis added). The District's brief bolsters this throughout. Because the exception is nullified strictly based on one's intent, there is no conduct for a citizen to avoid except single-party consent recording in its entirety. Because the law has no distinguishable *actus reus*, prosecutors and plaintiffs alike may arbitrarily allege *any* single-party interception to be exempt from the law. The law must provide real guidance, especially as it relates to an activity that is integrally tied to the creation of speech. *See Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972). It provides none.

The District once again rests its argument on provisions that are not at issue. *See* Dkt. 76 at 13. The definition of "intercept" or "oral communication" are not challenged here, nor what constitutes "a party to the communication." D.C. CODE §§ 23-541(2), (3); 23-542(b)(3). It is strictly how a communication "is intercepted for the purpose of committing any criminal or tortious act"—a controlling provision—that is at issue. D.C. CODE § 23-542(b)(3). Defining a wrongful act, particularly a speech activity, strictly on the basis of the intent of the speaker is void for vagueness. *See City of Chicago v. Morales*, 527 U.S. 41, 56–57 (1999) ("It is difficult to

11

imagine how any citizen of the city of Chicago standing in a public place with a group of people would know if he or she had an 'apparent purpose.'"). That the District claims this purpose-based trigger, or *mens rea*, is akin to an "in furtherance of" standard, or *actus reus*, reinforces the point. *Cf.* Eugene Volokh, *The "Speech Integral to Criminal Conduct" Exception*, 101 CORNELL L. REV. 981 (2016) *with* Eugene Volokh, *The Freedom of Speech and Bad Purposes*, 63 UCLA L. REV. 1366 (2016). As previously discussed, these are different standards that do not support one another. *See supra* part I(B)(2).

The intent-based exception to single-party consent is a standardless sweep that grants police, prosecutors, juries and irked subjects of investigative reports a most oppressive form of telepathy. A permissive speech activity such as single-party consent may not be revoked on arbitrary and discriminatory assertions of criminal or tortious intent, yet that is exactly what both laws allow. Especially in this matter, the subjects of one of the most important news stories of the 2016 election cycle should not be allowed to criminalize the methods by which they were exposed.

## Conclusion

Allison Maass had no fiduciary duty to breach, and thus could not have had a tortious purpose when she intercepted oral communications at Democracy Partners to which she was a party. Dkt. 63-1 at 16–22; Dkt. 71 at 10–15. As such, the Court need not even reach the constitutionality issue. Should this Court address the issue, however, the exceptions to single-party consent under both the D.C. and federal interception statutes must be struck down as unconstitutional.

Respectfully submitted,

By: /s/ Paul A. Calli
Paul A. Calli
Florida Bar No. 994121
Chas Short
Florida Bar No. 70633
CALLI LAW, LLC
14 NE 1st Ave, Suite 1100
Miami, FL 33132
Telephone: (786) 504-0911
Facsimile (786) 504-0912
PCalli@Calli-Law.com
CShort@Calli-Law.com
*Admitted pro hac vice*

/s/ Kerry Brainard Verdi
Kerry Brainard Verdi, Esq.
Bar No. 478486
Benjamin R. Ogletree
Bar No. 475094
VERDI & OGLETREE PLLC
1325 G Street, NW, Suite 500
Washington, DC 20005
Telephone: (202) 449-7703
Facsimile: (202) 449-7701
kverdi@verdiogletree.com

/s/ Michael J. Madigan
Michael J. Madigan
Bar No. 71183
LAW OFFICES OF MIKE MADIGAN PLLC
3910 Hillandale Court NW
Washington DC 20007
Telephone: (202) 255-2055
Mjm20@mac.com

/s/ Benjamin T. Barr
Benjamin Barr (Pro Hac Vice)
STATECRAFT PLLC
444 N. Michigan Ave. #1200
Chicago, Illinois 60611
Telephone: 202-595-4671
ben@statecraftlaw.com
*admitted pro hac vice*

/s/ Stephen R. Klein
Stephen R. Klein
Bar No. 177056
STATECRAFT PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (202) 804-6676
steve@statecraftlaw.com

*Counsel for Defendants Project Veritas Action Fund, Project Veritas, James O'Keefe, and Allison Maass*

## CERTIFICATE OF SERVICE

I CERTIFY that on September 10, 2019, I served the foregoing through the Court's electronic filing system which served a copy on all counsel of record.

*/s/ Paul A. Calli*
Paul A. Calli, Esq.
