# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DEMOCRACY PARTNERS, LLC, et al.,

    Plaintiffs,

v.

PROJECT VERITAS ACTION FUND, et al.,

    Defendants.
_____/

CASE NO.: 1:17-CV-1047-ESH

## PROJECT VERITAS PARTIES' MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER AS TO CLEAR ERROR OF FACT REGARDING AFSCME RULE 30(b)(6) WITNESS SCOTT FREY'S TESTIMONY

The Project Veritas Parties file this Motion for Reconsideration to address two discrete and clear factual errors regarding the deposition testimony of AFSCME Rule 30(b)(6) witness Scott Frey. Respectfully, the Court has incorrectly interpreted quotations from Frey's testimony to refer to the subject matter of Plaintiffs' claims (investigative journalist Allison Maass's unpaid internship at Democracy Partners and her recording during that unpaid internship). In the first erroneous partial quote, Frey was in fact testifying about the problems created by Plaintiffs' allowing now-disgraced former political operative *Scott Foval* (not Ms. Maass) into their midst. Foval is the Creamer associate who bragged about political dirty tricks (including provoking violence at Donald Trump campaign rallies) and who explained that he, Creamer, AUFC President Brad Woodhouse, and Democracy Partners member Mike Lux "are all part of the old school method where it doesn't matter what the friggin' legal or ethics people say, we need to win this motherfucker." [D.E. 63-6], "Rigging the Election" Part I at 1:40-1:50. Plaintiffs do not base any of their claims on the recording of Foval and Ms. Maass never met or recorded Foval. In the second partial erroneous quote, an ellipsis replaces the portion of the sentence in which Frey rejects

1

Plaintiffs' causation theory, explaining that "regardless of the circumstances that led to the video," AFSCME's concern was "the video in itself and the way it was released and the timing was a very unfortunate distraction, and we didn't want to be party to it." [D.E. 63-11] at 79:1-5; *see also* **Exhibit A,** Excerpts of Frey testimony for ease of reference. This immediately followed the Foval discussion from which the first erroneous partial quote was taken.

The erroneous reading of Frey's testimony is a discrete issue but an important one, because the Court relied on this misapprehension in denying summary judgment on First Amendment/causation grounds as to alleged AFSCME damages and also AUFC damages. A review of pages 76-79 of Frey's deposition testimony resolves the issue conclusively. *See* [D.E. 68-15] at 23-26; **Exhibit A**. Accordingly, the Project Veritas Parties move for reconsideration of the summary judgment Order on the discrete issue of Frey's testimony.

## **The Legal Standard**

A partial denial of summary judgment is not a final judgment. As such, pursuant to Fed. R. Civ. P. 54(b) it can be reconsidered at any time prior to entry of a judgment adjudicating all claims. *See Murphy v. Executive Office for United States Attorneys*, 11 F. Supp. 3d 7, 8 (D.D.C. 2014) (Huvelle, J.) Such a motion is considered under the "as justice requires" standard. *See id.* (citing *Campbell v. United States Dep't of Justice,* 231 F. Supp. 2d 1, 7 (D.D.C. 2002) (quoting *Childers v. Slater,* 197 F.R.D. 185, 190 (D.D.C.2000))). A court may grant a motion for reconsideration of an interlocutory order when the movant demonstrates a clear error in the first order. *Id.* (citation omitted).) Respectfully, the Court's misreading of Frey's deposition testimony was clear error in the partial denial of the Project Veritas Parties' Motion for Summary Judgment. Accordingly, justice requires that the Project Veritas Parties' Motion for Reconsideration be granted.

## A Clear Error of Fact Exists Regarding the AFSCME Deposition Testimony, and the Error Alters the Court's Conclusion as to the First Amendment/Causation

First Amendment/causation was a significant issue in the summary judgment briefing. Plaintiffs disclaimed any damages based on the publication of the Project Veritas Parties' reporting. Summary Judgment Order [D.E. 83] at 13-14. Instead, they based their alleged damages on three sources – (1) AFSCME (which cancelled its contract with Strategic Consulting Group for political work following the release of "Rigging the Election" Part I), (2) AUFC (which was funded almost entirely by AFSCME, collapsed when AFSCME stopped funding it following the release of "Rigging the Election" Part I, and could not pay Strategic for consulting work going forward), and (3) Dialysis Patient Citizens (which decided not to proceed with potentially hiring Strategic to do political work). *Id.* at 14.

The evidence demonstrated that Dialysis Patient Citizens and AFSCME all reacted to the First Amendment expressive activity of the Project Veritas Parties, or some wholly unrelated issues, and not Allison Maass's unpaid internship at Democracy Partners and her recording during same. The Court agreed with the Project Veritas Parties as to Dialysis Patient Citizens, ruling that "there is insufficient evidence to support plaintiffs' claim that defendants' non-expressive conduct was a proximate cause of the loss of the potential contract with Dialysis Patient Citizens" and that accordingly "plaintiffs' claims for damages based on that loss may not proceed." *Id.* at 18. The Court disagreed as to AFSCME, and consequently as to AUFC, where the ruling rested on the Court's conclusion as to AFSCME's reasons for stopping business with Strategic. *Id.* at 17-18.

The Court's ruling on AFSCME and AUFC relied on two different partial quotations from Frey's deposition testimony, and a citation for Frey's affirmative answer to a single question on cross-examination asked by Plaintiffs' counsel. The clear errors arise in the two partial quotations,

which the Court appeared to believe referred to Allison Maass's unpaid internship at Democracy Partners (called an "infiltration" by Plaintiffs). The Court ruled:

> [T]here is sufficient evidence to support plaintiffs' view that AFSCME was also concerned about the infiltration itself and the fact that Creamer and Strategic Consulting had allowed it to occur. Most notably, Scott Frey, AFSCME's director of government affairs, testified that, among AFSCME's other concerns, "part of [his] concern [was] that [plaintiffs] had allowed their offices to be infiltrated by a Project Veritas operative." (Frey Dep. at 102:16-19 (Sandler Decl. Ex. 12); *see also* Frey Dep. at 77:8-11 ("[I]t was the view at the time that [plaintiffs] had created the opportunity for this operation to occur, and it had become a major distraction to, and an unnecessary one at a critical moment in time."); Frey Dep. at 78:20-22 ("I think the overall sense that they had allowed this to occur, they invited this opportunity into their midst . . . .").).

Summary Judgment Order [D.E. 83] at 17 (alteration as presented in the Order).

The erroneous partial quotes occur extremely close in time. Neither of the partial quotations supports Plaintiffs' arguments. The first dealt with the recording of Foval, not with Allison Maass's internship, and Plaintiffs base no claims on the recording of Foval by an altogether different Project Veritas investigative journalist. Allison Maass never recorded Foval or even met Foval at all. SMF ¶137 ([D.E. 63-2] at 23); PSMF ¶137 [D.E. 68-1 at 48]; [D.E. 63-4] at 5 (Allison Maass Affidavit). The remainder of the sentence from which the second erroneous partial quote comes is the portion in which Frey completely rejects Plaintiffs' theory of causation and concludes the video itself was the broader concern, regardless of the circumstances that led to it.

The first erroneous partial quote is presented here in the complete question and answer, with the erroneous partial quote underlined:

> Q. Okay. Okay. Why did [AFSCME Chief of Staff Bill Lurye] make that recommendation [to terminate the relationship]?
> A. Again, we felt there was – understanding what we knew about this organization, Project Veritas, and their representation, their reputation for misrepresenting the facts[1] and doing these types of videos, we did feel that there

---

[1] The Project Veritas Parties do not misrepresent the facts or deceptively edit. One federal district court has even had occasion to rule that "Rigging the Election" Part I was accurate, and granted

4

was an element of indiscretion that they'd allowed Mr. Foval into their midst without serious vetting, that they created a, <u>it was the view at the time that they had created the opportunity for this, for this operation to occur, and it had become a major distraction to, and an unnecessary one at a critical moment in time.</u>

We did not want, we did not, we did not want to, we did not welcome the distraction it created.

**Exhibit A** at 76:21-77:14 (emphasis added). Thus, it is clear from the prior half of the sentence from which the erroneous partial quote was extracted that the subject was Plaintiffs' "allow[ing] Mr. Foval into their midst without serious vetting" which "had created the opportunity for this, for this operation to occur[.]"

The fact that this testimony related to Creamer's (and AUFC President Brad Woodhouse's) hiring of Foval was reaffirmed by the question and answer that immediately followed:

> Q. When you say they had let Mr. Foval out into their midst without proper vetting, you're referring to Mr. Creamer, Democracy Partners, and Strategic Consulting Group?
> A. That's correct, yes. We felt like that it was carelessness on their part.
> Q. And when you say they created an environment where this could occur, whatever you testified to, you're referring to Creamer, Democracy Partners, Strategic Consulting Group, not to Project Veritas?

---

directed verdict for the Project Veritas Parties: "[T]he Plaintiff's contention that the Defendants concocted a storyline (Video I) and then consciously set out to create the 'evidence' (Foval's statements) to conform to that storyline is simply unsupported by Plaintiff's own evidence." *Teter v. Project Veritas, Project Veritas Action Fund, and James O'Keefe*, Case No. 1:17-cv-00256, 2019 WL 2423294, *4 (W.D.N.C. June 7, 2019) (Reidinger, J.).

The *Teter* case vindicating Project Veritas Parties was not included in the Court's recitation of prior Project Veritas matters, which included cases settled early in Project Veritas's existence and James O'Keefe's ten year old misdemeanor plea. *Compare* [D.E. 83] at 5 n.4. Both the settled cases and Mr. O'Keefe's misdemeanor occurred long before Project Veritas's investigative journalism giving rise to this case. The Project Veritas Parties had previously updated the Court regarding *Teter*, consistent with the Court's request to be informed about the status of other pending litigation, and because the subject matter is the same – "Rigging the Election" Part I. *See* [D.E. 69] (attaching transcript of oral ruling on directed verdict and prior summary judgment order in Project Veritas's favor on non-defamation claim); [D.E. 70] and [D.E. 70-1] (attaching written order granting Project Veritas Parties' motion for directed verdict). Although the omission of Project Veritas Parties' complete vindication in *Teter* is tangential to the discrete focus of this motion, the Project Veritas Parties respectfully request that omission of *Teter* from the Court's prior listing also be remedied.

> A. I'm referring particularly to Mr. Creamer and Mr. Woodhouse in whatever capacity they were in.

**Exhibit A** at 77:15-78:5. Thus, the actual testimony is evidence which supports the Project Veritas Parties' arguments. Frey is describing AFSCME's dissatisfaction with Creamer and AUFC's negligent hiring of Foval – Foval having been recorded (not by Allison Maass, and not the basis of any of Plaintiffs' claims) and revealed in "Rigging the Election" Part I as the kind of political operative who will brag about provoking violence at an opponent's political rallies, including admitting, "We pay mentally ill people to do shit. Make no mistake," among other political dirty tricks and inappropriate statements. *See e.g.* [D.E. 63-6], Video I at 7:09-9:11. 11:16-13:48, 11:50-14:40. Similarly, Foval is the type of operative who candidly explained to a relative stranger, "Brad [Woodhouse, President of AUFC, the organization that AFSCME funded], Bob [Creamer], [Democracy Partners Member Mike] Lux, and myself are all part of the old school method where it doesn't matter what the friggin' legal or ethics people say, we need to win this motherfucker." *Id.* at 1:40-1:50. No wonder AFSCME was motivated to cancel its contract upon learning Creamer and Woodhouse had carelessly and indiscreetly invited Foval into their midst without proper vetting.

The second erroneous partial quote is extracted from Frey's answer to the question immediately following the above deposition testimony. After giving the portion of the answer that appears in the Court's Order, Frey rejects Plaintiffs' causation argument (the erroneous partial quotation is underlined below):

> Q. Prior to the letter – let me back up. Did AFSCME have concerns about anything Mr. Creamer said on the video that was released?
> A. I am trying to remember what he said in the video. My recollection is that we did. We did have concerns with that he said. What specifically those were without reviewing the video again I wouldn't, wouldn't recall specifically what those concerns were, but that he was speaking ad hoc about his strong ties to the Clinton campaign, and it seemed a bit inappropriate, but then, again, we also were

6

aware that, of the view that the video had been highly selectively edited,[2] and, likely, those words were taken out of context.

<u>I think it was the overall sense that they allowed this to occur, they invited this opportunity into their midst</u>, but I think the broader concern was just clearly, regardless of the circumstances that led to the video, the video in itself and the way it was released and the timing was a very unfortunate distraction, and we didn't want to be a party to it.

**Exhibit A** at 78:6-79:5 (emphasis added). The ellipsis in the erroneous partial quote omits the remainder of the sentence, where Frey conclusively rejects Plaintiffs' theory of damages: "but I think the broader concern was just clearly, regardless of the circumstances that led to the video, the video in itself and the way it was released and the timing was a very unfortunate distraction, and we didn't want to be a party to it." *Id.* at 78:20-79:5. Thus, AFSCME was focused on the First Amendment expressive activity of Project Veritas, and that is true "regardless of the circumstances that led to the video . . . ." Plaintiffs have disclaimed those damages. With the remainder of the sentence restored, the second erroneous partial quote requires granting the Project Veritas Parties' summary judgment motion, not denying it.

With the correction of these factual errors, it is clear that the Project Veritas Parties' non-expressive activity does not supply the requisite "substantial factor" in bringing about the alleged harm which must exist to survive summary judgment. In fact, the omitted portions show that these quotations actually support Project Veritas's arguments. With the correction of these errors, the single piece of evidence supporting Plaintiffs' theory is the affirmative answer ("Yes.") on cross-examination to the question, "Okay. Thank you. Mr. Frey, you had testified that AFSCME was concerned that Mr. Creamer, Strategic Consulting Group, had created the opportunity for this to

---

[2] The video is not deceptively edited and Plaintiffs did not allege a defamation claim. The Project Veritas Parties are undefeated in defamation cases. *Wentz v. Project Veritas*, *James O'Keefe, and Allison Maass*, Case No. 6:17-cv-1164, 2019 WL 1716024 (M.D. Fla. Apr. 16, 2019) (Sharp., J.) (case-dispositive order granting summary judgment for the Project Veritas Parties on defamation and wiretapping).

occur. Was part of your concern that they had allowed their offices to be infiltrated by a Project Veritas Operative?" **Exhibit A** at 102:11-19. On its own terms, Frey's one-word agreement that it was "part" is not the same as an agreement that it would have been a substantial factor. Had the Court also believed the single affirmative answer was sufficient evidence of a substantial factor, it is safe to assume that the Court would not have also cited the erroneous partial quotes. And of course, Frey testified that "the broader concern was just clearly, regardless of the circumstances that led to the video, the video in itself and the way it was released and the timing was a very unfortunate distraction, and we didn't want to be party to it." **Exhibit A** at 78:22-79:5.

Motions for reconsideration should not be used to re-litigate old matters. Conversely, they must not be used to raise matters which a party could have raised earlier, but failed to. This Motion does neither. In summary judgment briefing with over 800 pages of exhibits and much video evidence (and a second round of briefing with the District of Columbia months later as to a Constitutional challenge), there has been a misapprehension of what Frey was testifying to in the partial quotations used in the Order. The Project Veritas parties addressed this matter directly in the Reply in Support of Summary Judgment and sought to show the correct context. [D.E. 71] at 6-8. Ultimately, the Court used the erroneous partial quotes without reckoning with the disparity -- this is a contrast to other parts of the Order, where the Court specifically reckoned with the parties' opposite legal interpretations of what the facts showed – *see e.g.* [D.E. at 83] at 24-30 (comparing fiduciary duty factors). Reviewing the evidence – the deposition transcript itself – demonstrates that a clear error of fact has occurred and caused an incorrect legal conclusion to result.

**Conclusion**

The Project Veritas Parties request that the Court reconsider its summary judgment ruling as to First Amendment/causation and AFSCME and AUFC damages (which hinged on the same erroneous partial quotations). These are mistakes of fact stemming from the Frey testimony which, while discrete in nature, drive important legal conclusions. Neither of the erroneous partial quotations supports the denial of summary judgment and in fact the context from which the second quote is excerpted clearly establishes that the Project Veritas Parties view of causation is the correct one, even on the non-movant favorable standard of summary judgment.

**Certification Regarding Conferral**

Pursuant to the Local Rules, the undersigned have conferred with Plaintiffs' counsel regarding the relief requested in this Motion. Plaintiffs oppose.

Respectfully submitted,

By: /s/ Paul A. Calli
Paul A. Calli
Florida Bar No. 994121
Email: PCalli@Calli-Law.com
Chas Short
Florida Bar No. 70633
Email: CShort@Calli-Law.com
*Admitted pro hac vice*

/s/ Kerry Brainard Verdi
Kerry Brainard Verdi, Esq.
Bar No. 478486
Benjamin R. Ogletree
Bar No. 475094
VERDI & OGLETREE PLLC
1325 G Street, NW, Suite 500
Washington, DC 20005
Telephone: (202) 449-7703

/s/ Michael J. Madigan
Michael J. Madigan
Bar No. 71183
LAW OFFICES OF MIKE MADIGAN PLLC
3910 Hillandale Court NW
Washington DC 20007
Telephone: (202) 255-2055
Mjm20@mac.com

Facsimile: (202) 449-7701
kverdi@verdiogletree.com

| | |
|---|---|
| /s/ Benjamin T. Barr | /s/ Stephen R. Klein |
| Benjamin Barr (Pro Hac Vice) | Stephen R. Klein |
| BARR & KLEIN PLLC | Bar No. 177056 |
| 444 N. Michigan Ave. #1200 | BARR & KLEIN PLLC |
| Chicago, Illinois 60611 | 1629 K Street NW |
| Telephone: (202) 719-1717 | Suite 300 |
| ben@barrklein.com | Washington, DC 20006 |
| *Admitted pro hac vice* | Telephone: (202) 804-6676 |
| | steve@barrklein.com |

*Counsel for Defendants Project Veritas Action Fund, Project Veritas, James O'Keefe, and Allison Maass*

## **CERTIFICATE OF SERVICE**

I CERTIFY that on April 27, 2020, I served the foregoing through the Court's electronic filing system which served a copy on all counsel of record.

                                        */s/ Paul A. Calli*
                                        Paul A. Calli, Esq.