| | |
|---|---|
| DEMOCRACY PARTNERS, LLC, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civ. No. 1:17-cv-1047-ESH |
| v. | ) |
| | ) |
| PROJECT VERITAS ACTION FUND, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
PROJECT VERITAS PARTIES' MOTION IN LIMINE
TO ADMIT CREAMER'S FEDERAL FELONY CONVICTIONS
FOR BANK FRAUD AND TAX CRIMES**

The Project Veritas Defendants have filed an early motion *in limine* to admit evidence of the long-ago guilty pleas of Plaintiff Robert Creamer to two federal felony counts. (Project Veritas Parties' Motion to Admit Creamer's Federal Felony Convictions, ECF No. 85 ("Def. Mot.")). The Motion makes clear that Defendants seek to introduce this evidence solely for the improper purposes of smearing Mr. Creamer before and prejudicing the jury, to show that, in Defendants' own words, Mr. Creamer is a "bad actor"—precisely the purposes for which use of such evidence is forbidden under the Federal Rules of Evidence.

Neither ground asserted by Defendants remotely supports the admissibility of these prior convictions. First, Defendants have utterly failed to overcome the presumption against admissibility of remote prior convictions for impeachment purposes under Fed. R. Evid. 609(b). The conduct for which Mr. Creamer pleaded guilty occurred more than 20 years ago. Neither offense to which Mr. Creamer pleaded –check kiting and failing to pay $1,892 in income tax withholdings--required any proof of a false statement or misrepresentation, and the convictions are

thus not probative of propensity for truthfulness. And there is no issue of material fact that this Court, in denying Defendants' Motion for Summary Judgment, found to involve or turn on the credibility of Mr. Creamer, in any way.

Second, Defendants contend that the evidence of the remote prior convictions is somehow admissible to show their own motive or intent or the effects of their video on the organizations that ended their contracts with Mr. Creamer's company. That contention is nonsensical. Defendants have failed to show how the prior convictions are in any way material to their supposed "journalistic purpose" in committing the torts for which they now must stand trial: violation of the federal and District of Columbia wiretap statutes, fraudulent misrepresentation and civil conspiracy. Nor has it ever been suggested in the extensive record developed in this case that mention of Mr. Creamer's prior convictions—which had been widely publicized years earlier—in Defendants' videos has any bearing on causation or any other issue in the case. Defendants have completely failed to show that the prior convictions are admissible for any proper purpose.

## I. Defendants Have Failed to Overcome Rule 609(b)'s Presumption Against Admissibility of Remote Prior Convictions

Defendants concede that a period of more than ten years has elapsed since the date of Mr. Creamer's release from confinement and, therefore, that evidence of his two prior convictions could be admitted for purposes of impeachment only under Rule 609(b) of the Federal Rules of Evidence. (Def. Mot. at 5). Under Rule 609(b), evidence of a prior conviction "is admissible only if …its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."

Under Rule 609(b), the "general rule is one of inadmissibility." *United States v. Pettiford*, 238 F.R.D. 33, 39 (D.D.C. 2006). The Rule 609(b) standard is one "imposing the most stringent

admissibility standard on decade or older prior convictions for purposes of impeaching any witness . . .. The exclusionary nature of this standard is intended to ensure 'that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances' for purposes of impeaching a witness." *United States v. Thorne*, No. 18-cr-389 (BAH), 2020 WL 122985 at *7 (D.D.C., Jan. 10, 2020) (quoting Fed. R. Evid. 609, Advisory Committee Note, 1974 Enactment, Note to Subdivision (b)).

In weighing probative value against prejudicial effect under Rule 609(b), the "degree to which a prior conviction is probative for Rule 609 purposes depends on what the conviction is for, how old it is and whether the defendant's credibility will be central to the trial." *Thorne*, 2020 WL 122985 at *24 (citing *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980)). *See*, to the same effect, *Pettiford*, 238 F.R.D. at 41 (factors to be considered include the kind of crime involved, when the conviction occurred, importance of the witness' testimony, importance of the credibility of the defendant and the impeachment value of the prior crime). In this case, contrary to Defendants' contentions, none of the relevant factors weighs in favor of finding any probative value.

First, the two counts to which Mr. Creamer pleaded guilty are not "crimes of dishonesty" that bear on Mr. Creamer's propensity for telling the truth, as Defendants would have it. (Def. Mot. at 6). With respect to the bank fraud count, the plea was only to check-kiting, which constitutes defrauding a financial institution under 18 U.S.C. §1344(1). *See* Def. Mot. Ex. A, ECF No. 85-1 (Plea Agreement in *U.S. v. Creamer*, No. 04-cr- 281 (N.D. Ill.) at 2 (Creamer "participated in a scheme commonly referred to a 'check kite' . . . in violation of Title 18, United States Code, Section 1344(1)"). By contrast with subsection (2) of 18 U.S.C. §1344, which requires "means of false or fraudulent pretenses, representations or promises," conviction for

3

check-kiting under subsection (1) does *not* require establishing any false statement or misrepresentation. *United States v. LeDonne*, 21 F.3d 1418, 1425 (7th Cir. 1994). For precisely that reason, simple check-kiting is not prosecutable under subsection (2) of section 1344, which "reaches only those acts that involve some misrepresentation or false assertion of fact." *United States v. Doherty*, 969 F.2d 425, 428 (7th Cir. 1992).

Given that no false statement or misrepresentation is involved in check-kiting, Mr. Creamer's conviction on that count is not probative of his propensity for telling the truth. For example, in *United States v. Barb*, 20 F.3d 694 (6th Cir. 1994), the Court found that a prior conviction for writing bad checks under a state statute not requiring any false or dishonest statement "is not, as a matter of law, a conviction involving dishonesty and adds nothing to the factfinder's ability to judge the credibility or propensity for truthfulness of a witness, the purpose of Rule 609(a)(2)." 20 F.3d at 696.

The lack of probative value in this case is underscored by the trial judge's comments at Mr. Creamer's sentencing hearing, about Mr. Creamer's state of mind in committing the check-kiting offense to which he pleaded guilty. At Mr. Creamer's sentencing hearing, U.S. District Judge James Moran stated that," There was no intention to cause loss…. Neither the banks nor the government suffered any actual out of pocket loss." M. Higgins & L Cohen, *Democratic consultant sentenced to prison*, Chicago Tribune (April 6, 2006) https://www.chicagotribune.com/news/ct-xpm-2006-04-06-0604060259-story.html (last visited May 7, 2020). Judge Moran also stated that Mr. Creamer acted not out of greed but in an effort to keep his community action group going without cutting programs. Media Matters for America, *Beck falsely claimed Robert Creamer "stole" $2 million from banks*, Dec. 8, 2009

https://www.mediamatters.org/glenn-beck/beck-falsely-claimed-robert-creamer-stole-2-million-banks (last visited May 7, 2020).

The second offense to which Mr. Creamer pleaded guilty is failing to pay $1,892 in federal income tax withholdings in violation of 26 U.S.C. §§7202 and 7206. (Def Mot. Ex. A, Plea Agreement, ECF 85-1 at 2, 9-10). This offense, too, does not require or imply any false statement or misrepresentation, and so conviction of this offense is not probative of propensity for truthfulness. In *Cree v. Hatcher*, 969 F.2d 34 (3d Cir.1992). the Court held that it was error for the District Court to admit in a civil case, for purposes of impeachment of plaintiff's expert, evidence of the witness' prior conviction for willful failure to file a federal tax return. Because that statute (26 U.S.C. §7203) does not require that the defendant "have intended to conceal his tax liability or deceive the government, we not believe that being convicted of violation of section 7203 necessarily connotes dishonesty or a false statement…" 969 F.2d at 38.

"[C]ourts have held that certain types of felonies are not particularly probative of a witness' credibility under 609(a)(1) especially when they do not require plaintiffs to make a false statement." *United States v. Holland*, 41 F. Supp. 3d 82, 93 (D.D.C. 2014). Likewise, under Rule 609(b), a prior conviction is not probative if "the underlying crime is not indicative of truthfulness." *Pettiford*, 238 F.R.D. at 42. The offenses to which Mr. Creamer pleaded guilty are not probative of credibility and the first factor thus weighs against admissibility.

With respect to the second factor, Defendants suggest that while the conviction lies outside the ten-year period, "it is not radically so." (Def Mot. at 8). What Defendants fail to acknowledge, however is that the conduct for which Mr. Creamer was charged actually took place in 1997 (bank fraud) and 1998 (failure to pay taxes)—*more than twenty years ago*. (Plea Agreement, Def. Mot.

Ex. A, ECF No. 85-1 at 2, 9). By comparison, this Court in *Pettiford* found that a prior conviction that occurred fifteen years earlier was "stale." *Pettiford*, 238 F.R.D. at 42.

With respect to the third factor, Mr. Creamer's credibility is not at all "central to this case," as Defendants contend. (Def. Mot. at 9). In denying Defendants' Motion for Summary Judgment as to three counts—violations of the Federal and D.C. wiretap statutes, fraudulent misrepresentation and civil conspiracy—this Court identified with great precision the disputed factual issues that precluded a grant of summary judgment to Defendants. Memorandum Opinion, ECF No. 83 ("Opinion on Sum J."). *None* of those issues turns on the credibility of Mr. Creamer— on anything he asserted during discovery or in his affidavit submitted in opposition to Summary Judgment.

Indeed, the only issues identified by Defendants themselves as implicating Mr. Creamer's credibility are "Creamer's view of what information Allison Maass was exposed [to] that was 'confidential' or what duties were "implied' from Allison Mass's unpaid internship." (Def. Mot. at 9). But those factual issues were relevant only to the count of breach of fiduciary duty (Opinion on Sum J. at 24-29), as to which the Court has already granted summary judgment for Defendants. *Id*. at 31. Thus, neither factual issue remains in the case.

In short, unlike *Mattiaccio v. DHA Group, Inc*., No. 12-civ-1249 (CKK), 2019 WL 6498865 (D.D.C., Dec. 3, 2019), this is not a case in which the plaintiff's "testimony is central his case and his truthfulness is thus squarely at issue." 2019 WL 6498865 at *16. Rather, as in *Pettiford*, this is a case in which the party advocating admission of the evidence "has done little to show that the specific circumstances of the conviction carry with them probative value in this case or excuse the remoteness of the conviction." *Pettiford*, 238 F.R.D. at 43.

Thus, considering all of the relevant factors under Rule 609(b), Mr. Creamer's prior convictions have essentially no probative value in this case. At the same time, the risk of prejudice is manifestly substantial. While the risk of prejudice may be lower in civil cases than in criminal cases as Defendants suggest (Def. Mot. at 9), there is clearly a very real risk of prejudice from emphasizing to the jury that the plaintiff is a felon, as Defendants are itching to do in this case.

For these reasons, Defendants have not come close to overcoming the presumption against admissibility established by Rule 609(b). The evidence of prior convictions should therefore not be admitted for purposes of impeachment of Mr. Creamer.

## II. There Is No Other Permissible Purpose for Which the Evidence of Prior Convictions Would be Admissible

Fed. R. Evid. 404(b) prohibits admission of evidence of prior crimes for the purpose of proving character but permits admission for other purposes, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." Even if introduced for such an ostensibly permissible purpose, however, "'evidence of a prior conviction is subject to analysis under Rule 403 for relative probative value and for prejudicial risk of misuse as propensity evidence.'" *United States v. Sheffield*, 832 F.3d 296, 307 (D.C. Cir. 2016) (quoting *Old Chief v. United States,* 519 U.S. 172, 182 (1997)). In this case, the analysis can stop at the first step because there is no permissible purpose whatsoever for which the evidence of prior convictions could be introduced. The remote prior convictions have zero probative value because they are not material in any way to any factual issue in this case.

Defendants seem to be suggesting two potential permissible purposes for introduction of the prior convictions: (1) to show their supposed "journalistic purpose" in planning and carrying out their unlawful and fraudulent unlawful infiltration of and spying on Democracy Partners (Def.

Mot. at 11-14); and (2) that reporting on the convictions was somehow part of the content of the videos that led to loss of Plaintiff's contracts with AFSCME and AUFC. (*Id*. at 15). Both suggestions are completely illogical and baseless.

First, there is no factual issue in the case to which the prior convictions are relevant. Whether Defendants had any journalistic purpose in engaging in fraudulent misrepresentation is not an element of that tort. In their Motion for Summary Judgment (ECF No., 63), Defendants never raised that issue in arguing that they were entitled to judgment on that count. See Opinion on Sum. J. at 31-33.

To the extent Defendants are contending that their "journalistic purpose" is somehow relevant to establishing lack of "tortious purpose" under the federal and D.C. wiretapping statutes (Def. Mot. at 13), that contention is equally meritless. In denying Defendants' Motion for Summary Judgment on the wiretapping counts, this Court found that the "undisputed facts show that Maass secretly recorded all of the conversations, conference calls and meetings to which she had access as an intern precisely in order to disclose those conversations to her superiors at Project Veritas so they could be used by Project Veritas in their videos. These facts are sufficient to create a genuine dispute as to whether a 'determinative factor in [defendants'] motivation in intercepting the conversation[s] was to commit a [breach of fiduciary duty].'" Opinion on Sum. J. at 37 (quoting *CAIR v. Gaubatz*, 31 F. Supp. 3d 237, 257 (D.D.C. 2014)).

As to that factual issue, however, Defendants fail to show how Creamer's prior convictions are in any way material to proving that Project Veritas had a "journalistic purpose" as distinct from some other motivation, in devising and carrying out their infiltration and spying plot. Defendants have never, in their Motion for Summary Judgment or elsewhere, ever suggested the real motivation for their infiltration plot was to expose Creamer's widely publicized convictions from

8

22 years ago, or that discovery of the convictions somehow inspired them to hatch the infiltration plot. Indeed, in Defendants' two full pages of discussion, in their Motion in Limine, of the "genesis" of their "investigation" (Def. Mot. at 13-14), there is *not a single mention* of Mr. Creamer's prior convictions. Then, at the end of the discussion, Defendants suddenly conclude that the fact that "Creamer was a criminal political operative and historical bad actor emphasized the newsworthiness of the story Project Veritas pursued." (Def. Mot. at 14). This unsupported statement out of nowhere only emphasizes Defendants' real purpose in trying to introduce this evidence: to try to impugn Mr. Creamer's character before the jury in order to show propensity—to show that he's a "bad actor." That is of course precisely the purpose for which admission of the evidence is forbidden by Fed. R. Evid. 404.

Second, Defendants' suggestion that the prior convictions have anything to do with AFSCME's reaction to the content of their videos is absurd. AFSCME's witness never mentioned any reference to Mr. Creamer's prior convictions in discussing the Project Veritas video. Defendants' quotation of that witness (Def. Mem. at 15) contains no such mention. The notion that the Project Veritas video somehow publicly "exposed" Mr. Creamer's convictions that were widely publicized 14 years ago, and that such exposure somehow played some role in AFCSME's reaction to the Project Veritas infiltration and spying, is completely unsupported and illogical.

Having failed to overcome the presumption against admissibility for impeachment purposes, Defendants have failed to show that there is any other permissible purpose.

## CONCLUSION

For the reasons set forth above, Defendants' Motion in Limine to admit evidence of Mr. Creamer's prior remote convictions should be denied.

Respectfully submitted,

9

Dated:  May 7, 2020                              Respectfully submitted,

 /s/ Joseph E. Sandler

Joseph E. Sandler, D.C. Bar No. 255919
SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.
1090 Vermont Ave., N.W.  Suite 750
Washington, D.C.  20005
Tel:  202-479-1111
Fax:  202-479-1115
sandler@sandlerreiff.com


Aderson Francois, D.C. Bar No. 798544
INSTITUTE FOR PUBLIC REPRESENTATION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue NW, Suite 312
Washington, DC 20001
Phone: (202) 662-9593
abf48@georgetown.edu

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2020, I electronically filed the foregoing Plaintiffs' Opposition to Project Veritas Parties' Motion in Limine with the Clerk of Court using the CM/ECF system, which will automatically send email notifications to all counsel of record.

/s/  Joseph E. Sandler

Attorney for Plaintiffs