UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRACY PARTNERS, LLC, *et al.,* )<br>)<br>Plaintiffs, )<br>) Civ. No. 1:17-cv-1047-ESH<br>v. )<br>)<br>PROJECT VERITAS ACTION FUND, LLC, *et al.*, )<br>)<br>Defendants. )<br>) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
PROJECT VERITAS PARTIES' MOTION FOR RECONSIDERATION OF
SUMMARY JUDGMENT ORDER**

"[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Lyles v. District of Columbia*, 65 F. Supp. 3d 181, 188 (D.D.C. 2014) (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)). In this case, the Project Veritas Defendants (Defendants) have pointed to no intervening change in law, no new facts and no error by the Court and nothing else that would warrant reconsideration of this Court's carefully reasoned 44-page Memorandum Opinion of March 31, 2020 (ECF No. 83) ("Sum. J. Order") denying, in part, Defendants' Motion for Summary Judgment (ECF No. 63). Rather Defendants' Motion for Reconsideration is based on a twisted and illogical reading of two passages of one witness' deposition testimony. There is no basis at all for reconsideration, let alone a persuasive one  Accordingly, the Motion should be denied.

I.  **Legal Standard**

To be sure, Fed. R. Civ. P. 54(b) permits a District Court to reconsider and revise its own rulings prior to final judgment.  Although the District Court "is imbued with 'broad discretion' to entertain a Rule 54(b) motion, the court's and the parties' shared interest in judicial economy counsels against repeated consideration of matters already thoughtfully decided once." *Coulibaly v. Tillerson*, 278 F. Supp. 3d 294, 301 (D.D.C. 2017).  Accordingly, the "district court's discretion is 'limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required nor without good reason permitted, to battle for it again.'" *Lyles*, 65 F. Supp. 3d at 188 (quoting *Singh*, 383 F. Supp. 2d at 101).

"'[I]n general, a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: (1) an intervening change in the law; the discovery of new evidence not previously available; or (3) a clear error in the first order.'" *Stewart v. Panetta*, 826 F. Supp. 2d 176, 177 (D.D.C. 2011) (quoting *Johnson-Parks v. D.C. Chartered Health Plan*, 806 F. Supp. 2d 267, 268 (D.D.C. 2011) (internal quotation omitted)). "'The moving party has the burden of showing that reconsideration is warranted….'" *Henok v. Chase Home Finance, LLC*, 947 F. Supp. 2d 6, 10 (D.D.C. 2013) (quoting *Pueschl v. Nat'l Air Traffic Controllers Ass'n,* 606 F. Supp. 2d 82 85 (D.D.C. 2009)).

Here Defendants have utterly failed to meet that burden. There has been no intervening change in the law.  Defendants point to no new evidence. And the Court has made no error at all, let alone a "clear error."

II.  **The Deposition Passages at Issue Fully Support the Court's Decision on the Issue of Causation of Damages**

Defendants' Motion for Reconsideration ("Def. Mot') challenges the Court's finding that the Project Veritas infiltration and spying operation—as distinct from the content of Project

Veritas' videos-- was itself a factor in the decision by AFSCME to terminate its contract with Plaintiff Strategic Consulting Group. (Def. Mot. at 3-4). The issue was whether there was evidence that "defendants' non-expressive conduct was a substantial factor in the decisions by AFSCME and AUFC to terminate their contracts with Strategic Consulting." (Sum. J. Order at 16). The Court found that, while other factors may have contributed to AFSCME's decision to cancel the contract, "there is sufficient evidence to support plaintiffs' view that AFSCME was also concerned about the infiltration itself." (*Id*.).

The Court cited several passages from the deposition of Scott Frey, AFSCME's director of government affairs. Defendants take issue with the Court's citation of two of those passages. First, Defendants assert that the Court misread this testimony from Mr. Frey:

> Q. Okay. Okay. Why did [AFSCME Chief of Staff Bill Lurye] make that recommendation [to terminate the contract]?
> A. Again, we felt there was—understanding what we knew about this organization, Project Veritas, and their representation, their reputation for misrepresenting the facts and doing these types of videos, we did feel that there was an element of indiscretion that they'd allowed Mr. Foval into their midst without serious vetting, that they created a, it was the view at the time that they had create the opportunity for this, for this operation to occur, and it had become a major distraction to, and an unnecessary one at a critical moment in time.
> We did not want, we did not, we did not want to, we did not welcome the distraction it created.

(Excerpts of Deposition of Scott Frey, Def. Mot. Ex. A at 76:21—77:14).

Defendants argue that this testimony related solely to the act of retaining Scott Foval as a consultant, and not to the operation of infiltrating Democracy Partners' offices and secretly spying on people who worked there, as well as on numerous other persons working in other offices. They suggest that "allowing Mr. Foval into their midst" was what had "created the opportunity for this, for this operation to occur." But that is a twisted and illogical reading.

3

By any fair reading of this passage, Mr. Frey is saying three distinct things: (1) AFSCME was not concerned with the content of the videos—the "expressive content"—given Project Veritas' well-deserved "reputation for misrepresenting the facts;" (2) AFSCME was concerned that Democracy Partners, Strategic Consulting and Mr. Creamer had allowed Mr. Foval "into their midst;" and (3) AFSCME was *also* concerned that the Plaintiffs had "created the opportunity for this, for this operation to occur."

Clearly the reference to creating an "opportunity for this operation to occur" is not a reference to Foval, but to the infiltration and spying operation. There was no "operation" associated with Mr. Foval. He was simply videotaped in a bar. The only "operation" involved in this case was the infiltration and spying operation involving Ms. Maass. Were there any doubt about this interpretation, it was definitively resolved by the further testimony of Mr. Frey on cross-examination:

> Q. Okay. Thank you. Mr. Frey, you had testified that AFSCME was concerned that Mr. Creamer, Strategic Consulting Group, had created the opportunity for this to occur. Was part of your concern that they had allowed their offices to be infiltrated by a Project Veritas operative.
> A. Yes.

(Def. Mot. Ex. A at 102:13—19).

Second, Defendants object to the Court's citation of another passage from Mr. Frey's deposition:

> Q. Prior to the letter—let me back up. Did AFSCME have concerns about anything Mr. Creamer said on the video that was released?
> A. I am trying to remember what he said in the video, My recollection is that we did. We did have concerns with what he said. What specifically those were without reviewing the video again I wouldn't wouldn't recall specifically what those concerns were, but that he was speaking ad hoc about his strong ties to the Clinton campaign, and it seemed a bit inappropriate, but then again, we also were aware that, of the view that the video had been highly selectively edited, and likely, those words were taken out of context.
> I think it was the overall sense that they allowed this to occur, they invited this opportunity into their midst, but I think the broader concern was just clearly, regardless of

the circumstances that led to the video, the video in itself and the way it was released and the timing was a very unfortunate distraction, and we didn't want to be a party to it.

(Def. Mot. Ex. A at 78:6—79:5).

Defendants insist that this quotation supports their theory that the infiltration was not a factor in causing Plaintiffs' damages, because Mr. Frey cites a "broader concern" about the video's release "regardless of the circumstances that led to the video." (Def. Mot. at 7). Again, that is a twisted and illogical reading of this passage. The logical reading of this passage is that Mr. Frey is saying the fact of the video's existence and release was "a broader" concern to AFSCME; that again, however, AFSCME was *not* concerned about the actual *content* of the video given that "the video had been highly selectively edited and likely, those words [of Mr. Creamer] had been taken out of context;" and that they were *also* concerned that Democracy Partners and Strategic Consulting "had allowed this to occur, they had invited this opportunity into their midst…." Again, the only "opportunity" that Plaintiffs had "invited… into their midst" was the opportunity (created by Project Veritas' acts of fraud and dishonesty) for Ms. Maass to infiltrate Democracy Partners' offices and unlawfully, secretly spy and record those working there.

Moreover, Defendants made this exact same argument in their Motion for Summary Judgment. They cited this *exact same passage* from Mr. Frey's deposition and urged the same interpretation they now assert. (Project Veritas Parties' Memorandum in Support of Motion for Summary Judgment, ECF No. 63-1, filed May 6, 2019 at 13). This is not evidence "overlooked' by the Court in making its decision on summary judgment.

In short, the Court's citation of these passages was entirely logical and reasonable, and the quoted passages fully support the Court's conclusion that Mr. Frey's testimony creates a genuine issue of material fact on the issue of causation of damages. Thus, there was no error by the Court at all. Nor have Defendants pointed to any new evidence of intervening change in the law.

Defendants do "not assert that the Court misunderstood the parties, made a decision beyond the issues presented or failed to consider controlling precedent. Instead, [Defendants' motion for reconsideration] repeats the same facts and raises the same legal argument which was previously rejected on the merits. . . " *Henok*, 947 F. Supp. 2d at 10. This "attempt to relitigate the same issue in [a] motion for reconsideration does not satisfy Rule 54(b)'s requirements." *Id*. at 11. For this reason, Defendants' Motion for Reconsideration should be denied.

## CONCLUSION

For the reasons set forth above, the Project Veritas Parties' Motion for Reconsideration of Summary Judgment Order should be denied.

Dated:  May 18, 2020

Respectfully submitted,

 /s/ Joseph E. Sandler

Joseph E. Sandler, D.C. Bar No. 255919
SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.
1090 Vermont Ave., N.W.  Suite 750
Washington, D.C.  20005
Tel:  202-479-1111
Fax:  202-479-1115
sandler@sandlerreiff.com

Aderson Francois, D.C. Bar No. 798544
INSTITUTE FOR PUBLIC REPRESENTATION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue NW, Suite 312
Washington, DC 20001
Phone: (202) 662-9593
abf48@georgetown.edu

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

      I hereby certify that on May 18, 2020, I electronically filed the foregoing Plaintiffs' Opposition to Project Veritas Parties' Motion for Reconsideration of Summary Judgment Order with the Clerk of Court using the CM/ECF system, which will automatically send email notifications to all counsel of record.

      /s/  Joseph E. Sandler

      Attorney for Plaintiffs