UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRACY PARTNERS, LLC,            CASE NO.: 1:17-CV-1047-ESH
et al.,

    Plaintiffs,
v.

PROJECT VERITAS ACTION FUND,
et al.,

    Defendants.
_____/

**PROJECT VERITAS PARTIES' REPLY IN SUPPORT OF
MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER AS TO
CLEAR ERROR OF FACT REGARDING AFSCME RULE 30(b)(6) WITNESS SCOTT
FREY's TESTIMONY**

> "[B]ut I think the broader concern was just clearly, regardless of the circumstances that led to the video, the video in itself and the way it was released and the timing was a very unfortunate distraction, and we didn't want to be a party to it."
>
> [D.E. 68-15], AFSCME R. 30(b)(6) Witness Frey Depo. Tr. at 78:22-79:5 (Omitted portion of one of the erroneous partial quotes appearing in summary Order).

The Court's summary judgment ruling on First Amendment/causation relied on two erroneous partial quotations from the AFSCME Rule 30(b)(6) deposition. Neither of those sentence fragments support the proposition for which they are cited, and reviewing the deposition testimony itself at pages 76-79 demonstrates the clear error of fact. The impact of these errors drives the Court's conclusions as to AFSCME and AUFC First Amendment/Causation issues. Accordingly, the Project Veritas Parties request that the Court reconsider this discrete issue, and with these clear errors remedied, find that the evidence is insufficient to sustain Plaintiffs' claims as to AFSCME and AUFC.

1

Plaintiffs' Response attempts to obfuscate the plain meaning of the deposition testimony, playing fast and loose with the facts and engaging in selective editing that would lead the Court further astray. There is no substitute for reading pages 76-79 of the testimony itself, instead of Plaintiffs' characterizations of it.

**I. The First Erroneous Partial Quotation: Frey was testifying about Creamer and AUFC President Woodhouse "Creating[ing] the Opportunity for this Operation to Occur" by Welcoming AUFC National Field Director Scott Foval "into Their Midst Without Serious Vetting[.]"**

The first erroneous partial citation is excerpted from the following testimony:

> Q. Okay. Okay. Why did [AFSCME Chief of Staff Bill Lurye] make that recommendation [to terminate the relationship]?
> A. Again, we felt there was – understanding what we knew about this organization, Project Veritas, and their representation, their reputation for misrepresenting the facts[1] and doing these types of videos, we did feel that there was an element of indiscretion that they'd allowed Mr. Foval into their midst without serious vetting, that they created a, <u>it was the view at the time that they had created the opportunity for this, for this operation to occur, and it had become a major distraction to, and an unnecessary one at a critical moment in time.</u>
> We did not want, we did not, we did not want to, we did not welcome the distraction it created.

[D.E. 87-1] at 76:21-77:14 (excerpted testimony underlined).

Contrary to Plaintiffs' claims, there is nothing in this answer to indicate it related to Ms. Maass or her unpaid internship. The first half of the sentence makes it clear that Frey was talking about Foval: "[W]e did feel that there was an element of indiscretion that they'd allow Mr. Foval into their midst without serious vetting, that they created a, it was the view at the time that they

---

[1] The Project Veritas Parties do not misrepresent the facts or deceptively edit. One federal district court had occasion to rule that "Rigging the Election" Part I was accurate, and granted directed verdict for the Project Veritas Parties: "[T]he Plaintiff's contention that the Defendants concocted a storyline (Video I) and then consciously set out to create the 'evidence' (Foval's statements) to conform to that storyline is simply unsupported by Plaintiff's own evidence." *Teter v. Project Veritas, Project Veritas Action Fund, and James O'Keefe*, Case No. 1:17-cv-00256, 2019 WL 2423294, *4 (W.D.N.C. June 7, 2019) (Reidinger, J.).

had created the opportunity . . . ." Plaintiffs nonetheless deride this clearly correct reading as "twisted and illogical" and argue that "the reference to creating an 'opportunity for this operation to occur' is not a reference to Foval, but to the infiltration and spying operation involving Ms. Maass." [D.E. 92] at 3-4. Plaintiffs then juxtapose Frey's testimony in the above passage with his single affirmative answer on cross twenty-five pages later in the transcript. *Id.* Shame on them for this selective editing of testimony from much later in the transcript. *In the very next answer*, Frey reaffirms that the testimony from which the first erroneous partial quote is taken relates to Creamer and AUFC President Brad Woodhouse carelessly allowing *Foval* into their midst:

> [A. ....] We did not want, we did not, we did not want to, we did not welcome the distraction that it had created.
> Q. When you say they had let Mr. Foval out into their midst without proper vetting, you're referring to Mr. Creamer, Democracy Partners, and Strategic Consulting Group?
> A. That's correct, yes. We felt like that it was carelessness on their part.
> Q. And when you say they had created an environment where this could occur, whatever you testified to, you're referring to Creamer, Democracy Partners, Strategic Consulting Group, not to Project Veritas?
> A. I'm referring particularly to Mr. Creamer and Mr. Woodhouse in whatever capacity they were in.

[D.E. 87-1] at 77:12-78:5.

Frey was explicit when the question was asked and answered. Plaintiffs offer merely what they wish the witness was referring to, not the plain language of the testimony itself. Their attempt to bootstrap the single affirmative answer from twenty-five pages later does not change the meaning of the testimony. The Court need not look beyond pages 76-79 of the deposition transcript to correct the clear errors arising from the partial quotations, but if the Court accepts Plaintiffs' invitation to skip around, the transcript provides further support for the facially correct reading of this testimony elsewhere. *See* [D.E. 63-3] at 85:3-86:8. (Frey's testimony that he did not talk with Creamer about documentation he had requested from Ms. Maass before the first day of her unpaid

3

internship because "It all seemed very moot at the time[,]" and "Again, the circumstances of her presence there at that point seemed irrelevant . . . ."). It is also important to recognize that Frey would not have identified AUFC President "Mr. Woodhouse" as the other party responsible for "creat[ing] the environment where this could occur" if Frey was talking about Ms. Maass's unpaid internship. Woodhouse did not have a thing to do with offering Ms. Maass the unpaid internship (that was Creamer, *see e.g.* [D.E. 68-2] at ¶¶23-24) but he and AUFC were employing Creamer's associate Foval as National Field Director for AUFC. *See e.g.* [D.E. 68-16] at 52:17-53:9; *see also* as reported in "Rigging the Election," Part I, [D.E. 63-6] at 2:37-2:41.[2]

Thus, when the Court cited the first erroneous partial quotation in denying summary judgment on the AFSCME First Amendment/causation issue, a clear error of fact occurred. The testimony actually supports precluding Plaintiffs from claiming AFSCME damages.

**II. The Second Erroneous Partial Quotation: Frey was Actually Rejecting Plaintiffs' Theory of Causation but an Ellipsis Replaces Frey's Conclusion, "But I Think the Broader Concern was Just Clearly, Regardless of the Circumstances that Led to the Video, The Video In Itself and the Way it Was Released and the Timing was a Very Unfortunate Distraction, and We Didn't Want to Be a Party To It."**

The second erroneous partial quotation is excerpted from Frey's answer to the question which follows immediately after he reaffirmed that he was talking about Creamer and Woodhouse

---

[2] Foval's own description of how his role as simultaneous consultant for AUFC and subcontractor for Creamer facilitated coordination between a presidential campaign and Super PACs also appears in "Rigging the Election," Part I, including his comments, "That's why there's Bob [Creamer] who is the primary there and I'm a sub to him and I'm also a primary to AUFC separately . . . . It's less of a Morse code than it is a text conversation that never ends. It's like that. It's kind of an ongoing Pony Express." *Id.* at 5:03-6:42; *see also id.* at 3:11-3:21 (Foval stating, "The campaign pays DNC, DNC pays Democracy Partners, Democracy Partners pays the Foval Group, the Foval Group goes and executes the shit on the ground."). Investigative journalist Allison Maass never met or recorded Foval, and Plaintiffs base no claims on the recording of Foval by an altogether different Project Veritas investigative journalist.

creating the opportunity by allowing Foval into their midst without serious vetting. There was no reference to Allison Maass or her internship, not a word, in between:

> A. I'm referring particularly to Mr. Creamer and Mr. Woodhouse in whatever capacity they were in.
> Q. Prior to the letter – let me back up. Did AFSCME have concerns about anything Mr. Creamer said on the video that was released?
> A. I am trying to remember what he said in the video. My recollection is that we did. We did have concerns with that he said. What specifically those were without reviewing the video again I wouldn't, wouldn't recall specifically what those concerns were, but that he was speaking ad hoc about his strong ties to the Clinton campaign, and it seemed a bit inappropriate, but then, again, we also were aware that, of the view that the video had been highly selectively edited, and, likely, those words were taken out of context.
> <u>I think it was the overall sense that they allowed this to occur, they invited this opportunity into their midst</u>, but I think the broader concern was just clearly, regardless of the circumstances that led to the video, the video in itself and the way it was released and the timing was a very unfortunate distraction, and we didn't want to be a party to it.

[D.E. 68-15] at 78:6-79:5 (erroneous partial quotation underlined). The portion of the sentence omitted from the summary judgment order – the clause beginning with "but" – is a complete rejection of Plaintiffs' theory and demonstrates that their claim strikes at the heart of First Amendment protected activity. AFSCME's "broader concern" "was just clearly" "the video in itself" (i.e. expressive content) "and the way it was released" (i.e. publication of that expressive content to the public) and this was true "regardless of the circumstances that led to the video[.]"

This well-demonstrates the mistake of fact which has occurred. It is difficult to believe that the Court would intend to cite the sentence fragment that forms the second erroneous quote and deliberately omit the immediately following clause beginning with "but," which negates Plaintiffs theory. The actual sentence from which the second erroneous partial quotation was excerpted simply does not support the proposition for which that sentence fragment was cited in the summary judgment Order. As with the first erroneous partial quotation, this testimony supports the Project Veritas Parties' argument.

5

### III. The Significance of the Clear Errors of Fact.

The Court found "sufficient evidence to support plaintiffs' view that AFSCME was also concerned about the infiltration itself and the fact Creamer and Strategic Consulting had allowed it to occur," [D.E. 83] at 16-17 and it identified three pieces of evidence in support of that view: the two erroneous partial quotations excerpted from testimony that actually supports the Project Veritas Parties' First Amendment/causation argument, and Frey's one word affirmative answer on cross.  With the errors of fact regarding the Frey testimony rectified, the only evidence is Frey's one word agreement that the alleged infiltration was "part" of the concern. This pushes even the plaintiff-friendly District of Columbia case law on causation past its breaking point. A one word affirmative answer to the question whether it was "part" of the concern is not the requisite "substantial factor." Given Frey's testimony that "the broader concern was just clearly, regardless of the circumstances that led to the video, the video in itself and the way it was released and the timing was a very unfortunate distraction, and we didn't want to be a party to it," how could it be? The evidence does not rise above the "merely colorable," the "not significantly probative," or the "mere scintilla of evidence" that the United States Supreme Court has said is insufficient to avoid summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 and 252 (1986).

With these errors corrected, Plaintiffs' theory of causation is even more attenuated and extraordinary as to AUFC, which went out of business when AFSCME stopped funding it. When AFSCME made its decision, it cited two concerns to Woodhouse. Neither of them related to Allison Maass's presence with Democracy Partners. First, AFSCME cited that its President Lee Saunders came under criticism for having been chair of AUFC's Board, which a Wisconsin blog post revealed. [D.E. 63-10] AUFC R. 30(b)(6) witness Woodhouse Depo. Tr. at 67:16-68:1. "And

then the second thing I recall was that Lee was upset that he did not get prior notice that this was going – that this was happening." *Id.* at 68:2-4. Woodhouse had no knowledge that the internship led to AFSCME cutting ties with AUFC and did not recall it coming up in conversations with AFSCME. *Id.* at 100:18-101:4 ("It doesn't ring a bell."); *Id.* at 114:5-11 ("None that I'm aware of, I mean. Never – it never came up."); *Id.* at 123:1-13 ("I know it did not come up in the conversation with Scott [Frey].").

Plaintiffs claim that the Project Veritas Parties are seeking to re-litigate, apparently because the Project Veritas Parties have previously cited the testimony which demonstrates the clear error that occurred. Of course the Project Veritas Parties have always tried to make the import of the testimony clear. This Motion addresses a discrete issue where the Court has misapprehended what deposition testimony referred to and made a mistake of fact. The Court has based a ruling on testimony that does not support the proposition for which the Order cites it. This is exactly the situation in which a motion for reconsideration is proper.

Accordingly, the Project Veritas Parties request that the Court remedy the factual errors and reconsider its summary judgment ruling as to First Amendment/causation issues related to AFSCME and AUFC.

Respectfully submitted,

By:   /s/ Paul A. Calli
Paul A. Calli
Florida Bar No. 994121
Chas Short
Florida Bar No. 70633
CALLI LAW, LLC
14 NE 1st Ave, Suite 1100
Miami, FL 33132
Telephone: (786) 504-0911
Facsimile (786) 504-0912
PCalli@Calli-Law.com
CShort@Calli-Law.com

*Admitted pro hac vice*

| | |
|---|---|
| /s/ Kerry Brainard Verdi<br>Kerry Brainard Verdi, Esq.<br>Bar No. 478486<br>Benjamin R. Ogletree<br>Bar No. 475094<br>VERDI & OGLETREE PLLC<br>1325 G Street, NW, Suite 500<br>Washington, DC 20005<br>Telephone: (202) 449-7703<br>Facsimile: (202) 449-7701<br>kverdi@verdiogletree.com | /s/ Michael J. Madigan<br>Michael J. Madigan<br>Bar No. 71183<br>LAW OFFICES OF MIKE MADIGAN PLLC<br>3910 Hillandale Court NW<br>Washington DC 20007<br>Telephone: (202) 255-2055<br>Mjm20@mac.com |

/s/ Benjamin T. Barr
Benjamin Barr (*Pro Hac Vice*)
Stephen R. Klein
Bar No. 177056
BARR & KLEIN PLLC
444 N. Michigan Ave. #1200
Chicago, Illinois 60611
Telephone: (202) 719-1717
ben@barrklein.com
BARR & KLEIN PLLC
1629 K Street NW
Suite 300
Washington, DC 20006
Telephone: (202) 804-6676
steve@barrklein.com

*Counsel for Defendants Project Veritas Action Fund, Project Veritas, James O'Keefe, and Allison Maass*

## CERTIFICATE OF SERVICE

I CERTIFY that on May 22, 2020, I served the foregoing through the Court's electronic filing system which served a copy on all counsel of record.

*/s/ Paul A. Calli*
Paul A. Calli, Esq.