UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DEMOCRACY PARTNERS**, *et al.*,

Plaintiffs,

v.

**PROJECT VERITAS ACTION FUND**, *et al.*,

Defendants.

Civil Action No. 17-1047 (ESH)

### MEMORANDUM OPINION AND ORDER

Before the Court is defendants' motion for reconsideration of the Order granting in part and denying in part defendants' motion for summary judgment. (*See* Defs.' Mot. for Reconsideration, ECF No. 87 ("Mot.").) Plaintiffs have filed an opposition (*see* Pls.' Opp'n, ECF No. 92 ("Opp.")), and defendants have filed a reply (*see* Defs.' Reply, ECF No. 93). For the reasons stated herein, the motion is denied.

Defendants move for reconsideration to address what they describe as "two discrete and clear factual errors regarding the deposition testimony of AFSCME Rule 30(b)(6) witness Scott Frey." (Mot. at 1.) According to defendants, the Court "incorrectly interpreted quotations from Frey's testimony." (*Id.*) Defendants argue that these alleged errors matter because "the Court relied on this misapprehension in denying summary judgment on First Amendment/causation grounds as to alleged AFSCME damages and also AUFC damages." (*Id.* at 2.)

At issue are the two quotations in the "see also" clause in the following paragraph (highlighted in bold):

> ***AFSCME's cancellation of its contract with Strategic Consulting***: Defendants argue that the evidence shows that either plaintiffs' conduct (as displayed on the

videos) or considerations unrelated to Project Veritas, such as a lack of resources, were the *only* reasons behind AFSCME's decision to cancel its contract with Strategic Consulting. But while the evidence shows that these considerations played a part in AFSCME's decision, there is sufficient evidence to support plaintiffs' view that AFSCME was also concerned about the infiltration itself and the fact that Creamer and Strategic Consulting had allowed it to occur. Most notably, Scott Frey, AFSCME's director of government affairs, testified that, among AFSCME's other concerns, "part of [his] concern [was] that [plaintiffs] had allowed their offices to be infiltrated by a Project Veritas operative." (Frey Dep. at 102:16-19 (Sandler Decl. Ex. 12); ***see also* Frey Dep. at 77:8-11 ("[I]t was the view at the time that [plaintiffs] had created the opportunity for this operation to occur, and it had become a major distraction to, and an unnecessary one at a critical moment in time."); Frey Dep. at 78:20-22 ("I think it was the overall sense that they had allowed this to occur, they invited this opportunity into their midst. . . .").)**

*Democracy Partners v. Project Veritas Action Fund*, No. 17-cv-1047, 2020 WL 1536217, at *8 (D.D.C. Mar. 31, 2020) (emphasis added).

Defendants argue that the Court's citation of this testimony was clear error because (1) viewed in context, neither supports the main point (that "part of [his] concern [was] that [plaintiffs] had allowed their offices to be infiltrated by a Project Veritas operative"); and (2) without this evidence, there is not "sufficient evidence" that plaintiffs' damages were caused by defendants' non-First Amendment activity. The Court disagrees.

With respect to the first parenthetical, the excerpted text was part of the following question and answer (excerpted part in bold):

> Q. Okay. Okay. Why did [the AFSCME Chief of Staff Bill Lurye] make that recommendation [to terminate the relationship]?
>
> A. Again, we felt there was – understanding what we knew about this organization, Project Veritas, and their representation, their reputation for misrepresenting the facts1 and doing these types of videos, we did feel that there was an element of indiscretion that they'd allowed Mr. Foval into their midst without serious vetting, that they created a, **it was the view at the time that they had created the opportunity for this, for this operation to occur, and it had become a major distraction to, and an unnecessary one at a critical moment in time**.

> We did not want, we did not, we did not want to, we did not welcome the distraction it created.

Defendants contend that the Court misinterpreted Frey's testimony because "it is clear from the prior half of the sentence from which the erroneous partial quote was extracted that the subject was plaintiffs' "allow[ing] Mr. Foval into their midst without serious vetting" which "had created the opportunity for this, for this operation to occur[.]" (Mot. at 5.) But the Court does not agree that defendants' view is the only plausible interpretation of Frey's testimony. Another plausible interpretation, as plaintiffs point out, is that Frey was

> saying three distinct things: (1) AFSCME was not concerned with the content of the videos—the "expressive content"—given Project Veritas' well-deserved "reputation for misrepresenting the facts;" (2) AFSCME was concerned that Democracy Partners, Strategic Consulting and Mr. Creamer had allowed Mr. Foval "into their midst;" and (3) AFSCME was *also* concerned that the Plaintiffs had "created the opportunity for this, for this operation to occur."

(Opp. at 4.) In particular, the general reference to "this operation" could be referring to the entire Project Veritas project, including the infiltration of Democracy Partners' offices, not just the role Scott Foval may have played in that operation. That view is supported by Frey's later testimony when he unequivocally stated that "part of [his] concern [was] that [plaintiffs] had allowed their offices to be infiltrated by a Project Veritas operative." (Frey Dep. at 102.) On summary judgment, the evidence, and any inferences draw therefrom, must be viewed in the light most favorable to the plaintiffs. Through that lens, it is not "clear" that Frey's testimony was only about Foval. Moreover, plaintiffs' alternative and plausible interpretation must be what the Court takes as fact for purposes of summary judgment. Accordingly, the Court does not agree that its citation to the first excerpt of Frey's testimony was a clear error of "fact."

With respect to the second parenthetical, the excerpted text was part of the following question and answer (excerpted part in bold):

3

> Q. Prior to the letter – let me back up. Did AFSCME have concerns about anything Mr. Creamer said on the video that was released?
>
> A. I am trying to remember what he said in the video. My recollection is that we did. We did have concerns with that he said. What specifically those were without reviewing the video again I wouldn't, wouldn't recall specifically what those concerns were, but that he was speaking ad hoc about his strong ties to the Clinton campaign, and it seemed a bit inappropriate, but then, again, we also were aware that, of the view that the video had been highly selectively edited, and, likely, those words were taken out of context.
>
> **I think it was the overall sense that they allowed this to occur, they invited this opportunity into their midst,** but I think the broader concern was just clearly, regardless of the circumstances that led to the video, the video in itself and the way it was released and the timing was a very unfortunate distraction, and we didn't want to be a party to it.

(Frey Dep. at 78-79.)  Defendants argue that if Frey's testimony had been quoted in its entirety it would be clear that Frey "conclusively rejects [p]laintiffs' theory of damages." (Mot. at 7.) But the Court does not agree that Frey's statement that the "broader concern" was the video itself is a "conclusive reject[ion]" of plaintiffs' theory of damages, especially given Frey's later testimony that "part of [his] concern [was] that [plaintiffs] had allowed their offices to be infiltrated by a Project Veritas operative." (Frey Dep. at 102.)  Again, the evidence must be viewed in the light most favorable to the plaintiffs, and in that light there is a material factual dispute as to whether defendants' non-First Amendment activity was a substantial factor in causing plaintiffs' damages.

Finally, even if the Court agreed with defendants' view of the excerpted testimony in the two parentheticals, it would not, contrary to defendants' assumption, reach a different conclusion.  (*See* Mot. at 8 ("Had the Court also believed the single affirmative answer was sufficient evidence of a substantial factor, it is safe to assume that the Court would not have also cited the erroneous partial quotes.").)  Even without the testimony cited in the parentheticals, the fact that Frey testified that AFSCME was "concern[ed] that [plaintiffs] had allowed their offices

4

to be infiltrated by a Project Veritas operative" (Frey Dep. at 102) would be sufficient evidence – when viewed in the light most favorable to plaintiffs – to defeat defendants' motion for summary judgment on the issue of whether defendants' non-First Amendment activity was a substantial factor in bringing about the damages attributable to AFSCME's cancellation of their contract.

Accordingly, it is hereby

**ORDERED** that defendants' motion for reconsideration is **DENIED**.

.



ELLEN S. HUVELLE
United States District Judge

Date:   August 27, 2020