UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                      )
DEMOCRACY PARTNERS, LLC, et al.,      )
                                      )
            Plaintiffs,               )
                                      )
     v.                               )   Civil Action No. 17-1047 (PLF)
                                      )
PROJECT VERITAS ACTION FUND, et al.,  )
                                      )
            Defendants.               )
_____)

OPINION AND ORDER

Defendants Project Veritas Action Fund, et al., have filed a pretrial Motion to Admit Creamer's Federal Felony Convictions for Bank Fraud and Tax Crimes ("Def. Mot.") [Dkt. No. 85]. Defendants ask the Court to order that plaintiff Robert Creamer's convictions in 2005 for bank fraud, in violation of 18 U.S.C. § 1344(1), and for failure to pay withholding taxes and subscribing false returns, in violation of 26 U.S.C. §§ 7202 and 7206, are admissible for two evidentiary purposes: "(1) as impeachment of Creamer pursuant to Rule 609(b)" of the Federal Rules of Evidence, and (2) "as direct evidence to explain Project Veritas's purpose of investigating a newsworthy story . . . and to rebut Plaintiffs' theory of causation." Def. Mot. at 1-2.

Plaintiffs Democracy Partners, et al., oppose the motion, arguing that defendants cannot overcome the presumption against admitting remote prior convictions under Rule 609(b), and that the convictions are not admissible as direct evidence because they are not relevant to any issue in the case. Plaintiffs' Memorandum in Opposition to Project Veritas Parties' Motion in

Limine to Admit Creamer's Federal Felony Convictions for Bank Fraud and Tax Crimes ("Pl. Opp.") [Dkt. No. 90] at 1-2.

The parties appeared via videoconference on July 22, 2021 for oral arguments on the motion, at which time the Court denied the motion with respect to the Rule 609(b) argument.[1] As the Court explained from the bench, evidence of Mr. Creamer's convictions for violating 18 U.S.C. § 1344(1) and 26 U.S.C. §§ 7202 and 7206 likely would not be admitted under Rule 609(a)(2) because neither of those statutory offenses requires proof of a dishonest act or false statement. See FED. R. EVID. 609 advisory committee's notes to 1990 amendments and 2006 amendments; see also Cree v. Hatcher, 969 F.2d 34, 37-38 (3d Cir. 1992). This makes the convictions much less probative of credibility and truthfulness than convictions for crimes that inherently involve misrepresentations or false statements. See Cree v. Hatcher, 969 F.2d at 38. The Court therefore held that under section (b) of the Rule, which governs remote convictions – here, convictions that are more than 15 years old – and which embodies a presumption of inadmissibility, defendants had not met their burden of demonstrating that the probative value of the convictions "substantially outweighs [their] prejudicial effect." FED. R. EVID. 609(b).

The Court took under advisement defendants' arguments that the convictions nevertheless should be admitted as direct evidence. For the reasons explained below, the Court now concludes that the convictions are not admissible as direct evidence and denies the motion in full.[2]

---

[1] On July 22, 2021, the Court also heard oral arguments on Project Veritas Parties' Motion in Limine to Exclude Plaintiffs' Politically-Motivated Efforts to Introduce Irrelevant Evidence [Dkt. No. 100]. The Court will issue a separate opinion and order on that motion in due course.

[2] The documents that the Court has considered in connection with the pending motion include: Project Veritas Parties' Statement of Material Facts in Support of Summary Judgment ("Def. Stmt. Material Facts") [Dkt. No. 63-2]; Plaintiffs' Memorandum in Opposition to

2

## I.  LEGAL STANDARD

Courts evaluate the admissibility of evidence on a pretrial motion in limine according to the framework established by Rules 401 and 402 of the Federal Rules of Evidence. See Daniels v. District of Columbia, 15 F. Supp. 3d 62, 66 (D.D.C. 2014).  First, "the Court must assess whether the evidence is relevant." Id. at 66.  "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  FED. R. EVID. 401.  "Relevant evidence is admissible," unless an applicable authority provides otherwise, whereas "[i]rrelevant evidence is not admissible."  FED. R. EVID. 402.  The proponent of admitting an item of evidence has the initial burden of establishing relevance.  See Dowling v. United States, 493 U.S. 342, 351 n.3 (1990); United States v. Gonzalez, 507 F. Supp. 3d 137, 147 (D.D.C. 2020).

Even if the proponent can demonstrate the relevance of an item of evidence, however, a court may conclude it is inadmissible if "the United States Constitution; a federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court" provides for its exclusion.  FED. R. EVID. 402.  "If evidence is relevant, it is up to the non-offering party to invoke a specific rule, from the body of rules listed in Rule 402, that justifies exclusion of the evidence." 1 STEPHEN A. SALTZBURG, MICHAEL M. MARTIN & DANIEL J. CAPRA, FEDERAL RULES OF EVIDENCE MANUAL § 402.02[2] (12th ed. 2021).

---

Defendants' Motion for Summary Judgment ("Pl. Opp. SJ") [Dkt. No. 68]; Plaintiffs' Statement of Material Facts in Opposition to Summary Judgment ("Pl. Stmt. Material Facts") [Dkt. No. 68-1]; Plaintiffs' Exhibit 12 in Opposition to Summary Judgment ("Frey Dep. Excerpts") [Dkt. No. 68-15]; Project Veritas Parties' Motion to Admit Creamer's Federal Felony Convictions for Bank Fraud and Tax Crimes ("Def. Mot.") [Dkt. No. 85]; Defense Exhibit B – Chicago Tribune Article ("Def. Ex. B") [Dkt. No. 85-2]; Defense Exhibit G – Chicago Tribune Article ("Def. Ex. G") [Dkt. No. 85-7]; Plaintiffs' Memorandum in Opposition to Project Veritas Parties' Motion in Limine to Admit Creamer's Federal Felony Convictions for Bank Fraud and Tax Crimes ("Pl. Opp.") [Dkt. No. 90]; and Project Veritas Parties' Reply in Support of Motion to Admit Creamer's Federal Felony Convictions for Bank Fraud and Tax Crimes ("Def. Reply") [Dkt. No. 91].

II.  DISCUSSION

Defendants seek to admit Mr. Creamer's 2005 convictions as direct evidence in support of two arguments.  First, they contend that the convictions "explain Project Veritas's purpose of investigating a newsworthy story," which they will use as a defense against plaintiffs' wiretap claims.  Def. Mot. at 1.  Second, they say they will use the convictions "to rebut Plaintiffs' theory of causation" concerning plaintiff Strategic Consulting Group's loss of its contract with the American Federation of State, County and Municipal Employees ("AFSCME").  Id. at 2.  In both instances, defendants do not carry their burden of showing that the convictions are relevant under Rule 401.

### A.  *Evidence of Project Veritas's Purpose*

Plaintiffs have brought claims pursuant to federal and District of Columbia wiretap statutes, arguing that defendants unlawfully intercepted communications when a Project Veritas employee, Allison Maass – who was operating under a false identity as "Angela Brandt" in order to obtain an internship with Democracy Partners – secretly recorded conversations during her internship.  Complaint ¶¶ 78-93; see also Democracy Partners v. Project Veritas ("Democracy Partners III"), 453 F. Supp. 3d 261, 267, 270 (D.D.C. 2020).  Both wiretap statutes prohibit interception of oral communications unless one party to a communication consents to the interception.  See 18 U.S.C. § 2511(2)(d); D.C. CODE § 23-542(b)(3).  Both statutes also provide that even where one party consents, the interception is unlawful if made for the purpose of committing a criminal or tortious act.  See 18 U.S.C. § 2511(2)(d); D.C. CODE § 23-542(b)(3).[3]

---

[3] The District of Columbia wiretap statute also includes an exception to the one-party consent rule if information is intercepted for the purpose of "committing any other injurious act." D.C. CODE § 23-542(b)(3).  Plaintiffs do not rely on the "injurious act" language and it is not at issue in this case.  Pl. Opp. SJ at 29; see also Democracy Partners III, 453 F. Supp. 3d at 290 n.26.

Judge Huvelle, who presided over this case before her retirement, allowed the wiretap claims to proceed with respect to any communications to which Ms. Maass was a party on the theory that defendants acted with the tortious purpose to commit a breach of fiduciary duty. Democracy Partners v. Project Veritas ("Democracy Partners II"), 285 F. Supp. 3d 109, 123-24 (D.D.C. 2018).

Defendants now argue that they "must defend themselves" against the wiretap claims "by offering evidence of their prior knowledge of Creamer's convictions . . . which highlighted the newsworthiness of the story they investigated and why they did so." Def. Mot. at 11. According to this argument, defendants' knowledge of Mr. Creamer's convictions shows that they "organically followed the threads of this news story to Creamer," id. at 14, and helps rebut any argument that they acted with a tortious purpose, id. at 13.

The Court finds these arguments unconvincing. Defendants do not present any evidence in their motion to show that they set out to collect information on Mr. Creamer because of his convictions. Prior to filing this present motion, defendants do not appear ever to have made such a claim. Their own statement of material facts submitted in connection with their motion for summary judgment mentions the convictions only briefly, introducing Mr. Creamer as "a felon who was convicted of bank fraud and failure to pay withholding taxes in 2005," and noting that "[t]hose convictions were discussed in 'Rigging the Election,'" the video that Project Veritas produced based on Ms. Maass's recordings. See Def. Stmt. Material Facts ¶ 2.

In fact, defendants set forth in their statement of facts a contrary explanation for their investigation of Mr. Creamer, which focuses on voter fraud schemes and "bracketing" activity related to 2016 presidential campaigns. Defendants explained that they learned about Mr. Creamer when an individual named Scott Foval described Mr. Creamer to a Project Veritas agent as "the possible source of [a] voter fraud scenario." Def. Stmt. Material Facts ¶ 58. Following this encounter, "Project Veritas journalists researched Robert Creamer" and "came across e-mails

5

from the Clinton Campaign released by WikiLeaks, including one from Mr. Creamer "advising recipients of a 'Trump Rapid Response/Bracketing Call.'" Id. ¶ 59.  Defendants' investigation reportedly evolved through subsequent meetings between Mr. Creamer and another Project Veritas agent, including a meeting in which Mr. Creamer discussed an initiative involving "bracketing" appearances of then-candidates Donald Trump and Mike Pence. Id. ¶¶ 60-64.  Ms. Maass subsequently interned with Democracy Partners under the alias "Angela Brandt" and recorded a number of conversations. Id. ¶¶ 66-70, 79.  Defendants emphasized that the "Rigging the Election" video series included conversations about "a proposed voter fraud scenario," id. ¶ 3, and "aggressive 'bird-dogging' operations at Donald Trump events," id. ¶ 4.  This account of how the investigation evolved omits mention of Mr. Creamer's convictions altogether.

Judge Huvelle discussed defendants' decision to target Mr. Creamer in her opinion on summary judgment.  See Democracy Partners III, 453 F. Supp. 3d at 269.  Her account, which was based on facts that were "either undisputed or established by uncontroverted evidence," id. at 267, also includes no suggestion that defendants were acting in response to Mr. Creamer's convictions.  Judge Huvelle wrote:

> Project Veritas employee Hartsock first heard Creamer's name in the spring of 2016, when he introduced himself (using the fake name of "Steve Packard") to Foval, who was not then working for Strategic Consulting or AUFC.  What Hartsock heard about Creamer from Foval led Project Veritas to research Creamer and, ultimately, to target him and Democracy Partners as part of their purported investigation into potential "voter fraud" in the 2016 election.

Id. at 269 (citations omitted).

Defendants' argument about the relevance of the convictions to their investigative activities is not only unsupported; it is also counterintuitive.  As plaintiffs' counsel explained in his brief and at oral argument on the motion in limine, Mr. Creamer's convictions were widely publicized when they occurred some fifteen years ago.  See Pl. Opp. at 2, 8-9.  Even before Mr.

Creamer was convicted, the financial misconduct that led to the convictions received media coverage.  See Def. Ex. B (newspaper article from 1997 discussing FBI investigation of Mr. Creamer's check-kiting scheme); Def. Ex. G (same).  Defendants have not described what new information they hoped to uncover from investigating Mr. Creamer in relation to these convictions, or why the convictions would be deemed newsworthy in 2016, given this broad coverage more than a decade earlier.

In their Reply, defendants say they anticipate that plaintiffs will characterize defendants' conduct "as an 'infiltration' and deny the legitimacy of the journalism that [defendants] engage in," and that "[b]y framing their case in this manner, Plaintiffs have made every single newsworthy fact the Project Veritas Parties knew about Creamer relevant."  Def. Reply at 15.  Under the Federal Rules of Evidence, however, relevance is not established in such a blanket manner.  Evidence is only relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  FED. R. EVID. 401.  Defendants fail to show that a fact of consequence in this action is made more or less likely by their knowledge of Mr. Creamer's convictions.

Because the prior convictions are not relevant to the wiretap claims, they are not admissible on that basis.  See FED. R. EVID. 402.

### B.  Evidence to Rebut Plaintiffs' Theory of Causation

Defendants next argue that the convictions should be admissible as direct evidence to rebut plaintiffs' theory of causation with respect to Strategic Consulting Group's loss of its contract with AFSCME.  Def. Mot. at 11.  Plaintiffs "have maintained that they are seeking only damages proximately caused by defendants' non-expressive conduct," and Judge Huvelle declined to dismiss the damages claims because she concluded that "plaintiffs could, at least in theory,

7

recover for such damages without raising any First Amendment concerns." <u>Democracy Partners III</u>, 453 F. Supp. 3d at 274.

Defendants now argue that their expressive conduct in reporting on Mr. Creamer's convictions caused plaintiffs' damages because AFSCME "reacted to the content of Project Veritas's reporting in [the video] 'Rigging the Election' Part I . . . which included discussion of Creamer's prior felony convictions." Def. Mot. at 11. For support, defendants cite the deposition statements of Scott Frey, who testified on behalf of AFSCME pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. In responding to a series of questions about AFSCME's reasons for terminating its contract, Mr. Frey stated in part:

> [W]e felt there was – understanding what we knew about this organization Project Veritas, and their representation, their reputation for misrepresenting the facts and doing these types of videos, we did feel that there was an element of indiscretion that [plaintiffs] allowed Mr. Foval into their midst without serious vetting, that they created . . . the opportunity for this . . . operation to occur, and it had become a major distraction to[o], and an unnecessary one at a critical moment in time.

Frey Dep. Excerpts at 24. Mr. Frey continued in response to further questioning:

> I think it was the overall sense that they allowed this [operation] to occur, they invited this opportunity into their midst, but I think the broader concern was just clearly, regardless of the circumstances that led to the video, the video in itself and the way it was released and the timing was a very unfortunate distraction, and we didn't want to be party to it.

Frey Dep. Excerpts at 25-26. Defendants focus on the second set of statements quoted above and contend that because the video that Mr. Frey mentioned includes "a clinical and accurate reporting of Creamer's crimes and his sentence," Def. Reply at 19, defendants "are entitled to show how this is part of an alternative explanation of causation," Def. Mot. at 15.

The record does not support defendants' theory. Mr. Frey did not mention Mr. Creamer's convictions in the deposition statements upon which defendants focus, either explicitly

8

or by implication. In fact, Mr. Frey does not appear to have made any reference to the convictions in any of the portions of his deposition that the parties submitted to the Court, even though he responded to extensive questioning about AFSCME's reasons for terminating its relationship with Strategic Consulting Group. See Frey Dep. Excerpts. Defense counsel acknowledged at oral argument that neither party even asked Mr. Frey at the deposition whether the convictions played any role in AFSCME's decision to terminate the contract, and that there was no testimony on that issue one way or the other.

        The Court moreover does not interpret Mr. Frey's deposition statements to show that AFSCME terminated its contract because of the content of the video, as defendants suggest. In the statement that defendants repeatedly quote, Mr. Frey referred not just to "the video in itself," but also to "the way it was released and the timing," Frey Dep. Excerpts at 26, making clear that the circumstances surrounding the release of the video drove AFSCME's decision. Throughout his deposition, Mr. Frey repeatedly discussed the "distraction" that the video caused, emphasizing the consequences of the video's release more so than the information contained in the video. See id. at 21, 24, 26. Mr. Frey also expressly confirmed that "part of [his] concern [was] that [plaintiffs] had allowed their offices to be infiltrated by a Project Veritas operative." Id. at 39. The Court agrees with Judge Huvelle that the most straightforward interpretation of Mr. Frey's deposition statements – including the statements upon which defendants rely in their motion in limine – supports plaintiffs' theory that AFSCME reacted at least in part to defendants' non-expressive conduct in creating and releasing the video. See Democracy Partners III, 453 F. Supp. 3d at 275.[4]

---

[4]     Defendants challenged Judge Huvelle's interpretation of these statements in a motion for reconsideration, which Judge Huvelle denied, explaining that she simply "does not agree" with defendants' contrary interpretation. Democracy Partners v. Project Veritas Action

In the absence of any support in the record, the Court cannot infer that defendants' reporting on Mr. Creamer's convictions makes it any more likely that AFSCME terminated the contract <u>because</u> of the content of the video.  Again, Mr. Creamer's convictions were a matter of public record more than ten years before defendants published this video and there is no evidence that AFSCME learned of the convictions for the first time from the video.  AFSCME had access to information about Mr. Creamer's convictions that it could consider each time it chose to renew its contract with Strategic Consulting Group between 2007 and 2016.  <u>See</u> Def. Stmt. Material Facts ¶ 22; Pl. Stmt. Material Facts at 13.  In contrast to <u>Salmons, Inc. v. First Citizens Bank & Trust Co.</u>, Civil Action No. 2:10cv72, 2011 WL 4828838 (E.D. Va. Oct. 11, 2011), upon which defendants rely, there is not a commonsense connection between Mr. Creamer's prior convictions and AFSCME's business with Strategic Consulting.  <u>See id</u>. at *3 (admitting prior bank fraud conviction as direct evidence of causation in relation to plaintiff's inability to obtain a loan).

Defendants suggest that the jury must see "[t]he entire video . . . including the discussion of Creamer's conviction, given the simple fact of the timing of the cancellation and AFSCME's clear testimony that they reacted to 'the video in itself.'"  Def. Reply at 19.  Yet for the reasons discussed above, Mr. Creamer's prior convictions do not appear relevant to AFSCME's decision to terminate its contract.  Although the Federal Rules of Evidence acknowledge certain instances in which fairness requires that a recorded statement be considered in full, <u>see</u> FED. R. EVID. 106, defendants have not articulated any specific unfairness that would result from excluding the portion of the video that mentions Mr. Creamer's convictions.

Defendants have failed to show that their reporting on Mr. Creamer's convictions is relevant to rebutting plaintiffs' theory of causation regarding AFSCME's decision to cancel its

---

Fund ("<u>Democracy Partners IV</u>"), Civil Action No. 17-1047, 2020 WL 5095484, at *3 (D.D.C. Aug. 27, 2020).

10

contract with Strategic Consulting Group.  The convictions therefore are not admissible on this basis.  See FED. R. EVID. 402.

### III.  CONCLUSION

For the reasons set forth above and on the record at the July 22, 2021 hearing, the Court concludes that the defendants have failed to establish any basis for admitting evidence of Mr. Creamer's prior convictions, either as impeachment evidence under Rule 609(b) of the Federal Rules of Evidence, or as direct evidence that is relevant under Rule 401 of the Federal Rules of Evidence.  It therefore is hereby

ORDERED Project Veritas Parties' Motion to Admit Creamer's Federal Felony Convictions for Bank Fraud and Tax Crimes [Dkt. No. 85] is DENIED; it is

FURTHER ORDERED that defendants may not introduce evidence of Mr. Creamer's prior convictions for impeachment purposes or examine him at trial about these convictions; and it is

FURTHER ORDERED that defendants may not introduce evidence of Mr. Creamer's prior convictions as direct evidence.

SO ORDERED.

\_\_\_\_/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  September 21, 2021