UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
DEMOCRACY PARTNERS, LLC, et al.,        )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )        Civil Action No. 17-1047 (PLF)
                                        )
PROJECT VERITAS ACTION FUND, et al.,    )
                                        )
            Defendants.                 )
_____)

OPINION AND ORDER

Defendants Project Veritas Action Fund, et al., have filed a pretrial Motion in
Limine to Exclude Plaintiffs' Politically-Motivated Efforts to Introduce Irrelevant Evidence ("Def.
Mot.") [Dkt. No. 100]. Defendants ask the Court for an order excluding three sets of evidence and
characterizations: "(1) various categories of Donald Trump-related distractions, (2) Plaintiffs'
efforts to mischaracterize Project Veritas as a 'political spying operation,' and (3) absurd 'Russia'
references." Id. at 1-2.

Plaintiffs Democracy Partners, et al., oppose the motion, arguing that (1) "[t]he
politically-related evidence" is probative of defendants' motives and whether they were acting as
journalists, (2) plaintiffs' characterizations of defendants' activities are accurate and therefore are
neither prejudicial nor misleading, and (3) plaintiffs do not intend to refer to links between
defendants and Russia, but it is "simply part of the background story of this case" that defendants
reviewed emails released by WikiLeaks. Plaintiffs' Memorandum in Opposition to Defendants'
Motion in Limine No. 2 to "Exclude Politically Motivated Efforts to Introduce Irrelevant
Evidence" ("Pl. Opp.") [Dkt No. 103] at 2.

The parties appeared via videoconference on July 22, 2021 for oral argument, at which time the Court granted the motion in part with respect to the third category of evidence.[1] The Court explained from the bench that references to Russia or a Russian conspiracy do not appear relevant to any issue in this case, and that it would be unfairly prejudicial for plaintiffs to suggest a connection between defendants and Russia.  Consistent with this conclusion, plaintiffs' counsel confirmed at oral argument that he had no intention of introducing evidence concerning, or making any reference to, Russia.  On the other hand, the Court concluded that the fact that defendants reviewed emails released by WikiLeaks does appear relevant to the factual history of this case.  Both sides agree that defendants reviewed such emails in the context of gathering information on plaintiff Robert Creamer, and only after reviewing these emails decided to launch the operation targeting plaintiffs.  See Def. Mot. at 18-19; Pl. Opp. at 14-15.  The Court therefore held that neither side may make any reference to Russia or a Russian conspiracy, but either side may refer to WikiLeaks and the fact that defendants reviewed emails released by WikiLeaks.

The Court took under advisement defendants' remaining arguments.  For the reasons that follow, the Court now concludes that the five items of "Trump evidence" discussed in this Opinion are admissible in relation to plaintiffs' wiretap claims.  The Court will decide at trial whether defendants have opened the door to admission of additional evidence and argument concerning a connection between defendants and Donald Trump.  The Court also concludes that plaintiffs have a good faith factual basis for characterizing defendants' conduct in relation to this

---

[1]      On July 22, 2021, the Court also heard oral argument on Project Veritas Parties' Motion to Admit Creamer's Federal Felony Convictions for Bank Fraud and Tax Crimes [Dkt. No. 85].  The Court issued a separate Opinion and Order [Dkt. No. 111] denying that motion.  See Democracy Partners v. Project Veritas ("Democracy Partners V"), Civil Action No. 17-1047, 2021 WL 4272606 (D.D.C. Sept. 21, 2021).

case as a political spying operation.  The Court therefore grants defendants' motion in part and denies it in part.[2]

## I.  DISCUSSION

### A.  *"Trump Evidence"*

Defendants explain that "[b]ased on Plaintiffs' efforts during discovery and at the summary judgment stage," they expect plaintiffs to attempt at trial "to tie Project Veritas and its journalists to Donald Trump."  Def. Mot. at 12.  Plaintiffs respond that "evidence of Project Veritas' active support for the Trump campaign in 2016 is highly probative" of issues that will be discussed at trial.  Pl. Opp. at 2.  Plaintiffs identify the following five items of evidence that they wish to introduce relating to Mr. Trump:

(1) That Project Veritas president and founder James O'Keefe met with Donald Trump and his campaign manager when President Trump was a candidate for the Republican nomination for President, in January or February of 2016.

(2) That O'Keefe was present in the "spin room," accompanied by Donald Trump, Jr. for one of the general election debates between then-candidate Trump and Secretary Hillary Clinton, and had no press credential, *i.e.*, he was there as an advocate and not as a reporter.

(3) That O'Keefe attended the general election night party for the Trump campaign in New York City and posted on Instagram a picture of himself and another Project Veritas employee with the caption, "it's going to be a historic night here in NYC.  [V]eritas has made its mark."

---

[2]     The documents that the Court has reviewed in connection with the pending motion include:  Project Veritas Parties' Statement of Material Facts in Support of Summary Judgment ("Def. Stmt. Material Facts") [Dkt. No. 63-2]; Plaintiffs' Statement of Material Facts in Opposition to Summary Judgment ("Pl. Stmt. Material Facts") [Dkt. No. 68-1]; Project Veritas Parties' Motion in Limine to Exclude Plaintiffs' Politically-Motivated Efforts to Introduce Irrelevant Evidence ("Def. Mot.") [Dkt. No. 100]; Plaintiffs' Memorandum in Opposition to Defendants' Motion in Limine No. 2 to "Exclude Politically Motivated Efforts to Introduce Irrelevant Evidence" ("Pl. Opp.") [Dkt No. 103]; and Project Veritas Parties' Reply in Support of Motion in Limine to Exclude Plaintiffs' Politically-Motivated Efforts to Introduce Irrelevant Evidence ("Def. Reply") [Dkt No. 104].

(4) The following excerpts from O'Keefe's book, AMERICAN PRAVDA, introducing a chapter entitled "Channeling Chicago[,]" which relates specifically to the events giving rise to this lawsuit:

> Political analysts say Wikileaks, the Russians and James Comey all played a role in getting Donald Trump elected as the forty-fifth President of the United states of America. ***Those paying attention give a fair share of credit to Project Veritas*** . . . . Candidate Trump mentioned our investigation in the third and final presidential debate. On her campaign plane shortly after the first Democracy Partners story went viral, Hil[l]ary Clinton tensed up when asked by Fox News about our work. Of course, she dismissed us but what else could she do? . . . However, reluctantly every major news media platform from the New York Times to CBS to my old nemesis NPR had our stories front and center just weeks before the election . . . . At least 5 million people were given a powerful incentive not to vote for the [Democratic] party that was corrupting the democratic process.

(5) Post by Project Veritas employee Laura Loomer to her Facebook page of a video of her hitting a pinata in the form of Hillary Clinton, in 2016.

Pl. Opp. at 9-10 (citations omitted).

1. Legal Standard

Courts evaluate the admissibility of evidence on a pretrial motion in limine according to the framework established by Rules 401 and 402 of the Federal Rules of Evidence. See Daniels v. District of Columbia, 15 F. Supp. 3d 62, 66-67 (D.D.C. 2014). First, "the Court must assess whether the evidence is relevant." Id. at 66. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. "Relevant evidence is admissible," unless an applicable authority provides otherwise, whereas "[i]rrelevant evidence is not admissible." FED. R. EVID. 402. The proponent of admitting an item of evidence has the

initial burden of establishing relevance.  See Dowling v. United States, 493 U.S. 342, 351 n.3

(1990); United States v. Gonzalez, 507 F. Supp. 3d 137, 147 (D.D.C. 2020).

Even if the proponent can demonstrate the relevance of an item of evidence,

however, a court may still conclude that it is inadmissible if "the United States Constitution; a

federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court"

provide for its exclusion.  FED. R. EVID. 402.  At issue in this motion is Rule 403 of the Federal

Rules of Evidence, which provides that a court may "exclude relevant evidence if its probative

value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

FED. R. EVID. 403.  Because virtually all material evidence is prejudicial in one way or another,

Rule 403 results in exclusion only where the prejudice is unfair.  United States v. Cassell, 292

F.3d 788, 796 (D.C. Cir. 2002).  "If evidence is relevant, it is up to the non-offering party to

invoke a specific rule, from the body of rules listed in Rule 402, that justifies exclusion of the

evidence." 1 STEPHEN A. SALTZBURG, MICHAEL M. MARTIN & DANIEL J. CAPRA, FEDERAL RULES

OF EVIDENCE MANUAL § 402.02[2] (12th ed. 2021).

## 2.  Tortious Purpose

### a.  Relevance

Plaintiffs suggest that the five items of so-called "Trump evidence" are relevant

because they are probative of defendants' "claim that [defendant Allison] Maass did not have a

tortious purpose in making the secret recordings in Democracy Partners' offices and elsewhere

because she was engaged in 'newsgathering.'"  Pl. Opp. at 8.  Defendants respond that "a

generalized desire to see Donald Trump elected is not relevant to the legal question as Plaintiffs

have framed it through their causes of action."  Def. Reply at 2.

As the Court has explained previously, plaintiffs' claims under the federal and District of Columbia wiretap statutes are proceeding on the theory that defendants intercepted communications with the tortious purpose of committing a breach of fiduciary duty.  See Democracy Partners V, 2021 WL 4272606, at *2-3.  Plaintiffs' argument is that "(1) a fiduciary relationship existed between [defendant Allison] Maass and Democracy Partners based on Maass' status as an intern with access to confidential information; [and] (2) she breached her fiduciary duty to Democracy Partners by, inter alia, surreptitiously recording meetings and conversations held in non-public spaces without consent or authorization and providing those recordings to her employer, Project Veritas, for publication."  Democracy Partners v. Project Veritas ("Democracy Partners III"), 453 F. Supp. 3d 261, 278 (D.D.C. 2020) (quotation marks and alterations omitted).

The Court agrees with plaintiffs that the "Trump evidence" is relevant to defendants' allegedly tortious purpose in intercepting plaintiffs' communications.  During the time relevant to this case, plaintiffs maintained a "contract with the Democratic National Committee (DNC) to manage a 'bracketing' program, the purpose of which was to present counter-messaging wherever candidate Trump or his running mate held campaign events."  Pl. Opp. at 3.  In other words, plaintiffs actively liaised with the Democratic Party and opposed Mr. Trump's candidacy in the months leading up to the 2016 election.  The intercepted conversations at the heart of the wiretap claims involved campaign "bracketing" events, as well as private meetings at DNC offices.  Id. at 4.  Defendants published some of the intercepted communications in a video on October 17, 2016, mere weeks before the presidential election.  Democracy Partners III, 453 F. Supp. 3d at 271.  According to defendants, this video included discussion of a "voter fraud scenario" and activists at Trump campaign events.  Def. Mot. at 3-4.  The fact that defendants favored the Republican presidential candidate, while plaintiffs supported the Democratic Party and

opposed the Republican candidate, is relevant to defendants' motivation for intercepting plaintiffs'

communications in the context of this election-related activity.

Defendants, of course, are correct that "a generalized desire to see Donald Trump

elected" is not a tort.  Def. Reply at 2.  Breach of fiduciary duty, however, is a tort.  The presence

of a valid, non-tortious purpose does not immunize a defendant from liability under the wiretap

statutes if that defendant also has a tortious purpose that is "the primary motivation" or "a

determinative factor" in intercepting the communications.  <u>Democracy Partners III</u>, 453 F.

Supp. 3d at 287 (citing <u>United States v. Dale</u>, 991 F.2d 819, 842 (D.C. Cir. 1993)); <u>see</u> <u>also</u> <u>In re</u>

<u>DoubleClick Inc. Privacy Litig.</u>, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001) ("[T]he mere

existence of a lawful purpose alone does not 'sanitize an interception that was also made for an

illegitimate purpose.'" (alterations omitted) (quoting <u>Sussman v. Am. Broadcasting Co.</u>, 186

F.3d 1200, 1202 (9th Cir. 1999))).  The cases defendants cite for the proposition that

newsgathering is "a permissible, non-tortious purpose to engage in one-party consent recording,"

Def. Reply at 4, therefore are inapposite.  In each of those cases, the plaintiffs had failed to

sufficiently plead a tortious purpose.  Here, plaintiffs survived summary judgment on their theory

that defendants intended to commit a breach of fiduciary duty.  <u>See</u> <u>Democracy Partners III</u>, 435 F.

Supp. 3d at 287.  The issue for trial is not whether plaintiffs have adequately pled intent to commit

a tort, but whether they can persuade the jury that such intent was at least a determinative factor in

intercepting the communications.

Defendants argue that the "Trump evidence" cannot be relevant to tortious purpose

because "[t]he 'tortious purpose' analysis depends on contemporaneous intent," and the evidence

is not sufficiently connected to Ms. Maass's intent "at the time" she made the recordings.  Def.

Mot at 14-15 (citing <u>In re DoubleClick Inc. Privacy Litig.</u>, 154 F. Supp. 2d at 515); <u>see</u> <u>also</u> Def.

Reply at 3.  Yet Ms. Maass's "contemporaneous intent" must be viewed in context.  She obtained

access to the recorded conversations through a plan hatched by defendants over the course of many months.  Beginning in April of 2016, at least three Project Veritas agents assumed false identities to engage with plaintiffs and associates of plaintiffs.  Democracy Partners III, 453 F. Supp. 3d at 269-70; see also Def. Stmt. Material Facts ¶¶ 56-68.  Defendants' efforts included creating the character of "Charles Roth," a potential donor who had a niece, "Angela Brandt," with an interest in a political internship.  Mr. Roth told Mr. Creamer that Ms. Brandt had an interest in "political work for progressive organizations."  Democracy Partners III, 453 F. Supp. 3d at 269-70.  He also told Mr. Creamer that he would make a $20,000 donation to Americans United for Change ("AUFC"), an advocacy group that was a client of defendant Strategic Consulting.  Id. at 267-68, 270.  This sequence of interactions and misrepresentations culminated in August of 2016 with Mr. Creamer offering an internship position with Democracy Partners to "Angela Brandt," played by Ms. Maass.  Id.; see also Def. Stmt. Material Facts ¶ 68.

Ms. Maass's internship began on September 21, 2016, and terminated on October 14, 2016.  Democracy Partners III, 453 F. Supp. 3d at 270.  Ms. Maass "secretly recorded everything she saw and heard during her internship . . . [and] provided her superiors at Project Veritas detailed daily written summaries of all the key events, calls, and conversations she had secretly recorded that day."  Id. at 271.  In other words, Ms. Maass undertook the internship and made the recordings on behalf of Project Veritas and as part of a Project Veritas operation.  Her "specific contemporaneous intent" in making the recordings, Def. Mot. at 15, is intertwined with defendants' collective efforts to have her infiltrate Democracy Partners and obtain information under a false identity.

For this same reason, defendants' contention that "[t]here is simply no 'Trump' evidence as to Allison Maass whatsoever," Def. Reply at 3, is unavailing.  Four of the items of evidence that plaintiffs seek to introduce involve Project Veritas founder and President James

O'Keefe, who is a defendant in this case.  See Pl. Opp. at 9-10.  Two of the items of evidence

relate to Project Veritas as an organization and statements about Project Veritas's "mark" or the

"credit" it should receive in relation to Donald Trump's election.  See id.  Broadly, the evidence

suggests that Project Veritas supported the Republican Party's presidential candidate and opposed

the Democratic Party's candidate.  It therefore is relevant to whether an intent to commit a breach

of fiduciary duty was a determinative factor in defendants' plan to intercept plaintiffs'

communications.

b.  Risk of Unfair Prejudice or Confusion

Defendants argue that "[a]ny minimal relevance of Plaintiffs' 'Trump' evidence is

substantially outweighed by dangers identified in [Federal Rule of Evidence] 403," Def. Reply

at 6, because admitting the evidence would "lead to the risk of confusion of the issues by the jury

and the risk of unfair prejudice[,] given our politically polarized times," Def. Mot. at 15.

Defendants point out that Mr. Trump received only five percent of the vote in the District of

Columbia in the 2020 presidential election, that the undersigned has publicly addressed Mr.

Trump's comments about judges, and that a mob of Mr. Trump's supporters stormed the U.S.

Capitol building – which is located in the District of Columbia – on January 6, 2021.  Defendants

contend that "[i]f Plaintiffs are allowed to make this trial into a referendum on Donald Trump, the

risk of confusion of the issues and potential unfair prejudice is profound."  Def. Mot. at 16.

The Court finds this argument unconvincing.  Juror bias and confusion are risks in

any trial and courts employ established practices to guard against these risks, such as inquiring

about bias during jury selection and providing carefully crafted jury instructions.  In addition, "it is

presumed that the jury will be true to their oath" to "return a verdict solely upon the evidence

adduced during the course of the trial," and to "conscientiously observe the instructions of the

9

court." United States v. Kyle, 469 F.2d 547, 550 (D.C. Cir. 1972) (internal quotation marks omitted); see also United States v. Stone, Criminal No. 19-0018, 2020 WL 1892360, at *28 (D.D.C. Apr. 16, 2020) ("It is the law in this Circuit that [] statements by jurors [about their ability to be impartial] are 'not inherently suspect, for a juror is well qualified to say whether he has an unbiased mind in a certain matter.'" (quoting United States v. Butler, 822 F.2d 1191, 1196-97 (D.C. Cir. 1987))).

Notwithstanding the voting patterns of residents of the District of Columbia, numerous politically charged and high-profile cases have been tried in this district, including prosecutions arising from the Whitewater investigation and the Iran-Contra investigation. See, e.g., United States v. Hubbell, 167 F.3d 552 (D.C. Cir. 1999); United States v. North, 713 F. Supp. 1452 (D.D.C. 1989). Recently, individuals connected with former President Trump, including confidante Roger Stone and former national security advisor Michael Flynn, have faced prosecution in this district. See Indictment, United States v. Stone, Criminal No. 19-0018 (D.D.C. Jan. 24, 2019) [Dkt. No. 1]; Indictment, United States v. Flynn, Criminal No. 17-0232 (D.D.C. Nov. 30, 2017) [Dkt. No. 1]. It is not the case that any evidence suggesting a connection between defendants and the former president inherently leads to "unfair prejudice," or that any discussion of political affinities "confus[es] the issues." FED. R. EVID. 403.

Furthermore, the Court agrees with both sides that "[t]his case will necessarily involve discussion of the 2016 election and Plaintiffs' . . . conduct therein." Pl. Opp. at 11 (quoting Def. Mot. at 16). Each side's statement of material facts submitted in connection with summary judgment refers repeatedly to plaintiffs' political activities and to Ms. Maass's involvement in those activities during her internship. See, e.g., Def. Stmt. Material Facts ¶¶ 7, 13, 17, 59, 63, 122; Pl. Stmt. Material Facts at 12, 28, 30, 36, 46, 49. Again, the fact that plaintiffs supported one political party in the 2016 election and that defendants supported the other

party's candidate is relevant to what brought them into conflict in this case. Disclosing

defendants' political orientation to the jury would not "make this trial into a referendum on

Donald Trump," Def. Mot. at 16, any more than disclosing plaintiffs' support for the Democratic

Party would make the trial a referendum on Hillary Clinton.

   Because the probative value of these five items of evidence is not outweighed by

the risk of unfair prejudice or of confusing the issues, plaintiffs may introduce this evidence at trial

in relation to the issue of tortious purpose under the wiretap statutes.

### 3. Journalism Defense

#### a. Relevance

   Plaintiffs also contend that the so-called "Trump evidence" "is highly probative of

[Project Veritas's] claim to be an independent media organization." Pl. Opp. at 8. Yet plaintiffs

do not identify any legal or factual issues that turn on this claim. Plaintiffs themselves suggest

that defendants' status as journalists may <u>not</u> be relevant to any claim or defense in this case,

noting that they "will challenge the legal relevance of this 'journalism' defense," <u>id</u>. at 2, and may

move in limine to block defendants from making certain arguments on this basis, <u>id</u>. at 9 n.2.[3]

   The Court is not persuaded that defendants' supposed journalistic status is a "fact []

of consequence in determining th[is] action." FED. R. EVID. 401(b). The parties discuss this in

relation to plaintiffs' claims under the wiretap statutes, yet these statutes do not include any special

provision for recordings made by journalists. See <u>Sussman v. Am. Broadcasting Co.</u>, 186 F.3d

at 1202 ("Congress could have drafted [18 U.S.C. § 2511] so as to exempt all journalists from its

coverage, but did not."); <u>In re DoubleClick Inc. Privacy Litig.</u>, 154 F. Supp. 2d at 517 ("Courts

---

[3]   Under the current scheduling order, motions in limine are due October 25, 2021.
March 8, 2021 Order [Dkt. No. 99] ¶ 10. Plaintiffs have not yet filed any such motion.

interpreting [18 U.S.C.] § 2511(2)(d) have drawn no distinction between media defendants and the general public.").  In addition, as discussed above, even if defendants had a non-tortious journalistic purpose for intercepting the communications, this would not relieve them of liability under the wiretap acts if they also had a tortious purpose, and that tortious purpose was at least a determinative factor in their motivation for making the recordings.  See Sussman v. Am. Broadcasting Co., 186 F.3d at 1202; Democracy Partners III, 453 F. Supp. 3d at 287.

The Court concludes that plaintiffs have failed to establish that defendants' journalistic status is a "fact [] of consequence" in this action, Fed. R. Evid. 401, and therefore, they have failed to establish that evidence connecting defendants to Mr. Trump is relevant on this basis.  Plaintiffs cannot rely on such evidence in their case-in-chief for the purpose of establishing that defendants are not journalists or that Project Veritas is not a newsgathering organization. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").  The Court does not reach the issue of Rule 403 balancing with respect to using the "Trump evidence" in this manner.

b.  Opening the Door

Even when a party is precluded from offering evidence or making a particular argument in its case-in-chief, however, the opposing party may "open the door" to broader argumentation by putting additional facts in issue at trial.  United States v. Baird, 29 F.3d 647, 653 (D.C. Cir. 1994).  Doing so can render the previously inadmissible evidence "relevant and admissible."  Id.; see also id. at 654 ("Once the door is opened, the other party can get through it otherwise irrelevant evidence 'to the extent necessary to remove any unfair prejudice which might otherwise have ensued.'" (quoting United States v. Brown, 921 F.2d 1304, 1307 (D.C. Cir. 1990))); 21 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5039.1 (2d ed. 2005) ("[A]s the parties offer relevant evidence to prove

their cases, each bit of evidence opens up new avenues of refutation and confirmation that expand the realm of relevance beyond those consequential facts expressed in the pleadings.").  A party may be permitted to present evidence or arguments that would otherwise have been prohibited in order to "fairly respond[] to an argument of the [opposing party]," because both sides must have "the opportunity to meet fairly the evidence and arguments of one another."  United States v. Robinson, 485 U.S. 25, 33-34 (1988).

Plaintiffs contend that if defendants claim to have acted as journalists, "[p]laintiffs should be allowed to introduce evidence to show that Project Veritas . . . was a partisan operation strongly committed to assisting then-candidate Trump in getting elected President."  Pl. Opp. at 9. The Court agrees.  If defendants at trial make arguments, offer evidence, or elicit testimony concerning their status as "investigative journalists," Def. Mot at 1, engaged in "truthful reporting," id. at 8, plaintiffs in turn will be entitled to present additional arguments, introduce rebuttal evidence, or cross-examine witnesses on this subject "to prevent the jury from forming the erroneous impression that the proper characterization of [defendants' journalistic status i]s undisputed."  Griffin v. Washington Convention Ctr., 142 F.3d 1308, 1312 (D.C. Cir. 1998); see also United States v. Meadows, 867 F.3d 1305, 1317 (D.C. Cir. 2017) (defendant who introduced evidence to "portray herself as making good-faith repayment" of fraudulently obtained unemployment benefits "opened the door for questions designed to prevent the jury from being misled" (internal quotation marks omitted)).

If defendants open the door, plaintiffs may be entitled to use evidence suggesting a connection between defendants and Donald Trump more broadly when they cross-examine witnesses and make closing arguments.  For example, plaintiffs may be permitted to question Mr. O'Keefe about whether it is typical for a journalist to attend a presidential candidate's general election night party, or whether Mr. O'Keefe was acting in a journalistic capacity when he met

13

with Mr. Trump in early 2016 and when he was in the "spin room" for a general election debate.
See Pl. Opp. at 9.  In closing arguments, plaintiffs may be able to cite evidence connecting
defendants to Mr. Trump in arguing to the jury that the evidence shows that defendants were not
acting as investigative journalists.  Such evidence may become relevant in additional ways that the
Court cannot now anticipate.

The Court will decide at trial whether defendants open the door in a manner that
would allow plaintiffs to use evidence and make arguments concerning Donald Trump to address
defendants' asserted status as journalists.

### B.  "Political Spying Operation" Characterization

Defendants next argue that plaintiffs should be precluded from referring to Project
Veritas as a "political spying operation," because this description "is completely untethered to the
facts and evidence," and would be "monumentally prejudicial."  Def. Mot. at 16.  Plaintiffs
respond that this characterization "is both absolutely fair and has been adopted by Project Veritas
itself."  Pl. Opp. at 12.

### 1.  Legal Standard

This portion of defendants' motion does not relate to specific items of evidence, but
"appear[s] to be asking the Court to preclude Plaintiffs, in opening or closing argument, o[r] in
wording questions, from characterizing the infiltration giving rise to this lawsuit, or Project
Veritas itself, as a 'political spying operation.'"  Pl. Opp. at 11.

The D.C. Circuit "has long made clear . . . that statements made in opening and
closing arguments to the jury [must be] supported by evidence introduced at trial."  United States
v. Watson, 171 F.3d 695, 702 (D.C. Cir. 1999).  Similarly, counsel must have "a good faith basis"
for initiating a line of questioning in cross-examination that has the potential to cause prejudice or

mislead the jury.  United States v. Lin, 101 F.3d 760, 767 (D.C. Cir. 1996); see also United States

v. Sampol, 636 F.2d 621, 658 (D.C. Cir. 1980) ("[C]ounsel must have a reasonable basis for

asking questions on cross-examination which tend to incriminate or degrade the witness and

thereby create an unfounded bias which subsequent testimony cannot fully dispel.").  In the

absence of such a good faith evidentiary basis, "any probative value" of a representation may be

"substantially outweighed by the dangers of confusing the issues for the jury to address,

misleading the jury, causing under delay, and wasting time."  Hardin v. Dadlani, 221 F.

Supp. 3d 87, 108 (D.D.C. 2016).

### 2.  Good Faith Evidentiary Basis

Plaintiffs stated at oral argument that the "political spying" characterization would

come in at trial through the words of defendant James O'Keefe himself.  Specifically, plaintiffs

pointed to a book authored by Mr. O'Keefe, AMERICAN PRAVDA, in which Mr. O'Keefe wrote

about the events that gave rise to this lawsuit and made the following statements:

> [Allison Maass's] daily movements had to reflect her assigned role.
> She was literally living out her character in America's capital city
> much as Americans overseas did in Moscow during the Cold War.

Pl. Opp. at 12 (quoting JAMES O'KEEFE, AMERICAN PRAVDA 116 (2018)).  Apparently referring to

"Mass'[s] successful use of her fake persona and fraudulent and false representations to have

Creamer take her with him to go to meetings at the headquarters of the Democratic National

Committee," Pl. Opp. at 12, Mr. O'Keefe wrote:

> The last time operatives got caught stealthily entering the DNC
> headquarters, those headquarters were in the Watergate complex.
> Remember that kerfuffle?

Pl. Opp. at 12 (quoting O'KEEFE, AMERICAN PRAVDA at 117).  Finally, plaintiffs assert that Mr.

O'Keefe's book discussed "that Maass had devised an elaborate scheme to evade having her

recording device disclosed by the metal detector used at the entrance to the DNC headquarters building." Id. at 13.

The Court concludes that Mr. O'Keefe's statements in AMERICAN PRAVDA provide a sufficient good faith evidentiary basis for plaintiffs to characterize defendants' conduct in the events that gave rise to this case as a "political spying operation" and to question Mr. O'Keefe about the conduct in those terms.  Mr. O'Keefe himself referred to "stealthily entering the DNC headquarters" and drew a comparison to the Watergate Hotel break-in, demonstrating the political nature of the operation from his perspective.  See Pl. Opp. at 12 (quoting O'Keefe, AMERICAN PRAVDA at 117).  Mr. O'Keefe also referred to "Americans overseas [] in Moscow during the Cold War," who were "living out [their] assigned character[s]," a clear reference to American spies in Russia.  See id. (quoting O'Keefe, AMERICAN PRAVDA at 116).

Defendants argue that AMERICAN PRAVDA cannot support this characterization because the writing is separated in time from the infiltration and was drafted with a consumer audience in mind.  See Def. Reply at 9.  Yet Mr. O'Keefe's book describes the very events that are at issue in this suit.  Although published roughly a year and a half after Ms. Maass's internship terminated, the book shows that Mr. O'Keefe himself – a defendant in this case and the leader of Project Veritas  – viewed the conduct at issue as accomplished by "operatives" who were "stealthily" infiltrating restricted spaces.  Pl. Opp. at 12 (quoting O'KEEFE, AMERICAN PRAVDA at 117).

The Court also agrees that "political spying" is a fair characterization of the undisputed facts in this case.  Defendants agree that at least three agents of Project Veritas used false identities in their interactions with plaintiffs.  Def. Stmt. Material Facts ¶¶ 56, 60, 66.  It is undisputed "that Mass/Brandt secretly recorded everything she saw and heard during her internship . . . and that she provided her superiors at Project Veritas detailed daily written

summaries of all the key events, calls, and conversations she had secretly recorded that day."

Democracy Partners III, 453 F. Supp. 3d at 271.  This is consistent with "spying."  Defendants

make clear that they researched plaintiffs and developed the plan for this operation in response to

plaintiffs' activities related to supposed voter fraud and campaign events, supporting the

"political" nature of their conduct.  Def. Stmt. Material Facts ¶¶ 56-65.

        As the Court noted at oral argument, defendants have made clear that they will

frame their actions in this case as newsgathering by investigative journalists.  See Def. Mot.

at 1-3, 6-8, 12-13; Def. Stmt. Material Facts ¶ 55.  The other side of that coin is that plaintiffs may

seek to frame defendants' actions in other terms.  In light of the good faith evidentiary basis

discussed above, such framing is not unfairly prejudicial.  The jury will be able to evaluate which

characterization it finds most persuasive, in view of all of the testimony, evidence, and arguments

presented at trial.

        The Court's decision is limited to defendants' conduct in relation to the events that

gave rise to this case.  The Court reaches no conclusion about whether there is any good faith

evidentiary basis for describing Project Veritas's conduct generally in this manner.

## II.  CONCLUSION

        For the reasons set forth above and on the record at the July 22, 2021 oral

argument, the Court concludes that the five items of Trump-related evidence are relevant to

plaintiffs' claims under the wiretap statutes and do not carry a risk of unfair prejudice.  The Court

will decide at trial whether defendants have opened the door to admission of additional evidence

and argument concerning a connection between defendants and Donald Trump.  The Court also

concludes that plaintiffs have a sufficient good faith evidentiary basis for referring to Project

Veritas's conduct in relation to this case as a "political spying operation."  Finally, as the Court

previously held, references to Russia are not relevant to any issue in this case and would be unfairly prejudicial, but the fact that defendants reviewed emails released by WikiLeaks is relevant and admissible.  It therefore is hereby

       ORDERED Project Veritas Parties' Motion in Limine to Exclude Plaintiffs' Politically-Motivated Efforts to Introduce Irrelevant Evidence [Dkt. No. 100] is GRANTED IN PART with respect to the Russia references and DENIED in all other respects; it is

       FURTHER ORDERED that plaintiffs may introduce the five items of evidence identified on pages 3-4 of this Opinion at trial in relation to their wiretap claims; it is

       FURTHER ORDERED that plaintiffs may refer to defendants' conduct in relation to the events that gave rise to this case as a "political spying operation"; it is

       FURTHER ORDERED that no party may refer to Russia, any role of Russia in the release of WikiLeaks emails, or any conspiracy related to Russia; and it is

       FURTHER ORDERED that either party may discuss the fact that defendants reviewed emails released by WikiLeaks.

       SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  October 14, 2021