UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRACY PARTNERS, LLC, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civ. No. 1:17-cv-1047-PLF |
| v. | ) |
| | ) |
| PROJECT VERITAS ACTION FUND, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE RELATING TO EXPOSURE OF DEFENDANT ALLISON MAASS'
SUBSEQUENT ATTEMPT TO SECRETLY RECORD ANOTHER ORGANIZATION**

Two months after the conclusion of the events giving rise to this lawsuit—the infiltration of the Democracy Partners office by Defendant Allison Maass, acting for Defendant Project Veritas Action Fund—Ms. Maass contacted a progressive advocacy organization, People's Action, not related to any of the parties to this suit. She posed as a representative of a donor to progressive causes that wanted to fund disruptions of President Trump's inauguration on January 20, 2017. The plan was uncovered when someone working for People's Action checked with Lauren Windsor, one of the principals of a member company of Plaintiff Democracy Partners. Windsor had dealt with Maass during Maass' internship at Democracy Partners and is a witness in this case. Windsor recognized who Maass really was and, with others who are not parties or witnesses in this case, planned and carried out an operation in which Ryan Clayton, an official of a group allied with People's Action arranged to meet Maass at a restaurant in Washington, D.C. Windsor and some individuals helping her then secretly videotaped the conversation between Maass and Clayton. The participants in this operation then disclosed to Maass that they knew who she really

was, revealed their own identities to Maass, and then chased her out of the restaurant, yelling at her at close range and appearing to harass her as she attempts to get into a car service and eventually enters a hotel.

In their revised Exhibit List, Defendants indicate they are planning to introduce into evidence the videotape taken by Maass of the confrontation in the restaurant and the subsequent chase, together with fourteen emails relating to efforts by Windsor and her colleagues at Democracy Partners to promote their own videos of the conversation at the restaurant. This evidence should be excluded. First, the evidence has no conceivable relevance to any factual issue in this case. To the extent that Defendants seek to introduce it to show that "Plaintiffs do the same thing they are accusing us of doing," there is no basis for its admission. The Maass sting operation was *not* the same thing as the conduct challenged in this lawsuit. To be sure, Project Veritas did the same thing—they made secret recordings in restaurants, bars, and hotels of Plaintiff Robert Creamer and of Scott Foval. But Plaintiffs are not challenging any of that conduct in this lawsuit. They are challenging the infiltration (by Maass) of the Democracy Partners office over an extended period, that involved actual damages sustained based on false misrepresentation and secret recordings made for the purpose of breaching a fiduciary duty. And even if it were the same thing, there is no basis for its admission under the Federal Rules of Evidence.

Second, even if it the evidence were in any way relevant, it should be excluded under Fed. R. Evid. 403 because its introduction would confuse the jury and create risk of unfair prejudice. Precisely because Defendants want to introduce it to show that Plaintiffs are guilty of the conduct of which they are accusing Defendants, when that is completely inaccurate, would badly confuse the jury as to what issues are actually being tried. Further, the footage is highly inflammatory, and likely to inflame the jury's emotions, creating significant risk of unfair prejudice.

I. **Factual Background**

In late December, more than two months after the conclusion of the events giving rise to this lawsuit—the infiltration of the Democracy Partners office by Defendant Allison Maass, acting for Defendant Project Veritas Action Fund—Ms. Maass contacted a progressive advocacy organization, People's Action, not related to any of the parties to this action. She posed as a representative of a donor to progressive causes that wanted to fund disruptions of President Trump's inauguration on January 20, 2017. (Defendants' Exhibit 157, attached hereto as Exhibit 1). The plan was uncovered when someone working for People's Action checked with Lauren Windsor, one of the principals of a member company of Plaintiff Democracy Partners. Windsor had dealt with Maass at Democracy Partners and is a key witness in this case. She recognized who Maass was and, with others who are *not* parties or witnesses in this case, planned and carried out a "Maass sting operation" that took place on January 5, 2017.

In the Maass sting operation, Ryan Clayton, then head of a group allied with People's Action, contacted Maass, *id.*, and they arranged to meet at a restaurant in Washington, D.C. The Maass sting operation participants videotaped the encounter. Other Maass sting operation participants sat at nearby table and one of them taped the conversation between Clayton and Maass. The Maass sting operation participants then disclosed they knew her true identity and revealed their own identity as well. Maass fled the restaurant with the Maass sting operation participants, including Windsor, Clayton and others, chasing her, yelling at her at close range and appearing to harass her as she attempted to get into a car service. Maass taped the confrontation at the restaurant and the ensuing chase. (Videotape by Maass, Def. Ex. 178, Ex. 2 hereto, consisting of flash drive provided to the Court and retained by counsel pursuant to LCvR 5.4(e)(1)). .

In their revised Exhibit List, Defendants indicate they are planning to introduce into evidence the videotape taken by Maass of the confrontation at the restaurant and subsequent chase episode (Def. Ex. 178, attached hereto as Ex. 2), together with thirteen emails relating to efforts by Windsor and her colleagues at Democracy Partners to promote the videos.  (Defendants' Exhibits 158-170, inclusive, attached hereto as Exhibits 3-15 respectively).

## II. EVIDENCE RELATING TO THE "MAASS STING OPERATION" SHOULD BE EXCLUDED

### A. Legal Standard

In determining the admissibility of proffered evidence, first "'the Court must assess whether the evidence is relevant…'" *Flythe v. District of Columbia*, 4 F. Supp. 3d 222, 226 (D.D.C. 2014)(quoting *Daniels v. District of Columbia*, 15 F. Supp. 3d 62, 66 (2014)).  If evidence is not relevant, it is not admissible.  Fed. R. Evid. 402.  Even if it is relevant, evidence may be excluded under Fed. R. Evid. 403 "if its probative value is substantially outweighed by danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury…."

### B. Evidence Relating to the Maass Sting Is Not Relevant

Relevant evidence is "evidence that makes the existence of any fact at issue more or less probable." *Huddleston v. United States,* 485 U.S. 681, 687 (1988); *see* Fed. R. Evid. 401.  Nothing about the Maass sting operation in any way makes the existence of any fact at issue in this case more or less probable.  The Maass sting operation involved an effort by Project Veritas to secretly record dealings with an organization unrelated to any of the Plaintiffs in this case.  It took place more than two months after the end of the infiltration of Democracy Partners by Maass, acting on behalf of Project Veritas, that is the subject of this litigation.  Whatever Windsor did in the course of the Maass sting operation does not make more or less probable any of the contested factual assertions in this case: the existence of fiduciary duty of Mass during her internship with

4

Democracy Partners; the purposes of her secret recording of everything that happened and everyone she encountered, inside and outside of Democracy Partners, during her internship; and the question of whether the damages to Strategic Consulting were proximately caused by the infiltration based on her Maass' false representations. *See* Memorandum Opinion on Motion for Summary Judgment, Dkt. No. 83 at 6-18 (disputed issue of fact as to causation of damages); 27-30 (disputed issue of fact as to existence of fiduciary relationship); 32-33 (disputed issue of fact as to whether fraudulent misrepresentation caused damages); 37 (genuine dispute as to whether Maass' secret recording was for a tortious purpose).

When counsel for Plaintiffs questioned counsel for Defendants as to the reason Defendants sought to introduce this evidence, Defendants' counsel indicated it would be to show that "what's sauce for the goose is sauce for the gander." In other words, Defendants seek to use this evidence to show that Plaintiffs are accusing Defendants of doing something that Plaintiffs later did themselves, to the Defendants—which just seems unfair. But there are two fundamental problems with introducing the evidence for such a purpose.

First, the Maass sting operation did *not* involve the same conduct as that being challenged in this lawsuit. To be sure, in the course of the events giving rise to this suit, Project Veritas operatives secretly taped targets in bars and restaurants: Scott Foval in a bar in Wisconsin and Plaintiff Robert Creamer in a hotel lobby then at a restaurant, in Washington, D.C. (Defendants' Statement of Material Facts, Dkt. No. 63-2 at ¶¶ 3, 4, 56, 62, 63; Plaintiffs' Statement of Material Facts, Dkt. No. 68-1 at ¶¶ 3, 4, 56, 62, 63). That is the same thing that the Maass sting operation participants did to Maass. But in this suit, Plaintiff are not challenging, and have never challenged, the secret taping of Foval or Creamer at the bars, restaurants, or hotel lobbies. Plaintiffs have *never* claimed that that taping of Foval or Creamer in public venues was tortious in any way or

5

violated any wiretapping statute. Rather, this suit is based on entirely *different* conduct: the infiltration by Maass of Democracy Partners—and through that, access to the Democratic National Committee headquarters and the headquarters of a major labor union among others, over a period of weeks all based on fraudulent misrepresentations; and secret taping of all her encounters and conversations, in private offices, for the purpose of breaching a fiduciary duty. The sauce is in no way the same here for the goose and the gander.

Second, even if it was, there is no exception to the relevance requirement that would make such evidence admissible. The defendant in a tort case is not entitled to introduce evidence that plaintiff subsequently committed a similar tort as a means of discrediting the plaintiff. Fed. R. Evid. 404(b)(2) allows evidence of other "wrongs" for certain purposes, but those purposes are to show the motive, opportunity, intent, preparation, plan, etc. of the defendant—not the plaintiff. In any event, neither Plaintiffs nor Defendants in this case have claimed that secret taping in a public place in Washington, D.C. (a "one party consent" jurisdiction) is tortious or in any way unlawful.

Extrinsic evidence of specific instances of a witness' conduct may be admitted on cross-examination of the witness if probative of the character for truthfulness of the witness. Fed. R. Evid. 608(b)(1). As noted, Windsor is a witness in this case (none of the other Maass sting operation participants are parties or witnesses). But nothing in the Maass sting operation evidence would in any way be probative of Windsor's character for truthfulness or untruthfulness. Maass was deceived—but not by Windsor, who communicated with Maass only after the Maass sting operation participants informed Maass they knew her true identity and then revealed themselves.

For these reasons, the evidence relating to the Maass sting operation is not relevant and for that reason alone, is inadmissible.

### C. Even If It Were Relevant the Evidence Should Be Excluded Under Fed. R. Evid. 403

Even it were relevant—and it clearly is not—the evidence relating to the Maass sting operation should be excluded under Fed. R. Evid. 403 because it would confuse the issues and create significant risk of unfair prejudice. First, the evidence would create a real risk of jury confusion. Defendants want to introduce the evidence to show that Plaintiffs engaged in the same kind of activity as that of which they are accusing Defendants. But as noted, it is *not* the same activity. The inevitable effect of introducing this evidence would be to lead the jury to believe that Plaintiffs are suing Defendants in part for secret taping of Foval and Creamer in public places—which is absolutely not the case. This is a case in which whatever minimal value the evidence could have—if there were any—would clearly be "overwhelmed by its tendency to raise collateral issues and confuse the jury." *Athridge v. Aetna Cas. & Sur. Co.*, 474 F. Supp. 2d 102, 108 (D.D.C. 2007) (excluding minimally probative evidence of defendant insurance company's actions in a similar case because it would "take[] the jury far afield and distract[] from the only crucial issue in the case").

Further, by effectively putting one of the witnesses on trial (Windsor), a witness associated with Plaintiff Democracy Partners, and bringing into play Maass' own taping of the confrontation and the chase, introduction of this evidence would further confuse and mislead the jury about the factual issues they are actually being asked to decide. In such circumstances the evidence should be excluded. *See e.g.*, *Banks v. Vilsack*, 958 F. Supp. 2d 78, 83 (D.D.C. 2013)(Court excluded evidence because it was "not an issue for the jury to decide and admitting the evidence before the jury may cause undue delay, confuse the issues, or mislead the jury").

Second, introduction of this evidence would create a real risk of unfair prejudice. Windsor and Clayton acted aggressively in confronting and chasing Maass, and they each used foul language and hurled insults. None of that has any bearing on any factual issue in this case. But viewing the video could certainly inflame the jury's feelings. It would thus have precisely the "undue tendency to suggest decision on an improper basis" that animates Rule 403. Fed. R. Evid. 403 Advisory Committee Note. Again, even if there were some conceivable probative value to this evidence, "'the danger of unfair prejudice is significant and outweighs the minimal probative value' because the disputed 'evidence [was something] any reasonable jury would find difficult to ignore, despite the analytically and factually flawed basis for [the] conclusion' the jury was likely to draw." *Charles v. Home Depot U.S.A., Inc.*, No. 1: 16-cv-02054 (GMH), 2021 U.S. Dist. LEXIS 185030, at *23 (D.D.C., Sep. 28, 2021) (citing *Bell v. Gonzales*, Civil Action No. 03-163 (JDB), 2005 U.S. Dist. LEXIS 37879, at *16 (D.D.C., Dec. 23, 2005)).

For these reasons, even if evidence relating to the Maass sting operation were relevant, it should be excluded under Fed. R. Evid. 403.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion *in Limine* to Exclude Evidence Relating to Exposure of Defendant Allison Maass' Subsequent Attempt to Secretly Record Another Organization should be granted.

Respectfully submitted,

Dated:  October 25, 2021                    __/s/ Joseph E. Sandler_____

Joseph E. Sandler, D.C. Bar No. 255919
Dara Lindenbaum, D.C. Bar No. 1026799
Christina E. Bustos DC Bar. No. 229699
Mark A. Lancaster, D.C. Bar No. 1620256

<div style="margin-left:40%">

SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.
1090 Vermont Ave., N.W.  Suite 750
Washington, D.C.  20005
Tel:  202-479-1111
Fax:  202-479-1115
sandler@sandlerreiff.com
lindenbaum@sandlerreiff.com
bustos@sandlerreiff.com
lancaster@sandlerreiff.com


Aderson Francois, D.C. Bar No. 798544
GEORGETOWN UNIVERSITY LAW CENTER
Civil Rights Clinic
600 New Jersey Avenue NW, Suite 352
Washington, DC 20001
Tel: 202-661-6721
aderson.francois@georgetown.edu

Attorneys for Plaintiffs

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2021, I electronically filed the foregoing Memorandum of Points and Authorities in Support of Plaintiffs' Motion *in Limine* to Exclude Evidence Relating to Exposure of Allison Maass' Attempt to Secretly Record Another Organization, with the Clerk of Court using the CM/ECF system, which will automatically send email notifications to all counsel of record.


    /s/  Joseph E. Sandler

    Attorney for Plaintiffs