UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRACY PARTNERS, LLC,                          CASE NO.: 1:17-CV-1047-PLF
et al.,

      Plaintiffs,

v.

PROJECT VERITAS ACTION FUND,
et al.,

      Defendants.

_____/

## PROJECT VERITAS PARTIES' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE [D.E. 120] REGARDING LAUREN WINDSOR IMPEACHMENT EVIDENCE

      Lauren Windsor, Plaintiff Robert Creamer's protégé, is one of Plaintiffs' key witnesses at trial. Although the Plaintiffs present their Motion *in limine* as one to exclude evidence about Defendant Allison Maass, in truth their Motion is an attempt to exclude impeachment evidence about their key witness, Ms. Windsor.

      Ms. Windsor's interest in this case is not in providing truthful testimony to redress a cognizable legal wrong, but rather "ratf****** [James O'Keefe] for good." **Ex. A**, DP_0009911 (PV Trial Ex. 162) (the obscene term[1] is Windsor's own.).  For Windsor, it "[w]ould be a no brainer for the opportunity to take down JOK for good." **Ex. B**, DP_0009934 (PV Trial Ex. 163). Her rank personal animus is directed not only at Mr. O'Keefe, but extends also to investigative journalist Allison Maass. Windsor and a male accomplice screamed at Ms. Maass in their own partially surreptitiously filmed video as they chased Ms. Maass down a D.C. street, yelling about whether

---

[1] The vulgar term refers to "political sabotage or dirty tricks" and its popularization is often attributed to Bob Woodward and Carl Bernstein in their investigative reporting of the Watergate affair. *See e.g.* "Ratf******," WIKIPEDIA, *available at* https://en.wikipedia.org/wiki/Ratfucking (last accessed Oct. 30, 2021). Windsor's use of it demonstrates not just her hostility, but also her calculated desire to destroy Project Veritas as part of what she considers a political mission.

Ms. Maass had been sexually molested, yelling about a "rape barn," and saying that Ms. Maass had been "creamed" (their delivery of a message that the attack was courtesy of Mr. Creamer). **Composite Ex. C** (PV Trial Ex. 178), PVA00014009 at 3:13-3:33, 6:27-6:30; PVA00014011 at 03:13-03:20. Windsor lacks remorse and testified that she is proud of her harassment of Ms. Maass, and that this verbal abuse was "funny" and "an amusement." **Ex. D**, Windsor Depo. Tr. Excerpts at 15:14-15; 46:11-16; 60:15-61:3; 91:8-12. Plaintiffs wish to conceal Windsor's rank personal animus and bias from the jury. The Rules of Evidence do not support their efforts. The challenged exhibits – the video of Windsor's harassment of Ms. Maass and the related emails are relevant and admissible.

The Project Veritas Parties are entitled to impeach Windsor with evidence of her bias, personal animus, and motive to lie and shade her testimony on the stand consistent with her goal of destroying the Project Veritas Parties.

## A Party May Impeach a Witness with Evidence of Bias, Personal Animus, and Hostility

The D.C. Circuit has long held, "A wide range of cross-examination should be allowed to show the motive, interest, or animus of a witness. The jury have the right both in civil and criminal cases to consider the interest which the witness may have in the result of the litigation." *Jones v. Schanck*, 248 F.2d 658, 659 (D.C. Cir. 1957) (citations omitted). "Even where a party testifies, his hostility to the opposite party may be shown, if pronounced." *Id.* (citations omitted). Thus in *Jones,* a civil case, the D.C. Circuit affirmed the admission of evidence that appellant sought "to have appellee arrested, removed from her position in government service, and similar acts." *Id.* "Bias of a witness is always relevant." *Villaroman v. U. S.*, 184 F.2d 261, 262 (D.C. Cir. 1950) (holding it was reversible error not to allow complaining witness to be cross-examined about pending civil litigation). Bias "may be shown by contradiction of his testimony or other independent evidence." *Id.*

2

As the Supreme Court has summarized:

Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness's like, dislike, or fear of a party, or by the witness' self-interest. **Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.**

*U. S. v. Abel*, 469 U.S. 45, 52 (1984) (emphasis added). The Courts of Appeals have upheld use of extrinsic evidence to show bias both before and after the adoption of the Federal Rules of Evidence. *Id.* at 49 (collecting cases).

### The Evidence the Plaintiffs Seek to Exclude is Relevant to Windsor's Bias and Personal Animus Against James O'Keefe, Allison Maass, and Project Veritas

Plaintiffs move to exclude several exhibits that demonstrate Windsor's bias and personal animus against the Project Veritas Parties. The exhibits are impeachment and relevant to demonstrate for the jurors Windsor's motive to lie, exaggerate, and shade her trial testimony as a result of her profound hostility.

Shortly after the reporting that gave rise to Plaintiffs' lawsuit, Windsor became aware of another news story Project Veritas (and journalist Allison Maass in particular) were investigating. Windsor and Plaintiffs then began to plan what they called a "countersting" of Ms. Maass and Project Veritas (or as her accomplice Ryan Clayton termed it, "Op Mr. Nice Guy"). **Ex. E**, Unbated Document Exhibit 2 to Windsor Depo. The "countersting" was planned with the assistance of others at Democracy Partners, including both Creamer and Plaintiffs' counsel in this matter. **Ex. D**, Windsor Depo. Tr. at 15:16-18, 16:11-22, and 40:2-5.

During Plaintiffs' "Op Mr. Nice Guy," Windsor's accomplice Ryan Clayton met with Ms. Maass at a restaurant and wine bar owned by a Democracy Partners member, and ultimately made threatening remarks (*see* **Comp. Ex. C**, PVA00014009 at 00:50-01:30, including, "Keep your

hands where I can see them") which prompted Ms. Maass to end the conversation and leave. Windsor approached Ms. Maass as Ms. Maass left and, joined by Clayton, chased Ms. Maass down the street at night, badgering and screaming at her. Windsor repeatedly asked Ms. Maass whether she had been to a "rape barn." **Ex. D**, Windsor Depo. Tr. at 9:20-10:1; **Comp. Ex. C**, PVA00014009 at 03:30-03:32 and 06:26-06:29. Ms. Maass tried to get into a cab, but Windsor's male accomplice forced his way into it with her. **Comp. Ex. C**, PVA00014009 at 05:35-05:45. Ms. Maass exited the cab, and the two continued tracking her down the street, with Windsor taunting, "Are you having fun yet? Do you want to keep doing this?" *Id.*, PVA00014009 at 05:53-05:58.  A couple minutes later, Ms. Maass ran from her pursuers and attempted to leave into a second cab, and Windsor's male accomplice *again* forced himself into the cab with her. *Id.*, PVA00014009 at 07:49 to end of file. Clayton called Ms. Maass a "bitch."  *Id.*, PVA00014010 at 08:56-09:03. Windsor and Clayton both yelled at Ms. Maass that she had been "creamed" (this was something Windsor had planned in advance and that she had joked about). *Id.*, PVA00014011 at 03:13-03:20; **Ex. D**, Windsor Depo. Tr. at 44:21-22.

In her deposition, Windsor testified that she was "proud" of her actions and that they "had plenty of integrity." **Ex. D**, Windsor Depo. Tr. at 61:1-3; 61:12-23. In particular, Windsor still finds asking Ms. Maass about a "rape barn" to be "funny" and "humorous." **Ex. D**, Windsor Depo. Tr. at 46:11-16; 60:15-61:3; 91:8-12. Windsor also testified that her asking Ms. Maass whether she had been sexually molested was an "amusement." *Id.* at 91:8-12. Or as Windsor put it on a dark street to Ms. Maass, this was "all part of the fun." **Comp. Ex. C**, PVA00014010 at 09:38-09:54. Despite finding her verbal abuse of Ms. Maass to be "funny," "humorous," and "an amusement," Windsor selectively edited her video of this "countersting" to remove this abuse

before publishing it. **Ex. D**, Windsor Depo. Tr. at 11:12-21 ("[I]t wasn't necessary in the narrative that we were trying to produce.").

Working with Huffington Post blogger Ryan Grim to shape her video release, Windsor also sought funding for a public relations campaign which she believed would somehow destroy Project Veritas. To this end, Windsor sent a flurry of emails seeking "donations." "[T]his is our opportunity to really hit back and hit back HARD. And POSSIBLY take him out of the game for good. But in order to do that most effectively we need paid PR campaign." **Ex. F**, DP_0010213 (PV Trial Ex. 159). Windsor offered that when it came to money, "I'm willing to ask anybody. Would be a no brainer for the opportunity to take down JOK for good. We gotta know some rich guys who want bragging rights." **Ex. B**. The list of names "rich guys" whom Windsor thought might "want bragging rights" was broad enough to include "George Soros," and also a prominent civil rights lawyer for whom Windsor noted the rationale, "(because he likes to f*** with people)." *Id.* In a similar vein, when Windsor asked a political messaging firm for help, she queried the firm's "interest in ratf****** [James O'Keefe] for good[.]" **Ex. A**. It is also relevant and proper impeachment that Windsor adopts recording methods far more intrusive than anything she complains of in this case – namely recording her own harassment of another person whom her male confederate forced himself into a cab with. Twice.

Even where a party testifies (and thus some measure of self-interest may be assumed), the jury still has the right to consider evidence of "hostility," "if pronounced."  Windsor's "hostility" is clearly "pronounced" such that the jury has the right to consider it under principles of cross-examination long established in the D.C. Circuit. That hostility is demonstrated by her chasing Ms. Maass down the street screaming about a "rape barn" and telling her she had been "creamed." This is not normal behavior, it is anti-social behavior. Especially so considering Windsor had pre-

planned her actions, and with much time to reflect between her "countersting" and deposition, still testified that her actions were "funny," and "amusing," and that she was proud of them.

It is likewise obvious that exposing her intense animosity for the Project Veritas Parties is the farthest thing from "unfairly" prejudicial. If her acts seem egregious to the jury, that is simply because it accurately reflects the depths of her hostility towards the Project Veritas Parties. Critically, Windsor stands by those actions, testified that they were funny and amusing, that she was proud of them, and that her actions had plenty of integrity.

### Plaintiffs Repeatedly Claim, Falsely, in Their Filing That Windsor's Harassment of Ms. Maass was Planned "With Others Who Are Not Parties or Witnesses in This Case"

The Project Veritas Parties must point out an egregious falsehood that Plaintiffs repeat multiple times in their filing, namely that:

> 1. "Windsor recognized who Maass really was and, with others who are not parties or witnesses in this case, planned and carried out an operation . . . ." [D.E. 120] at 2.

> 2. "Windsor recognized who Maass really was and, with others who are not parties or witnesses in this case, carried out an operation . . . ." [D.E. 120-1] at 1.

> 3. "She recognized who Maass was and, with others who are *not* parties or witnesses in this case, planned and carried out a "Maass sting operation" that took place on January 5, 2017." [D.E. 120-1] at 3 (emphasis original).

These repeated assertions are patently false as the record is clear that members of Democracy Partners were involved. The apparent purpose of these false statements is to distance Creamer and the rest of Democracy Partners from Windsor's harassment.  Windsor's deposition and supporting documents demonstrate that her harassment video of Ms. Maass was planned with the aid of others at Democracy Partners, including Creamer.   Joseph Sandler, Plaintiffs' lead lawyer, himself advised on the planning of the operation. **Ex. D**, Windsor Depo. Tr. at 15:16-18, 16:11-22, and 40:2-5.  It is impossible to square these facts with the representations made to the Court that "others

who are not parties or witnesses in this case" were responsible for the operation to harass Ms.

Maass.  Windsor's testimony of their involvement in planning her harassment "sting" video of Ms.

Maass could not be clearer:

> 13    BY MR. CALLI:
> 14        Q.  The sting, who planned the sting?
> 15        A.  I did with Ryan.
> 16        Q.  And who else?
> 17        A.  Pete Callahan, Trevor Davis, Robert
> 18    Creamer.

*Id.* at 15:13-18.

> 6      Who beside Peter Callahan, Ryan Clayton, Trevor
> 7      Davis, yourself, and Mr. Creamer?
> 8          A.  Mike Lux.
> 9          Q.  Anybody else?
> 10         A.  You're specifically asking for planning?
> 11         Q.  No.  That's not what I clarified a moment
> 12    ago.  Anybody who touched it, anybody who approved
> 13    it, anybody who had input, any part of it, had
> 14    knowledge of it.
> 15         A.  Andrea Haverdink.  We sought legal counsel
> 16    from Joe Sandler.

*Id.* at 16:6-16.

Plaintiffs even attach an exhibit to their Motion *in limine* demonstrating Creamer's

involvement at the planning stage. [D.E. 120-2] at 3. Plaintiffs also attach the documents which

demonstrate Windsor sought to raise funds from "democracypartners@googlegroups.com" to

"really hit back and hit back HARD. And POSSIBLY take him out of the game for good" because

it "has to be like the ultimate return on investment project for the progressive movement." [D.E.

120-5] at 2. And they include Creamer's email to the rest of Democracy Partners that "Our

O'Keefe video will be out Monday AM." [D.E. 120-6] at 2. Plaintiffs also include the draft of the

final script for the video that Creamer sent to Windsor. [D.E. 120-7] at 2. Likewise, Plaintiffs

attach Windsor's email seeking to drum up financial support from "some rich guys who want bragging rights" because it "[w]ould be a no brainer for the opportunity to take down JOK for good" – she sent this to Democracy Partners members *including Creamer.* [D.E. 120-9]; *see also* [D.E. 120-10] (further discussion in same email chain). So too do Plaintiffs attach the exhibit in which Democracy Partners Member Mike Lux states, "Lauren [Windsor], Bob [Creamer] and I need to talk a little first" before using the video. [D.E. 120-13]. And Creamer's feedback appears in still another email Plaintiffs have attached:

From:       Robert Creamer <creamer2@aol.com>
Subject:    In the final video....
Sent:       Mon, 9 Jan 2017 16:28:17 -0600
To:         Lauren Windsor <laurenwindsor27@gmail.com>

We are going to see Maass get stung and say "I'm not answering questions without my lawyer".... right?

Also I would include a brief clip of confrontation with you outside... very brief at the door only.

## Conclusion

Windsor's animosity towards the Project Veritas Parties exceeds that of a typical party in civil litigation, leading her to shred social norms by chasing Ms. Maass down the street, all in pursuit of an effort to destroy Project Veritas. The Project Veritas Parties are entitled to expose Windsor's rank personal animus and bias so that the jury can evaluate her lack of credibility and her motive to lie, shade, and exaggerate on the witness stand. The challenged exhibits are admissible.

Respectfully submitted,

By:   /s/ Paul A. Calli

Paul A. Calli
Florida Bar No. 994121
Chas Short
Florida Bar No. 70633
CALLI LAW, LLC
14 NE 1st Ave, Suite 1100
Miami, FL 33132
Telephone: (786) 504-0911
Facsimile (786) 504-0912
PCalli@Calli-Law.com
CShort@Calli-Law.com
*Admitted pro hac vice*

/s/ Kerry Brainard Verdi
Kerry Brainard Verdi, Esq.
Bar No. 478486
Benjamin R. Ogletree
Bar No. 475094
VERDI & OGLETREE PLLC
1325 G Street, NW, Suite 500
Washington, DC 20005
Telephone: (202) 449-7703
Facsimile: (202) 449-7701
kverdi@verdiogletree.com

/s/ Benjamin T. Barr
Benjamin Barr (Pro Hac Vice)
BARR & KLEIN PLLC
444 N. Michigan Avenue Ste. 1200
Chicago, IL 60611
Telephone: (202) 595-4671
ben@barrklein.com
*admitted pro hac vice*

/s/ Stephen R. Klein
Stephen R. Klein
Bar No. 177056
BARR & KLEIN PLLC
1629 K St. N.W., Ste. 300
Washington, DC 20006
Telephone: (202) 804-6676
steve@barrklein.com

*Counsel for Defendants Project Veritas Action Fund, Project Veritas, James O'Keefe, and Allison Maass*

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on November 1, 2021 I served the foregoing through the Court's electronic filing system which served a copy on all counsel of record.

*/s/ Paul A. Calli*
Paul A. Calli, Esq.
