UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRACY PARTNERS, LLC,                    CASE NO.: 1:17-CV-1047-PLF
et al.,

      Plaintiffs,

v.

PROJECT VERITAS ACTION FUND,
et al.,

      Defendants.

_____/

**PROJECT VERITAS PARTIES' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE
[D.E. 119] TO EXCLUDE "THE UNDERCURRENT" VIDEOS**

Plaintiffs' key witness Lauren Windsor pretends to be someone she is not and records surreptitiously to obtain candid information about newsworthy matters from those who would not comment if Windsor was waving her press credential under their nose. When Project Veritas does this, Plaintiffs characterize it as "political spying." When Windsor does it, Plaintiffs characterize it as "advocacy journalism." Accordingly, the exhibits of Windsor's surreptitiously recorded videos from "The Undercurrent" are relevant and admissible to:

(1) Rebut Plaintiffs' false "political spying" characterization by demonstrating that Plaintiffs view the same surreptitious recording activity as appropriate "journalism" when one of their own does it; and

(2) Demonstrate that Windsor is steeped in political biases such that she views harming Project Veritas as part of her political project, so that the jury will be able to assess her credibility when she testifies.

**Rebutting Plaintiffs' False "Political Spying" Characterization And Exposing Their Hypocrisy Via Windsor's Use of the Same Methods, Which She Terms "Advocacy Journalism"**

Ms. Windsor is a current "member" of Democracy Partners and Plaintiff Creamer's protégé. At the time Project Veritas published its news story that exposed the dirty schemes and dishonest tactics of Democracy Partners, she worked for a "member" company of Democracy Partners in the same office space where Democracy Partners was located. She also worked for at least one other entity that was not a "member" of Democracy Partners.[1] Depending on one's point of view, Windsor is either engaged in "political spying" or journalism when she assumes a false identity and elicits candid comments that she deems newsworthy while surreptitiously recording.

A recent blog news article of Windsor by one of Plaintiffs' allies in the media favorably described Windsor as "The Democrats' Answer to Sting Artist James O'Keefe." Will Sommer, *Meet the Democrats' Answer to Sting Artist James O'Keefe*, Daily Beast (Sept. 13, 2021), *available at* https://www.thedailybeast.com/meet-lauren-windsor-the-democrats-answer-to-james-okeefe. As another Democracy Partners member described Windsor's surreptitious recording in the linked article, "She smiles and acts like a friend, and they blurt out all this bullshit to her." *Id.*

The Project Veritas Parties have listed as Trial Exhibits five recordings from Windsor's online "advocacy journalism" show, "The Undercurrent:"

- PV Trial Ex. 132 -- 6/29/21 Undercurrent video "GOP Rep. Ted Budd: Critical Race Theory is a Good Weapon to 'Convince Our Country to Commit Suicide.'"

- PV Trial Ex. 133 -- 8/9/21 Undercurrent video "TX State House Reps Tell Us Elections Bill Will Cement GOP Control."

- PV Trial Ex. 134 -- 8/24/21 Undercurrent video "TX GOP State Rep. Cecil Bell compares Democrats' voting rights push to a 'cow patty.'"

---

[1] If this sounds convoluted, that is because it is. Plaintiffs' operations are extremely informal.

- PV Trial Ex. 135 -- 8/31/21 Undercurrent video "Senator Ron Johnson Supports a WI Audit but Thinks It Should Focus on Paper Ballots"

- PV Trial Ex.136 -- 9/9/21 Undercurrent video "EXCLUSIVE: Jim Jordan says Trump is definitely 'gonna run again'"

**Composite Ex. A**. In these recordings, Windsor pretends to be someone she is not, espouses political views that she does not in fact hold, and surreptitiously records candid comments from conservative political figures that they would not have otherwise shared. Windsor describes this conduct as "advocacy journalism." This is essentially the same conduct that Project Veritas engaged in and which Plaintiffs challenge in this case.

The Project Veritas Parties previously moved to exclude various categories of political evidence and to foreclose Plaintiffs from mischaracterizing the Project Veritas Parties as engaged in "political spying." The Court has ruled that such evidence and characterizations will be allowed, and that the jury will decide which characterization of Project Veritas's actions they find most persuasive – Plaintiffs' construct of "political spying" or the fact of Project Veritas's investigative journalism:

> As the Court noted at oral argument, defendants have made clear that they will frame their actions in this case as newsgathering by investigative journalists. The other side of the coin is that plaintiffs may seek to frame defendants' actions in other terms. In light of the good faith evidentiary basis discussed above, such framing is not inherently prejudicial. **The jury will be able to evaluate which characterization it finds most persuasive, in view of all of the testimony, evidence, and arguments presented at trial**.

10/14/21 Order [D.E. 114] at 17 (citations omitted). The Project Veritas Parties will avail themselves of the opportunity to demonstrate their investigative journalism and thereby present the alternative (correct) characterization. The Project Veritas Parties are likewise entitled to attack the hypocrisy of Plaintiffs' "political spying" mischaracterizations, by showing that they recognize

their own identical methodology as journalism --- at least as long as self-described progressive Lauren Windsor is the one doing it.

Plaintiffs attempt to differentiate Windsor's methodology by relying on the places where Windsor's surreptitious recording takes place do not make the challenged exhibits any less relevant. Plaintiffs' efforts to draw such distinctions go to weight, not admissibility. They may well seek to draw that out on re-direct once the Project Veritas Parties expose the hypocrisy and falsity of Plaintiffs' "political spying" characterization on cross.

Or Plaintiffs may not. It turns out that Ms. Windsor has learned the lessons of dirty, dishonest shadow politics from Plaintiff Robert Creamer well. It turns out that the true difference is that Windsor is willing to engage in practices like helping to create a fake event, amplifying the fake event as though it were real, and then later seeking to claim "credit" for helping manufacture the fake event. Such was the case on Friday October 29, 2021 when a group of people with tiki torches showed up at an event for Virginia gubernatorial candidate Glenn Youngkin to voice their "support." After Windsor and others amplified the event to express their shock, it turned out merely to have been a group of provocateurs arranged by the dark money group The Lincoln Project which was paying Windsor to coordinate it as a false flag:[2]

---

[2] A "false flag" is an act committed with the intent of disguising the actual source of responsibility to pin blame on another party.

4



*See* https://twitter.com/lawindsor/status/1454144137603661826 and

https://twitter.com/lawindsor/status/1454211815806619651 (last accessed Oct. 30, 2021).

Plaintiffs also point to a perceived disconnect in time, although such arguments were not availing when the Project Veritas Parties sought to exclude portions of James O'Keefe's later-published book. But "now" is the relevant timeframe. When Plaintiffs stand up in Court to say Project Veritas is engaged in political spying when investigative journalist Allison Maass surreptitiously recorded their unethical conduct, Plaintiffs' "member" Lauren Windsor is simultaneously conducting her own brand of surreptitious recording under a guise she views as permissible "advocacy journalism."

### The Political Motivations Demonstrated by Windsor's Surreptitious Recording Videos are Relevant as Impeachment

The Court has, over the Project Veritas Parties' objection, allowed a certain amount of evidence of political affiliations on the theory that such evidence can be relevant to the issue of intent. *See* [D.E. 114]. Thus, the Court has determined that even a Project Veritas employee (who

5

did none of the reporting at issue in this case) hitting a Clinton-shaped piñata is admissible as bearing on the issue of "tortious intent" under the interception statutes. [D.E. 114] at 6.

Unlike Project Veritas, Windsor reports solely on political matters. Her publications are far more partisan than what she and the rest of Plaintiffs accuse Project Veritas of.[3] Windsor's surreptitious recording videos will thus also be admissible as impeachment, to continue to demonstrate how Plaintiffs view this lawsuit as part of a partisan political project.

The D.C. Circuit has long held, "A wide range of cross-examination should be allowed to show the motive, interest, or animus of a witness. The jury have the right both in civil and criminal cases to consider the interest which the witness may have in the result of the litigation." *Jones v. Schanck*, 248 F.2d 658, 659 (D.C. Cir. 1957) (citations omitted). The United States Supreme Court has explained:

> Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness's like, dislike, or fear of a party, or by the witness' self-interest. **Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.**

*U. S. v. Abel*, 469 U.S. 45, 52 (1984) (emphasis added).

It is thus entirely appropriate and relevant for the Project Veritas to juxtapose Ms. Windsor's partisan political reporting with Project Veritas's reporting, so that in making credibility

---

[3] Project Veritas's reporting has included non-political matters like former Florida head coach Urban Meyer's mistreatment of college athletic workers (*available at* https://www.projectveritas.com/news/an-unfair-game-urban-meyer-a-history-ofabuse/), and ABC network's decision to quash reporting about billionaire pedophile Jeffrey Epstein's sexual predation. Its political reporting has also included exposing the misconduct not just of liberals but also of conservatives, such as a consultant for a GOP congressional nominee who committed voting crimes on camera (following Project Veritas's reporting, she was prosecuted by the state of Texas) (*available at* https://www.projectveritas.com/news/texas-ballot-chaser-pressures-voter-to-change-vote-from-cornyn-to-hegar/). This is only a small sample.

determinations about her testimony, the jury can weigh all forms of her self-interest in the outcome, including her rank hypocrisy and the political interests she views as part of this litigation.

### Conclusion

Lauren Windsor's "The Undercurrent" videos (PV Trial Exs. 132-136) are admissible:

(1) To rebut Plaintiffs' "political spying" characterization by demonstrating that Plaintiffs view the same surreptitious recording activity as appropriate "journalism" when one of their own does it; and

(2) To demonstrate that Windsor is steeped in political biases such that she views harming Project Veritas as part of her political project, so that the jury will be able to assess her credibility when she testifies.

Plaintiffs' Motion to exclude them should be denied.

Respectfully submitted,

By:   /s/ Paul A. Calli
        Paul A. Calli
        Florida Bar No. 994121
        Chas Short
        Florida Bar No. 70633
        CALLI LAW, LLC
        14 NE 1st Ave, Suite 1100
        Miami, FL 33132
        Telephone: (786) 504-0911
        Facsimile (786) 504-0912
        PCalli@Calli-Law.com
        CShort@Calli-Law.com
        *Admitted pro hac vice*

/s/ Kerry Brainard Verdi
Kerry Brainard Verdi, Esq.
Bar No. 478486
Benjamin R. Ogletree
Bar No. 475094
VERDI & OGLETREE PLLC
1325 G Street, NW, Suite 500
Washington, DC 20005
Telephone: (202) 449-7703
Facsimile: (202) 449-7701
kverdi@verdiogletree.com


/s/ Benjamin T. Barr                    /s/ Stephen R. Klein
Benjamin Barr (Pro Hac Vice)           Stephen R. Klein
BARR & KLEIN PLLC                      Bar No. 177056
444 N. Michigan Avenue Ste. 1200       BARR & KLEIN PLLC
Chicago, IL 60611                      1629 K St. N.W., Ste. 300
Telephone: (202) 595-4671              Washington, DC 20006
ben@barrklein.com                      Telephone: (202) 804-6676
*Admitted pro hac vice*                steve@barrklein.com


*Counsel for Defendants Project Veritas Action Fund, Project Veritas, James O'Keefe, and Allison Maass*

## CERTIFICATE OF SERVICE

I CERTIFY that on November 1st, 2021, I served the foregoing through the Court's electronic filing system which served a copy on all counsel of record.


/s/ Paul A. Calli
Paul A. Calli, Esq.