UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRACY PARTNERS, LLC, et al.,

      Plaintiffs,

v.

PROJECT VERITAS ACTION FUND, et al.,

      Defendants.
_____/

CASE NO.: 1:17-CV-1047-PLF

**PROJECT VERITAS PARTIES' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF AARON BLACK [D.E. 118]**

Project Veritas Action Fund, Project Veritas, James O'Keefe and Allison Maass ("the Project Veritas Parties") request that the Court deny Plaintiffs' Motion *In Limine* to Exclude Testimony of Aaron Black. D.E. 118. Contrary to Plaintiffs' argument, Aaron Mintner a/k/a "Aaron Black" ("Black") is a relevant and highly probative witness with respect to the defense in this matter. Fed. R. Evid. ("FRE") 402, 403. Black interacted directly with Ms. Maass and, while not a member of Democracy Partners, Black was given free reign of the offices and access to the information regarding the bracketing events that the Plaintiffs attempt to claim constitute confidential information. As such, his testimony is directly relevant to whether Ms. Maass owed a fiduciary duty to Democracy Partners. Further, Black's testimony is also relevant to issues of damages as previously identified by this Court. For the reasons discussed below, Plaintiffs' motion must be denied.

    **I.**     **Contrary to Plaintiffs' Argument, Record Evidence Establishes Black's Role in the Project Veritas Parties' News Investigation and Exhibits**

The Plaintiffs note that Black "worked with Mr. Creamer on the contract that Mobilize, Inc. had with the Democratic National Committee for 'bracketing' projects." D.E. 118-1 at 1-2.

Indeed, Black is the only one of Mobilize's subcontractors with whom Allison Maass interacted in the Democracy Partners office. *See* D.E. 63-58 at 3 (the contract between Mobilize and the DNC provided for "Four (4) Rapid Response Consultants at $5,000 each per month" and an "Immigration Consultant at $8,000 per month[.]")[1] Plaintiffs' claim that "[t]he only recording of Mr. Black on Defendants' Exhibit List is a tape made by another Project Veritas operative," is factually incorrect -- he appears prominently in some of her recordings that will be presented as exhibits by the Project Veritas Parties and is otherwise a relevant witness. D.E. 118-1 at 1.

Ms. Maass met Black on the first day of her internship, September 21, 2016. Ms. Maass's video of this entire day was produced to the Plaintiffs and filed with the Court more than three years ago. D.E. 48 (notice of manual filing). For trial, the Project Veritas Parties have numbered the 19 audiovisual files of this day as Defendants' Exhibit 124. *See* D.E. 138 at 56. The Plaintiffs contend that "[a]lthough . . . Mr. Black may have given Ms. Maass assignments . . . there is nothing in the record that indicates he actually ever did so." D.E. 118-1 at 2. Plaintiffs' claim in this regard is also incorrect. The record is clear that Black gave Ms. Maass her very first assignment (even though Black was not a member of Democracy Partners): counting signs used at bracketing events. D.E. 48 (PVA00013196 at 13:15-13:35). It was during this interaction that Black revealed to Ms. Maass the deceptive nature of bracketing:

> So I'm basically deputy rapid response director for the DNC for all things Trump on the ground . . . . So, the Chicago protest? When they shut all that— that was us. It was more him than me, but none of this is supposed to come back to us. 'Cause we want it coming from people; we don't want it to come from the party. So, if we do a protest and it's bran—'oh, DNC protest', it's, right away the press is going to say, 'partisan.' But if I'm in there coordinating with all the groups on the ground and sort of playing field general but they're the

---

[1] Ms. Maass interacted with another one of these contractors, Zulema Rodriguez, during bracketing work at the Republican National Convention weeks prior to the internship. Ms. Maass never met Scott Foval. Neither party has named Ms. Rodriguez as a witness.

> ones talking to the cameras, then it's actually people. But if we send out press advisories with DNC on them and Clinton Campaign it just doesn't have the same effect.

*Id.* (17:50-18:37); *see also Rigging the Election - Video I: Clinton Campaign and DNC Incite Violence at Trump Rallies*, YOUTUBE, Oct. 17, 2016, https://youtu.be/5IuJGHuIkzY (09:11-10:14) (incorporating this recording). Ms. Maass interacted with Black numerous times at the Democracy Partners office, despite the fact that he was not a member of Democracy Partners and was privy to the bracketing information and work, to the point that he was the person who assigned it to Ms. Maass.

Even the recording that *the Plaintiffs* have presented to support their claim of eavesdropping in violation of the federal and D.C. interception statutes (that is, violations that are not contingent on the validity of one-party consent) features Black. *See* D.E. 72 at 3 (¶14); D.E. 73 (notice of manual filing). This video, produced as PVA00013411, is Plaintiffs' Exhibit 118 and Defendants' Exhibit 130. *See* D.E. 138 at 43, 56. Black, upon noticing the meeting upon which Ms. Maass allegedly eavesdropped, approached her and inquired whether it was "[Bernie] Sanders's old campaign manager" in the meeting. D.E. 73 (PVA00013411 at 18:20-18:40).

The Plaintiffs' reference "a tape made by another Project Veritas operative, who is not a party to the case and whose taping is not being challenged[.]" D.E. 118-1 at 1. This video, recorded by Project Veritas Action Fund journalist Trevor Kendrick on September 17, 2016 (shortly before Ms. Maass began the internship portion of the investigation), is numbered as Defendants' Proposed Exhibit 177 and features recordings made at a bracketing event at the Trump Hotel and extensive interactions between Mr. Kendrick and Black within the Democracy Partners office. See D.E. 138 at 60.

## II. Aaron Black's Testimony is Relevant to this Case

Black's testimony is relevant to defending against the Plaintiffs' claims of interception of oral communications and against causation of actual damages under all of their claims.

### A. Interception of Oral Communications – Alleged Tortious Purpose of Breach of Fiduciary Duty

Black's testimony is relevant to the Project Veritas Parties' defense that Ms. Maass had no fiduciary duty to Democracy Partners and thus could not have intercepted oral communications for the purpose of breaching said duty. The Plaintiffs helpfully concede that "[t]here is . . . nothing in the record that indicates that Mr. Black provided any confidential information to Ms. Maass or had any other interaction that would be probative of the existence of a fiduciary relationship between Ms. Maass and Democracy Partners." D.E. 118-1 at 2. The Project Veritas Parties agree – consistent with Plaintiffs' decision not to provide a confidentiality agreement to Ms. Maass or even to draft one, the bracketing information she was exposed to was not confidential.

Thus Plaintiffs' sham construct of fiduciary duty is exposed. On one hand, they seek to distance themselves from Black and prevent his testimony by saying he was not a member of Democracy Partners in the relevant time period. But in responses to interrogatories, Plaintiffs identified Black as having a fiduciary duty to Democracy Partners and thus it is appropriate to question him about the existence or non-existence of those duties. **Exhibit A** (Excerpt of Plaintiffs' Responses to Defendants' First Set of Interrogatories to Plaintiffs (highlights added)).[2] The Plaintiffs allege Black had a fiduciary duty to Democracy Partners without being a member and while serving as a co-subcontractor with Mr. Creamer to Mobilize, Inc., which was *also* not a

---

[2] The Plaintiffs state that "Mr. Black was not a member of Democracy Partners at the time" of the internship. If Plaintiffs mean to suggest that Mr. Black did *not* have a fiduciary duty to Democracy Partners while interns such as Nicholas Guthman, Andrea Haverdink and Allison Maass did have such a duty, this is an important revelation. *See* **Ex. A.**

4

member of Democracy Partners. D.E. 112 (Joint Stipulations of Fact ¶6). This undercuts Plaintiffs' arguments that the information Ms. Maass was provided during her internship was confidential to Democracy Partners and specifically that any bracketing information was confidential since it was discussed directly with her by Black. *See* D.E. 83 at 30-31 (rejecting a vicarious damages theory between Strategic Consulting Group and Democracy Partners).

Given Ms. Maass never accepted, much less discussed, any duty of confidentiality with a member of Democracy Partners, it is fair to broadly assess her experience there for how she would—more accurately, would not—learn of such a duty and its requirements by implication. *See* D.E. 83 at 25-30 (maintaining for trial an assessment of types of services performed and legitimate expectations of the parties to determine the existence of a fiduciary duty). It is relevant to explore the contours of a fiduciary's duty of confidentiality to Democracy Partners and how Black complied with it while, allegedly, Ms. Maass did not. This will be especially probative given PVA journalist Trevor Kendrick's interactions with Black—the Plaintiffs' have never alleged Mr. Kendrick had any duty to Democracy Partners. The information that he learned from Black reflects the same level of candor Black demonstrated to Ms. Maass: namely that bracketing was not confidential.

It is also relevant for the Project Veritas Parties to examine Black regarding the newsworthiness of the work performed by Democracy Partners and, thus, journalistic purpose that Ms. Maass had in recording the internship. Black's first discussion with Allison Maass revealed that "bracketing" involves managing protests that appear grassroots but are not. *See* D.E. 48 (PVA00013196 at 17:50-18:37). Moreover, these efforts are specifically designed to deceive the mainstream press into reporting bracketing events as grassroots instead of as efforts of the

Democratic National Committee. *Id.* Mr. Black is integral to the Project Veritas Parties' defense against tortious purpose.

The Plaintiffs simply do not want Black to take the stand because his candor will doom their claim that Allison Maass had a fiduciary duty to Democracy Partners that she could have had the purpose to breach via interception of oral communications. Moreover, though seeing himself as a "field general," Mr. Black is the only foot soldier of Robert Creamer who can be readily called to the stand in D.C. His testimony is relevant and deeply probative of the Project Veritas Parties' journalistic purpose in intercepting oral communications via single-party consent.

### B.  Interception of Oral Communications – Eavesdropping

The one eavesdropping claim that the Plaintiffs have brought was discussed by the Court at summary judgment. D.E. 83 at 34-35; *see* D.E. 73 (PVA00013411). There, the Court ruled that the "critical legal question" is whether Ms. Maass's "'presence [wa]s apparent in the midst of a communication.'" D.E. 83 at 35 (quoting *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 255 (D.D.C. 2014)). The Court declined to rule based on the video itself. D.E. 83 at 35.[3] As noted, Black was present at the time—he appears in this video and interacts with Ms. Maass. He can thus be examined as to whether Ms. Maass's presence was apparent in the midst of the communications occurring in the conference room across the way. Black's testimony is directly relevant to the "critical legal question" identified by this Court.

---

[3] As argued at summary judgment but unaddressed by the predecessor judge in the order on same, the Project Veritas Parties reiterate that Allison Maass intercepted no oral communications of the conversation at issue—a meeting "between two members of Democracy Partners and the person who served as campaign manager for Bernie Sanders' presidential campaign in 2016." D.E. 83 at 34; *see* D.E. 73 (PVA00013411). Anyone may listen to this file at the highest volume and will discern nothing of the conversation other than sounds reminiscent of Charlie Brown's teacher in the classic cartoon. This claim will be appropriate for directed verdict. *See* 18 U.S.C. § 2520(a) (requiring actual interception of oral communications); D.C. Code § 23-554(a) (likewise). Nevertheless, as the claim exists now, Mr. Black's testimony is relevant to this issue as well.

### C. Lack of Causation

The Plaintiffs claim that "with respect to the disputed issue of causation and damages, the record does not indicate that Black had any contact whatsoever with any officials or staff of AFSCME or Americans United for Change[.]" D.E. 118-1 at 3. This is another area from which relevant and highly probative testimony may be elicited. Ms. Maass never had any contact whatsoever with any officials or staff of AFSCME or Americans United for Change, yet the Plaintiffs allege that *somehow* the Project Veritas Parties' investigation—which focused on Black, among others within the Democracy Partners office—actually and proximately caused AFSCME to halt its business with Robert Creamer and Strategic Consulting Group and to halt its funding of AUFC. Black's testimony is relevant to illustrate all of the things that were not occurring in the Democracy Partners office for four weeks in September and October, 2016—namely, anything having to do with AFSCME.

### Conclusion

Aaron Black's testimony is relevant and thus admissible under Federal Rule of Evidence 402. The Plaintiffs cite Federal Rule of Evidence 403, and claim Mr. Black's testimony "could only serve to confuse and mislead the jury[,]" but provide no detail as to how this would occur. D.E. 118-1 at 4. The Court should disregard this conclusory statement. The Plaintiffs' motion to exclude testimony of Aaron Black should be denied.

<div style="text-align: right;">

Respectfully submitted,

By:    /s/ Paul A. Calli    
     Paul A. Calli  
     Florida Bar No. 994121  
     Chas Short

</div>

Florida Bar No. 70633
CALLI LAW, LLC
14 NE 1st Ave, Suite 1100
Miami, FL 33132
Telephone: (786) 504-0911
Facsimile (786) 504-0912
PCalli@Calli-Law.com
CShort@Calli-Law.com
*Admitted pro hac vice*

/s/ Stephen R. Klein
Stephen R. Klein
Bar No. 177056
BARR & KLEIN PLLC
1629 K St. N.W., Ste. 300
Washington, DC 20006
Telephone: (202) 804-6676
steve@barrklein.com

Benjamin Barr (Pro Hac Vice)
BARR & KLEIN PLLC
444 N. Michigan Avenue Ste. 1200
Chicago, IL 60611
Telephone: (202) 595-4671
ben@barrklein.com
*Admitted pro hac vice*

*Counsel for Defendants Project Veritas Action Fund, Project Veritas, James O'Keefe, and Allison Maass*

## **CERTIFICATE OF SERVICE**

I CERTIFY that on November 5, 2021 I served the foregoing through the Court's electronic filing system which served a copy on all counsel of record.

<div style="text-align:right">

*/s/ Paul A. Calli*
Paul A. Calli

</div>