UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRACY PARTNERS, LLC, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civ. No. 1:17-cv-1047-PLF |
| v. | ) |
| | ) |
| PROJECT VERITAS ACTION FUND, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM
MAKING ANY ARGUMENT OR INTRODUCING EVIDENCE FOR PURPOSES OF
ASSERTING A JOURNALISM DEFENSE**

Plaintiffs Democracy Partners, LLC, Strategic Consulting Group NA Inc. and Robert Creamer herein reply to the Opposition filed by Defendants [Dkt. No. 133] ("Def. Oppo.") to Plaintiffs' Motion *in Limine* to Preclude Defendants from Making Any Argument or Introducing Evidence for Purposes of Asserting a Journalism Defense [Dkt. No.117].

This Court has already ruled that the "Court is not persuaded that defendants' supposed journalistic status is a 'fact[] of consequence in determining th[is]s action," and that Plaintiffs cannot introduce evidence "in their case in chief for the purpose of establishing that defendants are <u>not</u> journalists or that Project Veritas is <u>not</u> a newsgathering organization."  Opinion and Order, Oct. 14, 2021 [Dkt. No. 114] ("Oct. 14 Opinion") (quoting Fed. R. Evid. 401(b)) (brackets and emphasis in original).  If Plaintiffs cannot introduce evidence for that purpose because such evidence would not be relevant, then surely Defendants should also be precluded from introducing such evidence for the same purpose.  That fundamentally logical implication of the Court's ruling is not altered, as Defendants would have it, by some free-floating need to establish the Defendants'

identity; by references in different lawsuits involving different causes of action; or by Defendants' attempt to rewrite the meaning of "tortious purpose" in the federal and District of Columbia wiretapping laws. In short, Defendants have failed to show why they should not be subject to the same limitation as Plaintiffs in introducing evidence as to Defendants' journalistic status or purpose. Plaintiffs' motion *in limine* should therefore be granted.

## I.     Defendants Have Misinterpreted the Court's October 14 Opinion

Defendants filed a Motion *in Limine* to exclude, among other things, certain evidence that the infiltration and recording were carried out to benefit the Trump campaign. Defendants' Motion *in Limine* to Exclude Plaintiffs' Politically-Motivated Efforts [Dkt. No. 100]. In their Opposition, Plaintiffs argued that if Defendants were permitted to assert their journalistic status or purpose as evidence of a non-tortious purpose, "Plaintiffs should be allowed to introduce evidence to show that Project Veritas was not a media outlet trying to report the 'news,' but rather was a partisan operation strongly committed to assisting then-candidate Trump…" Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 2 [Dkt. No. 103] at 9.

In ruling on that Motion *in Limine*, the Court ruled that it "is not persuaded that defendants' supposed journalistic status is a 'fact[] of consequence in determining thi[is] action.' FED. R. EVID. 401(b). The parties discuss this in relation to plaintiff's claims under the wiretap statutes, yet these statutes do not include any special provision for recordings made by journalists." Oct. 14 Opinion at 11. "The Court concludes that plaintiffs have failed to establish that defendants' journalistic status is a 'fact[] of consequence' in this action, FED. R. EVID. 401, and therefore, they have failed to establish that evidence connecting defendants to Mr. Trump is relevant on this basis. Plaintiffs cannot rely on such evidence in their case in chief for the purpose of establishing that defendants

are not journalists or that Project Veritas is not a newsgathering organization." Oct. 14 Opinion at 12 (emphasis in original).

If Defendants' journalistic status is not a "fact [that] is of consequence in determining the action," Fed. R. Evid. 401, and is thus irrelevant, and if for that reason Plaintiffs cannot introduce evidence to establish that Defendants are not journalists, then logically Defendants must also be precluded from introducing such evidence to establish that Defendants *are* journalists, or were acting as such. The Court did discuss the possibility that Defendants may "open the door" to introduction of such evidence if Defendants "at trial make arguments, offer evidence, or elicit testimony concerning their status as 'investigative journalists'…" Oct. 14 Opinion at 13. The Court noted that "defendants have made clear that they will frame their actions in this case as newsgathering by investigative journalists. The other side of the coin is that plaintiffs may seek to frame defendants' actions in other terms." *Id*. at 17. Defendants point to this language as indicating that, even though Plaintiffs will be precluded from introducing evidence about Defendants' journalistic status, Defendants will be allowed to do so. Def. Oppo. at 1-2.

Plaintiffs' understanding, however, is that the Court was assuming that this "opening of the door" would occur only if Plaintiffs did not file a motion *in limine* to preclude Defendants from introducing such evidence in the first place. "Plaintiffs themselves suggest that defendants' status as journalists may not be relevant to any claim or defense in this case, … and may move in limine to block defendants from making certain arguments on this basis, …" Oct. 14 Opinion at 11. The Court noted that the deadline for filing such a motion had not yet occurred. *Id*. n. 3. After the Court's October 14 Opinion was issued, Plaintiffs did file a Motion *in Limine* to Preclude Defendants from Making Any Argument or Introducing Evidence for Purposes of Asserting a Journalism Defense. [Dkt. No. 117]. Given the logical implication of the Court's October 14

Opinion, Defendants should now be precluded from introducing evidence for the purpose of establishing that they are or were acting as journalists.  If they are so precluded, there will be no occasion to find that Defendants have "opened the door" to allow Plaintiffs to introduce such evidence.

## II.     Project Veritas' Supposed Journalism Is Irrelevant in This Case

Defendants insist that "the Project Veritas Parties' journalism will be a contested issue at trial," and cite other cases in which the organization's journalistic status was supposedly acknowledged.  Def. Oppo. at 3-4.  But whether Project Veritas acts or have ever acted as a journalistic organization will *not* be a contested issue at trial in this case, in view of the Court's ruling that "defendants' supposed journalistic status is" not a "'fact…of consequence in determining th[is] action.'" Oct. 14 Opinion at 11 (quoting Fed. R. Evid. 401).  Nor was the journalistic status or purpose of Project Veritas a "fact . . . of consequence" in determining the action in any of the other cases cited by Defendants.

In *Teter v. Project Veritas Action Fund*, No. 17-cv-00256-MR, 2019 WL 2423294 (W.D.N.C., June 7, 2019), plaintiff sued Project Veritas for defamation, alleging that videos posted by Project Veritas portrayed her in certain ways that were defamatory.  The Court directed a verdict for Project Veritas because the content of the videos could not be reasonably be understood to mean what plaintiff claimed they implied, and because plaintiff (previously found to be a limited purpose public figure) had failed to introduce clear and convincing evidence of actual malice.  The journalistic status or purpose of Project Veritas was not a factor considered in any way by the Court in reaching that decision.

Similarly, in Project Veritas' pending suit against the *New York Times* for defamation, Project Veritas is the defamation ***plaintiff*** against the *Times*.  The trial court denied the *Times*'

motion to dismiss for failure to state a cause of action. The Court found that Project Veritas had adequately pleaded the elements of a defamation claim, and that its pleading was adequate to survive New York's recently amended anti-SLAPP law. Again, the journalistic status or purpose of Project Veritas – the plaintiff in that case – was not a factor considered in any way by the Court in reaching its decision to deny a motion to dismiss for failure to state a claim. *Project Veritas v. The New York Times Co.,* No. 63921/2020, 2021 WL 2395280 (Sup. Ct. Westchester, March 18, 2021).

Again, in *Wentz v. Project Veritas*, No. 17-cv-1164-ORL, 2019 WL 1716024 (M.D. Fla., April 16, 2019), the same Project Veritas operative who is a defendant in this case, Allison Maass, secretly recorded plaintiff, the head of a teachers' union, at a bar in Orlando during a conference; and then another operative also involved in this case, Daniel Sandini, secretly recorded plaintiff at a Panera restaurant. Plaintiff sued for defamation and violation of the federal and Florida wiretapping statutes. The Court granted summary judgment for defendants on the defamation claim based on the lack of false content in the videos posted by Project Veritas. Significantly, the Court granted summary judgment on the federal wiretapping claim because there was no allegation that the recording had been done for any tortious purpose. 2019 WL 1716024 at *5. And summary judgment was granted on the Florida wiretapping claim because there was no expectation of privacy at the bar or restaurant.

The issue of Project Veritas' journalistic status was not considered or mentioned by the Court anywhere in its decision. In particular, in the *Wentz* case, the issue of whether journalistic status was relevant to tortious purpose was never raised because Wentz (the plaintiff) never alleged any tortious purpose. There was no issue of breach of fiduciary duty in the *Wentz* case because the recordings were made only in public venues; there was no infiltration of an organization as in

the case at bar. Again, it must be emphasized that such recordings in public venues were also made by Project Veritas operatives in this case but *are not being and have never been challenged* by Plaintiffs as being unlawful, in this or any other proceeding.

Project Veritas' supposed journalism was not actually an "essential fact," as Defendants would have it, Def. Oppo. at 5, in this case or in any of the cases cited by Defendants. Defendants have failed to explain why evidence of such supposed journalistic status or purpose is relevant.

### III. Defendants' Supposed Journalistic Status and Purpose Are Not Essential Background Information

Defendants contend that their supposed journalistic status or purpose is admissible regardless of its relevance to elements of the causes of action actually being litigated in this case. First, Defendants suggest that it is important for jury to know that their practices are "in the long-established journalistic tradition… in the field of investigative journalism…" Def. Oppo at 5. But if Defendants' journalistic status or purpose is not a "fact of consequence in determining the action," as the Court ruled, there would no reason for Defendants to be allowed to introduce evidence about whether their practices do or do not fit into any "tradition" of investigative journalism.

Second, Defendants assert that evidence of their "journalism and newsgathering are relevant regardless of the exact elements of Plaintiffs' causes of action" because they "are inextricable background facts that permeate every aspect of the events that gave rise to this suit, …" *Id*. at 6. There is, however, no reason why the events that took place – "what happened" – cannot simply be recounted without Defendants falsely characterizing their actions as "journalism" in argument, in questioning witnesses or in the testimony of their own witnesses; without Defendants referring to themselves in questioning and testimony as "journalists;" and without Defendants arguing (in opening or closing argument) that their "journalistic" purpose is a defense

to any of the claims.  That is the relief sought in Plaintiffs' motion *in limine*, and it is logically warranted by the Court's ruling that Defendants' journalistic status is not a "fact . . . of consequence in determining" this action.

> **IV.    Evidence of Defendants Supposed Journalistic Status Is Not Relevant to Respond to the Characterization of Defendants' Activities as "Political Spying"**

In their Motion *in Limine* to Exclude Plaintiffs' Politically Motivated Efforts to Introduce Irrelevant Evidence [Dkt. No. 100], Defendants asked the Court to preclude Plaintiffs from referring to Project Veritas or to the infiltration at issue in this case, as a "political spying operation."  *Id*. at 11.  In ruling on that portion of Defendants' Motion, the Court held that there is a "sufficient good faith evidentiary basis for plaintiffs to characterize defendants' conduct in the events that gave rise to this case as a 'political spying operation' . . ."  Oct. 14 Opinion at 16.

At that point, before Plaintiffs filed their Motion *in Limine* regarding evidence of journalistic status, the Court also anticipated that Defendants would "frame their actions in this case as newsgathering by investigative journalists," and that the "political spying operation" characterization would not be "unfairly prejudicial" as a response.  *Id*. at 17.  Plaintiffs do not understand the Court's ruling to mean that if evidence of journalistic status and purpose is not relevant, that Defendants could introduce it anyway to respond to the characterization of the infiltration as a "political spying operation."  Rather, Plaintiffs understand the ruling to mean that they are permitted to characterize the specific operation giving rise to this case as a "political spying operation," regardless of whether Defendants have any permissible basis for introducing evidence of their journalistic status or purpose.  They do not.

### V.     Evidence of Defendants' Supposed Journalistic Purpose Is Not Relevant to the Existence of a Tortious Purpose for the Secret Recording

In the vast majority of meetings and conversations secretly recorded by Ms. Maass, Ms. Maass was a participant. Therefore, Plaintiffs must prove that the recordings were made for a "tortious purpose" in order to establish their claims under the federal and District of Columbia wiretapping statutes. To prove a tortious purpose, Plaintiffs must show "'either (1) that the primary motivation, or (2) that a determinative factor in the actor's motivation for intercepting the conversation was to commit a…tortious, or other injurious act.'" *United States v. Dale*, 991 F.2d 819, 841 (D.C. Cir. 1993) (quoting *United States v. Vest*, 639 F. Supp. 899, 904 (D. Mass. 1986), *aff'd* 813 F.2d 477 (1st Cir. 1987)).

Defendants contend that evidence of their journalistic status would be relevant to show that their supposed investigative reporting was "*the* determinative purpose" for the recording. Def. Oppo. at 8-9 (emphasis added). Specifically, Defendants argue that they "are entitled to defend themselves . . . by showing that news gathering was not just *a* purpose in recording but their only purpose in recording…" *Id.* at 10 (emphasis in original).

That argument is based on a fundamental misconception of the law. Plaintiffs succeed on their wiretapping claim if they show that breach of a fiduciary duty was "*a* determinative factor" in Ms. Maass' motivation for recording. Ms. Maass' ultimate purpose may have been to engage in what Defendants believed was "investigative reporting." But, if to accomplish that purpose, she also had to have the purpose of breaching a fiduciary duty, and without that breach of fiduciary duty she could not undertake her "reporting," then that breach of fiduciary duty was also "a determinative factor" in her motivation to record. And that would be sufficient to establish a violation of the wiretapping statutes. The existence or non-existence of the journalistic purpose would be irrelevant.

As this Court explained in its October 14 Opinion, it makes no difference that Ms. Maass may also have had a "valid, non-tortious purpose," *i.e.,* newsgathering. Oct. 14 Opinion at 7. "The presence of a valid, non-tortious purpose does not immunize a defendant from liability under the wiretap statues if that defendant also has a tortious purpose that is 'the primary motivation' or 'a determinative factor' in intercepting the communications." *Id*. As the Court explained in *Sussman v. American Broadcasting Cos.*. 186 F.3d 1200 (9th Cir. 1999):

> [T]he existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose. For example, assume that a news gathering organization secretly videotapes bedroom activities. Even though there may be a legitimate news gathering purpose….public airing of such a tape may be illegal or tortious under state law. Under these circumstances, the taping could be for both a legitimate purpose (news gathering) and also an unlawful or tortious purpose (airing private intimate conduct). *The existence of the lawful purpose would not sanitize a tape that was also made for an illegitimate purpose; the taping would violate section 2511* [the federal wiretapping statute].

*Sussman*, 186 F.3d at 1202 (emphasis added). Here, too, the existence of a "newsgathering" purpose would not sanitize Ms. Maass' recordings that were in the first instance made for the purpose of breaching her fiduciary duty to Democracy Partners. The recordings would still have been made in violation of the wiretapping statutes. Ms. Maass' journalistic purpose would be irrelevant.

### VI. Evidence of Defendants' Journalistic Status or Purpose Is Irrelevant to the Civil Conspiracy Count

Defendants assert that evidence of their journalistic status or purpose would be relevant to show that the "object" of any agreement they had was a lawful purpose, so that they would not be liable for civil conspiracy. Def. Oppo. at 12. That is not how the law of civil conspiracy works.

Civil conspiracy is ""'not independently actionable; rather it is a means for establishing vicarious liability for the underlying tort."'" *Mpoy v. Fenty*, 870 F. Supp. 2d 173, 183 (D.D.C.

9

2012)(quoting *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000)(internal quotations omitted)).  Here, the underlying torts are fraudulent misrepresentation and violations of the wiretapping statutes.  If there was an agreement among Ms. Maass and the other Defendants to participate in these torts, and Ms. Maass committed these torts, then the other Defendants would be liable by reason of their participation in the civil conspiracy.  That the Defendants had other agreements – to commit these torts in the supposed interests of journalism or newsgathering – would be utterly irrelevant to that analysis.

## CONCLUSION

For the reasons set forth above, and in Plaintiffs' Memorandum in Support of their Motion *in Limine* to Preclude Defendants from Making Any Argument or Introducing Any Evidence for Purposes of Asserting a Journalism Defense [Dkt. No. 117], Plaintiffs' Motion *in Limine* should be granted.

Respectfully submitted,

Dated: November 15, 2021    /s/ Joseph E. Sandler

Joseph E. Sandler, D.C. Bar No. 255919
Christina E. Bustos DC Bar. No. 229699
Mark A. Lancaster, D.C. Bar No. 1620256
SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.
1090 Vermont Ave., N.W.  Suite 750
Washington, D.C.  20005
Tel:  202-479-1111
Fax:  202-479-1115
sandler@sandlerreiff.com
lindenbaum@sandlerreiff.com
bustos@sandlerreiff.com
lancaster@sandlerreiff.com

10

        Aderson Francois, D.C. Bar No. 798544
        GEORGETOWN UNIVERSITY LAW CENTER
        Civil Rights Clinic
        600 New Jersey Avenue NW, Suite 352
        Washington, DC 20001
        Tel: 202-661-6721
        aderson.francois@georgetown.edu

        Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2021, I electronically filed the foregoing Plaintiffs' Reply Memorandum to Plaintiffs' Motion *in Limine* to Preclude Defendants from Making Any Argument or Introducing Any Evidence for Purposes of Asserting a Journalism Defense with the Clerk of Court using the CM/ECF system, which will cause a copy to be served on all counsel of record.

        /s/  Joseph E. Sandler

        Attorney for Plaintiffs