UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRACY PARTNERS, LLC,
*et al.*,
    Plaintiffs,

v.                                                                                                                                              CASE NO.: 1:17-CV-1047-PLF

PROJECT VERITAS ACTION FUND,
*et al.*,
    Defendants.
_____/

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED TO
EXPOSURE OF DEFENDANT ALLISON MAASS' SUBSEQUENT ATTEMPT TO
SECRETLY RECORD ANOTHER ORGANIZATION**

Plaintiffs herein reply to Defendants' Opposition [Dkt. No. 129] ("Def. Oppo.") to Plaintiffs' Motion *in Limine* to Exclude Evidence Related to Exposure of Defendants Allison Maass' Subsequent Attempt to Secretly Record Another Organization [Dkt. No. 120].

### I. The Court Should Weigh the Probative Value of the Evidence Against the Danger of Unfair Prejudice, Confusing the Issues and Misleading the Jury

To be sure, "[e]vidence otherwise inadmissible may be admitted if it shows bias on the part of the witness." *United States v. Slough*, 22 F. Supp. 3d 29, 33 (D.D.C. 2014). Under Fed. R. Evid. 403, however, even if evidence may be probative of such bias, its probative value must be weighed against "a danger of… unfair prejudice, confusing the issues, misleading the jury…" "'Proof of bias is almost always relevant' but 'the Court must still engage in the Rule 403 balancing test before the evidence may be admitted.'" *United States v. Young*, No. 12-cr-00042-BAH, 2013 WL 12430555 (D.D.C., April 22, 2013) (quoting *United States v. Harper*, No. 05-cr-6068L, 2009 U.S. Dist. LEXIS 3593, at *39–40 (W.D.N.Y. Jan. 20, 2009)).

1

If application of that balancing test shows that the dangers of prejudice and confusion outweigh the probative value of the purported evidence of bias, it should be excluded. *See, e.g.*, *Blair v. United States*, 401 F.2d 387, 389–90 (D.C. Cir. 1968) (affirming the District Court's decision to exclude evidence of police officers' bias because the "probative effect of the impeaching evidence was far outweighed by the potential prejudice to the defendants"); *Youssef v. Lynch*, No. 11–1362 (CKK), 2016 WL 10674065 at *2 (D.D.C. May 13, 2016) (internal citation omitted) ("[A] witness's bias may be proved by extrinsic evidence. However, evidence admitted… must still meet the requirements set forth in Rule 403"); *Harper*, 2009 U.S. Dist. LEXIS 3593 at *39–*40 ("[T]he mere invocation of the word 'bias' does not automatically justify the wholesale introduction of evidence . . . [T]he Court must still engage in the Rule 403 balancing test before the evidence may be admitted").

## II. There is No Need for Evidence of the Maass Sting Operation, and Any Probative Value is Limited at Best

### A. There Is No Need for the Maass Sting Evidence to Show Bias

"Situations in this area call for balancing the probative value and need for the evidence against the harm likely to result from its admission." Fed. R. Evid. 403, 1972 Advisory Committee Note. Here, there is in reality no need at all for evidence of the Maass sting operation in order to show that Ms. Windsor is biased against Project Veritas and Ms. Maass.

Although Ms. Windsor is technically a witness, functionally she was a part of Democracy Partners at the time of Defendants' infiltration. Ms. Windsor was present in the Democracy Partners office throughout Ms. Maass internship, and handled part of the intake of Ms. Maass as an intern, because Ms. Windsor was a principal of Mike Lux Media, a member of Democracy Partners which shared the office with Plaintiff Strategic Consulting Group. Ms.

2

Windsor interacted with Ms. Maass, and was secretly recorded by Ms. Maass, because she was part of Democracy Partners.

"'Bias is a term used…to describe the relationship *between a party and a witness* which might lead the witness to slant…his testimony in favor of or against a party.'" *Slough*, 22 F. Supp. 3d at 33 (quoting *United Sates v. Abel*, 469 U.S. 45, 52 (1984)) (emphasis added). Of course, there is no rule that precludes the examining party from showing that the opposing party is biased against the examining party. But it is already understood that parties are biased against each other; after all, one is suing the other. It adds little or nothing to the jury's assessment of credibility of a testifying party to show that that party is biased against the opposing party. As the Court noted in *Young v. Rabideau*, 821 F.2d 373 (7th Cir. 1987), "[b]ias is associated most often with criminal trials and is used against a witness rather than a party. . . The party alleged to be biased is the plaintiff, not a witness who might be partial or hostile to one of the parties. The traditional use of bias is simply not an appropriate concept to apply to this circumstance." *Young*, 821 F.2d at 378.

In this case, Defendants can easily demonstrate, in examining Ms. Windsor, that she felt violated and victimized by the infiltration of Democracy Partners and, accordingly, harbors ill feelings towards Project Veritas and Ms. Maass. The video of the chase following the Maass sting operation (Def. Trial Exhibit 178, Def. Oppo Exhibit C (the "chase video")) adds nothing of value in demonstrating such bias. In these circumstances, the evidence of the Maass sting operation is simply not needed. *See, e.g.*, *United States v. Abu Khatallah*, No. 14-cr-00141 (CRC), 2017 WL 11493960 at *3 (D.D.C. Sept. 7, 2017) (excluding evidence for motive in part because "given that the Government has evidence of other statements that can show the defendant's alleged [motive], evidence of these latter statements is cumulative and not essential to make the Government's point"); *United States v. Elksnis*, 528 F.2d 236, 238–39 (9th Cir. 1975) (affirming the District

3

Court's exclusion of a forty-five minute tape to prove Defendant had made a sincere effort to introduce an undercover agent to a narcotics dealer, when the agent had already testified to that effect and the Government had partially conceded the point).

### B. The Most Inflammatory Portions of the Subject Evidence Do Not Even Relate to Ms. Windsor

The key evidence that Plaintiffs seek to exclude is the chase video – the events following the confrontation at the restaurant, including Ms. Maass being chased down the street by Ms. Windsor and Ryan Clayton. The most inflammatory portions of that video are actually those involving Mr. Clayton: As described by Defendants, it was Mr. Clayton who "made threatening remarks," Def. Oppo. at 3, forced his way into a cab with Ms. Maass, *id*. at 4; again forced himself into the cab with her and used an obscenity. *Id.*

Manifestly, the actions of Mr. Clayton – who is neither a witness nor a party and has no interest in or position of any kind with any of the Plaintiffs – cannot be probative of the bias of Ms. Windsor. Mr. Clayton is neither a witness nor a party, and has never had any interest in or position of any kind with any of the Plaintiffs. Indeed, despite Defendants' attempt to paint Ms. Windsor as unabashedly proud of the events of that night, Ms. Windsor made clear in her deposition that she was surprised by with the way Mr. Clayton followed Maass into the taxis, saying that she would not go that far because she is not as aggressive as Mr. Clayton. Excerpts of Transcript of Deposition of Lauren Windsor. July 18, 2018 (Attached as Exhibit 1 hereto) at 14:22–15:7, 47:7–48:6. Thus, the minimal probative value of this evidence is reduced even further to the extent that the most inflammatory portions do not even involve the actions of the witness whose bias is supposed to be shown by the evidence – but rather the actions of an entirely different person.

### C. The Subject Evidence Is of Limited Use in Showing Bias of Ms. Windsor

The actions of Ms. Windsor herself depicted in the video of the chase of Ms. Maass after she left the restaurant (Def. Trial Exhibit 178, Def. Oppo Exhibit C) are of limited value in showing bias on the part of Ms. Windsor. Defendants note that Ms. Windsor, with Mr. Clayton, was "badgering and screaming" at Ms. Maass, and that Ms. Windsor repeatedly asked Ms. Maass whether she had been to a "rape barn"[1] and that she and Mr. Clayton both yelled at Ms. Maass that she had been "creamed." Def. Oppo. at 4. Those actions were clearly part of what Ms. Windsor believed was an effort to catch Ms. Maass trying to sting another target under false pretenses, like she did with Democracy Partners, and exposing the scam. Again, evidence of those actions add little or nothing to showing that Ms. Windsor harbored ill will towards Project Veritas and Ms. Maass because of the infiltration of Democracy Partners.

For these reasons, there is no need for the subject evidence to show Ms. Windsor's bias and its probative value for that purpose is very limited at best.

### III. The Dangers of Confusion and Prejudice Are Substantial

With respect to the evidence relating to the Maass sting operation, the very limited value of and lack of need for the evidence are far outweighed by the dangers of confusion and prejudice.

---

[1] That was a reference to allegations made by a former Project Veritas employee in 2012 that James O'Keefe had sexually harassed her in a barn; the former employee referred to the Project Veritas offices as a "rape barn." Mr. O'Keefe and Project Veritas have denied the allegations. See Project Veritas website, https://www.projectveritas.com/news/lie-7-james-okeefe-sexually-harassed-nadia-naffe/ (last accessed Nov. 13, 2021).

### A. Admission of the Evidence Poses a Serious Risk of Juror Confusion

First, introduction of any evidence relating to the Maass sting operation, and the video taken by Maass in particular, would be inherently confusing to the jury. The Maass sting operation is not in itself probative of any material fact in this case. The jury is very likely to be confused by the introduction of an entirely new series of events, occurring months after those giving rise to this case and involving overlapping-but-distinct groups of individuals. The events of, and leading up to, the scene at the restaurant and ensuing chase January 5, 2017, are complex; they involve a different organization being targeted by Ms. Maass based on a completely different set of false representations by Ms. Maass unrelated to those at issue in this case.

The jury is thus likely to be confused about who is on trial and what is being litigated. Is Ms. Maass' attempt to record the dinner on January 5, 2017 a violation of wiretap law? Did she owe People's Action a fiduciary duty? Is this part of the civil conspiracy? The introduction of evidence regarding the events of January 5, 2017, even if only for the purpose of showing Ms. Windsor's bias, leads inevitably to these questions – but these issues are not before the jury.

Further, that risk of juror confusion is compounded by the fact that the most inflammatory parts of the chase video depict the actions of Mr. Clayton, not those of Ms. Windsor. The video itself contains a cacophony of disembodied voices and frequent inflammatory content interspersed within. Ms. Windsor's statements are intermixed with others' comments, yells, and hurled insults. Viewing only quick snippets of the chaotic scene, a jury is unlikely to understand what happened and would be wholly unable to contextualize it. In those circumstances, "what little probative value the evidence . . . has . . . is overwhelmed by its tendency to raise collateral issues and confuse the jury." *Athridge v. Aetna Cas. & Sur. Co.*, 474 F. Supp. 2d 102, 108 (D.D.C. 2007). *See, e.g.*,

6

*English v. Dist. of Columbia*, 651 F.3d 1, 10 (D.C. Cir. 2011) (internal citation omitted) (excluding the entirety of a police department report in a Section 1983 claim because it could mislead the jury as to the applicable Fourth Amendment standard because it would cause "big time" confusion of the issues, "require the admission of the conclusions to be 'hedged about with jury instructions' and necessitate a 'trial within a trial about the whole District of Columbia disciplinary system'" (internal quotation omitted)).

### B.  Admission of the Evidence Poses a Substantial Risk of Unfair Prejudice

Admission of the central piece of evidence Plaintiffs seek to exclude – the chase video, Def. Trial Exhibit 178 – would also be highly prejudicial to Plaintiffs.  Manifestly, the language and tone used by Ms. Windsor were inflammatory, the language and tone used by Mr. Clayton were even worse, and a juror might easily be angered by the crude and outrageous language employed.  But a distaste for crude language or aggression is not a permissible basis for decision making.  Such evidence is also likely to suggest a false equivalence between the public encounter with Ms. Maass and Defendants' infiltration of Democracy Partners.  In this situation, "'the danger of unfair prejudice is significant . . . because the disputed 'evidence [is something] any reasonable jury would find difficult to ignore, despite the analytically and factually flawed basis for [the] conclusion' the jury was likely to draw." *Charles v. Home Depot U.S.A., Inc.*, No. 1:16-cv-02054 (GMH), 2021 WL 4439057, at *8 (D.D.C. Sept. 28, 2021) (analyzing *Bell v. Gonzales*, No. 03-163 (JDB), 2005 WL 3555490, at *4 (D.D.C. Dec. 23, 2005)).

### IV.   The Nature of the Participants in the Maass Sting Operation Was Fairly Presented by the Plaintiffs

Defendants suggest that Plaintiffs did not accurately represent to the Court the identity of those who planned and carried out the Maass sting operation, because Plaintiffs indicated that it

7

was planned and carried out by Ms. Windsor and "others who are not parties or witnesses in this case." Def. Oppo. at 6 (quoting Plaintiffs' Memorandum in Support [Dkt No. 120-1] at 2).

Defendants deliberately conflate the counter-sting – the plan to catch Ms. Maass at the restaurant lying about her identity again and secretly taping the head of another organization – with the chase that followed the confrontation at the restaurant. Defendants' Exhibit 178, that Plaintiffs seek to exclude, was a video taken by Ms. Maass of the chase. There is no evidence whatsoever that anyone other than Ms. Windsor and Mr. Clayton ever planned or participated in the chase or in any other "harassment" of Ms. Maass.

The deposition portions cited by Defendants indicate only that Mr. Creamer was involved in planning the sting – *not* any part of the chase in which Ms. Maass felt harassed. Def. Oppo. at 7 ("The sting, who planned the sting?"). Indeed, Defendants cite a portion of Ms. Windsor's deposition in which they deliberately confuse the issue, not only conflating the sting and the chase but broadening the circle well beyond those involved in planning anything:

> A [Windsor].      You're specifically asking for planning?
> Q [Def. Counsel]. No. That's not what I clarified a moment ago. Anybody who touched it, anybody who approved it, anybody who had input, any part of it, had knowledge of it.

Def. Oppo. at 7 (quoting Deposition of Lauren Windsor, Def. Oppo. Exhibit D at 16:6-16). Defendants' efforts to tie the chase to the parties to this case not only fall flat, but have no bearing on the supposed reason they want the evidence introduced: to show bias on the part of Ms. Windsor.

## **CONCLUSION**

To show bias on the part of Ms. Windsor, there is minimal probative value of and no need at all for, the evidence relating to the Maass sting operation. On the other hand, admission of that evidence would pose very substantial risks of juror confusion and unfair prejudice to the

Plaintiffs.  Accordingly, the evidence should be excluded under Fed. R. Evid. 403.  For those reasons, and the reasons set forth in Plaintiffs' Memorandum in Support [Dkt. No. 120-1], Plaintiffs' Motion *in Limine* to Exclude Evidence Related to Exposure of Defendants Allison Maass' Subsequent Attempt to Secretly Record Another Organization [Dkt. No. 120] should be granted.

                                                Respectfully submitted,

Dated: November 15, 2021           /s/ Joseph E. Sandler

                                                Joseph E. Sandler, D.C. Bar No. 255919
Christina E. Bustos DC Bar. No. 229699
Mark A. Lancaster, D.C. Bar No. 1620256
SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.
1090 Vermont Ave., N.W.  Suite 750
Washington, D.C.  20005
Tel:  202-479-1111
Fax:  202-479-1115
sandler@sandlerreiff.com
lindenbaum@sandlerreiff.com
bustos@sandlerreiff.com
lancaster@sandlerreiff.com


Aderson Francois, D.C. Bar No. 798544
GEORGETOWN UNIVERSITY LAW CENTER
Civil Rights Clinic
600 New Jersey Avenue NW, Suite 352
Washington, DC 20001
Tel: 202-661-6721
aderson.francois@georgetown.edu

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2021, I electronically filed the foregoing Plaintiffs' Reply Memorandum to Plaintiffs' Motion in Limine to Exclude Evidence Related to Exposure of Defendant Allison Maass' Subsequent Attempt to Secretly Record Another Organization, with the Clerk of Court using the CM/ECF system, which will cause a copy to be served on all counsel of record.

/s/  Joseph E. Sandler

Attorney for Plaintiffs