UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRACY PARTNERS, LLC, *et al.*,  )
                                              )
      Plaintiffs,                )
                                              ) Civ. No. 1:17-cv-1047-PLF
      v.                            )
                                              )
PROJECT VERITAS ACTION FUND, LLC, *et al.*, )
                                              )
      Defendants.             )
                                              )

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF AARON BLACK**

Plaintiffs have filed a Motion *in Limine* to exclude the testimony of Aaron Black. [Dkt. No. 118]. In their Opposition [Dkt. No. 139] ("Def. Opp."), Defendants insist that Black has testimony to offer that would be relevant to (i) the existence of a fiduciary duty owed by Defendant Allison Maass to Plaintiff Democracy Partners; (ii) whether Ms. Maass was visible to the participants in one conversation that she recorded but in which she herself did not participate; and (iii) the issue of whether Plaintiff Strategic Consulting Group's damages were proximately caused by the infiltration. Defendants' contentions make no sense and are not supported by the record.

    **I.**    **Black Has No Knowledge of Any Facts Relevant to the Existence of a Fiduciary Duty from Maass to Democracy Partners**

Mr. Black, as a contractor on a sensitive project, indeed owed a fiduciary duty to Democracy Partners even though he was not a member of Democracy Partners. Defendants do not disagree. Def. Oppo. at 4-5. Plaintiffs also contend that Ms. Maass owed a fiduciary duty to Democracy Partners even though she was not a member. Defendants suggest that somehow the fact that Mr. Black talked to Ms. Maass about bracketing shows that there was no fiduciary

relationship. That makes no sense. Two people who each owe a fiduciary relationship to the same principal can certainly talk to each other about confidential and sensitive information within the scope of that relationship.

To be sure, Plaintiffs have never claimed that Mr. Black himself provided any confidential information about bracketing to Ms. Maass. But she did learn confidential information about bracketing from *other* people by virtue of her relationship with Democracy Partners. For example, Jenna Price at the DNC (the client for the bracketing work) conveyed to Ms. Maass advance information about the DNC's plans to send staffers to coordinate and organize certain protests and press conferences that Mr. Price specifically said was "secret" until the program started. Excerpts of Transcript of Deposition of Allison Maas, Aug. 10, 2018, attached hereto as Exhibit 1 ("Maass Tr.") 98:2—99:19; Maass Depo. Exhibit 17, Pl. Trial Exhibit 104, attached hereto as Exhibit 2. Similarly, Ms. Maass received from Plaintiff Robert Creamer – the sole owner of Strategic Consulting Group, member of Democracy Partners – confidential information that had been provided to Creamer by DNC consultants about bracketing events that had not yet taken place. Maass Tr. 113:11—114:13; Maas Depo. Exhibit 21, Plaintiff Trial Exhibit 7, attached hereto as Exhibit 3. That Mr. Black himself did not provide confidential information about bracketing in no way "undercuts Plaintiffs' arguments that the information disclosed to Ms. Maass during her internship was confidential to Democracy Partners" as Defendants suggest. Def. Oppo. at 5. To the contrary, it shows Mr. Black has no information relevant to the existence of any fiduciary duty.

Defendants further suggest that because Mr. Black had a fiduciary duty to Democracy Partners, somehow, he could provide information about how Ms. Maass would "learn of such a duty and its requirements by implication." *Id*. That also makes no sense. The way in which Mr.

Black acquired such a fiduciary duty and the way he fulfilled it would not be probative in any way of whether Ms. Maass also had a duty and whether she breached that duty.

## II. Mr. Black Has No Knowledge of Any Facts Relevant to the Wiretapping Claims

Both the federal and D.C. wiretapping statutes are violated if a person secretly records a conversation in which they are not a participant, or records a conversation in which they are a participant if the recording was for a tortious purpose. 18 U.S.C. §2511(1)(a), 1(d); D.C. Official Code §23-542(a)(1), (b)(3). Plaintiffs claim that Ms. Maass secretly recorded at least one conversation in which she was not a participant: a meeting among two members of Democracy Partners and Sen. Bernie Sanders' then-presidential campaign manager. *See* Memorandum Opinion on Summary Judgment, Dkt. No. 83 at 34-35. This recording would make her liable for violating these statutes regardless of the purpose of the recording. The Court ruled that the "critical legal question" is whether Ms. Maass' "'presence [wa]s apparent in the midst of a communication'" to the individuals being recorded. *Id*. at 35 (quoting *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz,* 31 F. Supp. 3d 237, 255 (D.D.C. 2014)). In ruling on Defendants' summary judgment motion, the Court, viewing the video recorded by Ms. Maass, found that "there is nothing in the video that suggests that Ms. Maass' presence was 'apparent' to the participants in the intercepted conversation" because the video shows only that "Maass' desk directly faces a glass wall of the conference room [in which the meeting took place]. . . . [I]f the items on Maass' desk are blocking Maass' line of sight into the conference room, one could infer that they are also blocking the line of sight from the conference room to Maass." *Id*.

Defendants assert that because Mr. Black was present in the room and spoke with Ms. Maass while the meeting was taking place, he could testify as to "whether Ms. Maass' presence was apparent…" Def. Oppo. at 6. But the issue is not what Mr. Black could see, but what the

*participants in the meeting* could see – specifically whether it is reasonable to infer that they could see Ms. Maass. Nothing Mr. Black observed would be probative of that factual issue. He was on Ms. Maass' side of the wall. He was not sitting at her desk. He had no way of knowing what the participants in the meeting could or could not see. Thus, he is not able to offer any testimony that would be relevant to the issue of whether Ms. Maass recorded a conversation in which she was not a participant.

Finally, Defendants contend that Mr. Black has information about the nature of "bracketing" activity that would have made it "newsworthy," thus supporting Defendants' argument that Ms. Maass' secret recording did not have a tortious purpose because it had a journalistic purpose. Def. Oppo. at 5-6. The Court has ruled, however, that the "Court is not persuaded that defendants' supposed journalist status is a 'fact[] of consequence in determining th[is] action.'" Opinion and Order on Defendants' Motion in Limine to Exclude Plaintiffs' Politically-Motivated Efforts to Introduce Irrelevant Evidence, Oct. 14, 2021 [Dkt. No. 114] at 11. Thus, the "newsworthiness" of "bracketing," or lack thereof, is not relevant in establishing any claim or defense in this action.

### III.     Mr. Black Has No Knowledge of Any Facts Relevant to Causation

The parties dispute whether the infiltration of Democracy Partners by Ms. Maass and the act of her secret recording were the proximate cause of the decision by AFSCME to cancel its contract with Strategic Consulting Group and terminate its support for American United for Change. Mr. Black has no knowledge of any facts related to that issue.

Defendants do not suggest otherwise. They suggest that somehow because Ms. Maass also interacted with and recorded Mr. Black, that he can testify about "all of the things that were not occurring in the Democracy Partners office… in September and October, 2016 – namely anything

having to do with AFSCME." Def. Oppo. at 7. There is no reason Mr. Black would be aware of any of Strategic Consulting Group's work with AFSCME. Neither Mr. Black's awareness of Strategic Consulting Group's contract with AFSCME nor Ms. Maass' awareness, or lack thereof, has any relevance to the issue of causation. *See* Memorandum Opinion on Summary Judgment, Dkt. No. 83 at 16-18. Mr. Black has no knowledge of any facts probative of causation.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Memorandum in Support of its Motion *in Limine* to Exclude Testimony of Aaron Black, Plaintiff's Motion in Limine should be granted and Defendants should be precluded from calling Mr. Black as a witness.

Respectfully submitted,

Dated: November 15, 2021   /s/ Joseph E. Sandler

Joseph E. Sandler, D.C. Bar No. 255919
Christina E. Bustos DC Bar. No. 229699
Mark A. Lancaster, D.C. Bar No. 1620256
SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.
1090 Vermont Ave., N.W. Suite 750
Washington, D.C. 20005
Tel: 202-479-1111
Fax: 202-479-1115
sandler@sandlerreiff.com
lindenbaum@sandlerreiff.com
bustos@sandlerreiff.com
lancaster@sandlerreiff.com


Aderson Francois, D.C. Bar No. 798544
GEORGETOWN UNIVERSITY LAW CENTER
Civil Rights Clinic
600 New Jersey Avenue NW, Suite 352

Washington, DC 20001  
Tel: 202-661-6721  
aderson.francois@georgetown.edu

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2021, I electronically filed the foregoing Plaintiffs' Reply Memorandum In Support of Plaintiffs' Motion *in Limine* to Exclude Testimony of Aaron Black, with the Clerk of Court using the CM/ECF system, which will cause a copy to be served on all counsel of record.

/s/  Joseph E. Sandler

Attorney for Plaintiffs