UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRACY PARTNERS, LLC, et al.,

      Plaintiffs,

v.

PROJECT VERITAS ACTION FUND, et al.,

      Defendants.
_____/

CASE NO.: 1:17-CV-1047-PLF

## JOINT STIPULATION AS TO TESTIMONY OF LAUREN WINDSOR

Plaintiffs and Defendants have agreed that neither side will call Lauren Windsor as a witness at trial. The parties respectfully request that their Joint Stipulations of Fact previously filed [Dkt. No. 112] be supplemented with the following stipulated facts regarding the testimony of Lauren Windsor and respectfully request that the Court read the following to the jury and that it be admitted into the record as evidence at trial. The Parties agree the Court may rely upon the following, once admitted, as record evidence at any stage of the proceeding, including motions made after the Plaintiffs rest.

1. I believe Allison Maass' internship lasted three weeks.

2. I never gave her a written nondisclosure agreement or confidentiality agreement, either in email or in person.

3. I never drafted a written nondisclosure or confidentiality agreement to give her.

4. There is no written nondisclosure agreement or confidentiality agreement for Allison Maass/Angela Brandt.

5. I don't believe that I ever had a discussion with her about nondisclosure agreements.

6. I don't believe that I ever had a discussion with her about confidentiality agreements.

7. I don't recall having a discussion with her about the need to not discuss what she learned, saw, heard, or did during her internship at Democracy partners.

8. I don't recall being present if Mr. Creamer had a discussion with Allison Maass/Angela Brandt about not discussing or disclosing what she learned, did, saw, or heard during her internship at Democracy Partners.

9. I never provided her with a nondisclosure agreement or confidentiality agreement for Mike Lux Media, and we would not have because she was not considered our intern. She was considered Bob's intern.

10. I don't know what Bob's processes are for bringing people into Strategic Consulting Group or Democracy Partners, so it had not occurred to me to inquire what his employment process was with regard to confidentiality agreements.

11. To my knowledge, the various entities in the office area do not have nondisclosure agreements between them.

12. I had two in-person conversations with Bob and brought up the idea of getting a nondisclosure agreement from the intern. Those conversations occurred on the same day and I believe it was the first day of the internship.

13. I wanted to know who the intern was, and Bob's relationship to her.

14. I thought it was a good idea for Bob to get a nondisclosure agreement, but he said that I should not worry, that it was the niece of a friend of his and that it was under control. He told me if I wanted to get that information, then I should.

15. I did not ask the intern for an NDA because I didn't get around to it and also because I felt uncomfortable openly challenging someone Bob represented as a friend.

16. I broached my concerns at least twice to Bob and was told everything was okay.

17. I don't recall having a specific conversation with Ms. Maass about confidentiality during her internship, but it would have been implied from the nature of the work we were doing.

18. I did not ask Ms. Maass for an NDA because I didn't get around to it but I also communicated my concerns to Bob, and given that she was not our intern, and by our, I mean Mike Lux Media, I felt uncomfortable in what I saw to be like openly challenging someone that was represented to me as a friend of Bob.

19. But I thought it was clear from the nature of the work and the fact that we issued her a card to get into the office the nature of the work was sensitive.

20. I asked Ms. Maass for a resume.

21. I received and retained Ms. Maass' resume.  I don't recall if it was the third day of her physical presence of her internship.

22. I don't believe I ever asked her for any other documentation relating to Angela Brandt's identity other than her resume.

23. I asked Ms. Maass for an emergency contact, and she gave me one.  I did not reach out to the emergency contact because it was the name of the uncle who was supposedly friends with Bob.

24. We issued Ms. Maass a key card to swipe to gain access to the office.

25. Ms. Maass sat at the reception desk in the Democracy Partners office.

26. I think the policy was, like, so long as Ms. Maass was there or someone was there at the front desk, that the office door was left open but then during other times we lock it.

27. I don't recall ever asking Ms. Maass for an ID. She was not my intern.

28. Ms. Maass did have to present one at Communications Workers of America though. We had to check in to get into the building. I was with her when she showed her ID. I do not have a copy of her ID.

Respectfully submitted,

*/s/ Paul A. Calli*
Paul A. Calli
Florida Bar No. 994121
Chas Short
Florida Bar No. 70633
CALLI LAW, LLC
14 NE 1st Ave, Suite 1100
Miami, FL 33132
Telephone: (786) 504-0911
Facsimile (786) 504-0912
PCalli@Calli-Law.com
CShort@Calli-Law.com
*Admitted pro hac vice*


*/s/ Stephen Klein*
Stephen R. Klein
Bar No. 177056
BARR & KLEIN PLLC
1629 K St. N.W., Ste. 300
Washington, DC 20006
Telephone: (202) 804-6676
steve@barrklein.com

*Counsel for Defendants Project Veritas Action Fund, Project Veritas, James O'Keefe, and Allison Maass*

and

/s/ Joseph E. Sandler
Joseph E. Sandler
D.C. Bar No. 255919
Christina Bustos
D.C. Bar No. 229699
SANDLER REIFF LAMB ROSENSTEIN
& BIRKENSTOCK, P.C.
1090 Vermont Ave., N.W. Suite 750
Washington, D.C. 20005
Telephone: (202) 479-1111
Fax: (202) 479-1115
sandler@sandlerreiff.com
bustos@sandlerreiff.com

*Counsel for Plaintiffs Democracy Partners, LLC, Strategic Consulting Group, NA, Inc. and Robert Creamer*

## CERTIFICATE OF SERVICE

I CERTIFY that on September 4, 2022, I served the foregoing through the Court's electronic filing system which served a copy on all counsel of record.

/s/ Paul A. Calli
Paul A. Calli