# COMPOSITE EXHIBIT A

1    **FEDERAL ELECTION COMMISSION**

2    **FIRST GENERAL COUNSEL'S REPORT**

3                                              **MUR: 7155**
4                                              DATE COMPLAINT FILED: 10/19/2016
5                                              DATE OF NOTIFICATION: 10/26/2016
6                                              SUPPLEMENTAL COMPLAINT FILED: 3/23/2017
7                                              LAST RESPONSE RECEIVED: 4/20/2017
8                                              DATE ACTIVATED: 3/1/2017
9
10                                             EARLIEST SOL: 3/11/2021
11                                             LATEST SOL: 9/23/2021
12                                             ELECTION CYCLE: 2016
13
14   **COMPLAINANT:**                          Public Interest Legal Foundation
15
16   **RESPONDENTS:**                          Hillary For America and Jose Villarreal in his
17                                                 official capacity as treasurer
18                                             The Democratic National Committee and
19                                                 Andrew Tobias in his official capacity as
20                                                 treasurer
21                                             Democracy Partners
22                                             Bob Creamer
23                                             Americans United for Change
24                                             Scott Foval DBA The Foval Group
25                                             Voces de la Frontera Action
26
27   **RELEVANT STATUTES**
28   **AND REGULATIONS:**                      52 U.S.C. § 30116(a), (b), (d), (f)
29                                             52 U.S.C. § 30118
30                                             11 C.F.R. § 109.20
31                                             11 C.F.R. § 109.21
32                                             11 C.F.R. § 109.22
33                                             11 C.F.R. § 109.37
34
35
36   **INTERNAL REPORTS CHECKED:**             Disclosure Reports
37
38   **FEDERAL AGENCIES CHECKED:**             None

MURs 7155 & 7157 (Hillary for America, *et al.*)
First General Counsel's Report
Page 2 of 17

| | |
|---|---|
| | **MUR: 7157** |
| | DATE COMPLAINT FILED: 10/20/2016 |
| | DATE OF NOTIFICATION: 10/27/2016 |
| | SUPPLEMENTAL COMPLAINT FILED: 3/23/2017 |
| | LAST RESPONSE RECEIVED: 4/20/2017 |
| | DATE ACTIVATED: 3/1/ 2017 |
| | |
| | EARLIERST SOL: 3/11/2021 |
| | LATEST SOL: 9/23/2021 |
| | ELECTION CYCLE: 2016 |
| | |
| **COMPLAINANTS:** | Project Veritas Action Fund |
| | |
| **RESPONDENTS:** | Hillary For America and Jose Villarreal in his official capacity as treasurer |
| | The Democratic National Committee and Andrew Tobias in his official capacity as treasurer |
| | Priorities USA Action |
| | Democracy Partners |
| | Americans United for Change |
| | Scott Foval DBA The Foval Group |
| | Alliance for Retired Americans |
| | |
| **RELEVANT STATUTES AND REGULATIONS:** | 52 U.S.C. § 30116(a), (b), (d), (f) |
| | 52 U.S.C. § 30118 |
| | 11 C.F.R. § 109.20 |
| | 11 C.F.R. § 109.21 |
| | 11 C.F.R. § 109.22 |
| | 11 C.F.R. § 109.37 |
| | |
| **INTERNAL REPORTS CHECKED:** | Disclosure Reports |
| | |
| **FEDERAL AGENCIES CHECKED:** | None |

## I.     INTRODUCTION

The Complaints allege that Priorities USA Action ("Priorities USA"), Democracy

Partners, Bob Creamer, Americans United for Change ("Americans United"), Scott Foval DBA

The Foval Group ("Foval"), Voces de la Frontera Action ("Voces"), and Alliance for Retired

Americans made prohibited in-kind contributions in the form of coordinated expenditures to

MURs 7155 & 7157 (Hillary for America, *et al.*)
First General Counsel's Report
Page 3 of 17

1    Hillary for America and Jose Villarreal in his official capacity as treasurer ("HFA") and the

2    Democratic National Committee and Andrew Tobias in his official capacity as treasurer (the

3    "DNC"), in violation of the Federal Election Campaign Act of 1971, as amended (the "Act") and

4    Commission regulations.  The Complaint also alleges that HFA and DNC accepted these

5    contributions and did not report them.[1]

6        Because the available information does not indicate that any of the activities identified in

7    the Complaints resulted in prohibited or excessive contributions, we recommend that the

8    Commission find no reason to believe that Respondents violated the Act and close the files.

9    **II.    FACTS**

10       HFA is the principal campaign committee for Hillary Clinton's 2016 presidential

11   campaign.[2]  Priorities USA is an independent-expenditure-only political committee ("IEOPC")

12   that made independent expenditures during the 2016 general election advocating for Hillary

13   Clinton and against Donald Trump.[3]  Alliance for Retired Americans and Voces are both

14   nonprofit organizations registered under section 501(c)(4) of the Internal Revenue Code.[4]

---

[1]      *See* Compl. at 3-4 (MUR 7155) (Oct. 19, 2016); Compl. at 14-15 (MUR 7157) (Oct. 20, 2016); Supp.
Compl. at 9-13 (MUR 7157) (Mar. 27, 2017) ("Supp.").

[2]      Statement of Organization, Hillary for America (Apr. 13, 2015).

[3]      *See generally* 2016 28/48-Hour Notices of Independent Expenditures, Priorities USA (showing that
Priorities USA made more than $126 million in independent expenditures related to the 2016 general election for
President).

[4]      PROPUBLICA NONPROFIT EXPLORER: ALLIANCE FOR RETIRED AMERICANS,
https://projects.propublica.org/nonprofits/organizations/522277805 (last visited Mar. 21, 2017) (The associated PAC
is registered under Committee ID C00436188 which reported no contributions or independent expenditures during
the 2016 election cycle.); VOCES DE LA FRONTERA ACTION, http://www.vdlfa.org/about_us/ (last visited Apr. 25,
2017).

1    Democracy Partners is a political consulting firm with partners who each maintain their

2    own businesses.[5]  Bob Creamer, a partner at Democracy Partners, maintains Mobilize, Inc.

3    ("Mobilize"), and he is affiliated with Americans United, a section 501(c)(4) organization.[6]

4    Scott Foval was employed by Americans United from August 2016 through October 17, 2016.[7]

5    Project Veritas Action Fund ("Project Veritas Action"), the Complainant in MUR 7157,

6    released a series of four hidden camera videos (the "PVA videos"), the first of which contained

7    conversations between Foval, Creamer, and undercover PVA representatives posing as agents for

8    a donor named "Charles Roth."[8]  These PVA videos and other documents collected during the

9    undercover investigation form the basis for the Complaints.

10   The Complaint in MUR 7155 alleges that Americans United, Voces, Democracy

11   Partners, and Foval made coordinated communications at the request or suggestion of, or after

12   substantial discussions with, HFA and the DNC.[9]  The Complaint and its supplement in MUR

13   7157 allege that Priorities USA, Alliance for Retired Americans, Americans United, HFA, and

14   the DNC engaged in a criminal conspiracy to knowingly and willfully violate the Act and

15   Commission regulations by making, accepting, and not reporting prohibited and excessive

---

[5]    Democracy Partners Resp. at 1 (MUR 7155) (Dec. 22, 2016).

[6]    *See* Democracy Partners, Robert C. Creamer, http://www.democracypartners.com/?q=partners/robert-creamer (last viewed May 1, 2017) (describing Creamer as a "General Consultant to Americans United for Change where he helped coordinate the campaigns to pass President Obama's landmark jobs and economic recovery legislation"); Compl. Ex. G (MUR 7155) (email from Creamer sending a proposal for $50,000 in "voter mobilization" services on behalf of Americans United and Voces).

[7]    *See* Compl. Ex. A at 5 (MUR 7157).

[8]    Philip Elliot, *Everything We Know about the Latest James O'Keefe Video Sting*, TIME (Oct. 18, 2016), http://time.com/4536212/james-okeefe-project-veritas-video-democrats.

[9]    Compl. at 3-4 (MUR 7155).

MURs 7155 & 7157 (Hillary for America, *et al.*)
First General Counsel's Report
Page 5 of 17

1 contributions in the form of coordinated communications.[10]  The specific activities alleged in the

2 Complaints are:

3 • Americans United coordinated with HFA and the DNC on an operation known as
4 "Donald Ducks," which consisted of a person in a duck costume appearing at Trump
5 campaign events and carrying a sign reading "Donald Ducks Releasing His Tax
6 Returns;"[11]
7
8 • Democracy Partners, Americans United, Creamer, and Foval coordinated with HFA and
9 the DNC to pay protesters to appear at Trump rallies;[12]
10
11 • Americans United and Voces coordinated with HFA and the DNC on a get-out-the-vote
12 drive called "Vote November 8th for a Stronger Economy that Makes Us Stronger
13 Together" (the "Fall Plan"), which involved alleged fraudulent registration of non-
14 residents in Wisconsin;[13] and
15
16 • Priorities USA, Americans United, Alliance for Retired Americans, Democracy Partners,
17 Voces, Foval, and Creamer made public communications based on "shared electoral
18 strategy" and messaging developed in coordination with HFA and the DNC.[14]
19
20 **A.     "Donald Ducks"**

21      The Complaints argue that "Donald Ducks" was a public communication by Americans

22 United, made after substantial discussions and with material involvement from both HFA and the

23 DNC.  Specifically, the Complaints allege that Americans United implemented the "Donald

24 Ducks" operation that the DNC and HFA originally developed.[15]

---

[10]  Compl. at 2, 14-15 (MUR 7157); Supp. at 9-13 (MUR 7157).

[11]  *See* Compl. at 9 (MUR 7157); Compl. at 5, Ex. D (MUR 7155); Supp. at 9-13 (MUR 7157).

[12]  *See* Compl. at 3 (MUR 7155); Compl. at 14-15 (MUR 7157); Supp. at 9-13 (MUR 7157).

[13]  *See* Compl. at 4 (MUR 7155); Compl. at 14-15 (MUR 7157); Supp. at 9-13 (MUR 7157).

[14]  *See id.*

[15]  *See id.*

MURs 7155 & 7157 (Hillary for America, *et al.*)
First General Counsel's Report
Page 6 of 17

1    The DNC argues that it conducted the "Donald Ducks" operation through a contract with

2    Mobilize, and it provided invoices showing that the DNC paid the associated expenses.[16]

3    Mobilize, in turn, subcontracted with Foval, although it is unclear whether Mobilize contracted

4    with Foval individually, with Foval's LLC, or with Americans United.[17]  Foval provided services

5    under the subcontract from June 2016 until October 17, 2016, when Americans United

6    terminated him.[18]  Although both the Complaints and several press reports suggest that "Donald

7    Ducks" was "transferred" from the DNC to Americans United at some point — after the DNC

8    received negative press regarding possible copyright infringement — Americans United's

9    President, Brad Woodhouse, provided two sworn declarations stating that Americans United did

10   not pay for any expenses associated with "Donald Ducks."[19]

---

[16]    The DNC provided invoices showing that it paid for the "Donald Ducks" operation under a contract that the DNC and Mobilize entered into in June 2016 (the "Mobilize contract") for Mobilize to "coordinate events and actions" related to the 2016 Presidential Election.  Democracy Partners Resp. at 1 (MUR 7155).  Disclosure reports show disbursements from the DNC to Mobilize, Inc., which mirror the invoices.  *See* DNC Resp. at 2 (MUR 7155) (Dec. 19, 2016); DNC 2016 Amended October Monthly Report (Jun. 1, 2017).  Disclosure reports also indicate that Mobilize's work for the DNC was not limited to the "Donald Ducks" operation.  *See* DNC 2016 Amended August Monthly Report (Jun. 1, 2017); DNC 2016 Amended September Monthly Report (Jun. 1, 2017); DNC 2016 Amended October Monthly Report (Jun. 1, 2017); DNC 2016 Amended Pre-General Report (Jun. 1, 2017); DNC 2016 Amended Pre-General Report (Jun. 1, 2017); DNC 2016 Amended Year-End Report (Jun. 1, 2017) (disclosing a total of $183,408.93 in payments from the DNC to Mobilize).  Respondents provided documentation showing that $41,338.95 of the disbursements related to services for the "Donald Ducks" operation, but did not provide itemized invoices showing the services included in the remaining $142,069.98.

[17]    *See* Democracy Partners Resp. at 1 (MUR 7155) ("Scott Foval was engaged as a sub-contractor in June of 2016."); Compl. Ex. F at 2 (MUR 7155) (quoting Foval as saying "I am contracted with [Bob Creamer] . . . DNC pays Democracy Partners, Democracy Partners pays the Foval Group, The Foval Group goes and executes . . ."); *see also* Compl. Ex. A at 5-9 (MUR 7157) (Foval alternates between identifying himself as a "contractor" and "consultant").

[18]  .    *See* Democracy Partners Resp. at 1 (MUR 7155); David Weigel, *Two Democratic Operatives Lose Jobs After James O'Keefe Sting,* THE WASHINGTON POST (Oct. 19, 2016), https://www.washingtonpost.com/news/post-politics/wp/2016/10/19/two-democratic-operatives-lose-jobs-after-james-okeefe-sting/?tid=pm_pop_b (stating that "Foval was laid off Monday [Oct. 17, 2016] by Americans United for Change, where he had been national field director").

[19]    *See* Americans United Resp. Attach. A (MUR 7155) (Dec. 16, 2016); Americans United Resp. Attach. A (MUR 7157) (Dec. 16, 2016).  In both declarations, Woodhouse states that the Americans United's "sole expenses associated with the effort consisted of staff time to prepare and issue press releases about the effort over the internet, along with unpaid Twitter messaging." *Id.*

1    **B.    Paid Protesters**

2    The Complaints allege generally that Democracy Partners, Creamer, Foval, and

3    Americans United paid and coached protesters at Trump campaign rallies; that HFA and the

4    DNC reviewed and approved the messages the protestors used; and that these activities

5    constituted coordinated communications by Democracy Partners, Creamer, Foval, and

6    Americans United.[20]  Specifically, the Complaints point to press coverage of a Trump rally in

7    Chicago on March 11, 2016, and portions of the PVA Videos during which a Democracy

8    Partners employee says "[s]o the Chicago protest when they shut all that, that was us."[21]  In

9    support of the more general allegation regarding paying and training protesters, the Complaints

10   highlight Foval's statements in the PVA videos claiming that he and Creamer are the primary

11   organizers of the protests at Trump campaign events and that the DNC and HFA "cleared" the

12   protesters' proposed messaging.[22]  The Complaint also relies on Foval's statements referring to

13   paying protesters:

14   • "We have to be really careful because what we don't need is for it to show up on CNN
15      that the DNC paid for X people to; that's not going to happen."[23]

16   • "I'm saying we have mentally ill people that we pay to do [expletive], make no mistake.
17      Over the last 20 years, I have paid off a few homeless guys to do some crazy stuff . . . ."[24]

18   The PVA videos on which the Complaints rely provide no specific context for these statements.

---

[20]    Compl. at 2 (MUR 7155); Compl. at 5-7, 14 (MUR 7157).

[21]    *See* Compl. Ex. C, Ex. F at 4 (MUR 7155).

[22]    *See* Compl. at 5-7, Ex. A at 5-9 (MUR 7155); *see also* Project Veritas Action, *Rigging the Election –
Video I: Clinton Campaign and DNC Incite Violence at Trump Rallies* [video] at 7:20, 7:28, 8:40, 8:50, YOUTUBE
(Oct 17, 2017), https://www.youtube.com/watch?time_continue=3&v=5IuJGHuIkzY ("Rigging the Election").

[23]    Rigging the Election at 10:20.

[24]    Rigging the Election at 13:50.

MURs 7155 & 7157 (Hillary for America, *et al.*)
First General Counsel's Report
Page 8 of 17

1    HFA and the DNC question the authenticity of the PVA videos, arguing that Project

2    Veritas "devised the questions themselves, cherry-picked excerpts of responses, and presented

3    them out of context.[25] The DNC also argues that the Complaints fail to present facts which

4    support the coordination allegation.[26] Americans United also challenges the videos' authenticity

5    and provided an affidavit in which Brad Woodhouse attests that Americans United neither paid

6    any protesters to appear at the Chicago Trump rally nor paid for any signs carried by protesters at

7    Trump rallies.[27] Democracy Partners also questions the videos' authenticity, characterizing

8    Foval's statements cited in the Complaint as factually inaccurate "puffery and bragging by a

9    short-term contractor."[28] Democracy Partners specifically denies paying protesters and cites

10   contemporaneous news articles in which several prominent protesters at Trump rallies denied

11   being trained or induced by any third parties.[29]

12       **C.    Voter Registration and GOTV Activity in Wisconsin**

13       The Complaints allege that Americans United and Voces engaged in the Fall Plan, which

14   resulted in prohibited in-kind contributions to HFA and the DNC.  In support, both Complaints

15   provided copies of the Fall Plan, which was written on Americans United letterhead.[30] The

16   Complaints allege that Americans United and Voces developed and executed the Fall Plan in

---

[25]    *See* DNC Resp. at 2 (MUR 7155); DNC Resp. at 1 (MUR 7157), HFA Resp. at 2 (MUR 7155).

[26]    DNC Resp. at 2 (MUR 7155).

[27]    Americans United Resp. Attach. A (MUR 7155) ("AUFC did not pay anyone to protest at a Trump rally in Chicago on March 11, 2016 . . ."); Americans United Resp. Attach. A (MUR 7157) (Dec. 16, 2016) ("AUFC did not pay for signs carried by protesters at Trump rallies that read '#DumpTrump,' 'No Hate, No Racism, No Trump,' or 'Nope' with images of Trump.").

[28]    Democracy Partners Resp. at 4 (MUR 7155).

[29]    Democracy Partners Resp. at 3 (MUR 7155).

[30]    *See* Compl. Ex. A (MUR 7155); Compl. Exs. C, D (MUR 7157).

1    consultation with HFA and the DNC.  The Complaints also allege that the voter registration and

2    GOTV activity listed in the Fall Plan were targeted to reach voters likely to support Clinton and

3    that they may have intentionally registered non-residents.[31]

4          Respondents state that the Fall Plan was only a proposal distributed by Americans United

5    and Voces through a press release to generate interest in funding the proposed activities.[32]  In his

6    declarations, Woodhouse states that Americans United did not carry out the Fall Plan and did not

7    incur any expenses in connection with the proposed activities.[33]

8    **D.**    **Shared Electoral Strategy and Messaging**

9          The Complaints allege that HFA and the DNC conducted weekly conference calls with

10    the other respondents to "determine shared electoral strategy" and discuss plans to "shape

11    content and messaging to benefit HFA and the DNC."[34]  The Complaints allege that these calls

12    involved "material discussion" about the "timing, content, and audience" for public

13    communications disseminated by these outside groups "at or with the direction, approval, [or]

14    suggestion" of HFA and the DNC.[35]

---

[31]    *See* Compl. Ex. C (MUR 7157).

[32]    Americans United Resp. at 1 (MUR 7155).  Voces filed a designation of counsel in MUR 7155, but did not submit a response.

[33]    *Id.* at Attach. A; Americans United Resp. Attach. A (MUR 7157).

[34]    Compl. at 10 (MUR 7157).

[35]    Compl. at 4 (MUR 7155).

1       Respondents argue that this allegation is speculative and unsubstantiated by any

2    information describing either the content of these alleged discussions or any specific examples of

3    alleged coordinated communications.[36]

4    **III.    LEGAL ANALYSIS**

5       **A.    Coordination Allegations**

6       The Act prohibits any person from making, and any candidate or committee from

7    accepting or receiving, excessive or prohibited contributions.[37]  In addition, corporations and

8    independent-expenditure-only political committees are prohibited from making contributions to

9    federal candidates.[38]  The term "contribution" includes anything of value given for the purpose

10   of influencing a federal election.[39]  Further, any expenditure made by a person "in cooperation,

11   consultation, or concert, with, or at the request or suggestion of, a candidate, authorized political

12   committee, or a national or state party committee" is considered an in-kind contribution.[40]  These

13   expenditures are deemed "coordinated"[41] and qualify as contributions to the candidate and must

14   be reported as expenditures made by the candidate's authorized committee or political party

15   committee.[42]

---

[36]    *See* Priorities USA Resp. at 1 (MUR 7157) (Jan. 9, 2017); Alliance for Retired Americans Resp. at 1 (MUR 7157) (Nov. 9, 2016); DNC Resp. at 3 (MUR 7157) (Dec. 19, 2016); HFA Resp. at 4 (MUR 7157) (Dec. 19, 2016); Democracy Partners Resp. at 3 (MUR 7157)(Dec. 22, 2016).

[37]    52 U.S.C. § 30116(a), (f); *see, e.g.,* 52 U.S.C. § 30118(a) (prohibiting making or knowingly receiving corporate or union contributions).

[38]    Advisory Op. 2010-11 (Commonsense Ten).

[39]    52 U.S.C. § 30101(8)(A)(i).

[40]    *See* 52 U.S.C. § 30116(a)(7)(B)(i)-(ii); *see also* 11 C.F.R. §§ 109.20, 109.21(b).

[41]    11 C.F.R. § 109.20(a).

[42]    52 U.S.C. § 30116(a)(7)(B); 11 C.F.R. § 109.20(a).

1    A communication that is coordinated with a candidate or his authorized committee or a

2    political party committee is considered an in-kind contribution and is subject to the limits,

3    prohibitions, and reporting requirements of the Act.[43]  Under Commission regulations, a

4    communication is coordinated with the candidate, the candidate's authorized committee, a

5    political party committee, or an agent of the candidate, authorized committee, or party committee

6    if it meets  a three-prong test:  (1) it is paid for, in whole or part, by a person other than the

7    candidate, authorized committee, or national or state party committee; (2) it satisfies one of five

8    content standards in 11 C.F.R. § 109.21(c);[44] and (3) it satisfies one of six conduct standards

9    described in 11 C.F.R. § 109.21(d).[45]  All three prongs must be satisfied for a communication to

10   be coordinated under these regulations. [46]

11       In addition, the national committee of a political party may make coordinated party

12   expenditures in connection with the presidential general election, subject to the limits established

13   by the Act and Commission regulations.[47]  Coordinated party expenditures include

---

[43]      52 U.S.C. § 30116; 11 C.F.R. § 109.21(b).

[44]      The content prong is satisfied if the communication at issue meets at least one of the following content standards:  (1) a communication that is an electioneering communication under 11 C.F.R. § 100.29; (2) a public communication that disseminates, distributes, or republishes, in whole or in part, campaign materials prepared by a candidate or the candidate's authorized committee; (3) a public communication that expressly advocates the election or defeat of a clearly identified candidate for federal office; (4) a public communication that, in relevant part, refers to a clearly identified Presidential candidate, and is publicly distributed or disseminated in a jurisdiction 120 days or fewer before the candidate's primary election or nominating caucus in that jurisdiction; or (5) a public communication that is the functional equivalent of express advocacy. 11 C.F.R. § 109.21(c)(1)-(5).

[45]      The six types of conduct that satisfy the conduct prong are:  (1) a request or suggestion; (2) material involvement; (3) a substantial discussion; (4) use of a common vendor; (5) use of a former employee or independent contractor; and (6) republication of campaign material.  11 C.F.R. § 109.21(d)(1)-(6).

[46]      11 C.F.R. § 109.21(a); *see also* Explanation and Justification, Coordinated and Independent Expenditures, 68 Fed. Reg. 421, 453 (Jan. 3, 2003) ("Coordination E&J").  *See* Factual and Legal Analysis at 5, MUR 7029 (McGinty).

[47]      52 U.S.C. § 30116(d); 11 C.F.R. §§ 109.30, 109.32.

MURs 7155 & 7157 (Hillary for America, *et al.*)
First General Counsel's Report
Page 12 of 17

1    disbursements for communications that are coordinated with the candidate.[48] For the 2016

2    general election, national party committees were limited to making $23,821,100 in coordinated

3    party expenditures for presidential candidates.[49]

4        The regulations further provide that an expenditure that is coordinated with a candidate,

5    authorized committee, or political party committee within the meaning of section 109.20(a), but

6    was not made for either a coordinated communication or a party coordinated communication is

7    either an in-kind contribution to the candidate, authorized committee, or party committee, or a

8    party coordinated expenditure.[50]

9            **1.  Coordinated Communications**

10       Priorities USA disclosed numerous independent expenditures for public communications

11   supporting Clinton and criticizing Trump during the 2016 election cycle.[51] Thus, both the

12   payment and content prongs of the coordinated communications test are satisfied as to Priorities

13   USA.

14       As to the conduct prong, the Complaint in MUR 7157 makes a general allegation that all

15   of the communications Priorities USA reported as independent expenditures were, in fact,

16   coordinated with the Clinton campaign, but it fails to provide any specific information to support

17   the allegation.  This factual insufficiency, by itself, supports a no-reason-to-believe finding as to

---

[48]    11 C.F.R. § 109.30.  *See also* 11 C.F.R. § 109.37 (defining a party coordinated communication as a communication that is (a) paid for by a political party committee or its agent; (b) satisfies at least one of three content standards; and (c) satisfies at least one of the conduct standards in 11 C.F.R. §§ 109.21(d)(1) through (d)(6)).

[49]    Price Index Adjustments for Expenditure Limitations and Lobbyist Bundling Disclosure Threshold, 81 Fed. Reg. 7,103 (Feb. 10, 2016); *see also Coordinated Party Expenditures for 2016*, FEDERAL ELECTION COMMISSION, http://www.fec.gov/info/charts_cpe_2016.shtml.

[50]    11 C.F.R. § 109.20(b).

[51]    *See supra* note 3.

MURs 7155 & 7157 (Hillary for America, *et al.*)
First General Counsel's Report
Page 13 of 17

1    Priorities USA. In addition, the Complaints' general allegations of coordination between the

2    HFA and Priorities USA are sufficiently rebutted by Respondents' specific denials.[52]

3            The Commission has previously found that there was insufficient information on which

4    to base an investigation into whether the conduct standard was met where a PAC had "ongoing

5    communications" with party officials and elected officials, but the complainants neither

6    identified which particular conduct standard would apply nor connected the discussions to any

7    alleged coordinated communications.[53]  Respondents argue that these Complaints are similarly

8    lacking.[54]  The Complaints do not establish how these alleged discussions involving Priorities

9    USA, HFA, and the DNC satisfy the conduct prong and do not link any particular discussions to

10   any specific public communications.  The factual record, therefore, does not support a conclusion

11   that the conduct prong is satisfied regarding Priorities USA's independent expenditures. [55]

12           In addition, as the available information does not indicate that any Respondent other than

13   Priorities USA and the DNC satisfies the payment prong of the coordinated communications test,

---

[52]        *See supra* note 36.

[53]        *See* Factual & Legal Analysis at 3, MUR 5754 (MoveOn.org Voter Fund) ("Although the complaint alleges
that 'MoveOn.org has made no secret of its ongoing communications with Democratic party officials . . . and the
elected Democratic leadership in the Senate and House,' it does not connect any such discussions to [MoveOn.org's]
alleged 'coordinated communications.'").

[54]        The DNC argues that because the Complaints failed to make any connections between supposed
discussions and alleged coordinated communications, determining that they met the conduct prong would involve
"rank speculation" in which the Commission has previously declined to engage.  DNC Resp. at 4 (MUR 7157)
(citing Factual & Legal Analysis at 3-4, MUR 5754 (MoveOn.org Voter Fund)).  HFA and the DNC argue that the
Complaints do not provide any information which, if true, would satisfy the conduct standard.  Specifically, they
contend that the Complaints do not detail any specific calls, do not tie any specific discussions to any specific public
communications, and "leave open the question of whether respondents even participated [in any conference calls] at
all." *See* HFA Resp. at 2 (MUR 7155); *see also* DNC Resp. at 2 (MUR 7155).

[55]        *See* First Gen. Counsel's Rpt. at 5, MUR 5467 (Michael Moore) ("The Commission cannot entertain
complaints based on mere speculation that a person may violate the law at some future date."); Statement of
Reasons, Comm'rs. Mason, Sandstrom, Smith & Thomas at 3, MUR 4960 (Hillary Rodham Clinton for Senate)
("[P]urely speculative charges, especially when accompanied by a direct refutation, do not form an adequate basis to
find reason to believe that a violation of the FECA has occurred.") (citation omitted).

MURs 7155 & 7157 (Hillary for America, *et al.*)
First General Counsel's Report
Page 14 of 17

1    there is no basis to conclude that any other Respondent made or accepted excessive or prohibited

2    contributions in the form of coordinated communications.

3                    **2. Party Coordinated Expenditures**

4            There is information in the record that the DNC paid its vendors to conduct the "Donald

5    Ducks" operation, and may have paid its vendors to train or support protestors at Trump rallies.[56]

6    The DNC provided documentation showing that it paid for the "Donald Ducks" operation

7    pursuant to a contract with Mobilize.[57] Democracy Partners, Americans United, Foval, and

8    Creamer were involved in the "Donald Ducks" operation as vendors performing services —

9    either directly or as subcontractors — under Mobilize's contract with the DNC.

10           As to the allegations regarding paying, organizing, and training protesters, Americans

11   United stated that it did not pay anyone to protest at one Trump rally in Chicago and did not pay

12   for any signs carried by protesters at Trump rallies, and there is no information in the Complaints

13   linking Americans United with training or organizing any protesters.[58] HFA, the DNC, and

14   Democracy Partners, however, do not specifically address the broad allegation that they trained

15   and organized protesters who appeared at Trump rallies, and some statements in the PVA videos

16   suggest that Foval and Creamer may have provided these kinds of services.  During the time the

17   alleged training and organizing occurred, Democracy Partners, Creamer, and Foval were

18   providing general political consulting services to the DNC under a contract between the DNC

---

[56]        *See supra* note 16.

[57]        The DNC's and Democracy Partners's statements are corroborated by invoices the DNC provided and
disclosure reports showing corresponding disbursements from the DNC to Mobilize. *See* DNC Resp. at 2-3, Ex. A
(MUR 7155); Democracy Partners Resp. at 3-4 (MUR 7155).

[58]        Americans United Resp. Attach. A (MUR 7155); Americans United Resp. Attach. A (MUR 7157).

MURs 7155 & 7157 (Hillary for America, *et al.*)
First General Counsel's Report
Page 15 of 17

1  and Mobilize.[59]  The invoices the DNC provided do not itemize the services that Mobilize and its

2  various subcontractors performed under the contract, so it is possible that the services included

3  organizing and training protesters, as suggested by Foval and Creamer's statements cited in the

4  Complaints.[60]

5        Even so, the coordination claims regarding "Donald Ducks" and protestor training and

6  support fail for a different reason; the expenses associated with these activities fit within the

7  DNC's available coordinated party expenditure limit.  The DNC reported $23,383,306.68 in

8  coordinated party expenditures supporting Clinton in the 2016 general election.[61]  Both party

9  coordinated communications and other types of coordinated party expenditures are aggregated

10  and counted against the $23,821,100 limit.[62]  Therefore, even if all of the DNC's $183,408.93 in

11  disbursements to Mobilize were coordinated with HFA, the DNC's total party coordinated

12  expenses for the 2016 presidential general election would have been $23,566,715.61 — still

13  below the legal limit.[63]

14        **3.  Coordinated Expenditures**

15        As to the remainder of the coordination allegations, the Complaints do not provide any

16  information indicating that the activities outlined in the Fall Plan and any associated GOTV

---

[59]      *See* Democracy Partners Resp. at 1 (MUR 7155) (identifying Foval as a subcontractor performing services under the Mobilize/DNC contract beginning in June, 2016).

[60]      Disclosure reports indicate that the DNC paid Mobilize $183,408.93 for political consulting services in 2016. *See supra* note 16.  Invoices show that $41,338.95 of what Mobilize received was related to services for the "Donald Ducks" project, but Respondents did not provide itemized invoices showing the services included in the remaining $142,069.98.

[61]      *See* DNC Amended 2016 Year-End Report at 4 (Jun. 1, 2017); DNC 2017 April Monthly Report at 4 (Apr. 20, 2017).

[62]      *See* 11 C.F.R. § 109.37(b).

[63]      *See supra* notes 16 and 49.

1    activities actually occurred, and do not identify any associated expenditures by any Respondent.

2    Additionally, Americans United stated that it "did not carry out, and incurred no expenses" in

3    connection with the proposed Fall Plan and that it was merely a proposal distributed by

4    Americans United and Voces through a press release to generate interest in funding the proposed

5    activities.[64] In light of the lack of supporting information in the Complaints and Respondents'

6    specific denials, the available information does not support a finding that any Respondent made

7    or accepted in-kind contributions in the form of coordinated expenditures in connection with the

8    Fall Plan.

9         As the information in the record does not support the coordination allegations outlined in

10    the Complaints, we recommend that the Commission find that there is no reason to believe that

11    Respondents violated the Act by making or accepting excessive or prohibited in-kind

12    contributions.

13    **B.**    **Reporting Violations**

14         The Complaints allege that if the activities at issue are found to be coordinated

15    communications, then HFA and the DNC failed to disclose the resulting contributions.  As we

16    conclude that there is no reason to believe regarding the coordination allegations, we recommend

17    that the Commission also find that there is no reason to believe that Respondents violated the

18    reporting provisions of the Act.

---

[64]    *See* Americans United Resp. at 1, Attach. A (MUR 7155); Americans United Resp. Attach. A (MUR 7157).
Voces filed a designation of counsel in MUR 7155, but did not submit a response.

IV.  **RECOMMENDATIONS**

1.  Find no reason to believe that Hillary for America and Jose Villareal in his official capacity as treasurer and the Democratic National Committee and Andrew Tobias in his official capacity as treasurer violated 52 U.S.C. §§ 30104(b), 30116(f), and 30118(a) by accepting and failing to report excessive or prohibited in-kind contributions;

2.  Find no reason to believe that Bob Creamer and Scott Foval violated 52 U.S.C. § 30116(a) by making excessive in-kind contributions;

3.  Find no reason to believe that Priorities USA Action, Democracy Partners, Americans United for Change, The Foval Group, Voces de la Frontera, and the Alliance for Retired Americans violated 52 U.S.C. §§ 30116(a)(2)(A) or 30118(a) by making excessive or prohibited in-kind contributions;

4.  Approve the attached Factual and Legal Analysis;

5.  Approve the appropriate letters; and

6.  Close the file.

Lisa J. Stevenson
Acting General Counsel

Kathleen M. Guith
Associate General Counsel for Enforcement

5.2.2018
_____
Date

*Stephen Gura*
Stephen Gura
Deputy Associate General Counsel

*Lynn Tran*
Lynn Y. Tran
Assistant General Counsel

*Ray Wolcott*
Ray L. Wolcott
Attorney

Attachment
    Factual and Legal Analysis

1       **FEDERAL ELECTION COMMISSION**
2
3       **FACTUAL AND LEGAL ANALYSIS**
4
5   **RESPONDENTS:**   Hillary for America and Jose Villarreal in his          **MUR: 7155**
6                       official capacity as treasurer
7                   The Democratic National Committee and
8                       Andrew Tobias in his official capacity as
9                       treasurer
10                  Democracy Partners
11                  Bob Creamer
12                  Americans United for Change
13                  Scott Foval DBA The Foval Group
14                  Voces de la Frontera Action
15
16  **RESPONDENTS:**   Hillary for America and Jose Villarreal in his          **MUR: 7157**
17                      official capacity as treasurer
18                  The Democratic National Committee and
19                      Andrew Tobias in his official capacity as
20                      treasurer
21                  Priorities USA Action
22                  Democracy Partners
23                  Americans United for Change
24                  Scott Foval DBA The Foval Group
25                  Alliance for Retired Americans

26  **I.    INTRODUCTION**

27          The Complaints allege that Priorities USA Action ("Priorities USA"), Democracy

28  Partners, Bob Creamer, Americans United for Change ("Americans United"), Scott Foval DBA

29  The Foval Group ("Foval"), Voces de la Frontera Action ("Voces"), and Alliance for Retired

30  Americans made prohibited in-kind contributions in the form of coordinated expenditures to

31  Hillary for America and Jose Villarreal in his official capacity as treasurer ("HFA") and the

32  Democratic National Committee and Andrew Tobias in his official capacity as treasurer (the

33  "DNC"), in violation of the Federal Election Campaign Act of 1971, as amended (the "Act") and

1    Commission regulations.  The Complaint also alleges that HFA and DNC accepted these

2    contributions and did not report them.[1]

3          Because the available information does not indicate that any of the activities identified in

4    the Complaints resulted in prohibited or excessive contributions, the Commission finds no reason

5    to believe that Respondents violated the Act and closes the files.

6    **II.**    **FACTUAL BACKGROUND**

7          HFA is the principal campaign committee for Hillary Clinton's 2016 presidential

8    campaign.[2]  Priorities USA is an independent-expenditure-only political committee ("IEOPC")

9    that made independent expenditures during the 2016 general election advocating for Hillary

10    Clinton and against Donald Trump.[3]  Alliance for Retired Americans and Voces are both

11    nonprofit organizations registered under section 501(c)(4) of the Internal Revenue Code.[4]

12          Democracy Partners is a political consulting firm with partners who each maintain their

13    own businesses.[5]  Bob Creamer, a partner at Democracy Partners, maintains Mobilize, Inc.

---

[1]    *See* Compl. at 3-4 (MUR 7155) (Oct. 19, 2016); Compl. at 14-15 (MUR 7157) (Oct. 20, 2016); Supp. Compl. at 9-13 (MUR 7157) (Mar. 27, 2017) ("Supp.").

[2]    Statement of Organization, Hillary for America (Apr. 13, 2015).

[3]    *See generally* 2016 28/48-Hour Notices of Independent Expenditures, Priorities USA (showing that Priorities USA made more than $126 million in independent expenditures related to the 2016 general election for President).

[4]    PROPUBLICA NONPROFIT EXPLORER: ALLIANCE FOR RETIRED AMERICANS, https://projects.propublica.org/nonprofits/organizations/522277805 (last visited Mar. 21, 2017) (The associated PAC is registered under Committee ID C00436188 which reported no contributions or independent expenditures during the 2016 election cycle.); VOCES DE LA FRONTERA ACTION, http://www.vdlfa.org/about_us/ (last visited Apr. 25, 2017).

[5]    Democracy Partners Resp. at 1 (MUR 7155) (Dec. 22, 2016).

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 3 of 15

1    ("Mobilize"), and he is affiliated with Americans United, a section 501(c)(4) organization.[6]

2    Scott Foval was employed by Americans United from August 2016 through October 17, 2016.[7]

3            Project Veritas Action Fund ("Project Veritas Action"), the Complainant in MUR 7157,

4    released a series of four hidden camera videos (the "PVA videos"), the first of which contained

5    conversations between Foval, Creamer, and undercover PVA representatives posing as agents for

6    a donor named "Charles Roth."[8]  These PVA videos and other documents collected during the

7    undercover investigation form the basis for the Complaints.

8            The Complaint in MUR 7155 alleges that Americans United, Voces, Democracy

9    Partners, and Foval made coordinated communications at the request or suggestion of, or after

10   substantial discussions with, HFA and the DNC.[9]  The Complaint and its supplement in MUR

11   7157 allege that Priorities USA, Alliance for Retired Americans, Americans United, HFA, and

12   the DNC engaged in a criminal conspiracy to knowingly and willfully violate the Act and

13   Commission regulations by making, accepting, and not reporting prohibited and excessive

14   contributions in the form of coordinated communications.[10]  The specific activities alleged in the

15   Complaints are:

16   • Americans United coordinated with HFA and the DNC on an operation known as
17     "Donald Ducks," which consisted of a person in a duck costume appearing at Trump

---

[6]      *See* Democracy Partners, Robert C. Creamer, http://www.democracypartners.com/?q=partners/robert-creamer (last viewed May 1, 2017) (describing Creamer as a "General Consultant to Americans United for Change where he helped coordinate the campaigns to pass President Obama's landmark jobs and economic recovery legislation"); Compl. Ex. G (MUR 7155) (email from Creamer sending a proposal for $50,000 in "voter mobilization" services on behalf of Americans United and Voces).

[7]      *See* Compl. Ex. A at 5 (MUR 7157).

[8]      Philip Elliot, *Everything We Know about the Latest James O'Keefe Video Sting*, TIME (Oct. 18, 2016), http://time.com/4536212/james-okeefe-project-veritas-video-democrats.

[9]      Compl. at 3-4 (MUR 7155).

[10]     Compl. at 2, 14-15 (MUR 7157); Supp. at 9-13 (MUR 7157).

1      campaign events and carrying a sign reading "Donald Ducks Releasing His Tax
2      Returns;"[11]

3

4    • Democracy Partners, Americans United, Creamer, and Foval coordinated with HFA and
5      the DNC to pay protesters to appear at Trump rallies;[12]

6

7    • Americans United and Voces coordinated with HFA and the DNC on a get-out-the-vote
8      drive called "Vote November 8th for a Stronger Economy that Makes Us Stronger
9      Together" (the "Fall Plan"), which involved alleged fraudulent registration of non-
10    residents in Wisconsin;[13] and

11

12    • Priorities USA, Americans United, Alliance for Retired Americans, Democracy Partners,
13     Voces, Foval, and Creamer made public communications based on "shared electoral
14     strategy" and messaging developed in coordination with HFA and the DNC.[14]

15    **A.   "Donald Ducks"**

16      The Complaints argue that "Donald Ducks" was a public communication by Americans

17  United, made after substantial discussions and with material involvement from both HFA and the

18  DNC. Specifically, the Complaints allege that Americans United implemented the "Donald

19  Ducks" operation that the DNC and HFA originally developed.[15]

20      The DNC argues that it conducted the "Donald Ducks" operation through a contract with

21  Mobilize, and it provided invoices showing that the DNC paid the associated expenses.[16]

---

[11]    *See* Compl. at 9 (MUR 7157); Compl. at 5, Ex. D (MUR 7155); Supp. at 9-13 (MUR 7157).

[12]    *See* Compl. at 3 (MUR 7155); Compl. at 14-15 (MUR 7157); Supp. at 9-13 (MUR 7157).

[13]    *See* Compl. at 4 (MUR 7155); Compl. at 14-15 (MUR 7157); Supp. at 9-13 (MUR 7157).

[14]    *See id.*

[15]    *See id.*

[16]    The DNC provided invoices showing that it paid for the "Donald Ducks" operation under a contract that the
DNC and Mobilize entered into in June 2016 (the "Mobilize contract") for Mobilize to "coordinate events and
actions" related to the 2016 Presidential Election. Democracy Partners Resp. at 1 (MUR 7155). Disclosure reports
show disbursements from the DNC to Mobilize, Inc., which mirror the invoices. *See* DNC Resp. at 2 (MUR 7155)
(Dec. 19, 2016); DNC 2016 Amended October Monthly Report (Jun. 1, 2017). Disclosure reports also indicate that
Mobilize's work for the DNC was not limited to the "Donald Ducks" operation. *See* DNC 2016 Amended August
Monthly Report (Jun. 1, 2017); DNC 2016 Amended September Monthly Report (Jun. 1, 2017); DNC 2016
Amended October Monthly Report (Jun. 1, 2017); DNC 2016 Amended Pre-General Report (Jun. 1, 2017); DNC
2016 Amended Pre-General Report (Jun. 1, 2017); DNC 2016 Amended Year-End Report (Jun. 1, 2017) (disclosing
a total of $183,408.93 in payments from the DNC to Mobilize). Respondents provided documentation showing that

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 5 of 15

1   Mobilize, in turn, subcontracted with Foval, although it is unclear whether Mobilize contracted

2   with Foval individually, with Foval's LLC, or with Americans United.[17]  Foval provided services

3   under the subcontract from June 2016 until October 17, 2016, when Americans United

4   terminated him.[18]  Although both the Complaints and several press reports suggest that "Donald

5   Ducks" was "transferred" from the DNC to Americans United at some point — after the DNC

6   received negative press regarding possible copyright infringement — Americans United's

7   President, Brad Woodhouse, provided two sworn declarations stating that Americans United did

8   not pay for any expenses associated with "Donald Ducks."[19]

9      **B.**   **Paid Protesters**

10      The Complaints allege generally that Democracy Partners, Creamer, Foval, and

11   Americans United paid and coached protesters at Trump campaign rallies; that HFA and the

12   DNC reviewed and approved the messages the protestors used; and that these activities

13   constituted coordinated communications by Democracy Partners, Creamer, Foval, and

14   Americans United.[20]  Specifically, the Complaints point to press coverage of a Trump rally in

---

$41,338.95 of the disbursements related to services for the "Donald Ducks" operation, but did not provide itemized invoices showing the services included in the remaining $142,069.98.

[17]   *See* Democracy Partners Resp.at 1 (MUR 7155) ("Scott Foval was engaged as a sub-contractor in June of 2016."); Compl. Ex. F at 2 (MUR 7155) (quoting Foval as saying "I am contracted with [Bob Creamer] . . . DNC pays Democracy Partners, Democracy Partners pays the Foval Group, The Foval Group gives and executes . . ."); *see also* Compl. Ex. A at 5-9 (MUR 7157) (Foval alternates between identifying himself as a "contractor" and "consultant").

[18]   *See* Democracy Partners Resp. at 1 (MUR 7155); David Weigel, *Two Democratic Operatives Lose Jobs After James O'Keefe Sting,* THE WASHINGTON POST (Oct. 19, 2016), https://www.washingtonpost.com/news/post-politics/wp/2016/10/19/two-democratic-operatives-lose-jobs-after-james-okeefe-sting/?tid=pm_pop_b (stating that "Foval was laid off Monday [Oct. 17, 2016] by Americans United for Change, where he had been national field director").

[19]   *See* Americans United Resp. Attach. A (MUR 7155) (Dec. 16, 2016); Americans United Resp. Attach. A (MUR 7157) (Dec. 16, 2016).  In both declarations, Woodhouse states that the Americans United's "sole expenses associated with the effort consisted of staff time to prepare and issue press releases about the effort over the internet, along with unpaid Twitter messaging." *Id.*

[20]   Compl. at 2 (MUR 7155); Compl. at 5-7, 14 (MUR 7157).

1  Chicago on March 11, 2016, and portions of the PVA Videos during which a Democracy

2  Partners employee says "[s]o the Chicago protest when they shut all that, that was us."[21]  In

3  support of the more general allegation regarding paying and training protesters, the Complaints

4  highlight Foval's statements in the PVA videos claiming that he and Creamer are the primary

5  organizers of the protests at Trump campaign events and that the DNC and HFA "cleared" the

6  protesters' proposed messaging.[22]  The Complaint also relies on Foval's statements referring to

7  paying protesters:

8   •  "We have to be really careful because what we don't need is for it to show up on CNN
9     that the DNC paid for X people to; that's not going to happen."[23]

10  •  "I'm saying we have mentally ill people that we pay to do [expletive], make no mistake.
11     Over the last 20 years, I have paid off a few homeless guys to do some crazy stuff . . . ."[24]

12  The PVA videos on which the Complaints rely provide no specific context for these statements.

13      HFA and the DNC question the authenticity of the PVA videos, arguing that Project

14  Veritas "devised the questions themselves, cherry-picked excerpts of responses, and presented

15  them out of context.[25]  The DNC also argues that the Complaints fail to present facts which

16  support the coordination allegation.[26]  Americans United also challenges the videos' authenticity

17  and provided an affidavit in which Brad Woodhouse attests that Americans United neither paid

18  any protesters to appear at the Chicago Trump rally nor paid for any signs carried by protesters at

---

[21]    *See* Compl. Ex. C, Ex. F at 4 (MUR 7155).

[22]    *See* Compl. at 5-7, Ex. A at 5-9 (MUR 7155); *see also* Project Veritas Action, *Rigging the Election –
Video I: Clinton Campaign and DNC Incite Violence at Trump Rallies* [video] at 7:20, 7:28, 8:40, 8:50, YOUTUBE
(Oct 17, 2017), https://www.youtube.com/watch?time_continue=3&v=5IuJGHuIkzY ("Rigging the Election").

[23]    Rigging the Election at 10:20.

[24]    Rigging the Election at 13:50.

[25]    *See* DNC Resp. at 2 (MUR 7155); DNC Resp. at 1 (MUR 7157), HFA Resp. at 2 (MUR 7155).

[26]    DNC Resp. at 2 (MUR 7155).

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 7 of 15

1    Trump rallies.[27]  Democracy Partners also questions the videos' authenticity, characterizing

2    Foval's statements cited in the Complaint as factually inaccurate "puffery and bragging by a

3    short-term contractor."[28]  Democracy Partners specifically denies paying protesters and cites

4    contemporaneous news articles in which several prominent protesters at Trump rallies denied

5    being trained or induced by any third parties.[29]

6        **C.    Voter Registration and GOTV Activity in Wisconsin**

7            The Complaints allege that Americans United and Voces engaged in the Fall Plan, which

8    resulted in prohibited in-kind contributions to HFA and the DNC.  In support, both Complaints

9    provided copies of the Fall Plan, which was written on Americans United letterhead.[30]  The

10   Complaints allege that Americans United and Voces developed and executed the Fall Plan in

11   consultation with HFA and the DNC.  The Complaints also allege that the voter registration and

12   GOTV activity listed in the Fall Plan were targeted to reach voters likely to support Clinton and

13   that they may have intentionally registered non-residents.[31]

14           Respondents state that the Fall Plan was only a proposal distributed by Americans United

15   and Voces through a press release to generate interest in funding the proposed activities.[32]  In his

---

[27]    Americans United Resp. Attach. A (MUR 7155) ("AUFC did not pay anyone to protest at a Trump rally in Chicago on March 11, 2016 . . ."); Americans United Resp. Attach. A (MUR 7157) (Dec. 16, 2016) ("AUFC did not pay for signs carried by protesters at Trump rallies that read '#DumpTrump,' 'No Hate, No Racism, No Trump,' or 'Nope' with images of Trump.").

[28]    Democracy Partners Resp. at 4 (MUR 7155).

[29]    Democracy Partners Resp. at 3 (MUR 7155).

[30]    *See* Compl. Ex. A (MUR 7155); Compl. Exs. C, D (MUR 7157).

[31]    *See* Compl. Ex. C (MUR 7157).

[32]    Americans United Resp. at 1 (MUR 7155).  Voces filed a designation of counsel in MUR 7155, but did not submit a response.

1    declarations, Woodhouse states that Americans United did not carry out the Fall Plan and did not

2    incur any expenses in connection with the proposed activities.[33]

3        **D.      Shared Electoral Strategy and Messaging**

4            The Complaints allege that HFA and the DNC conducted weekly conference calls with

5    the other respondents to "determine shared electoral strategy" and discuss plans to "shape

6    content and messaging to benefit HFA and the DNC."[34]  The Complaints allege that these calls

7    involved "material discussion" about the "timing, content, and audience" for public

8    communications disseminated by these outside groups "at or with the direction, approval, [or]

9    suggestion" of HFA and the DNC.[35]  Respondents argue that this allegation is speculative and

10   unsubstantiated by any information describing either the content of these alleged discussions or

11   any specific examples of alleged coordinated communications.[36]

12   **I.      LEGAL ANALYSIS**

13       **A.      Coordination Allegations**

14           The Act prohibits any person from making, and any candidate or committee from

15   accepting or receiving, excessive or prohibited contributions.[37]  In addition, corporations and

16   independent-expenditure-only political committees are prohibited from making contributions to

17   federal candidates.[38]  The term "contribution" includes anything of value given for the purpose

---

[33]     *Id.* at Attach. A; Americans United Resp. Attach. A (MUR 7157).

[34]     Compl. at 10 (MUR 7157).

[35]     Compl. at 4 (MUR 7155).

[36]     *See* Priorities USA Resp. at 1 (MUR 7157) (Jan. 9, 2017); Alliance for Retired Americans Resp. at 1 (MUR 7157) (Nov. 9, 2016); DNC Resp. at 3 (MUR 7157) (Dec. 19, 2016); HFA Resp. at 4 (MUR 7157) (Dec. 19, 2016); Democracy Partners Resp. at 3 (MUR 7157)(Dec. 22, 2016).

[37]     52 U.S.C. § 30116(a), (f); *see, e.g.*, 52 U.S.C. § 30118(a) (prohibiting making or knowingly receiving corporate or union contributions).

[38]     Advisory Op. 2010-11 (Commonsense Ten).

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 9 of 15

1   of influencing a federal election.[39]  Further, any expenditure made by a person "in cooperation,

2   consultation, or concert, with, or at the request or suggestion of, a candidate, authorized political

3   committee, or a national or state party committee" is considered an in-kind contribution.[40]  These

4   expenditures are deemed "coordinated"[41] and qualify as contributions to the candidate and must

5   be reported as expenditures made by the candidate's authorized committee or political party

6   committee.[42]

7        A communication that is coordinated with a candidate or his authorized committee or a

8   political party committee is considered an in-kind contribution and is subject to the limits,

9   prohibitions, and reporting requirements of the Act.[43]  Under Commission regulations, a

10  communication is coordinated with the candidate, the candidate's authorized committee, a

11  political party committee, or an agent of the candidate, authorized committee, or party committee

12  if it meets  a three-prong test:  (1) it is paid for, in whole or part, by a person other than the

13  candidate, authorized committee, or national or state party committee; (2) it satisfies one of five

14  content standards in 11 C.F.R. § 109.21(c);[44] and (3) it satisfies one of six conduct standards

---

[39]     52 U.S.C. § 30101(8)(A)(i).

[40]     *See* 52 U.S.C. § 30116(a)(7)(B)(i)-(ii); *see also* 11 C.F.R. §§ 109.20, 109.21(b).

[41]     11 C.F.R. § 109.20(a).

[42]     52 U.S.C. § 30116(a)(7)(B); 11 C.F.R. § 109.20(a).

[43]     52 U.S.C. § 30116; 11 C.F.R. § 109.21(b).

[44]     The content prong is satisfied if the communication at issue meets at least one of the following content standards:  (1) a communication that is an electioneering communication under 11 C.F.R. § 100.29; (2) a public communication that disseminates, distributes, or republishes, in whole or in part, campaign materials prepared by a candidate or the candidate's authorized committee; (3) a public communication that expressly advocates the election or defeat of a clearly identified candidate for federal office; (4) a public communication that, in relevant part, refers to a clearly identified Presidential candidate, and is publicly distributed or disseminated in a jurisdiction 120 days or fewer before the candidate's primary election or nominating caucus in that jurisdiction; or (5) a public communication that is the functional equivalent of express advocacy. 11 C.F.R. § 109.21(c)(1)-(5).

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 10 of 15

1    described in 11 C.F.R. § 109.21(d).[45]  All three prongs must be satisfied for a communication to

2    be coordinated under these regulations. [46]

3        In addition, the national committee of a political party may make coordinated party

4    expenditures in connection with the presidential general election, subject to the limits established

5    by the Act and Commission regulations.[47]  Coordinated party expenditures include

6    disbursements for communications that are coordinated with the candidate.[48]  For the 2016

7    general election, national party committees were limited to making $23,821,100 in coordinated

8    party expenditures for presidential candidates.[49]

9        The regulations further provide that an expenditure that is coordinated with a candidate,

10   authorized committee, or political party committee within the meaning of section 109.20(a), but

11   was not made for either a coordinated communication or a party coordinated communication is

12   either an in-kind contribution to the candidate, authorized committee, or party committee, or a

13   party coordinated expenditure.[50]

{

---

[45]    The six types of conduct that satisfy the conduct prong are:  (1) a request or suggestion; (2) material involvement; (3) a substantial discussion; (4) use of a common vendor; (5) use of a former employee or independent contractor; and (6) republication of campaign material.  11 C.F.R. § 109.21(d)(1)-(6).

[46]    11 C.F.R. § 109.21(a); *see also* Explanation and Justification, Coordinated and Independent Expenditures, 68 Fed. Reg. 421, 453 (Jan. 3, 2003) ("Coordination E&J").  *See* Factual and Legal Analysis at 5, MUR 7029 (McGinty).

[47]    52 U.S.C. § 30116(d); 11 C.F.R. §§ 109.30, 109.32.

[48]    11 C.F.R. § 109.30. *See also* 11 C.F.R. § 109.37 (defining a party coordinated communication as a communication that is (a) paid for by a political party committee or its agent; (b) satisfies at least one of three content standards; and (c) satisfies at least one of the conduct standards in 11 C.F.R. §§ 109.21(d)(1) through (d)(6)).

[49]    Price Index Adjustments for Expenditure Limitations and Lobbyist Bundling Disclosure Threshold, 81 Fed. Reg. 7,103 (Feb. 10, 2016); *see also Coordinated Party Expenditures for 2016*, FEDERAL ELECTION COMMISSION, http://www.fec.gov/info/charts_cpe_2016.shtml.

[50]    11 C.F.R. § 109.20(b).

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 11 of 15

1                 **1. Coordinated Communications**

2            Priorities USA disclosed numerous independent expenditures for public communications

3      supporting Clinton and criticizing Trump during the 2016 election cycle.[51] Thus, both the

4      payment and content prongs of the coordinated communications test are satisfied as to Priorities

5      USA.

6            As to the conduct prong, the Complaint in MUR 7157 makes a general allegation that all

7      of the communications Priorities USA reported as independent expenditures were, in fact,

8      coordinated with the Clinton campaign, but it fails to provide any specific information to support

9      the allegation. This factual insufficiency, by itself, supports a no-reason-to-believe finding as to

10     Priorities USA. In addition, the Complaints' general allegations of coordination between the

11     HFA and Priorities USA are sufficiently rebutted by Respondents' specific denials.[52]

12           The Commission has previously found that there was insufficient information on which

13     to base an investigation into whether the conduct standard was met where a PAC had "ongoing

14     communications" with party officials and elected officials, but the complainants neither

15     identified which particular conduct standard would apply nor connected the discussions to any

16     alleged coordinated communications.[53] Respondents argue that these Complaints are similarly

17     lacking.[54] The Complaints do not establish how these alleged discussions involving Priorities

---

[51]       *See supra* note 3.

[52]       *See supra* note 36.

[53]       *See* Factual & Legal Analysis at 3, MUR 5754 (MoveOn.org Voter Fund) ("Although the complaint alleges that 'MoveOn.org has made no secret of its ongoing communications with Democratic party officials . . . and the elected Democratic leadership in the Senate and House,' it does not connect any such discussions to [MoveOn.org's] alleged 'coordinated communications.'").

[54]       The DNC argues that because the Complaints failed to make any connections between supposed discussions and alleged coordinated communications, determining that they met the conduct prong would involve "rank speculation" in which the Commission has previously declined to engage. DNC Resp. at 4 (MUR 7157) (citing Factual & Legal Analysis at 3-4, MUR 5754 (MoveOn.org Voter Fund)). HFA and the DNC argue that the Complaints do not provide any information which, if true, would satisfy the conduct standard. Specifically, they

ATTACHMENT 1
Page 11 of 15

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 12 of 15

1    USA, HFA, and the DNC satisfy the conduct prong and do not link any particular discussions to

2    any specific public communications.  The factual record, therefore, does not support a conclusion

3    that the conduct prong is satisfied regarding Priorities USA's independent expenditures.[55]

4         In addition, as the available information does not indicate that any Respondent other than

5    Priorities USA and the DNC satisfies the payment prong of the coordinated communications test,

6    there is no basis to conclude that any other Respondent made or accepted excessive or prohibited

7    contributions in the form of coordinated communications.

8              **2.  Party Coordinated Expenditures**

9         There is information in the record that the DNC paid its vendors to conduct the "Donald

10   Ducks" operation, and may have paid its vendors to train or support protestors at Trump rallies.[56]

11   The DNC provided documentation showing that it paid for the "Donald Ducks" operation

12   pursuant to a contract with Mobilize.[57]  Democracy Partners, Americans United, Foval, and

13   Creamer were involved in the "Donald Ducks" operation as vendors performing services —

14   either directly or as subcontractors — under Mobilize's contract with the DNC.

15        As to the allegations regarding paying, organizing, and training protesters, Americans

16   United stated that it did not pay anyone to protest at one Trump rally in Chicago and did not pay

---

contend that the Complaints do not detail any specific calls, do not tie any specific discussions to any specific public communications, and "leave open the question of whether respondents even participated [in any conference calls] at all."  *See* HFA Resp. at 2 (MUR 7155); *see also* DNC Resp. at 2 (MUR 7155).

[55]      *See* First Gen. Counsel's Rpt. at 5, MUR 5467 (Michael Moore) ("The Commission cannot entertain complaints based on mere speculation that a person may violate the law at some future date."); Statement of Reasons, Comm'rs. Mason, Sandstrom, Smith & Thomas at 3, MUR 4960 (Hillary Rodham Clinton for Senate) ("[P]urely speculative charges, especially when accompanied by a direct refutation, do not form an adequate basis to find reason to believe that a violation of the FECA has occurred.") (citation omitted).

[56]      *See supra* note 16.

[57]      The DNC's and Democracy Partners's statements are corroborated by invoices the DNC provided and disclosure reports showing corresponding disbursements from the DNC to Mobilize.  *See* DNC Resp. at 2-3, Ex. A (MUR 7155); Democracy Partners Resp. at 3-4 (MUR 7155).

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 13 of 15

1    for any signs carried by protesters at Trump rallies, and there is no information in the Complaints

2    linking Americans United with training or organizing any protesters.[58]  HFA, the DNC, and

3    Democracy Partners, however, do not specifically address the broad allegation that they trained

4    and organized protesters who appeared at Trump rallies, and some statements in the PVA videos

5    suggest that Foval and Creamer may have provided these kinds of services.  During the time the

6    alleged training and organizing occurred, Democracy Partners, Creamer, and Foval were

7    providing general political consulting services to the DNC under a contract between the DNC

8    and Mobilize.[59]  The invoices the DNC provided do not itemize the services that Mobilize and its

9    various subcontractors performed under the contract, so it is possible that the services included

10   organizing and training protesters, as suggested by Foval and Creamer's statements cited in the

11   Complaints.[60]

12        Even so, the coordination claims regarding "Donald Ducks" and protestor training and

13   support fail for a different reason; the expenses associated with these activities fit within the

14   DNC's available coordinated party expenditure limit.  The DNC reported $23,383,306.68 in

15   coordinated party expenditures supporting Clinton in the 2016 general election.[61]  Both party

16   coordinated communications and other types of coordinated party expenditures are aggregated

17   and counted against the $23,821,100 limit.[62]  Therefore, even if all of the DNC's $183,408.93 in

---

[58]    Americans United Resp. Attach. A (MUR 7155); Americans United Resp. Attach. A (MUR 7157).

[59]    *See* Democracy Partners Resp. at 1 (MUR 7155) (identifying Foval as a subcontractor performing services under the Mobilize/DNC contract beginning in June, 2016).

[60]    Disclosure reports indicate that the DNC paid Mobilize $183,408.93 for political consulting services in 2016. *See supra* note 16. Invoices show that $41,338.95 of what Mobilize received was related to services for the "Donald Ducks" project, but Respondents did not provide itemized invoices showing the services included in the remaining $142,069.98.

[61]    *See* DNC Amended 2016 Year-End Report at 4 (Jun. 1, 2017); DNC 2017 April Monthly Report at 4 (Apr. 20, 2017).

[62]    *See* 11 C.F.R. § 109.37(b).

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 14 of 15

1    disbursements to Mobilize were coordinated with HFA, the DNC's total party coordinated

2    expenses for the 2016 presidential general election would have been $23,566,715.61 — still

3    below the legal limit.[63]

4    **3. Coordinated Expenditures**

5    As to the remainder of the coordination allegations, the Complaints do not provide any

6    information indicating that the activities outlined in the Fall Plan and any associated GOTV

7    activities actually occurred, and do not identify any associated expenditures by any Respondent.

8    Additionally, Americans United stated that it "did not carry out, and incurred no expenses" in

9    connection with the proposed Fall Plan and that it was merely a proposal distributed by

10   Americans United and Voces through a press release to generate interest in funding the proposed

11   activities.[64] In light of the lack of supporting information in the Complaints and Respondents'

12   specific denials, the available information does not support a finding that any Respondent made

13   or accepted in-kind contributions in the form of coordinated expenditures in connection with the

14   Fall Plan.

15   As the information in the record does not support the coordination allegations outlined in

16   the Complaints, the Commission finds that there is no reason to believe that Respondents

17   violated the Act by making or accepting excessive or prohibited in-kind contributions.

18   **B.    Reporting Violations**

19   The Complaints allege that if the activities at issue are found to be coordinated

20   communications, then HFA and the DNC failed to disclose the resulting contributions. As the

21   Commission concludes that there is no reason to believe regarding the coordination allegations,

---

[63]    *See supra* notes 16 and 49.

[64]    *See* Americans United Resp. at 1, Attach. A (MUR 7155); Americans United Resp. Attach. A (MUR 7157).
Voces filed a designation of counsel in MUR 7155, but did not submit a response.

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 15 of 15

1    the Commission also finds that there is no reason to believe that Respondents violated the

2    reporting provisions of the Act.

**Pltf. Ex. 128**



**FEDERAL ELECTION COMMISSION**
WASHINGTON, D.C. 20463

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
James O'Keefe III
Project Veritas Action Fund
1214 E Boston Post Road
Mamaroneck, NY 10543

**JUL 2 7 2018**

RE:   MUR 7157
Hillary for America, *et al.*

Dear Mr. O'Keefe:

On July 17, 2018, the Federal Election Commission reviewed the allegations in your complaint dated October 20, 2016, and the supplement filed on March 23, 2017, and found that on the basis of the information provided in your complaint and information provided by the respondents, there is no reason to believe that Hillary for America and Jose Villareal in his official capacity as treasurer and the Democratic National Committee and Andrew Tobias in his official capacity as treasurer violated 52 U.S.C. §§ 30104(b), 30116(f), and 30118(a) by accepting and failing to report excessive or prohibited in-kind contributions. Additionally, the Commission found that there is no reason to believe that Scott Foval violated 52 U.S.C. § 30116(a) by making excessive in-kind contributions. Lastly, the Commission found that no reason to believe that Priorities USA Action, Democracy Partners, Americans United for Change, The Foval Group, and Alliance for Retired Americans violated 52 U.S.C. §§ 30116(a)(2)(A) or 30118(a) by making excessive or prohibited in-kind contributions. Accordingly, the Commission closed the file in this matter.

Documents related to the case will be placed on the public record within 30 days. *See* . Disclosure of Certain Documents in Enforcement and Other Matters, 81 Fed. Reg. 50,702 (Aug. 2, 2016), effective September 1, 2016. The Factual and Legal Analysis, which more fully explains the Commission's findings is enclosed.

The Federal Election Campaign Act of 1971, as amended, allows a complainant to seek judicial review of the Commission's dismissal of this action. *See* 52 U.S.C. § 30109(a)(8).

Sincerely,

Lisa J. Stevenson
Acting General Counsel

*Lynn Y. Tran / RLW*

BY:  Lynn Y. Tran
Assistant General Counsel

Enclosure
Factual and Legal Analysis

Pltf. Ex. 129



**FEDERAL ELECTION COMMISSION**
WASHINGTON, D.C. 20463

Neil Reiff, Esq.                                      **JUL 2 7 2018**
Sandler, Reiff, Lamb, Rosenstein & Birkenstock, P.C.
1090 Vermont Avenue, NW, Suite 750
Washington, DC 20005

                              RE:  MURs 7155 & 7157
                                   Democracy Partners

Dear Mr. Reiff:

On October 26 and 27, 2016, and March 28, 2017, the Federal Election Commission notified your client, Democracy Partners, of two complaints alleging violations of certain sections of the Federal Election Campaign Act of 1971, as amended. On July 17, 2018, the Commission found, on the basis of the information in the complaints and information provided by your client, that there is no reason to believe that Democracy Partners violated 52 U.S.C. §§ 30116(a)(2)(A) or 30118(a) by making excessive or prohibited in-kind contributions. Accordingly, the Commission closed its files in these matter.

Documents related to the cases will be placed on the public record within 30 days.  *See* Disclosure of Certain Documents in Enforcement and Other Matters, 81 Fed. Reg. 50,702 (Aug. 2, 2016).  The Factual and Legal Analysis, which explains the Commission's findings, is enclosed for your information.

If you have any questions, please contact Ray Wolcott, the attorney assigned to this matter, at (202) 694-1302.

                              Sincerely,

                              *Lynn Y. Tran / RLW*

                              Lynn Y. Tran
                              Assistant General Counsel

Enclosure
  Factual and Legal Analysis

1      **FEDERAL ELECTION COMMISSION**
2
3      **FACTUAL AND LEGAL ANALYSIS**
4
5      **RESPONDENTS:**    Hillary for America and Jose Villarreal in his          **MUR: 7155**
6                         official capacity as treasurer
7                         The Democratic National Committee and
8                             Andrew Tobias in his official capacity as
9                             treasurer
10                        Democracy Partners
11                        Bob Creamer
12                        Americans United for Change
13                        Scott Foval DBA The Foval Group
14                        Voces de la Frontera Action
15
16     **RESPONDENTS:**    Hillary for America and Jose Villarreal in his          **MUR: 7157**
17                         official capacity as treasurer
18                        The Democratic National Committee and
19                            Andrew Tobias in his official capacity as
20                            treasurer
21                        Priorities USA Action
22                        Democracy Partners
23                        Americans United for Change
24                        Scott Foval DBA The Foval Group
25                        Alliance for Retired Americans

26     **I.     INTRODUCTION**

27         The Complaints allege that Priorities USA Action ("Priorities USA"), Democracy

28     Partners, Bob Creamer, Americans United for Change ("Americans United"), Scott Foval DBA

29     The Foval Group ("Foval"), Voces de la Frontera Action ("Voces"), and Alliance for Retired

30     Americans made prohibited in-kind contributions in the form of coordinated expenditures to

31     Hillary for America and Jose Villarreal in his official capacity as treasurer ("HFA") and the

32     Democratic National Committee and Andrew Tobias in his official capacity as treasurer (the

33     "DNC"), in violation of the Federal Election Campaign Act of 1971, as amended (the "Act") and

1    Commission regulations.  The Complaint also alleges that HFA and DNC accepted these

2    contributions and did not report them.[1]

3          Because the available information does not indicate that any of the activities identified in

4    the Complaints resulted in prohibited or excessive contributions, the Commission finds no reason

5    to believe that Respondents violated the Act and closes the files.

6    **II.    FACTUAL BACKGROUND**

7          HFA is the principal campaign committee for Hillary Clinton's 2016 presidential

8    campaign.[2]  Priorities USA is an independent-expenditure-only political committee ("IEOPC")

9    that made independent expenditures during the 2016 general election advocating for Hillary

10   Clinton and against Donald Trump.[3]  Alliance for Retired Americans and Voces are both

11   nonprofit organizations registered under section 501(c)(4) of the Internal Revenue Code.[4]

12         Democracy Partners is a political consulting firm with partners who each maintain their

13   own businesses.[5]  Bob Creamer, a partner at Democracy Partners, maintains Mobilize, Inc.

14   ("Mobilize"), and he is affiliated with Americans United, a section 501(c)(4) organization.[6]

15   Scott Foval was employed by Americans United from August 2016 through October 17, 2016.[7]

---

[1]    *See* Compl. at 3-4 (MUR 7155) (Oct. 19, 2016); Compl. at 14-15 (MUR 7157) (Oct. 20, 2016); Supp. Compl. at 9-13 (MUR 7157) (Mar. 27, 2017) ("Supp.").

[2]    Statement of Organization, Hillary for America (Apr. 13, 2015).

[3]    *See generally* 2016 28/48-Hour Notices of Independent Expenditures, Priorities USA (showing that Priorities USA made more than $126 million in independent expenditures related to the 2016 general election for President).

[4]    PROPUBLICA NONPROFIT EXPLORER: ALLIANCE FOR RETIRED AMERICANS, https://projects.propublica.org/nonprofits/organizations/522277805 (last visited Mar. 21, 2017) (The associated PAC is registered under Committee ID C00436188 which reported no contributions or independent expenditures during the 2016 election cycle.); VOCES DE LA FRONTERA ACTION, http://www.vdlfa.org/about_us/ (last visited Apr. 25, 2017).

[5]    Democracy Partners Resp. at 1 (MUR 7155) (Dec. 22, 2016).

[6]    *See* Democracy Partners, Robert C. Creamer, http://www.democracypartners.com/?q=partners/robert-creamer (last viewed May 1, 2017) (describing Creamer as a "General Consultant to Americans United for Change

1   Project Veritas Action Fund ("Project Veritas Action"), the Complainant in MUR 7157,

2   released a series of four hidden camera videos (the "PVA videos"), the first of which contained

3   conversations between Foval, Creamer, and undercover PVA representatives posing as agents for

4   a donor named "Charles Roth."[8]  These PVA videos and other documents collected during the

5   undercover investigation form the basis for the Complaints.

6        The Complaint in MUR 7155 alleges that Americans United, Voces, Democracy

7   Partners, and Foval made coordinated communications at the request or suggestion of, or after

8   substantial discussions with, HFA and the DNC.[9]  The Complaint and its supplement in MUR

9   7157 allege that Priorities USA, Alliance for Retired Americans, Americans United, HFA, and

10  the DNC engaged in a criminal conspiracy to knowingly and willfully violate the Act and

11  Commission regulations by making, accepting, and not reporting prohibited and excessive

12  contributions in the form of coordinated communications.[10]  The specific activities alleged in the

13  Complaints are:

14  •   Americans United coordinated with HFA and the DNC on an operation known as
15      "Donald Ducks," which consisted of a person in a duck costume appearing at Trump
16      campaign events and carrying a sign reading "Donald Ducks Releasing His Tax
17      Returns;"[11]
18
19  •   Democracy Partners, Americans United, Creamer, and Foval coordinated with HFA and
20      the DNC to pay protesters to appear at Trump rallies;[12]

---

where he helped coordinate the campaigns to pass President Obama's landmark jobs and economic recovery
legislation"); Compl. Ex. G (MUR 7155) (email from Creamer sending a proposal for $50,000 in "voter
mobilization" services on behalf of Americans United and Voces).

[7]     *See* Compl. Ex. A at 5 (MUR 7157).

[8]     Philip Elliot, *Everything We Know about the Latest James O'Keefe Video Sting*, TIME (Oct. 18, 2016),
http://time.com/4536212/james-okeefe-project-veritas-video-democrats.

[9]     Compl. at 3-4 (MUR 7155).

[10]    Compl. at 2, 14-15 (MUR 7157); Supp. at 9-13 (MUR 7157).

[11]    *See* Compl. at 9 (MUR 7157); Compl. at 5, Ex. D (MUR 7155); Supp. at 9-13 (MUR 7157).

[12]    *See* Compl. at 3 (MUR 7155); Compl. at 14-15 (MUR 7157); Supp. at 9-13 (MUR 7157).

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 4 of 14

1

2      •   Americans United and Voces coordinated with HFA and the DNC on a get-out-the-vote
3         drive called "Vote November 8th for a Stronger Economy that Makes Us Stronger
4         Together" (the "Fall Plan"), which involved alleged fraudulent registration of non-
5         residents in Wisconsin;[13] and

6

7      •   Priorities USA, Americans United, Alliance for Retired Americans, Democracy Partners,
8         Voces, Foval, and Creamer made public communications based on "shared electoral
9         strategy" and messaging developed in coordination with HFA and the DNC.[14]

10      **A.**     **"Donald Ducks"**

11      The Complaints argue that "Donald Ducks" was a public communication by Americans

12 United, made after substantial discussions and with material involvement from both HFA and the

13 DNC. Specifically, the Complaints allege that Americans United implemented the "Donald

14 Ducks" operation that the DNC and HFA originally developed.[15]

15      The DNC argues that it conducted the "Donald Ducks" operation through a contract with

16 Mobilize, and it provided invoices showing that the DNC paid the associated expenses.[16]

17 Mobilize, in turn, subcontracted with Foval, although it is unclear whether Mobilize contracted

18 with Foval individually, with Foval's LLC, or with Americans United.[17] Foval provided services

---

[13]    *See* Compl. at 4 (MUR 7155); Compl. at 14-15 (MUR 7157); Supp. at 9-13 (MUR 7157).

[14]    *See id.*

[15]    *See id.*

[16]    The DNC provided invoices showing that it paid for the "Donald Ducks" operation under a contract that the DNC and Mobilize entered into in June 2016 (the "Mobilize contract") for Mobilize to "coordinate events and actions" related to the 2016 Presidential Election. Democracy Partners Resp. at 1 (MUR 7155). Disclosure reports show disbursements from the DNC to Mobilize, Inc., which mirror the invoices. *See* DNC Resp. at 2 (MUR 7155) (Dec. 19, 2016); DNC 2016 Amended October Monthly Report (Jun. 1, 2017). Disclosure reports also indicate that Mobilize's work for the DNC was not limited to the "Donald Ducks" operation. *See* DNC 2016 Amended August Monthly Report (Jun. 1, 2017); DNC 2016 Amended September Monthly Report (Jun. 1, 2017); DNC 2016 Amended October Monthly Report (Jun. 1, 2017); DNC 2016 Amended Pre-General Report (Jun. 1, 2017); DNC 2016 Amended Pre-General Report (Jun. 1, 2017); DNC 2016 Amended Year-End Report (Jun. 1, 2017) (disclosing a total of $183,408.93 in payments from the DNC to Mobilize). Respondents provided documentation showing that $41,338.95 of the disbursements related to services for the "Donald Ducks" operation, but did not provide itemized invoices showing the services included in the remaining $142,069.98.

[17]    *See* Democracy Partners Resp.at 1 (MUR 7155) ("Scott Foval was engaged as a sub-contractor in June of 2016."); Compl. Ex. F at 2 (MUR 7155) (quoting Foval as saying "I am contracted with [Bob Creamer] . . . DNC pays Democracy Partners, Democracy Partners pays the Foval Group, The Foval Group goes and executes . . ."); *see*

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 5 of 14

1    under the subcontract from June 2016 until October 17, 2016, when Americans United

2    terminated him.[18]  Although both the Complaints and several press reports suggest that "Donald

3    Ducks" was "transferred" from the DNC to Americans United at some point — after the DNC

4    received negative press regarding possible copyright infringement — Americans United's

5    President, Brad Woodhouse, provided two sworn declarations stating that Americans United did

6    not pay for any expenses associated with "Donald Ducks."[19]

7        **B.    Paid Protesters**

8            The Complaints allege generally that Democracy Partners, Creamer, Foval, and

9    Americans United paid and coached protesters at Trump campaign rallies; that HFA and the

10   DNC reviewed and approved the messages the protestors used; and that these activities

11   constituted coordinated communications by Democracy Partners, Creamer, Foval, and

12   Americans United.[20]  Specifically, the Complaints point to press coverage of a Trump rally in

13   Chicago on March 11, 2016, and portions of the PVA Videos during which a Democracy

14   Partners employee says "[s]o the Chicago protest when they shut all that, that was us."[21]  In

15   support of the more general allegation regarding paying and training protesters, the Complaints

16   highlight Foval's statements in the PVA videos claiming that he and Creamer are the primary

---

*also* Compl. Ex. A at 5-9 (MUR 7157) (Foval alternates between identifying himself as a "contractor" and "consultant").

[18]    *See* Democracy Partners Resp. at 1 (MUR 7155); David Weigel, *Two Democratic Operatives Lose Jobs After James O'Keefe Sting*, THE WASHINGTON POST (Oct. 19, 2016), https://www.washingtonpost.com/news/post-politics/wp/2016/10/19/two-democratic-operatives-lose-jobs-after-james-okeefe-sting/?tid=pm_pop_b (stating that "Foval was laid off Monday [Oct. 17, 2016] by Americans United for Change, where he had been national field director").

[19]    *See* Americans United Resp. Attach. A (MUR 7155) (Dec. 16, 2016); Americans United Resp. Attach. A (MUR 7157) (Dec. 16, 2016).  In both declarations, Woodhouse states that the Americans United's "sole expenses associated with the effort consisted of staff time to prepare and issue press releases about the effort over the internet, along with unpaid Twitter messaging." *Id.*

[20]    Compl. at 2 (MUR 7155); Compl. at 5-7, 14 (MUR 7157).

[21]    *See* Compl. Ex. C, Ex. F at 4 (MUR 7155).

1  organizers of the protests at Trump campaign events and that the DNC and HFA "cleared" the

2  protesters' proposed messaging.[22] The Complaint also relies on Foval's statements referring to

3  paying protesters:

4  • "We have to be really careful because what we don't need is for it to show up on CNN
5    that the DNC paid for X people to; that's not going to happen."[23]

6  • "I'm saying we have mentally ill people that we pay to do [expletive], make no mistake.
7    Over the last 20 years, I have paid off a few homeless guys to do some crazy stuff . . . ."[24]

8  The PVA videos on which the Complaints rely provide no specific context for these statements.

9        HFA and the DNC question the authenticity of the PVA videos, arguing that Project

10 Veritas "devised the questions themselves, cherry-picked excerpts of responses, and presented

11 them out of context.[25] The DNC also argues that the Complaints fail to present facts which

12 support the coordination allegation.[26] Americans United also challenges the videos' authenticity

13 and provided an affidavit in which Brad Woodhouse attests that Americans United neither paid

14 any protesters to appear at the Chicago Trump rally nor paid for any signs carried by protesters at

15 Trump rallies.[27] Democracy Partners also questions the videos' authenticity, characterizing

16 Foval's statements cited in the Complaint as factually inaccurate "puffery and bragging by a

17 short-term contractor."[28] Democracy Partners specifically denies paying protesters and cites

---

[22]     *See* Compl. at 5-7, Ex. A at 5-9 (MUR 7155); *see also* Project Veritas Action, *Rigging the Election –
Video I: Clinton Campaign and DNC Incite Violence at Trump Rallies* [video] at 7:20, 7:28, 8:40, 8:50, YOUTUBE
(Oct 17, 2017), https://www.youtube.com/watch?time_continue=3&v=5IuJGHuIkzY ("Rigging the Election").

[23]     Rigging the Election at 10:20.

[24]     Rigging the Election at 13:50.

[25]     *See* DNC Resp. at 2 (MUR 7155); DNC Resp. at 1 (MUR 7157), HFA Resp. at 2 (MUR 7155).

[26]     DNC Resp. at 2 (MUR 7155).

[27]     Americans United Resp. Attach. A (MUR 7155) ("AUFC did not pay anyone to protest at a Trump rally in
Chicago on March 11, 2016 . . ."); Americans United Resp. Attach. A (MUR 7157) (Dec. 16, 2016) ("AUFC did not
pay for signs carried by protesters at Trump rallies that read '#DumpTrump,' 'No Hate, No Racism, No Trump,' or
'Nope' with images of Trump.").

[28]     Democracy Partners Resp. at 4 (MUR 7155).

1   contemporaneous news articles in which several prominent protesters at Trump rallies denied

2   being trained or induced by any third parties.[29]

3       **C.    Voter Registration and GOTV Activity in Wisconsin**

4           The Complaints allege that Americans United and Voces engaged in the Fall Plan, which

5   resulted in prohibited in-kind contributions to HFA and the DNC. In support, both Complaints

6   provided copies of the Fall Plan, which was written on Americans United letterhead.[30] The

7   Complaints allege that Americans United and Voces developed and executed the Fall Plan in

8   consultation with HFA and the DNC. The Complaints also allege that the voter registration and

9   GOTV activity listed in the Fall Plan were targeted to reach voters likely to support Clinton and

10  that they may have intentionally registered non-residents.[31]

11          Respondents state that the Fall Plan was only a proposal distributed by Americans United

12  and Voces through a press release to generate interest in funding the proposed activities.[32] In his

13  declarations, Woodhouse states that Americans United did not carry out the Fall Plan and did not

14  incur any expenses in connection with the proposed activities.[33]

15      **D.    Shared Electoral Strategy and Messaging**

16          The Complaints allege that HFA and the DNC conducted weekly conference calls with

17  the other respondents to "determine shared electoral strategy" and discuss plans to "shape

18  content and messaging to benefit HFA and the DNC."[34] The Complaints allege that these calls

---

[29]   Democracy Partners Resp. at 3 (MUR 7155).

[30]   *See* Compl. Ex. A (MUR 7155); Compl. Exs. C, D (MUR 7157).

[31]   *See* Compl. Ex. C (MUR 7157).

[32]   Americans United Resp. at 1 (MUR 7155). Voces filed a designation of counsel in MUR 7155, but did not submit a response.

[33]   *Id.* at Attach. A; Americans United Resp. Attach. A (MUR 7157).

[34]   Compl. at 10 (MUR 7157).

1   involved "material discussion" about the "timing, content, and audience" for public

2   communications disseminated by these outside groups "at or with the direction, approval, [or]

3   suggestion" of HFA and the DNC.[35]  Respondents argue that this allegation is speculative and

4   unsubstantiated by any information describing either the content of these alleged discussions or

5   any specific examples of alleged coordinated communications.[36]

6   I.    **LEGAL ANALYSIS**

7         A.    **Coordination Allegations**

8         The Act prohibits any person from making, and any candidate or committee from

9   accepting or receiving, excessive or prohibited contributions.[37]  In addition, corporations and

10  independent-expenditure-only political committees are prohibited from making contributions to

11  federal candidates.[38]  The term "contribution" includes anything of value given for the purpose

12  of influencing a federal election.[39]  Further, any expenditure made by a person "in cooperation,

13  consultation, or concert, with, or at the request or suggestion of, a candidate, authorized political

14  committee, or a national or state party committee" is considered an in-kind contribution.[40]  These

15  expenditures are deemed "coordinated"[41] and qualify as contributions to the candidate and must

---

[35]      Compl. at 4 (MUR 7155).

[36]      *See* Priorities USA Resp. at 1 (MUR 7157) (Jan. 9, 2017); Alliance for Retired Americans Resp. at 1 (MUR 7157) (Nov. 9, 2016); DNC Resp. at 3 (MUR 7157) (Dec. 19, 2016); HFA Resp. at 4 (MUR 7157) (Dec. 19, 2016); Democracy Partners Resp. at 3 (MUR 7157)(Dec. 22, 2016).

[37]      52 U.S.C. § 30116(a), (f); *see, e.g.,* 52 U.S.C. § 30118(a) (prohibiting making or knowingly receiving corporate or union contributions).

[38]      Advisory Op. 2010-11 (Commonsense Ten).

[39]      52 U.S.C. § 30101(8)(A)(i).

[40]      *See* 52 U.S.C. § 30116(a)(7)(B)(i)-(ii); *see also* 11 C.F.R. §§ 109.20, 109.21(b).

[41]      11 C.F.R. § 109.20(a).

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 9 of 14

1    be reported as expenditures made by the candidate's authorized committee or political party

2    committee.[42]

3        A communication that is coordinated with a candidate or his authorized committee or a

4    political party committee is considered an in-kind contribution and is subject to the limits,

5    prohibitions, and reporting requirements of the Act.[43] Under Commission regulations, a

6    communication is coordinated with the candidate, the candidate's authorized committee, a

7    political party committee, or an agent of the candidate, authorized committee, or party committee

8    if it meets a three-prong test: (1) it is paid for, in whole or part, by a person other than the

9    candidate, authorized committee, or national or state party committee; (2) it satisfies one of five

10   content standards in 11 C.F.R. § 109.21(c);[44] and (3) it satisfies one of six conduct standards

11   described in 11 C.F.R. § 109.21(d).[45] All three prongs must be satisfied for a communication to

12   be coordinated under these regulations.[46]

13       In addition, the national committee of a political party may make coordinated party

14   expenditures in connection with the presidential general election, subject to the limits established

---

[42]    52 U.S.C. § 30116(a)(7)(B); 11 C.F.R. § 109.20(a).

[43]    52 U.S.C. § 30116; 11 C.F.R. § 109.21(b).

[44]    The content prong is satisfied if the communication at issue meets at least one of the following content standards: (1) a communication that is an electioneering communication under 11 C.F.R. § 100.29; (2) a public communication that disseminates, distributes, or republishes, in whole or in part, campaign materials prepared by a candidate or the candidate's authorized committee; (3) a public communication that expressly advocates the election or defeat of a clearly identified candidate for federal office; (4) a public communication that, in relevant part, refers to a clearly identified Presidential candidate, and is publicly distributed or disseminated in a jurisdiction 120 days or fewer before the candidate's primary election or nominating caucus in that jurisdiction; or (5) a public communication that is the functional equivalent of express advocacy. 11 C.F.R. § 109.21(c)(1)-(5).

[45]    The six types of conduct that satisfy the conduct prong are: (1) a request or suggestion; (2) material involvement; (3) a substantial discussion; (4) use of a common vendor; (5) use of a former employee or independent contractor; and (6) republication of campaign material. 11 C.F.R. § 109.21(d)(1)-(6).

[46]    11 C.F.R. § 109.21(a); *see also* Explanation and Justification, Coordinated and Independent Expenditures, 68 Fed. Reg. 421, 453 (Jan. 3, 2003) ("Coordination E&J"). *See* Factual and Legal Analysis at 5, MUR 7029 (McGinty).

1   by the Act and Commission regulations.[47]  Coordinated party expenditures include

2   disbursements for communications that are coordinated with the candidate.[48]  For the 2016

3   general election, national party committees were limited to making $23,821,100 in coordinated

4   party expenditures for presidential candidates.[49]

5          The regulations further provide that an expenditure that is coordinated with a candidate,

6   authorized committee, or political party committee within the meaning of section 109.20(a), but

7   was not made for either a coordinated communication or a party coordinated communication is

8   either an in-kind contribution to the candidate, authorized committee, or party committee, or a

9   party coordinated expenditure.[50]

10          **1.  Coordinated Communications**

11          Priorities USA disclosed numerous independent expenditures for public communications

12   supporting Clinton and criticizing Trump during the 2016 election cycle.[51]  Thus, both the

13   payment and content prongs of the coordinated communications test are satisfied as to Priorities

14   USA.

15          As to the conduct prong, the Complaint in MUR 7157 makes a general allegation that all

16   of the communications Priorities USA reported as independent expenditures were, in fact,

17   coordinated with the Clinton campaign, but it fails to provide any specific information to support

18   the allegation.  This factual insufficiency, by itself, supports a no-reason-to-believe finding as to

---

[47]     52 U.S.C. § 30116(d); 11 C.F.R. §§ 109.30, 109.32.

[48]     11 C.F.R. § 109.30. *See also* 11 C.F.R. § 109.37 (defining a party coordinated communication as a communication that is (a) paid for by a political party committee or its agent; (b) satisfies at least one of three content standards; and (c) satisfies at least one of the conduct standards in 11 C.F.R. §§ 109.21(d)(1) through (d)(6)).

[49]     Price Index Adjustments for Expenditure Limitations and Lobbyist Bundling Disclosure Threshold, 81 Fed. Reg. 7,103 (Feb. 10, 2016); *see also Coordinated Party Expenditures for 2016*, FEDERAL ELECTION COMMISSION, http://www.fec.gov/info/charts_cpe_2016.shtml.

[50]     11 C.F.R. § 109.20(b).

[51]     *See supra* note 3.

1    Priorities USA. In addition, the Complaints' general allegations of coordination between the

2    HFA and Priorities USA are sufficiently rebutted by Respondents' specific denials.[52]

3         The Commission has previously found that there was insufficient information on which

4    to base an investigation into whether the conduct standard was met where a PAC had "ongoing

5    communications" with party officials and elected officials, but the complainants neither

6    identified which particular conduct standard would apply nor connected the discussions to any

7    alleged coordinated communications.[53] Respondents argue that these Complaints are similarly

8    lacking.[54] The Complaints do not establish how these alleged discussions involving Priorities

9    USA, HFA, and the DNC satisfy the conduct prong and do not link any particular discussions to

10    any specific public communications. The factual record, therefore, does not support a conclusion

11    that the conduct prong is satisfied regarding Priorities USA's independent expenditures.[55]

12         In addition, as the available information does not indicate that any Respondent other than

13    Priorities USA and the DNC satisfies the payment prong of the coordinated communications test,

---

[52]     *See supra* note 36.

[53]     *See* Factual & Legal Analysis at 3, MUR 5754 (MoveOn.org Voter Fund) ("Although the complaint alleges that 'MoveOn.org has made no secret of its ongoing communications with Democratic party officials . . . and the elected Democratic leadership in the Senate and House,' it does not connect any such discussions to [MoveOn.org's] alleged 'coordinated communications.'").

[54]     The DNC argues that because the Complaints failed to make any connections between supposed discussions and alleged coordinated communications, determining that they met the conduct prong would involve "rank speculation" in which the Commission has previously declined to engage. DNC Resp. at 4 (MUR 7157) (citing Factual & Legal Analysis at 3-4, MUR 5754 (MoveOn.org Voter Fund)). HFA and the DNC argue that the Complaints do not provide any information which, if true, would satisfy the conduct standard. Specifically, they contend that the Complaints do not detail any specific calls, do not tie any specific discussions to any specific public communications, and "leave open the question of whether respondents even participated [in any conference calls] at all." *See* HFA Resp. at 2 (MUR 7155); *see also* DNC Resp. at 2 (MUR 7155).

[55]     *See* First Gen. Counsel's Rpt. at 5, MUR 5467 (Michael Moore) ("The Commission cannot entertain complaints based on mere speculation that a person may violate the law at some future date."); Statement of Reasons, Comm'rs. Mason, Sandstrom, Smith & Thomas at 3, MUR 4960 (Hillary Rodham Clinton for Senate) ("[P]urely speculative charges, especially when accompanied by a direct refutation, do not form an adequate basis to find reason to believe that a violation of the FECA has occurred.") (citation omitted).

1   there is no basis to conclude that any other Respondent made or accepted excessive or prohibited

2   contributions in the form of coordinated communications.

3   **2. Party Coordinated Expenditures**

4   There is information in the record that the DNC paid its vendors to conduct the "Donald

5   Ducks" operation, and may have paid its vendors to train or support protestors at Trump rallies.[56]

6.  The DNC provided documentation showing that it paid for the "Donald Ducks" operation

7   pursuant to a contract with Mobilize.[57]  Democracy Partners, Americans United, Foval, and

8   Creamer were involved in the "Donald Ducks" operation as vendors performing services —

9   either directly or as subcontractors — under Mobilize's contract with the DNC.

10   As to the allegations regarding paying, organizing, and training protesters, Americans

11   United stated that it did not pay anyone to protest at one Trump rally in Chicago and did not pay

12   for any signs carried by protesters at Trump rallies, and there is no information in the Complaints

13   linking Americans United with training or organizing any protesters.[58]  HFA, the DNC, and

14   Democracy Partners, however, do not specifically address the broad allegation that they trained

15   and organized protesters who appeared at Trump rallies, and some statements in the PVA videos

16   suggest that Foval and Creamer may have provided these kinds of services.  During the time the

17   alleged training and organizing occurred, Democracy Partners, Creamer, and Foval were

18   providing general political consulting services to the DNC under a contract between the DNC

19   and Mobilize.[59]  The invoices the DNC provided do not itemize the services that Mobilize and its

---

[56]   *See supra* note 16.

[57]   The DNC's and Democracy Partners's statements are corroborated by invoices the DNC provided and disclosure reports showing corresponding disbursements from the DNC to Mobilize. *See* DNC Resp. at 2-3, Ex. A (MUR 7155); Democracy Partners Resp. at 3-4 (MUR 7155).

[58]   Americans United Resp. Attach. A (MUR 7155); Americans United Resp. Attach. A (MUR 7157).

[59]   *See* Democracy Partners Resp. at 1 (MUR 7155) (identifying Foval as a subcontractor performing services under the Mobilize/DNC contract beginning in June, 2016).

MURs 7155 & 7157 (Hillary for America, *et al.*)
Factual & Legal Analysis
Page 13 of 14

1   various subcontractors performed under the contract, so it is possible that the services included

2   organizing and training protesters, as suggested by Foval and Creamer's statements cited in the

3   Complaints.[60]

4         Even so, the coordination claims regarding "Donald Ducks" and protestor training and

5   support fail for a different reason; the expenses associated with these activities fit within the

6   DNC's available coordinated party expenditure limit.  The DNC reported $23,383,306.68 in

7   coordinated party expenditures supporting Clinton in the 2016 general election.[61]  Both party

8   coordinated communications and other types of coordinated party expenditures are aggregated

9   and counted against the $23,821,100 limit.[62]  Therefore, even if all of the DNC's $183,408.93 in

10   disbursements to Mobilize were coordinated with HFA, the DNC's total party coordinated

11   expenses for the 2016 presidential general election would have been $23,566,715.61 — still

12   below the legal limit.[63]

13         **3.  Coordinated Expenditures**

14         As to the remainder of the coordination allegations, the Complaints do not provide any

15   information indicating that the activities outlined in the Fall Plan and any associated GOTV

16   activities actually occurred, and do not identify any associated expenditures by any Respondent.

17   Additionally, Americans United stated that it "did not carry out, and incurred no expenses" in

18   connection with the proposed Fall Plan and that it was merely a proposal distributed by

---

[60]     Disclosure reports indicate that the DNC paid Mobilize $183,408.93 for political consulting services in 2016.  *See supra* note 16.  Invoices show that $41,338.95 of what Mobilize received was related to services for the "Donald Ducks" project, but Respondents did not provide itemized invoices showing the services included in the remaining $142,069.98.

[61]     *See* DNC Amended 2016 Year-End Report at 4 (Jun. 1, 2017); DNC 2017 April Monthly Report at 4 (Apr. 20, 2017).

[62]     *See* 11 C.F.R. § 109.37(b).

[63]     *See supra* notes 16 and 49.

analysis-not-shown

1    Americans United and Voces through a press release to generate interest in funding the proposed

2    activities.[64]  In light of the lack of supporting information in the Complaints and Respondents'

3    specific denials, the available information does not support a finding that any Respondent made

4    or accepted in-kind contributions in the form of coordinated expenditures in connection with the

5    Fall Plan.

6           As the information in the record does not support the coordination allegations outlined in

7    the Complaints, the Commission finds that there is no reason to believe that Respondents

8    violated the Act by making or accepting excessive or prohibited in-kind contributions.

9    **B.      Reporting Violations**

10          The Complaints allege that if the activities at issue are found to be coordinated

11   communications, then HFA and the DNC failed to disclose the resulting contributions.  As the

12   Commission concludes that there is no reason to believe regarding the coordination allegations,

13   the Commission also finds that there is no reason to believe that Respondents violated the

14   reporting provisions of the Act.

---

[64]     *See* Americans United Resp. at 1, Attach. A (MUR 7155); Americans United Resp. Attach. A (MUR 7157).
Voces filed a designation of counsel in MUR 7155, but did not submit a response.