**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRACY PARTNERS, LLC, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) Civ. No. 1:17-cv-1047-PLF | |
| v. ) | |
| ) | |
| PROJECT VERITAS ACTION FUND, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFFS' STATUS REPORT IN RESPONSE TO DEFENDANTS'
STATUS REPORT ON CERTAIN EVIDENTIARY MATTERS**

Plaintiffs respond as follows to Defendants' Status Report on Evidentiary Matters Likely to Arise in Plaintiffs' Opening Argument and With Plaintiffs' First Witness Robert Creamer [Dkt. No. 176]. In summary, first, evidence relating to the facts of Mr. Creamer's actual statements and conduct is highly relevant both to the issue of causation of damages and to the issue of journalistic purpose versus political spying—both central issues in this case. That this is not a defamation case does not affect the independent relevance of the truthfulness of their so-called "reporting" to these issues.

Second, Defendants fail to provide any reason for the Court to revisit its prior decision [Dkt. No. 111] denying Defendants' motion in limine to admit evidence of Robert Creamer's prior conviction [Dkt. No. 85]. Defendants made exactly the same argument they belatedly re-surface now—that the conviction was a factor in Project Veritas' decision to target Mr. Creamer—and this Court rejected it. Defendants point to no new evidence that would support that proposition.

### 1. Relevance of Facts Concerning Mr. Creamer's Actual Statements and Conduct

Defendants themselves have claimed that Plaintiffs' case "boils down to a First Amendment-offending complaint that truthful reporting by Project Veritas caused Plaintiffs to lose political consulting business." Defendants' Motion in Limine to Exclude Plaintiffs' Politically Motivated Effort to Introduce Irrelevant Evidence, Dkt. No. 100 at 1. Surely Plaintiffs are entitled to rebut Defendants' claim of "truthful reporting" by showing that it was untruthful.

Leaving Defendants' claim of truthfulness aside, the facts about Mr. Creamer's actual statements and conduct depicted in the Project Veritas videos—and particularly the first one that was viewed by AFSCME officials before they fired Mr. Creamer—are highly relevant in several respects, notwithstanding that this is not a defamation case. First, a key issue in the case is whether Plaintiffs' damages were caused by "expressive conduct"—the content of the videos—as opposed to the fact of the infiltration of Democracy Partners by the Project Veritas operative. Plaintiffs will prove that the video was selectively edited to falsely portray what Mr. Creamer actually said by juxtaposing clips to make it seem that Mr. Creamer was referring to certain events and actions when that is not in fact what he said. Plaintiffs will show that this selective editing was communicated to AFSCME; and that AFSCME agreed and thus did not base their decision on believing any of the content of the video.

Second, as Defendants noted, as to the wiretapping claims, a key issue in the case is whether in undertaking the infiltration and the secret recordings, their determinative purpose was journalistic or tortious—breach of Ms. Maass' fiduciary duty in order to help elect Donald Trump. In denying Defendants' Motion in Limine to exclude Trump-related evidence, the Court ruled that:

> If defendants at trial make arguments offer evidence or elicit testimony concerning their status as "investigative journalists," Def. Mot. at 1, engaged in "truthful reporting," id. at 8, plaintiffs in turn will be entitled to present additional arguments, introduce rebuttal

2

>evidence or cross-examine witnesses on this subject "to prevent the jury from forming the erroneous impression that the proper characterization of [defendants' journalistic status i]s undisputed."

Order, Oct. 14, 2021, Dkt. No. 114 at 13 (brackets in original; citation omitted).

In that regard, it is certainly relevant to the issue of legitimate journalistic purpose and status that Mr. Creamer did not ultimately admit, on any of the tapes, to any of the conduct of which Mr. Foval accused him or to any other wrongful conduct. And it is relevant that Project Veritas issued its video despite finding no other reliable evidence of such misconduct other than the statements of Scott Foval, which they never bothered actually to corroborate; and that they never asked Mr. Creamer for comment, reaction or explanation. No real journalist would proceed in that fashion. To establish that, Plaintiffs must be able to show that had Project Veritas asked for comment, the information they would have been provided would conclusively demonstrate that their accusations were false. It is precisely because of that possibility that real journalists do solicit comment from anyone to be accused of wrongdoing in their publications.

Further, it is also relevant to demonstrate lack of journalistic purpose that Project Veritas went to great lengths to try to get Mr. Creamer to adopt or approve of a voter fraud scheme after he repeatedly rejected it. No real journalist would do that either. And it is impossible to demonstrate that without introducing evidence—Defendants' own admissions—that neither Mr. Creamer nor anyone else they "investigated" ever agreed to or engaged in such a scheme. The relevance of that fact is underscored by the reference to it in Judge Huvelle's' Memorandum Opinion on Summary Judgment [Dkt. No. 83]:

>Defendants claim that they had a legitimate belief that schemes for voter fraud ere being hatched by Creamer and his associates. . . . Plaintiffs strongly dispute this assertion, maintaining that Project Veritas operatives initiated any discussions about voter fraud, and their attempts to get plaintiffs to participate in a voter fraud scheme completely failed. . . .

3

> It is undisputed that Project Veritas never uncovered anyone associated with any of the plaintiffs who was involved in planning or engaging in voter fraud.

Dkt. No. 83 at 5 n. 6.

In that regard, the lack of true journalistic purpose and status is also shown by Project Veritas' recklessness in ignoring facts, in determining what was "newsworthy." In that way, too, the truth relating to Mr. Creamer's actual conduct is highly relevant. For example, Project Veritas founder James O'Keefe testified in his deposition that the biggest scandal their "reporting" exposed was that demonstrations featuring people in duck costumes to ridicule then-candidate Trump's effort to "duck" disclosing his tax returns, were unlawfully coordinated between the DNC and the Clinton campaign, and between Americans United for Change and the Clinton campaign. In fact, there was never anything unlawful about it. Project Veritas filed a complaint with the Federal Election Commission, which was dismissed, with the Commission finding "no reason to believe" any violation of law had occurred. .No real journalist would decide that a bald accusation of illegal conduct is "newsworthy" without checking the law with independent sources and asking for comment from the person accused.

Truthfulness in reporting can be relevant in cases that are not based on defamation. For example, some states, including New York, have statutes creating a cause of action for violation of right to privacy undertaken for trade and advertising purposes, which the courts have interpreted to exclude uses of pictures, etc. in publications concerning "newsworthy" events. Yet in a case for violation of the right to privacy under the New York statute, a plaintiff "'may claim that defendant forfeited the privilege for reporting matters on which the public has the right to be informed by proving that defendant's use was infected with material and substantial fiction or falsity.'" *Edme v. Internet Brands, Inc.*, 968 F. Supp. 2d 519, 530 (E.D.N.Y. 2013)(quoting *Lerman v. Flynt Distr. Co.*, 745 F.32d 123, 132 (2d Cir. 1984)).

For these reasons, Plaintiffs should be allowed to introduce evidence relating to the facts of Mr. Creamer's actual statements and conduct for these purposes.

**2. Admission of Mr. Creamer's Prior Conviction**

Defendants have shown no basis for the Court to reconsider its ruling that Mr. Creamer's prior conviction should be excluded from evidence. Order, Sept. 21, 2021 [Dkt. No. 111]. In their motion in limine to allow the conviction to be admitted, Defendants made precisely the argument they now make: that the conviction was one of the reasons that led Project Veritas to target Mr. Creamer for their operation and thus, that in secretly recording him (and many others).they were, as Defendants would have it, simply "following facts and gathering and reporting the news" rather than acting for a tortious purpose, under the wiretapping laws. The Court specifically rejected that argument:

> Defendants now argue that they "must defend themselves" against the wiretap claims "by offering evidence of their prior knowledge of Creamer's convictions…which highlighted the newsworthiness of the story they investigated and why they did so.'" Def. Mot. at 11. According to this argument, defendants' knowledge of Mr. Creamer's convictions shows that they "organically followed the threads of this news story to Creamer," id. at 14 and helps rebut any argument that they acted with a tortious purpose, id. at 13.
> The Court finds these arguments unconvincing. Defendants do not present any evidence in their motion to show that they set out to collect information on Mr. Creamer because of his convictions. Prior to filing this present motion, defendants do not appear ever to have made such a claim……
> In fact, defendants set forth in their statement of facts a contrary explanation for their investigation of Mr. Creamer…

Dkt. No. 111 at 5; see generally Dkt No. 111 at 4-7

The question raised by Defendants' argument is not whether Project Veritas knew that Mr. Creamer had been convicted of a felony, when they decided to pursue him, The question is

whether the conviction <u>was actually a factor</u> in that decision. Even now, Defendants can point to no evidence that such was the case, and there is none. To the contrary, as this Court explained:

> Judge Huvelle discussed defendants' decision to target Mr. Creamer in her opinion on summary judgment. See <u>Democracy Partner LLC [v</u> Project Veritas Action Fund, 453 F. Supp. 3d 261] at 269 [(D.D.C. 2020)(<u>Democracy Partners III</u>)]. Her account, which was based on facts that were "either undisputed or established by uncontroverted evidence," <u>id.</u> at 267, also includes no suggestion that defendants were acting in response to Mr. Creamer's convictions.

Dkt. No. 111 at 6. The Court cited Judge Huvelle's finding that what Project Veritas learned from Scott Foval led them "' to research Creamer and ultimately, to target him and Democracy Partners as part of their purported investigation into potential "voter fraud" in the 2016 election.'" Order, Dkt. 111 at 6 (quoting <u>Democracy Partners III</u>, 453 F. Supp. 3d at 269). (Foval never mentioned Mr. Creamer's conviction to anyone at Project Veritas).

Defendants' Exhibit 111, attached to Defendants' email, simply shows that Project Veritas was aware of the conviction. It does not show the conviction was a factor in their decision to target Creamer. By contrast, Plaintiffs' Exhibit 73 (attached hereto as Exhibit A), is a Project Veritas document showing that Mr. Creamer was targeted to see if he would agree to approve and become involved in a voter fraud scheme. Pl. Ex. 73 at p 4 ("Targets: Bob Creamer").

For these reasons, there is simply no basis for the Court to revisit its prior ruling that Mr. Creamer's prior conviction should not be admitted into evidence.

|  |  |
|---|---|
| | Respectfully submitted, |
| Dated: September 12, 2022 | \_/s/ Joseph E. Sandler_____ |

Joseph E. Sandler, D.C. Bar No. 255919
Christina E. Bustos DC Bar. No. 229699
SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.
1090 Vermont Ave., N.W.  Suite 750
Washington, D.C.  20005
Tel:  202-479-1111
Fax:  202-479-1115
sandler@sandlerreiff.com
bustos@sandlerreiff.com

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2022, I electronically filed the foregoing Plaintiffs' Status Report with the Clerk of Court using the CM/ECF system, which will cause a copy to be served on all counsel of record.

/s/ Joseph E. Sandler

Joseph E. Sandler

Counsel for Plaintiffs