# EXHIBIT F

```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA


DEMOCRACY PARTNERS, LLC, ET
AL,
                         Plaintiffs     CV Action
                                        No. 1:17-1047

       vs.                              Washington, DC
                                        September 15, 2022
PROJECT VERITAS ACTION FUND,
NA, LLC, ET AL,
                                        10:19 a.m.
                         Defendants.

           TRANSCRIPT OF JURY TRIAL PROCEEDINGS - DAY 1
              BEFORE THE HONORABLE PAUL L. FRIEDMAN
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:      JOSEPH SANDLER
                         CHRISTINA BUSTOS
                           SANDLER, REIFF, LAMB ROSENSTEIN &
                              BIRKENSTOCK
                           1090 Vermont Avenue, NW Suite 750
                           Washington, DC 20005


For the Defendants:      PAUL A. CALLI
                         CHARLES B. SHORT
                           CALLI LAW, LLC
                           One Flagler Building
                           14 Northeast 1st Avenue
                           Suite 1100
                           Miami, FL 33132

                         STEPHEN R. KLEIN
                           BARR & KLEIN PLLC
                           1629 K Street NW, Ste. 300
                           Washington, DC 20006

Reported By:             LORRAINE T. HERMAN
                           Official Court Reporter
                           U.S. District & Bankruptcy Courts
                           333 Constitution Avenue, NW
                           Room 6720-C
                           Washington, DC 20001
                           lorraine_herman@dcd.uscourts.gov
```

1   the -- that we were about to launch -- I think the next day,
2   actually, we were going to launch a project aimed at
3   focusing attention on the fact that Donald Trump had not
4   released his tax returns and was ducking that.
5       And we were going to use to exemplify that a guy
6   in a Donald Duck suit.  The next day we were going to have
7   that guy run down the escalator at the Trump Tower in a duck
8   suit with a sign that said, "Donald ducks his tax returns,"
9   and have a little press conference outside of Trump Tower.
10  **Q.**   Did you tell him that Secretary Clinton, the
11  candidate, knew about and approved the duck demonstration?
12  **A.**   I think I did.  I had a little discussion with him
13  about how there had been other people who thought something
14  else was a better mascot.  But somehow Hillary Clinton had
15  weighed in and said she really liked the duck.  I said,
16  offhandedly, Well, if the next president of the United
17  States wants ducks on the ground, by God, we will do it.
18  **Q.**   Was it -- was it confidential information that the
19  duck program was about to take place?
20  **A.**   No.
21  **Q.**   Was it confidential information that Secretary
22  Clinton knew and approved about the duck program?
23  **A.**   Well, I think I may have asked him not to say
24  anything to anybody else just because, you know, it was kind
25  of personal.  I related to him something that the candidate

```
 1    had said, but it was not -- you know, I think -- I don't
 2    know that she would care one way or the other.
 3              THE COURT:  Was there any discussion about Angela
 4    Brandt at this dinner on August 17th?
 5              THE WITNESS:  I'm sorry.  I couldn't hear.
 6              THE COURT:  Was there any discussion about Angela
 7    Brandt at this dinner, on August 17th, about his niece?
 8              THE WITNESS:  No, not at that dinner.
 9              THE COURT:  Okay.
10    BY MR. SANDLER:
11         Q.   You mentioned that there was a meeting scheduled
12    for -- you had scheduled a meeting for him while he was in
13    D.C. with Americans United for Change.
14         A.   Correct.
15         Q.   Did that meeting take place?
16         A.   Yes.
17         Q.   Who was there?
18         A.   My colleague, Brad Woodhouse, who was the
19    Executive Director of Americans United for Change, and
20    several people on his staff, as I recall, and myself and
21    Roth.
22         Q.   And you were there?
23         A.   Yes.
24         Q.   And Mr. Roth was there?
25         A.   Yes.
```

1  **Q.**   Did Mobilize or Strategic Consulting or you have
2  anything to do -- any role in planning or organizing an
3  event in Arizona shutting a highway down?
4  **A.**   No.
5  **Q.**   Did Project Veritas contact you for comment or
6  before this video was posted on YouTube to ask if you or
7  Mobilize or Strategic Consulting had anything to do with the
8  action shutting that highway down in Arizona?
9  **A.**   No.
10 **Q.**   When you saw this video -- talking about the whole
11 video, not just these clips.  When you saw the video, were
12 you concerned that the video had exposed any illegal contact
13 on your part?
14 **A.**   No.
15 **Q.**   Had you contacted Scott Foval about the video when
16 it came out?
17 **A.**   I contacted him before the video came out.
18 **Q.**   Okay.
19 **A.**   On Friday -- after viewing the footage Friday
20 night for three hours, the next morning I talked to the
21 Clinton campaign and to DNC and to my colleague, Brad
22 Woodhouse, and we all agreed that Foval had to be terminated
23 immediately; that the views he expressed on that video were
24 simply inconsistent with the values of our firm,
25 inconsistent with the values of the campaign and were

1      **Q.**   Well, that's not the point.  Is it a bar or are
2   you having a coffee or amaretto?
3      **A.**   I think we are having coffee.  I misremembered.
4      **Q.**   And before you even hit the chair, you are telling
5   him about bracketing and how it involves all of the future,
6   the future events where you bracket the opposition's
7   campaign.  Right?
8      **A.**   That's correct, yes.
9      **Q.**   I thought it was -- I don't know if you used the
10  word illegal or confidential.  Confidential.  I thought it
11  was confidential the future events; that's what you
12  testified on direct.
13     **A.**   Specific events there were certainly things we
14  didn't want to give to the Trump campaign or to right-wing
15  operatives; that's correct.
16     **Q.**   So you can broadcast it to a guy that wants to
17  wire you 20 grand -- wait.  Wait.  Wait.  You can broadcast
18  it to a guy in an open hotel lobby who wants to wire you 20
19  grand, eventually, from offshore as long as it's okay?
20  Like, you set the rules.  It's only confidential when you
21  say it's confidential?
22          **THE COURT:**  Don't ask a second question before he
23  has a chance to answer the first one.
24          **MR. CALLI:**  Sorry, Judge.  I'm still reeling from
25  him telling me I made a slur.  Because in 30 years --

1 **C E R T I F I C A T E**

3 I, **Lorraine T. Herman, Official Court Reporter,**
4 certify that the foregoing is a true and correct transcript
5 of the record of proceedings in the above-entitled matter.

11    October 3, 2022                  /s/
             **DATE**                         **Lorraine T. Herman**