UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
DEMOCRACY PARTNERS, LLC, *et al.,*       )
                                          )
           Plaintiffs,                    )
                                          ) Civ. No. 1:17-cv-1047-PLF
       v.                                 )
                                          )
PROJECT VERITAS ACTION FUND, LLC, *et al.*,)
                                          )
           Defendants.                    )
_____)

**PLAINTIFFS' RESPONSE TO DEFENDANTS' ARGUMENT RE FIRST AMENDMENT REQUIRES COURT TO REVIEW JURY'S VERDICT CLOSELY AND CABIN OVERBROAD ELEMENTS OF STATE LAW TORTS**

Pursuant to the Court's Minute Order entered April 17, 2024, Plaintiffs submit this response to section I of Defendants' Reply Brief [Dkt. No. 208]("Def. Reply"), filed in support of Defendants' Rule 50(b) Motion for Judgment as a Matter of Law [Dkt. No. 196].

Section I of the Reply is entitled "The First Amendment Requires the Court to Review the Jury's Verdict Closely and to Cabin Overbroad Elements of State Law Torts." In that section, Defendants argue, first, that the standard for granting relief under Rule 50(b) is different in a case implicating the First Amendment. Under the established standard "[b]ecause a judgment as a matter of law intrudes upon the rightful province of the jury it is highly disfavored. We have repeatedly emphasized that '[t]he jury's verdict must stand unless the evidence, together with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable men could not disagree on the verdict.'" *Boodoo v. Cary*, 231 F.3d 1157, 1161 (D.C. Cir. 1994)(quoting *McNeal v. Hi-Lo Powered Scaffolding, Inc.*, 836 F.2d 637, 640-41 (D.C. Cir. 1988)). In their Reply, however, Defendants argue that: "Courts must apply both heightened substantive and evidentiary

standards to statutory or tort claims that might otherwise chill speech and must independently review the record to see whether such standards have been met." Def. Reply . at 7. [1]

Second, Defendants argue that this "Court must also enforce the First Amendment's substantive limits on tort claims," *id*. at 9, suggesting that the Court should now, retroactively and post-verdict, apply some undefined higher standards of proof for their claims than the established standards of proof (*id*. at 10-11)—the standards on which the jury was instructed, with the full agreement of Defendants.

Both contentions are meritless. As to the first argument, the line of cases on which Defendants rely holds that, in appellate review of ultimate factual findings on the issue of actual malice in defamation cases and other ultimate issues in First Amendment cases involving the content of speech, those issues should effectively be considered to be questions of law. But this is not a case, like a defamation or protest case, which implicates the First Amendment because the outcome could punish or restrict expressive conduct. To the contrary, this Court has, throughout the course of these proceedings, precluded the Plaintiffs from recovering any damages resulting from Defendants' expressive content, for Plaintiffs' one state tort claim-- fraudulent misrepresentation.

For that same reason, Defendants' second contention is also meritless. This Court has *already* enforced the "First Amendment's substantive limits on tort claims" by limiting the Plaintiffs' ability to recover damages for their tort claim based on any expressive conduct of Defendants. And there are no special standards of proof for either the fraudulent misrepresentation claim or wiretapping claims, other than the ones on which the jury was instructed by the Court, with the full agreement of the Defendants.

---

[1] References to page numbers in Defendants' Reply [Dkt. No. 208] are to the page numbers appearing at the top of each page of the ECF version.

### 1. The *Bose* Doctrine Provides No Basis for Overturning the Jury Verdict in This Case

Defendants' first contention is that the jury verdict is not entitled to deference in this case because of First Amendment implications. That contention is baseless. Defendants rely on the principles set out in *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984). *Bose* was a product disparagement case in which the District Court, after a lengthy bench trial, had ruled for the plaintiff company. The Court of Appeals reversed, holding that its review was not limited to the "clearly erroneous" standard applicable to District Court factual findings under Fed. R. Civ. P. 52(a)(6).[2] The Supreme Court agreed:

> We hold that the clearly erroneous standard of Rule 52(a) of the Federal Rules of Civil Procedure does not provide the standard of review to be applied in reviewing a determination of actual malice in a case governed by *New York Times v. Sullivan* [376 U.S. 254 (1964)]. Appellate judges in a such a case must exercise independent judgment and determine whether the record establishes actual malice with convincing clarity.

*Bose*, 466 U.S. at 514.

More broadly, the Court in *Bose* suggested that an appellate court should treat as questions of law—not questions for the trier of fact-- the sufficiency of the evidence to support an element of a defamation claim or of another type of claim in which the outcome could *punish or restrict speech based on its content*. "The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment protection is not merely a question for the trier of fact. Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold…." *Id*. at 511. As the Court explained in a subsequent case, the "question whether the evidence in the record in a

---

[2] Rule 52(a)(6) provides that: "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."

3

defamation case is sufficient to support a finding of actual malice is a question of law." *Hartke-Hanks Comms., Inc. v. Connaughton*, 491 U.S. 657, 685 (1989).

The Court in *Bose* also noted that certain other ultimate issues in defamation cases should not be determined by a jury, citing a prior case in which the Court had held that the jury should not have been allowed to determine whether the content of a statement that allegedly defamed a public official was relevant to his reputation as a public figure. The jury's "application of such a standard 'is unlikely to be neutral with respect to the content of speech and holds a real danger of becoming an instrument for the suppression of'" criticism of public officials. *Bose*, 466 U.S. at 510 (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 277 (1971)).

Apart from defamation cases, the only cases in which the *Bose* "independent judgment" doctrine has been applied are those in which a verdict or judgment could similarly result in *punishment of or restriction of speech,* based on its content. For example, in *Snyder v. Phelps*, 562 U.S. 443 (2011), the father of a fallen solider sued the Westboro Baptist Church and individuals involved in picketing the soldier's funeral. One claim, for intentional infliction of emotional distress, turned, under state law, on whether the conduct was "outrageous." The Court held that the jury should not have been allowed to determine whether the Westboro church protest was "outrageous" because of the risk that the jury would be influenced by the content of the speech. "Such a risk is unacceptable; 'in public debate [we] must tolerate insulting and even outrageous speech….'" *Snyder*, 562 U.S. at 458 (quoting *Boso v. Barry*, 485 US. 312, 322 (1988)).

This is decidedly *not* a defamation case and it is *not* a case, like the others cited by Defendants, in which the content of speech is in any way at issue.[3] That is because at every stage of these proceedings, the Court has taken pains to ensure that Plaintiffs could not recover damages for their

---

[3] *E.g., Milkovich v. Loran J. Co., Inc*., 497 U.S. 1 (1990)(defamation case); *Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987)(defamation case); *Snyder, supra* (content of protest at issue).

4

state tort claim based on any expressive conduct of the Defendants, including the content of Project Veritas videos.

First, in moving to dismiss the Complaint for failure to state a claim [Dkt. No. 14], Defendants argued that all of Plaintiffs' claims should be dismissed because the only damages resulted from publication of the Project Veritas videos  With respect to claimed reputational damages, Defendants contended that reputation damages are not recoverable without pleading a viable defamation claim, citing *Hustler v. Falwell*, 485 U.S. 46 (1988). The Court ruled that, at the motion to dismiss stage, the Court would be "[t]aking plaintiffs at their word that they are not seeking damages based on the publication of the videos," and therefore "*Hustler* does not bar their claim for reputation damages." *Democracy Partners LLC  v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 125 (D.D.C. 2018). With respect to damages from loss of contracts, Defendants similarly argued that recovery of such damages was barred by the First Amendment "because the cause of the lost contracts was defendants' publication of the secretly recorded videos." *Id*. at 126.  Again, given that the case was at the motion to dismiss stage, the Court accepted Plaintiffs' representation "that they are not seeking any damages based on the publication of the videos, but rather are seeking damages for nonpublication conduct. Where the underlying conduct is not expressive, and the damages sought are 'non-reputational,' ***there is no First Amendment issue.***"  *Id*. (emphasis added).

Again, in  their Motion for Summary Judgment [Dkt. No. 63], Defendants argued that as to each of Plaintiffs' claims requiring proof of damages, the only damages were caused by the publication and content of the Project Veritas videos.  The only such claim and the only state law tort surviving the pretrial motions was Plaintiffs' claim for fraudulent misrepresentation.  The Court ruled that Plaintiffs would be required to prove a proximate cause or causes of their damages for fraudulent misrepresentation that was not based on Defendants' expressive conduct; and that there was sufficient evidence to create an issue of fact as to that point. *Democracy Partners LLC  v. Project Veritas Action Fund,* 453 F. Supp. 3d 261, 274-75 (D.D.C. 2020).  "[T]he Court concludes that it is sufficient to

5

survive summary judgment on plaintiffs' claim that defendants' non-expressive conduct was a substantial factor in the decisions by AFSCME and AUFC to terminate their contracts with Strategic Consulting." *Id.* at 275.

In their Motion in Limine No. 1 to allow evidence of Robert Creamer's prior convictions [Dkt. No.85], Defendants again contended that the evidence was relevant because AFSCME was reacting to the content of the Project Veritas videos—including mention of those convictions—in terminating its business relationships with Strategic Consulting. This Court, in denying the Motion, confirmed the prior ruling on summary judgment, to the effect "that the most straightforward interpretation of [AFSCME official] Mr. [Scott] Frey's deposition statements … support plaintiff's theory that AFSCME reacted at least in part to defendants' non-expressive conduct in creating and releasing the video." *Democracy Partners,, LLC v. Project Veritas Action Fund*, Civ. No. 17-cv-1047-PLF, 2021 U.S. Dist. LEXIS 179273 at *14-15 (D.D.C., Sept. 21, 2021).

Consistent with this "cabining" of the state law tort of fraudulent misrepresentation, the parties both proposed jury instructions to preclude any finding of liability based on Defendants' expressive conduct. Defendants' Proposed Jury Instruction No. 25 was: "In determining whether Plaintiff Strategic Consulting Group suffered damages, you must determine whether the damages were proximately caused by actions of the Defendants other than the public posting of their videos and the words coming out of Plaintiffs and their associates' own mouths." Joint Revised Filing of Proposed Jury Instructions, Dkt. No. 175 at 31 (Proposed Jury Instruction No. 25—Non-Expressive Conduct). The Court ultimately instructed the jury as follows:

> In determining whether plaintiff Strategic Consulting Group suffered damages caused by the alleged misrepresentation you must determine whether the damages were proximately caused by the actions of the defendants other than the content and public posting of their videos. In other words, you must determine whether other actions of one or more of the defendants was a substantial factor in bringing about the damages.

Excerpts of Trial Transcript, Sept. 21, 2022 (attached as Ex. 1 hereto) at 88:23—89:18

Thus, throughout these proceedings, Plaintiffs were precluded from claiming any damages resulting from the expressive conduct of Defendants. This case was not one, then, in which the outcome could punish speech or the content of speech. In such circumstances, the *Bose* doctrine in simply inapplicable.

For example, in *Barnes v. Small*, 840 F.2d 972 (D.C. Cir. 1988), the Court of Appeals held that a District Court's finding that certain statements were false and malicious in a Title VII employment case was subject to the usual Rule 52(a) "clearly erroneous" standard and that *Bose* was inapposite. "The factual finding of malice in the context of a Title VII suit, in contrast to a libel suit, does not implicate the First Amendment. Therefore, the heightened scrutiny appellate courts are directed to give findings of malice in a libel case…. is not required here." *Barnes*, 840 F.2d at 977 n.2. Again, in *Lee v. Dept. of Justice*, 413 F.3d 53 (D.C. Cir. 2005), journalists appealed a contempt order entered against them for refusing to reveal confidential sources in a civil case. The D.C. Circuit ruled that the independent or de novo review mandated by *Bose* was not required. The Court explained that there was no effort by the government or the district court to "interfere with … Appellant journalists' right to print or communicate anything they choose. Both *New York Times* and *Bose* were libel cases in which a judgment of the court stood to 'punish' or at least adversely affect the litigants based upon the exercise of their free expression. No such threat exists here." *Lee*, 413 F.3d at 58.

Here too, there was no possibility of punishing or making defendants liable for the content of their videos. For that reason, the *Bose* doctrine simply does not apply. There is no additional leeway, let alone a requirement, for the Court to second-guess the jury's verdict. Rather, the established standards of review under Rule 50(b) apply: "Ordinarily the jury has the final word at trial; indeed, this is an integral part of having juries adjudicate disputes in the first place. If the losing party hopes for a different result, it faces a heavy burden…." *Lewis v. District of Columbia*, 315 F. Supp. 3d 571, 577 (D.D.C. 2018). "'[I]n entertaining a motion for judgment as a matter of law,

7

the court should review all of the evidence in the record.  In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods, Inc*., 530 U.S. 133, 150 (2000)(quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 150 (1986)).

Defendants' argument  is without merit.  It does not provide any basis to relieve the Defendants' heavy burden, abrogate the jury's role or undermine  the deference to the jury required in considering a  Rule 50(b) motion to overturn a jury verdict.

### 2. This  Court Has Already Enforced the First Amendment's Limits on the One State Tort Claim

Defendants further  contend that the "Court must also enforce the First Amendment's substantive limits on tort claims."  Def. Reply at 9. Defendants refer to the "heightened standards in defamation cases," *id*., and suggest that such "constitutional limits and heightened review apply to all manner of torts that threaten First Amendment activity." *Id*. at 10.  All of the cases Defendants cite in support of that proposition involved defamation claims or other claims seeking damages based on the content of speech, including *Hustler*.

Although Defendants refer to Plaintiffs' wiretapping claims, those of course did not involve any First Amendment considerations.  And because of the cabining already undertaken by this Court throughout the proceedings, the one state tort claim for which Plaintiffs were awarded damages by the jury--fraudulent misrepresentation-- did not implicate the First Amendment either.  There was no tort that "threatened First Amendment activity."  Accordingly,  neither "heightened standards" nor "heightened review" was warranted in this case.

In any event, it is unclear what "heightened standards" of proof Defendants would actually have the Court apply at this point.  The parties agreed on the burdens of proof as which the jury should be instructed. They agreed that  the jury should be instructed that: "To establish a fraudulent misrepresentation claim, Plaintiffs must prove every element of  their claim for fraudulent

8

misrepresentation by clear, convincing and unequivocal evidence." Joint Revised Filing of Proposed Jury Instructions, Dkt. No. 175 at 28, Proposed Joint Instruction No. 23. The parties agreed that as to the wiretapping claims, the jury should be instructed that: "Plaintiffs must prove each element of their claim under the federal and District of Columbia wiretapping statutes by a preponderance of the evidence." *Id.* at 40 (Joint Proposed Jury Instruction No. 30). And the Court in fact delivered those agreed instructions to the jury. Excerpts of Trial Transcript, Sept. 21, 2022 (Ex. 1 hereto) at 88:9-13; 94:21-95:2.

There was no factual issue in this case that was put to the jury that Defendants ever suggested should be treated as a matter of law. To the extent that Defendants are suggesting that there are factual determinations that should have been made by the Court instead of the jury, it is clearly too late for that. And there is simply no basis for second-guessing the jury verdict based on some vague, ill-defined "heightened" standards of proof that Defendants belatedly want to introduce.

## CONCLUSION

For the reasons set forth above, the arguments in Section I of Defendants' Reply are without merit and do not change the standard for overturing a jury verdict under Rule 50(b), that is applicable in this case.

Dated: April 26, 2024                                Respectfully submitted,

                                                     /s/ Joseph E. Sandler

                                                     Joseph E. Sandler, D.C. Bar No. 255919
                                                     Christina E. Bustos DC Bar. No. 229699
                                                     Sandler Reiff Lamb Rosenstein &
                                                      Birkenstock, P.C.
                                                     1090 Vermont Ave., N.W.  Suite 750
                                                     Washington, D.C.  20005
                                                     Tel:  202-479-1111
                                                     Fax:  202-479-1115
                                                     sandler@sandlerreiff.com
                                                     bustos@sandlerreiff.com

9

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2024 , I electronically filed the foregoing Plaintiffs' Response to Defendants' Argument with the Clerk of Court using the CM/ECF system, which will cause a copy to be served on all counsel of record.

/s/ Joseph E. Sandler

Joseph E. Sandler

Counsel for Plaintiffs

I